**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| EVERYTOWN FOR GUN SAFETY ACTION FUND, INC., | : | Civil Action No. 1:21-cv-8704 |
| | : | |
| Plaintiff, | : | |
| | : | **MEMORANDUM OF LAW IN** |
| v. | : | **SUPPORT OF PLAINTIFF'S** |
| | | **APPLICATION FOR ORDER** |
| DEFCAD, INC.; ODYSEE USER | : | **TO SHOW CAUSE FOR** |
| XYEEZYSZN; DEFCAD USER | | **PRELIMINARY** |
| XYEEZYSZN; ODYSEE USER | : | **INJUNCTION, EXPEDITED** |
| THEGATALOG-PRINTABLEMAGAZINES; | | **DISCOVERY, AND** |
| THE GATALOG; DEFCAD USER | : | **ALTERNATIVE SERVICE** |
| FREEMAN1337; TWITTER USER | | |
| XYEEZYSZN; PHILLIP ROYSTER. | | |
| Defendants. | | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 2
    *Everytown's Non-Profit Work, Valuable Goodwill and Reputation* ................... 2
    *The Strength of the Everytown Marks* ............................................................. 4
    *Ghost Guns & Defendants' Infringing Conduct* ............................................... 6
    *Defendants' Unlawful Conduct is Intentional and in Bad Faith and Causes*
    *Irreparable Harm* ............................................................................................ 8
    *Everytown Has Acted with Urgency to Stop Defendants' Conduct* .................... 9

ARGUMENT ...................................................................................................... 10
    I.      **This Court Has Jurisdiction and Authority to Grant**
    **Everytown's Request** ..................................................................................... 10
    II.     **Everytown Has Established All Requirements for Preliminary**
    **Injunctive Relief** ............................................................................................ 10
        A.    **Everytown Will Succeed on The Merits of Its Claims.** ............................ 11
        1.    **Defendants are Violating the Lanham Act (15 U.S.C. §§ 1114, 1125(a))** ...... 11
          a)   Everytown Owns the Registered Everytown Marks ................................. 11
          b)   The Defendants Used the Everytown Marks in Commerce ........................ 12
          c)   Defendants' Use Is Likely to Cause Confusion ....................................... 12
        2.    **Defendants' Conduct Constitutes Trademark Infringement and Unfair**
    **Competition Under New York Common Law** ..................................................... 16
        3.    **Defendants Are Tarnishing the Everytown Marks** ................................. 17
          a)   The Everytown Marks are Truly Distinctive ........................................... 18
          b)   Defendants' Use is Likely to Tarnish the Everytown Marks ..................... 19
        B.    **Everytown Has Suffered, And Will Continue to Suffer,**
        **Irreparable Harm** ........................................................................................ 20
        1.    Irreparable Harm Should be Presumed ................................................... 20
        2.    Everytown Has Demonstrated Irreparable Harm ..................................... 21
        C.    **The Balance of Hardships Tips in Everytown's Favor** ............................. 22
        D.    **An Injunction Is in The Public Interest** .................................................. 22
    II.     **Expedited Discovery is Necessary to Discover Defendants'**
    **True Identities** .............................................................................................. 22
    III.    **Alternative Service by Email and Other Electronic Means Is**
    **Necessary** ...................................................................................................... 23

CONCLUSION .................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.H. v. French*,
985 F.3d 165 (2d Cir. 2021)......................................................................................... 11

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*,
131 F. Supp. 3d 196 (S.D.N.Y. 2015)........................................................................... 18

*Avon Prods. v. S.C. Johnson & Son*,
984 F. Supp. 768 (S.D.N.Y. 1997)................................................................................ 17

*AW Licensing, LLC v. Bao*,
No. 15-cv-1373, 2015 WL 10527603 (S.D.N.Y. Apr. 2, 2015) .................................... 24

*Bloomberg, L.P. v. Doe*,
No. 13-cv-01787 (LGS), 2013 WL 4780036 (S.D.N.Y. June 26, 2013)...................... 23

*Bulman v. 2BKCo, Inc.*,
882 F. Supp. 2d 551 (S.D.N.Y. 2012)........................................................................... 22

*Burberry Ltd. v. Designers Imps., Inc.*,
No. 07 Civ. 3997(PAC), 2010 WL 199906 (S.D.N.Y. Jan. 19, 2010) ......................... 11

*Burberry Ltd. v. Euro Moda, Inc.*,
No. 08-cv-5781, 2009 WL 1675080 (S.D.N.Y. June 10, 2009) ............................. 11, 13

*Cartier, Inc. v. Deziner Wholesale, L.L.C.*,
No. 98-cv-4947 (RLC), 2000 WL 347171 (S.D.N.Y. Apr. 3, 2000)............................ 15

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
No. 01-cv-11295, 2003 U.S. Dist. LEXIS 7844 (S.D.N.Y. May 8, 2003) ............................ 18, 19

*Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Grp. Inc.*,
886 F.2d 490 (2d Cir. 1989)........................................................................................... 16

*Cont'l Motors Corp. v. Cont'l Aviation Corp.*,
375 F.2d 857 (5th Cir. 1967) ......................................................................................... 16

*Coty Inc. v. Excell Brands, LLC*,
277 F. Supp. 3d 425 (S.D.N.Y. 2017).................................................................... 18, 22

*Deere & Co. v. MTD Prods., Inc.*,
41 F.3d 39 (2d Cir. 1994)............................................................................................... 17

*Digital Sin, Inc. v. Does 1-176,*
279 F.R.D. 239 (S.D.N.Y. 2012) ................................................. 23

*Estee Lauder, Inc. v. Watsky,*
323 F. Supp. 1064 (S.D.N.Y. 1970) ............................................. 22

*Gucci Shops, Inc. v. R. H. Macy & Co., Inc.,*
446 F. Supp. 838 (S.D.N.Y. 1977) ............................................... 13

*Harley-Davidson, Inc. v. Grottanelli,*
164 F.3d 806 (2d. Cir. 1999) ...................................................... 16

*Heritage of Pride, Inc. v. Matinee NYC, Inc.,*
2014 WL 12783866 (S.D.N.Y. June 20, 2014) ..................... 14, 17

*Hormel Foods Corp. v. Jim Henson Prods.,*
73 F.3d 497 (2d. Cir. 1996) ....................................................... 19

*Hudson Furniture, Inc. v. Mizrahi,*
No. 20-cv-4891 (PAC), 2020 WL 5202118 (S.D.N.Y. Sept. 1, 2020) ....................................... 24

*Juicy Couture, Inc. v. Bella Int'l Ltd.,*
930 F. Supp. 2d 489 (S.D.N.Y. 2013) ......................................... 21

*Knowles-Carter v. Feyonce, Inc.,*
347 F. Supp. 3d 217 (S.D.N.Y. 2018) ......................................... 17

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.,*
735 F.3d 735 (7th Cir. 2013) ...................................................... 15

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,*
192 F.3d 337 (2d. Cir. 1999) ...................................................... 18

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,*
799 F.2d 867 (2d Cir. 1986) ....................................................... 16

*Luv N' Care v. Lindsey Laurain,*
No. 16-cv-00777, 2021 WL 3611120 (W.D. La. Aug. 13, 2021) ................................. 21

*Mobil Oil Corp. v. Pegasus Petroleum Corp.,*
818 F.2d 254 (2d. Cir. 1987) ............................................... 14, 16

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
339 U.S. 306 (1950) ................................................................. 24

iv

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
22 F.3d 546 (4th Cir. 1994) ........................................................................................... 21

*Mushroom Makers, Inc. v. R.G. Barry Corp.*,
580 F.2d 44 (2d Cir. 1978)............................................................................................. 13

*N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*,
293 F.3d 550 (2d Cir. 2002)........................................................................................... 20

*Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
No. 20-CV-7269 (VEC), 2021 U.S. Dist. LEXIS 142733 (S.D.N.Y. July 30, 2021) ................. 20

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010)...................................................... 13, 18, 19, 22

*Next Phase Distrib., Inc. v. John Does 1-27*,
284 F.R.D. 165 (S.D.N.Y. 2012) .................................................................................... 23

*Noble Sec., Inc. v. Ingamar Co., Ltd.*,
No. 21-cv-1372 (MKB), 2021 WL 2012508 (E.D.N.Y. May 20, 2021) ..................................... 24

*Notaro v. Koch*,
95 F.R.D. 403 (S.D.N.Y. 1982) ...................................................................................... 23

*OBH, Inc. v. Spotlight Magazine, Inc.*,
86 F. Supp. 2d 176 (W.D.N.Y. 2000) ............................................................................ 12

*Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.*,
680 F.2d 891 (2d Cir. 1982)........................................................................................... 22

*Paddington Corp. v. Attiki Imps. & Distribs. Inc.*,
996 F.2d 577 (2d Cir. 1993)................................................................................... 14, 17

*Pfizer Inc. v. Sachs*,
652 F. Supp. 2d 512 (S.D.N.Y. 2009)............................................................................ 19

*Philip Morris USA Inc. v. Veles Ltd.*,
No. 06-cv-2988 (GBD), 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007)........................................ 24

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961)........................................................................................... 12

*ReBath LLC v. Foothills Serv. Sols. Co.*,
No. 21-cv-00870-PHX-DWL, 2021 WL 2352426 (D. Ariz. June 9, 2021) ................................. 21

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ........................................................................ 24

*Road Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Road Dawgs, Inc.*,
679 F. Supp. 2d 259 (N.D.N.Y. 2009) ............................................................ 15

*Safeway Stores, Inc. v. Safeway Props., Inc.*,
307 F.2d 495 (2d Cir. 1962)....................................................................... 13, 16

*SoClean, Inc. v. Sunset Healthcare Sols., Inc.*,
No. 1:20-cv-10351, 2021 WL 3605013 (D. Mass Aug. 13, 2021) ................ 21

*Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*,
748 F.2d 669 (Fed. Cir. 1984)........................................................................ 15

*Standard Brands, Inc. v. Smidler*,
151 F.2d 34 (2d Cir. 1945)............................................................................. 13

*Stern v. Cosby*,
246 F.R.D. 453 (S.D.N.Y. 2007) .................................................................... 23

*Strange Music, Inc. v. Strange Music Inc.*,
326 F. Supp. 2d 481 (S.D.N.Y. 2004)............................................................ 18

*Streamlight, Inc. v. Gindi*, No. 18-cv-987 (NG),
2018 WL 8967042 (E.D.N.Y. Apr. 23, 2018) ............................................... 23

*Thompson v. Haynes*,
305 F.3d 1369 (Fed. Cir. 2002)...................................................................... 11

*Tri-Star Pictures, Inc. v. Unger*,
14 F. Supp. 2d 339 (S.D.N.Y. 1998).............................................................. 11

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
220 F. Supp. 2d 289 (S.D.N.Y. 2002)............................................................ 17

*Two Hands IP LLC v. Two Hands Am. Inc.*,
No. 21-cv-3855 (JGK), 2021 WL 4437975 (S.D.N.Y. Sept. 28, 2021) ........ 21

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
800 F. Supp. 2d 515 (S.D.N.Y. 2011)....................................................... 17, 21

*United States v. Hon*,
904 F.2d 803 (2d Cir. 1990)........................................................................... 16

*Virgin Enters. Ltd. v. Nawab*,
335 F.3d 141 (2d Cir. 2003) .................................................................................. 13

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ..................................................................................................... 10

**Statutes**
15 U.S.C. § 1114(1) ................................................................................................ 11
15 U.S.C. § 1115(a) ................................................................................................ 11
15 U.S.C. § 1116(a) ................................................................................................ 21
15 U.S.C. 1125(a) .................................................................................................... 11
N.Y. Gen. Business Law § 360-l ............................................................................. 17
Public Law 116-260, Div. Q, Tit. II, Subtit. B, § 226 ............................................ 21

**Treatises**
4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1601, at 216 (2d ed. 1987) ........... 24

J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, §§ 11:43, 15:34 (5th ed. 2021) ..................................................................................................... 18

## PRELIMINARY STATEMENT

Defendants are creating and distributing downloadable files that enable 3-D printing of firearm parts and accessories that infringe and tarnish Plaintiff Everytown For Gun Safety Action Fund, Inc.'s ("Everytown") trademarks. Defendants are distributing these files online through various social media and document sharing sites, including the site www.defcad.com owned by Defendant Defcad, Inc. Defendants are using the Everytown Marks in the file listing names, the descriptions of the files and the 3-D firearm parts for assault weapons and high-capacity magazines, and on the actual firearms and firearms accessories that are created using the downloadable files, which in turn are available and viewable to the public via Defendants' online accounts.

Defendants' use of the Everytown Marks is likely to confuse the public into incorrectly believing that Defendants, their files and the resulting firearm parts and accessories are endorsed or authorized by Everytown when they are not. Defendants' conduct is likely to tarnish the Everytown Marks in the minds of consumers as Defendants' conduct directly contradicts Everytown's advocacy for the prevention of gun violence, gun trafficking, and illegal gun possession. The Defendants' conduct is irreparably harmful to Everytown. Everytown has acted urgently and promptly to bring the instant lawsuit to stop Defendants' infringing and tarnishing use of the Everytown Marks. The Defendants are aware of Everytown's exclusive rights to the Everytown Marks and have received notice of infringement pertaining to the Everytown Marks but have continued to infringe and tarnish the Everytown Marks. *See* Declaration of Erin Galloway ("Galloway Decl.") at ¶ 55-60 (describing submission of notices of infringement to www.odysee.com and www.defcad.com). In fact, since Everytown submitted notices of infringement, Defendants have escalated their conduct by adding additional language to the

Infringing Product descriptions like "DMCA? Never heard of her" and directly tweeting at Everytown with images and comments such as the following:



*Id.* ¶ 5, 29-31, 52-54. To date, given the anonymity of Defendants' online accounts, Everytown has not been able to verify the Defendants' true identities or addresses.

Everytown seeks this Application to immediately obtain Defendants' true identities and to stop the Defendants from continuing to infringe and tarnish the Everytown Marks and their goodwill during the pendency of this action. As demonstrated below, Everytown meets the requirements for: (1) an order to show cause re: preliminary injunction; (2) an order permitting alternative service; and (3) an order granting limited expedited discovery. Without injunctive relief, Everytown will irretrievably lose the ability to control the quality of the goods, services, and advocacy offered and pursued under its Everytown Marks and the Everytown Marks will be reputationally harmed and tarnished.

**FACTUAL BACKGROUND**

***Everytown's Non-Profit Work, Valuable Goodwill and Reputation***

Since 2014, Everytown has become the largest gun violence prevention organization in

the United States. Declaration of Matthew McTighe simultaneously filed ("McTighe Decl."), ¶¶ 4-5. As part of its mission, Everytown advocates for the prevention of gun violence, gun trafficking, and illegal gun possession nationwide through various types of activities, including but not limited to, promoting public awareness, and working with federal, state, and local legislatures. *Id.* ¶¶ 6-7, 10. Everytown's advocacy efforts include supporting prohibitions on assault weapons, high capacity magazines, and ghost guns. *Id.* ¶ 10. Everytown is not anti-gun, but instead pro-gun safety, and advocates for gun safety nationwide through evidence-based solutions. *Id.* ¶ 13. As an example, Everytown provides education and awareness about child gun deaths and responsible gun storage through Be SMART, a program sponsored by Everytown's affiliate, Everytown for Gun Safety Support Fund. *Id.*

To support its non-profit work and advocacy, Everytown and its affiliates operate various "Everytown Websites" (like www.everytown.org, and www.momsdemandaction.org, among others), from which they educate and engage with the public and consumers, provide Everytown-branded content, and offer Everytown services and merchandise using the Everytown Marks. *Id.* ¶ 11. The Everytown Websites receive significant traffic: in 2020 alone, the Websites' pages were visited over 7.3 million times. *Id.* ¶ 34. The Everytown Websites all prominently feature at least one of the Everytown Marks in connection with Everytown's goods and services. *Id.* Everytown also sells a range of Everytown-branded merchandise and apparel under the Everytown Marks. *Id.* ¶ 19. Such apparel is worn and featured prominently during Everytown events. *Id.* ¶ 20. As an example, Moms Demand Action volunteers wearing signature red t-shirts bearing the MOMS DEMAND ACTION trademark and FLAG DESIGN have become a well-recognized presence at political and legislative gatherings across the country. *Id.* ¶ 20.

Everytown maintains multiple federally registered trademarks on the principal register of

the U.S. Patent & Trademark Office ("USPTO"). *Id.* ¶ 17; Declaration of Marcella Ballard simultaneously filed ("Ballard Decl."), at ¶ 4, Ex.1. Everytown owns valid and subsisting registrations for the word marks "EVERYTOWN" and "MOMS DEMAND ACTION" among other words marks, as well as various registrations for Everytown's FLAG DESIGN® Trademarks, such as , along with their associated common law rights (the "Everytown Marks"). Ballard Decl. ¶ 4, Ex. 1. Everytown's MOMS DEMAND ACTION® Reg. No. 4569205 is incontestable pursuant to 15 U.S.C. §1065. *Id.* ¶ 5, Ex. 2. The Everytown Marks have been continuously used by Everytown in connection with advocacy and education efforts including, but not limited to, promoting public awareness, working with federal, state, and local legislatures, conducting educational seminars, procuring funds, providing text message alerts in the field of prevention of gun violence, providing legal expertise, and producing downloadable reports and publications in the field of gun safety. McTighe Decl. ¶ 18.

Due to Everytown's success and its extensive use of the Everytown Marks, Everytown has developed substantial goodwill and a strong reputation as a staunch advocate for prevention of gun violence and promotion of gun safety measures. *Id.* ¶ 21. Everytown is known nationwide as the exclusive source of goods and services under the Everytown Marks, and consumers associate the Everytown Marks with its non-profit educational and advocacy activities. *Id.* ¶ 22.

***The Strength of the Everytown Marks***

The Everytown Marks are distinctive, inherently unique, and have a nationwide presence. Since 2014, Everytown and its affiliates have spent tens of millions of dollars building the Everytown brand and advertising the Everytown Marks. *Id.* ¶ 24. Since 2017, Everytown and its affiliates estimate they have organized and held over 27,000 rallies, marches, and public events nationwide focused on their mission to end gun violence. *Id.* ¶ 26. The larger events include the

Everytown for Gun Safety Action Fund Presidential Gun Sense Membership Forum in 2019
("Forum"); the Everytown 2019 Weekend of Action ("Weekend of Action"); and the Demanding
Women: Quarantine Conversations about Gun Violence series of virtual conversations in 2020
("Demanding Women"). *Id.* at ¶¶ 27-32. The 2019 Weekend of Action event consisted of over
100 rallies across all 50 states and the District of Columbia and was attended by thousands,
including more than 30 members of the United States Congress. *Id.* ¶ 30. It was tweeted about
over 45,000 times, and prominently featured volunteers carrying signs and wearing apparel
featuring the Everytown Marks. *Id*. ¶ 31. In 2020, Demanding Women broadcasts, which
featured many female senators, congresswomen, and governors, received 881,000 views of the
broadcast and 790,000 views of shorter clips from the broadcast, for a total of 1.67 million views
of the Demanding Women video content. *Id.* ¶ 32.  The Everytown Marks were highlighted
during these broadcasts. *Id.*

Everytown's efforts have culminated in over six million supporters nationwide, including
mayors, teachers, survivors, gun owners, students, and everyday Americans. *Id.* ¶ 25. In addition
to the substantial traffic to the Everytown Websites described above, Everytown has a significant
social media following. *Id.* ¶¶ 34-36. Everytown's social media accounts bearing the
"Everytown" Marks have over 1.4 million Facebook followers, 818,000 Instagram followers,
and 258,000 Twitter followers. *Id.* ¶ 35. The social media accounts bearing the "Moms Demand
Action" Marks have over 716,000 Facebook followers, over 225,000 Instagram followers, and
over 311,000 Twitter followers. *Id.* ¶ 36. Everytown frequently receives media coverage,
including but not limited to articles within the *New York Times*, *The Hill*, *The Wall Street
Journal*, *CBS Baltimore*, *CBS Iowa*, *The Associated Press*, *AdWeek*, *The Baltimore Sun*, *People,
Billboard, The Wall Street Journal,* and *TAP into Paterson*, among many other publications. *Id.* ¶

5

38. As a result of its efforts, strong brand, and strength of the Everytown Marks, Everytown has raised hundreds of millions of dollars to support its initiatives. *Id.* ¶¶ 39-40.

### Ghost Guns & Defendants' Infringing Conduct

"Ghost guns" are homemade firearms that are assembled from easy-to-obtain building blocks that can be purchased without a background check or any restriction, are made by individuals and not federally licensed manufacturers or importers, and do not have a serial number. *Id.* ¶¶ 41-42. Because they lack serial numbers, they are virtually untraceable and are a growing gun safety problem facing the U.S. *Id.* ¶ 42. One way that ghost guns are created is through 3-D printing, a manufacturing process that creates a physical object from instructions contained in a digital design file. *Id.* ¶ 44. The 3-D printer follows the provided instructions to lay down thin layers of material in the form of liquid or powdered plastic, metal, or cement, and then fuses the layers together to create tangible, oftentimes functional, physical objects for any use or purpose, including firearms, firearm parts, and accessories. *Id.* ¶ 45. Instructions for 3-D printing can be found on the Internet on various websites including www.odysee.com ("Odysee"), and www.defcad.com ("Defcad"), which is operated by Defendant Defcad, Inc. *Id.* ¶ 36; Galloway Decl. ¶¶ 4-51); Declaration of Delia Green ("Green Decl."), at ¶¶ 4-29 (accord).

Odysee is an online digital library that allows users, like the Defendants, to upload, promote, and distribute files, including 3-D printing instructions for firearm parts to consumers worldwide, including in the U.S., and specifically, New York. Galloway Decl. ¶¶ 4-51; Green Decl. ¶¶ 4-29. Users on Odysee have the option to monetize their content for cryptocurrency and can receive cash tips, but content can also be downloaded for free. *See, e.g.*, Green Decl. ¶ 5-6 (describing being able to download Defendants' Infringing Products); *see also www.odysee.com* Defcad describes itself as "The World's Largest 3D Gun Repository," and allows users, like the Defendants, to upload, promote, and distribute their digital 3-D printing instructions to

consumers worldwide, including in the U.S., and specifically, New York. Galloway Decl. ¶¶ 4-51; Green Decl. ¶¶ 4-29; *see also www.defcad.com*. Defcad's online repository allows users to browse a vast collection of 3-D printing instructions for various firearms and firearm parts for a subscription fee. Green Decl. ¶ 4-29.  Recently, Everytown discovered that Defendants are offering and distributing downloadable files for 3-D printing gun parts and accessories using the Everytown Marks. Galloway Decl. ¶¶ 4-51. The Defendants have uploaded their files to the websites Odysee.com and Defcad.com for worldwide distribution including in the U.S., and more specifically, New York. *Id.* ¶¶ 4-51; Green Decl. ¶¶ 4-29. The Defendants have included the Everytown Marks in the product listings, product descriptions, file names and within the actual files. Galloway Decl. ¶¶ 4-51. Further, for many of the 3-D gun parts and accessories, the Everytown Marks are emblazoned on the finished gun parts and accessories that are then used to construct fully functioning illegal firearms. *Id.* ¶ 51. There are no other source identifiers provided within the file names, or finished firearms, firearm parts, or accessories. *Id.* ¶¶ 4-51. Some of the Defendants have used "Everytown" or "Moms Demand" as search tags in connection with the Infringing Product listings in an apparent attempt to drive traffic to the listings. *See, e.g.*, *id.* ¶¶ 27, 49. A rendering of one of Defendants' Infringing Products is depicted here (*Id.* ¶ 16):



***Defendants' Unlawful Conduct is Intentional and in Bad Faith and Causes Irreparable Harm***

Throughout Everytown's investigation into the Defendants and their conduct, it is apparent that Defendants have infringed the Everytown Marks willfully. Defendants' conduct began long after Everytown's adoption and use of the Everytown Marks, and well after Everytown obtained its trademark registrations for the Everytown Marks. Galloway Decl. ¶¶ 52-60. Further, Defendants have refused to remove their infringing content and instead have mocked Everytown and its rights through additions to the product descriptions and tweets directed at Everytown. *Id.* ¶¶ 29-31, 53-54. Defendants' use of the Everytown Marks is irreparably depriving Everytown of the right to control the quality of its non-profit goods, services, and branded advocacy in connection with the Everytown Marks. McTighe Decl. ¶ 49. Defendants' conduct jeopardizes the enormous public goodwill and supporter trust associated with the Everytown Marks, which Everytown has built up over years through its painstaking advocacy efforts. *Id.* ¶ 50. This is exacerbated because Defendants' Infringing Products and the gun parts and accessories that result from them bear identical reproductions of the Everytown Marks in their entirety without change or commentary. *Id.* ¶ 51. The fact that Defendants have used the

Everytown marks in connection with assault weapons, high capacity magazines, and ghost guns undermines and contradicts Everytown's mission which supports prohibition of such firearms, parts, and accessories. *Id.* ¶ 52.

***Everytown Has Acted with Urgency to Stop Defendants' Conduct***

Upon learning of the Infringing Products, Everytown sought to have the product listings removed from Odysee and Defcad. Galloway Decl. ¶¶ 55-62; Ballard Decl. ¶ 11. Further, upon learning that Defendants' Infringing Product listings were reinstated on Odysee, Everytown investigated Defendants' conduct and brought this action and Application within weeks of the listings re-appearing. Ballard Decl. ¶ 11.

Everytown is currently unable to verify Defendants' true identities, or other identifying information, like their physical addresses, through which litigants normally serve or correspond with lawsuit defendants. Ballard Decl. ¶¶ 7-10. Defendants are currently offering the Infringing Products online through various online account holder names that are not their legal names. Green Decl. ¶ 4-29; Ballard Decl. ¶ 7. There does not appear to be a feature on Defcad.com through which Everytown can contact the Defendants directly.  In connection with Defendants' Odysee.com accounts, Everytown can only submit a "comment on user posts". Both Defcad.com and Odysee.com do not provide publicly available email addresses or physical addresses in connection with the Defendants' usernames. *See* Galloway Decl. ¶¶ 61-62. Everytown has been able to obtain contact information for Defendant Defcad, Inc. as well as Odysee.com and its parent entity LBRY, Inc. *Id.*¶¶ 34, 52, 56, 59; Complaint, Ex. 1. To date Everytown has only been able to ascertain one email address associated with Defendants Odysee User xYeezySZN, Defcad User xYeezySZN, Twitter User xYeezySZN, and Phillip Royster, but no other contact information. Galloway Decl. ¶¶ 34, 61-62. Accordingly, expedited discovery is needed to obtain

Defendants' true identifying information from the website platforms upon which they operate (Odysee and Defcad), and any other third parties assisting them. Ballard Decl. ¶ 10.

## ARGUMENT

### I. This Court Has Jurisdiction and Authority to Grant Everytown's Request

The Court has original subject matter jurisdiction over Everytown's Lanham Act claims under 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121. The Court also has jurisdiction over Everytown's New York state law claims, including tarnishment under N.Y.G.B.L. § 360-l, because the claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. The Court has personal jurisdiction over the Defendants as they are targeting consumers in New York and causing harm to Everytown within this Judicial District. The Defendants have distributed through interactive websites downloadable files for use in 3-D printers to create gun parts and accessories using the Everytown Marks in the file name and/or on the resulting gun parts and accessories. Each Defendant has targeted New York consumers by uploading these files to a fully interactive online website that is viewable by, accessible to, and downloadable by New York consumers. Venue is appropriate because a substantial part of the harm caused by Defendants has occurred in this Judicial District where Everytown is located. 28 U.S.C. § 1391. Thus, this Court has power and authority to hear the dispute and rule on the Order to Show Cause.

### II. Everytown Has Established All Requirements for Preliminary Injunctive Relief

A preliminary injunction may be granted if Everytown demonstrates (1) it is likely to succeed on the merits of its claims; (2) it will suffer irreparable harm without injunctive relief; (3) the balance of the hardships tips in its favor; and (4) an injunction serves the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *A.H. v. French*, 985 F.3d 165,

176 (2d Cir. 2021). Here, Everytown's evidence establishes that all four factors favor injunctive relief and no other relief provides an adequate remedy.

### A. Everytown Will Succeed on The Merits of Its Claims.[1]

#### 1. Defendants are Violating the Lanham Act (15 U.S.C. §§ 1114, 1125(a))

The Lanham Act prohibits the reproduction, counterfeiting, copying or production of a "colorable imitation" of a registered mark in connection with the distribution of goods and services, whenever there is a likelihood of confusion. 15 U.S.C. § 1114(1). To recover for trademark infringement under the Lanham Act, Everytown must show that it owns valid, protectable, trademarks; that Defendants used the marks in commerce without Everytown's consent; and the unauthorized use resulted in a likelihood of confusion. *Id.* The same test applies to false designation of origin and unfair competition claims. *See* 15 U.S.C. §§ 1114(1), 1125(a).[2]

##### a) Everytown Owns the Registered Everytown Marks

Everytown owns the Everytown Marks, which are federally registered on the principal register of the USPTO and are valid, protectable, and until now, exclusively used by Everytown. *See* Ballard Decl. ¶ 4, Ex. 1; *see also* 15 U.S.C. § 1115(a). Where a movant has provided a "certificate of registration with the [USPTO] [it] is prima facie evidence that the mark is registered and valid (i.e., entitled to protection), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Burberry Ltd. v. Euro Moda, Inc.*, No. 08-cv-5781, 2009 WL 1675080, at *5 (S.D.N.Y. June 10, 2009).

---

[1] Everytown's Complaint sets forth claims for: (1) trademark infringement, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); (2) false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) trademark infringement and unfair competition under New York common law; and (4) trademark dilution by tarnishment in violation of New York General Business Law § 360-l.

[2] *See also Thompson v. Haynes*, 305 F.3d 1369, 1378 (Fed. Cir. 2002); *Tri-Star Pictures, Inc. v. Unger*, 14 F.Supp.2d 339, 348 (S.D.N.Y. 1998); *Burberry Ltd. v. Designers Imps., Inc.*, No. 07 Civ. 3997(PAC), 2010 WL 199906, at *7 (S.D.N.Y. Jan. 19, 2010).

**b)     The Defendants Used the Everytown Marks in Commerce**

The Defendants' use of the Everytown Marks is commercial trademark use because they are using the identical Everytown Marks as a source identifier on the Infringing Product listings, product descriptions, in downloadable files for 3-D printing firearm parts and accessories, and on actual firearms, parts, and accessories and such use affects Everytown's ability to control the quality of its services offered under its Marks. Defendants' use of the Everytown Marks is "use in commerce" even if the Infringing Products are available for free download as the "nature of the Internet itself" makes Defendants' use of the Everytown Marks "use in commerce" *and* Defendants' unauthorized use of the Everytown Marks "affects [Everytown's] ability to offer [its] services [and goods] in commerce.[3] Thus, Defendants' use of the Everytown Marks is "use in commerce" for purposes of the Lanham Act.

**c)     Defendants' Use Is Likely to Cause Confusion**

Factors evaluated in determining likelihood of confusion include: (1) the strength of the senior user's mark; (2) similarity of the marks; (3) the market proximity of the products; (4) the likelihood that the senior user will bridge the gap separating the parties' current marks; (5) the existence of actual consumer confusion; (6) whether the junior user acted in bad faith in adopting its mark; (7) the quality of the junior user's products; and (8) the sophistication of the relevant consumer group. *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

Factor one, the strength of the senior user's mark, weighs in Everytown's favor because the Everytown Marks are strong, well-known, unique, and distinctive. *See infra* Section II.A.3.a;

---

[3] *See, e.g.*, *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176, 186 (W.D.N.Y. 2000) ("[T]he national, and even international, nature of the Internet itself makes defendants' use of plaintiffs' trademark as a domain name a 'use in commerce' for purposes of the Lanham Act.") (citing *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997), *aff'd* 152 F.3d 920 (2d Cir. 1998)); *see also Talent Mobile Dev., Inc. v. Headios Grp.*, No. 16-cv-0464-DOC (DFMx), 2017 WL 6940548 (C.D. Cal. Oct. 3, 2017) (finding the defendant's free downloadable application was likely to be confused with the plaintiff's free downloadable application).

*see also New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305

(S.D.N.Y. 2010); *Burberry Ltd.*, 2009 WL 1675080, at *10-12.

Factor two, the similarity of the marks, weighs in Everytown's favor. The Defendants are

using Everytown's *identical* trademarks without alteration, addition, or subtraction. *Virgin*

*Enters. Ltd. v. Nawab*, 335 F.3d 141, 149 (2d Cir. 2003) (reversing denial of preliminary

injunction finding the district court improperly concluded the differences in the two logos

VIRGIN WIRELESS and VIRGIN diminished any likelihood of confusion); *Mushroom Makers,*

*Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 49 (2d Cir. 1978) (finding MUSHROOM for women's

apparel was identical to MUSHROOMS for women's shoes); *Gucci Shops, Inc. v. R. H. Macy &*

*Co., Inc.*, 446 F. Supp. 838, 839-40 (S.D.N.Y. 1977).

Factor three, the market proximity of the products, weighs in Everytown's favor. Both

Everytown and the Defendants' goods, services, and advocacy involve the topic of firearms,

firearm parts, and accessories. *See supra* Facts. Specifically, Everytown and Defendants are both

involved with distributing downloadable materials relating to firearms generally[4]. *See* Ballard

Decl., Ex. 1; *Virgin Enters*, 335 F.3d at 149-50 (finding consumer electronic audio equipment

and telephone and telephone services were sufficiently related to cause a likelihood of

confusion); *Safeway Stores, Inc. v. Safeway Props., Inc.*, 307 F.2d 495, 499 (2d Cir. 1962)

(affirming preliminary injunction finding use of SAFEWAY in the business of shopping centers

sufficiently related to SAFEYWAY for real estate services); *Standard Brands, Inc. v. Smidler*,

151 F.2d 34, 37 (2d Cir. 1945).

Factor four, the likelihood that the senior user will bridge the gap separating the parties'

---

[4] For Everytown, it is downloadable publications, reports, and analyses of gun safety issues, and for Defendants, downloadable files that can be used to produce firearms parts and accessories of the very kind that Everytown analyzes, reports on, and advocates to prohibit.

current marks, weighs in favor of Everytown. Everytown does not sell instructions for 3-D printable guns or Everytown branded guns. To the contrary, Everytown advocates against the proliferation of ghost guns and supports prohibitions on assault weapons and high-capacity magazines of the types Defendants are promoting. That said, Everytown has a national program that promotes gun safety and secure gun storage and it is quite possible that Everytown could endorse a particular firearm safety mechanism or safety accessory in the future because Everytown is not anti-gun but instead pro-gun safety.

Factor five, the existence of actual consumer confusion, is neutral. Everytown has acted expeditiously in bringing this action before significant harm can be done to the Everytown Marks and brand, and the public at large.

Factor six, whether the junior user has acted in bad faith, weighs in Everytown's favor because Defendants adopted the *identical* Everytown Marks. As detailed, the Defendants were aware of Everytown's prior use of the Everytown Marks, no doubt know that Everytown opposes the very products to which they are attaching its name and marks, and received notice that their conduct was infringing, but have chosen to continue their conduct. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987) (stating "actual or constructive knowledge [of a senior user's mark] *may* signal bad faith")(emphasis in original); *Heritage of Pride, Inc. v. Matinee NYC, Inc.*, 2014 WL 12783866, at *11 (S.D.N.Y. June 20, 2014) (granting preliminary injunction and stating "where…prior knowledge [of a senior user's mark] is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, the Second Circuit has upheld a finding of bad faith."); *Paddington Corp. v. Attiki Imps. & Distribs. Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993) (accord).

Factor seven, the quality of the junior user's products, weighs in Everytown's favor

because the firearm parts and accessories that may be printed using Defendants' files are—when combined with other parts (to make assault weapons) or on their own (high-capacity magazines)—illegal in New York, among other states. *See, e.g.*, N.Y. Penal Law §§ 265.00(22), 265.00(23), 265.02(7) & (8), 265.10. Where a defendant's goods and/or services are associated with potential illegal activity, this *Polaroid* factor has weighed in favor of the movant. *See, e.g.*, *Road Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Road Dawgs, Inc.*, 679 F. Supp. 2d 259, 290 (N.D.N.Y. 2009) (granting summary judgment in favor of plaintiff in part and concluding that factor seven weighed in favor of plaintiff where illegal activity was reported near defendants' establishment and the plaintiffs' club consisted of law enforcement).

Factor eight, the sophistication of the relevant consumer group, favors Everytown. As detailed above, *any* consumer can download Defendants' Infringing Products. Likewise, the inexpensive nature of Defendants' Infringing Products (a small subscription fee, or free in some instances) creates low barriers to entry for consumers to obtain the products. *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 672 (Fed. Cir. 1984) (finding purchasers of inexpensive products should be held to a lesser standard of purchasing care); *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 739 (7th Cir. 2013) (affirming injunction and noting confusion was more likely where the products at issue were inexpensive and accessible to any consumer).

Defendants have used the Everytown Marks without alteration in the file names, in the downloadable files for 3-D printing, and on physical firearm parts and accessories.[5] Consumer

---

[5] Defendants' usernames in connection with the Infringing Product listings is unlikely to alleviate confusion given the usernames are in much smaller text then the Everytown Marks in the Infringing Product listings and file names, and the Defendants have "tagged" the product listings with "Everytown" in order to make them easier for consumers to find. Where the most dominant feature in connection with a product is the plaintiff's trademark, courts have found such use of the plaintiff's trademark is likely to cause confusion. *Cartier, Inc. v. Deziner Wholesale, L.L.C.*, No. 98-cv-4947 (RLC), 2000 WL 347171, at *4 (S.D.N.Y. Apr. 3, 2000) (citing cases and granting judgment for Cartier

confusion is therefore likely. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872-76 (2d Cir. 1986) (affirming summary judgment where defendant used plaintiff's registered trademark for a stitching pattern and determining defendant's use of its own trade dress was not sufficient to dispel confusion). The fact that Everytown does not sell firearms does not diminish the likelihood of confusion as direct competition between Everytown and the Defendants is not necessary. *Mobil Oil*, 818 F.2d at 257-58 (quoting *Cont'l Motors Corp. v. Cont'l Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967); *Safeway Stores, Inc.*, 307 F.2d at 499.

As Everytown is not anti-gun but instead is pro-gun safety, and advocates for nationwide gun safety (McTighe Decl. ¶ 13), it is not unrealistic that Everytown, which advocates for safety and secure storage of firearms, could endorse gun parts with safety mechanisms or safety accessories. Defendants' use of the identical Everytown Marks is further likely to cause post-sale confusion as the finished firearms, parts, and accessories do not depict any trademarks other than the Everytown Marks. Defendants are evidently attempting to create a false association with Everytown and the Everytown Marks. *Lois Sportswear*, 799 F.2d at 872-76; *United States v. Hon*, 904 F.2d 803, 807-08 (2d Cir. 1990). Thus, Everytown is likely to succeed on the merits of its Lanham Act claims.[6]

### 2.    Defendants' Conduct Constitutes Trademark Infringement and Unfair Competition Under New York Common Law

New York common-law trademark infringement and unfair competition claims are

---

where the defendant's sunglasses label displayed the Cartier name more prominently of any claimed defendant's mark).

[6] Defendants' conduct is not defensible as parody because Defendants' have used the *identical* Everytown Marks without any additions, subtractions, commentary, or other source identifiers. *See Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Grp. Inc.*, 886 F.2d 490, 494 (2d Cir. 1989) ("A parody must convey two simultaneous—and contradictory messages: that it is the original, but also that it is *not* the original and is instead a parody.")(emphasis in original); *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999) (rejecting parody defense where defendant's use made no comment on the plaintiff's mark and "simply use[d] it somewhat humorously to promote his own products and services").

evaluated under the same "likelihood of confusion" standard as equivalent Lanham Act claims, with New York unfair competition claims requiring a showing of bad faith. *Avon Prods. v. S.C. Johnson & Son*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997); *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 220 F. Supp. 2d 289, 297-98 (S.D.N.Y. 2002); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 538 (S.D.N.Y. 2011), *aff'd*, 511 Fed. App'x 81 (2d Cir. 2013). "[W]here a junior user intentionally copies a mark, a presumption of bad faith arises." *Heritage of Pride*, 2014 WL 12783866, at *11 (citing *Paddington Corp.*, 996 F.2d at 586). Here, Everytown has demonstrated the Defendants acted in bad faith by placing the *identical* Everytown Marks on product listings, in product descriptions, within downloadable files for 3-D printing gun parts and accessories, and/or on actual functional guns and magazines.

### 3.     Defendants Are Tarnishing the Everytown Marks

Defendants' conduct constitutes dilution by tarnishment under N.Y. Gen. Business Law § 360-l ("Section 360-l"). Under Section 360-l, "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be ground for injunctive relief in cases of infringement of a mark registered…or in cases of unfair competition…." To recover for dilution under Section 360-l, Everytown must show the Everytown Marks are truly distinctive or have acquired secondary meaning and there is a likelihood of dilution. *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 229 (S.D.N.Y. 2018) (evaluating summary judgment motion for trademark infringement, federal dilution, and Section 360-1 claim by plaintiff based upon BEYONCÉ mark against defendant for use of FEYONCÉ mark on apparel and clothing) (citing *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-46 (2d Cir. 1994) (affirming preliminary injunction involving Section 360-1 tarnishment claim regarding use of plaintiff's Deere Logo modified into a small animated version scampering away from lawn tractor). Both factors are

clearly established on the record submitted in connection with this Application.

a)      The Everytown Marks are Truly Distinctive

Section 360-l only requires that the plaintiff's mark be "truly distinctive or has acquired secondary meaning." *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 458 (S.D.N.Y. 2017) (evaluating Section 360-l blurring and tarnishment claim, among other claims, and noting difference in "fame" required by federal law) (citing *Strange Music, Inc. v. Strange Music Inc.*, 326 F. Supp. 2d 481, 496 (S.D.N.Y. 2004)) (accord). "If a mark was registered on the Principal Register without requiring evidence of secondary meaning under § 2(f), then the mark is presumed to be inherently distinctive." *See* J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, §§ 11:43, 15:34 (5th ed. 2021); *see also Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d. Cir. 1999). To evaluate secondary meaning of a trademark, courts look to various factors, including advertising expenditures, media coverage, historical sales, and length and exclusivity of use, among other factors. *See, e.g., A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 212 (S.D.N.Y. 2015); *New York City Triathlon,* 704 F. Supp. 2d at 322 (granting injunction on federal dilution and Section 360-l claims involving NYC TRIATHLON mark); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01-cv-11295, 2003 U.S. Dist. LEXIS 7844, at *24 (S.D.N.Y. May 8, 2003).

Here, the evidence demonstrates that the Everytown Marks are both inherently distinctive and have acquired secondary meaning. The Everytown Marks are presumptively inherently distinctive given: (1) the FLAG DESIGN® Trademarks are fanciful or arbitrary; (2) the EVERYTOWN® Trademarks are arbitrary or at the very least suggestive; (3) the Everytown Marks have all been registered on the principal register of the UPSTO without the USPTO requiring proof of secondary meaning; and (4) Everytown's Mom's Demand Action Mark

(Registration No. 4569205) has achieved incontestable status. Everytown has dedicated tens of millions of dollars to nationwide advertising efforts featuring the Everytown Marks and has over six million supporters. Everytown has hundreds of thousands of social media followers across multiple platforms that use the Everytown marks. *See supra* Facts. Everytown has also raised hundreds of millions of dollars for its mission and initiatives. *See id*. Further, as the largest gun violence prevention organization in the U.S., Everytown has organized thousands of rallies and public events nationwide that have featured notable public figures. *See id*. And the Everytown Marks and garnered main-stream media coverage. *See id*. Such evidence is sufficient to demonstrate that the Everytown Marks are strong for purposes of a likelihood of success on its Section 360-l claim. *See, e.g.*, *Cartier Inc.*, 2003 U.S. Dist. LEXIS 7844, at *24; *New York City Triathlon,* 704 F. Supp. 2d at 322 (granting preliminary injunction involving trademark dilution claims under Lanham Act and Section 360-l finding evidence of coverage by major news outlets (ABC, NBC, CBS, FOX, CNN, the Wall Street Journal and New York Times), sufficient to support secondary meaning).

### b)      Defendants' Use is Likely to Tarnish the Everytown Marks

Dilution through tarnishment under Section 360-l occurs where a trademark is linked to or is "portrayed in an unwholesome or unsavory context, with the result that the public will associate the…lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 525-26 (S.D.N.Y. 2009) (discussing trademark dilution via tarnishment under Lanham Act and Section 360-l) (citing *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 507 (2d. Cir. 1996)). "The *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." *See Hormel Foods Corp.*, 73 F.3d at 507. Where a defendants' use involves an industry or business topic with which

a plaintiff would not want to be associated, tarnishment may be found. *See, e.g.*, *N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (revising judgment against Section 360-l claim where plaintiff's NEW YORK STOCK EXCHANGE marks were used by Defendant in context of casino services); *Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, No. 20-CV-7269 (VEC), 2021 U.S. Dist. LEXIS 142733, at \*18-20 (S.D.N.Y. July 30, 2021) (denying motion to dismiss Section 360-l claim where defendant used almost identical copy of plaintiff's Emmy Statuette in connection with YouTube video discussing COVID-19).

Here, Defendants' conduct is likely to tarnish the Everytown Marks as the Defendants have used the *identical* Everytown Marks on product listings, in product descriptions, within the files containing downloadable instructions for 3-D printing gun parts and accessories, and on firearms, firearm parts, and accessories. The Defendants intended to harm the Everytown Marks and Everytown's reputation by adopting and using the Everytown Marks without alteration or comment in connection with 3-D ghost gun parts and accessories—including on assault weapons and high-capacity magazines—all of which are dangerous and deadly products that Everytown advocates to regulate to prevent gun violence. *See N.Y. Stock Exch.*, 293 F.3d at 558 (reversing summary judgment dismissal of Section 360-l claim where use of plaintiff's NEW YORK STOCK EXCHANGE marks were used by defendant in context of casino services as "NEW YORK NEW YORK STOCK EXCHANGE" and "NEW YORK $LOT EXCHANGE" because defendant's use would harm plaintiff's reputation for listing companies on the New York Stock Exchange that adhere to its rules and harm plaintiff's reputation for integrity and transparency.").

### B.   Everytown Has Suffered, And Will Continue to Suffer, Irreparable Harm

#### 1.   Irreparable Harm Should be Presumed

The Trademark Modernization Act ("TMA") creates a rebuttable presumption of harm as

a matter of law for Lanham Act violations. *See* Public Law 116-260, Div. Q, Tit. II, Subtit. B, §

226. Courts have applied the TMA to find that "a party seeking an injunction is entitled to 'a

rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the

merits.'" *See, e.g., SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, No. 1:20-cv-10351, 2021 WL

3605013, at *2 (D. Mass Aug. 13, 2021) (citing 15 U.S.C. § 1116(a)) (finding irreparable

harm).[7]

### 2.      Everytown Has Demonstrated Irreparable Harm

"Irreparable harm exists in a trademark case when the party seeking the injunction shows

that it will lose control over the reputation of its trademark…because loss of control over one's

reputation is neither 'calculable nor precisely compensable.'" *Juicy Couture, Inc. v. Bella Int'l*

*Ltd.*, 930 F. Supp. 2d 489, 503 (S.D.N.Y. 2013) (quoting *U.S. Polo Ass'n, Inc. v. PRL USA*

*Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011)). Once someone sees or is exposed to

Defendants' Infringing Products, they are likely to believe Defendants' Infringing Products are

approved by, authorized by, or manufactured by Everytown, irreparably damaging Everytown's

goodwill and trusted brand as a staunch advocate for gun safety and ending gun violence.

Further, the Everytown Marks will be tarnished by association with Defendants' Infringing

Products, which are illegal to 3-D print and assemble and possess in New York State and

multiple other states. None of this harm is compensable with money because once consumer trust

is eroded, it may never come back. *See Multi-Channel TV Cable Co. v. Charlottesville Quality*

*Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994), *abrogated on other grounds by Winter v.*

---

[7] *Luv N' Care v. Lindsey Laurain*, No. 16-cv-00777, 2021 WL 3611120, at *2 (W.D. La. Aug. 13, 2021) (applying rebuttable presumption); *ReBath LLC v. Foothills Serv. Sols. Co.*, No. 21-cv-00870-PHX-DWL, 2021 WL 2352426, at *11 (D. Ariz. June 9, 2021); *see also Two Hands IP LLC v. Two Hands Am. Inc.*, No. 21-cv-3855 (JGK), 2021 WL 4437975, at *4 (S.D.N.Y. Sept. 28, 2021) (recognizing that "[f]ollowing the enactment of the Trademark Modernization Act of 2020, a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits"

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)) (holding that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."); *Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.*, 680 F.2d 891, 894 (2d Cir. 1982) (finding "[t]he likelihood of damage to reputation and good will…entitles a plaintiff to preliminary relief.").

### C. The Balance of Hardships Tips in Everytown's Favor

An injunction will not harm Defendants in any legally cognizable way, as the sole purpose of Defendants' conduct is to harm Everytown. Under similar circumstances, Courts have consistently found that the balance of hardship tips against defendants. *Coty Inc.*, 277 F. Supp. 3d at 464 (finding hardships weighed in the plaintiff's favor where plaintiff had spent millions of dollars marketing products under its trademarks and the defendant had no marketing efforts or brand recognition); *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970). The balance of hardships favors injunctive relief.

### D. An Injunction Is in The Public Interest

The public has an interest in not being deceived or confused as to the source of a good or service. *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 344 (stating "the public has an interest in not being deceived…."); *Bulman v. 2BKCo, Inc.*, 882 F. Supp. 551, 565-66 (S.D.N.Y. 2012) (noting "the public interest is best served by removing confusingly similar marks…."). Stopping Defendants' use of the Everytown Marks in product listings, product descriptions, downloadable files containing 3-D printing instructions for gun parts and accessories, and on actual ghost guns with no other source identifiers is in the public interest as it would avoid confusion.

## II. Expedited Discovery is Necessary to Discover Defendants' True Identities

Everytown requests limited expedited discovery from third parties targeted to learn and

verify Defendants' true identities, email addresses, and mailing addresses. Courts "use a 'flexible standard of reasonableness and good cause' when considering whether to grant" expedited discovery. *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (quoting *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012)); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (rejecting four-part test from *Notaro v. Koch*, 95 F.R.D. 403, 404-05 (S.D.N.Y. 1982)). Good cause for expedited discovery exists when, among other things, the true identities of the defendants are unknown, the moving party alleges infringement, the scope of the discovery sought is narrow, and expedited discovery would substantially contribute to moving the case forward. *Streamlight, Inc. v. Gindi*, No. 18-cv-987 (NG), 2018 WL 8967042, at *2 (E.D.N.Y. Apr. 23, 2018); *Bloomberg, L.P. v. Doe*, No. 13-cv-01787 (LGS), 2013 WL 4780036, at *3-4 (S.D.N.Y. June 26, 2013); *Next Phase Distrib.*, 284 F.R.D. at 171-72. Here, Defendants are ecommerce users with usernames seemingly unrelated to their legal names. Everytown is only in possession of one email address and name that it believes relate to Defendants Phillip Royster, Defcad, Inc., Odysee User xYeezySZN, and Twitter User xYeezySZN. It has no other contact information for those Defendants and has no way to verify if Defendant Phillip Royster is in fact the legal name associated with those accounts. Everytown has no names or contact information for the remaining Defendants other than Defcad, Inc. In short, Everytown does not know who the Defendants really are and has *no other way* in which to obtain said information absent expedited discovery.

## III.   Alternative Service by Email and Other Electronic Means Is Necessary

Good cause exists for alternative service because Defendants intentionally use the Internet to operate semi-anonymously to avoid detection and to prevent service or enforcement of Everytown's rights while creating, listing, and distributing the Infringing Products.

Defendants' efforts to conceal their identities—such as using fake names in their usernames and concealing their faces in their profile pictures—makes it impossible for Everytown to know, at this early stage, Defendants' true identities. The goal of Rule 4 is to provide flexibility in the procedures for giving Defendants notice of an action and to eliminate unnecessary technicalities in the service of process. 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1601, at 216 (2d ed. 1987); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Service by email or other electronic means satisfies due process in instances where it is reasonably calculated to notify parties of legal action, hearings, or injunctive relief. *Noble Sec., Inc. v. Ingamar Co., Ltd.*, No. 21-cv-1372 (MKB), 2021 WL 2012508, at *6-7 (E.D.N.Y. May 20, 2021); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06-cv-2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007).

     Here, a significant portion of Defendants' infringement occurs online as the infringing listings and files are distributed through various Internet platforms and consumers are encouraged to share their 3-D printed guns, gun parts, and accessories bearing the Everytown Marks on Twitter. Alternative service is particularly appropriate here as Defendants' true identities are unknown or unverified, Defendants have done business online, and Defendants have caused irreparable damage through web-based misconduct. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15, 1018 (9th Cir. 2002) (noting that "when faced with an international ebusiness scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process.").[8] Defendants were required to provide an email

---

[8] *Hudson Furniture, Inc. v. Mizrahi*, No. 20-cv-4891 (PAC), 2020 WL 5202118, at *3-4 (S.D.N.Y. Sept. 1, 2020) (permitting alternative service); *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 WL 10527603, at *2 (S.D.N.Y. Apr. 2, 2015) (permitting alternative service after finding the defendants had "gone to great lengths to conceal themselves and their ill-gotten proceeds from [the trademark owner]").

address to sign up for the platforms through which they distributed the Infringing Products, and they likely use the emails they provided to recover their account information if ever locked out of their accounts. Thus, the email address obtained from these third-party platforms is likely to be the most reliable form of contact with, and service on, Defendants. Plaintiff also requests permission to serve necessary third parties by the same alternative means given Everytown must be able to serve any Order and related papers upon the appropriate third-party service providers as quickly as possible. If granted, Everytown also will serve the registered agents of all third parties. Service to these parties is critical to the effectiveness of the requested relief.

## **CONCLUSION**

For the foregoing reasons, Everytown respectfully requests that its Application for an Order to Show Cause for a Preliminary Injunction, Expedited Discovery, and Alternative Service, be granted in its entirety, and further requests that this Court order further relief deemed just or proper.

Dated: October 22, 2021

VENABLE LLP

/s/Marcella Ballard

Marcella Ballard
Maria Sinatra
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Tel.: 212-307-5500
Fax: 212-307-5598
mballard@venable.com
mrsinatra@venable.com

Meaghan H. Kent*
600 Massachusetts Avenue NW
Washington, DC 20001
MHKent@Venable.com
*Pro Hac Vice Pending

*Counsel for Plaintiff Everytown for Gun Safety Action Fund, Inc.*

25