# 21-2806

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

IN RE DEFCAD, INC., ODYSEE USER XYEEZYSZN, DEFCAD USER XYEEZYSZN, THE GATALOG, DEFCAD USER FREEMAN 1337, TWITTER USER XYEEZYSZN, PHILLIP ROYSTER,

DEFENDANTS-PETITIONERS,

On Appeal from the United States District Court
for the Southern District of New York
Case No. 1:21-cv-8704-PGG

## BRIEF OF *AMICUS CURIAE* ELECTRONIC FRONTIER FOUNDATION
## IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS

Corynne McSherry
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
corynne@eff.org
(415) 436-9333

*Counsel for Amicus Curiae*
*Electronic Frontier Foundation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Amicus Curiae Electronic Frontier Foundation states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

Dated: November 17, 2021        By:    /s/ Corynne McSherry

                                  Corynne McSherry

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES.................................................iv

INTEREST OF AMICUS CURIAE...................................................1

INTRODUCTION ................................................................2

ARGUMENT ................................................................3

I.    THE FIRST AMENDMENT REQUIRED THE DISTRICT COURT TO APPLY A MORE RIGOROUS TEST BEFORE AUTHORIZING THE DISCLOSURE OF ANONYMOUS SPEAKERS' IDENTITIES.................................................3

    A.    The First Amendment Provides Strong Protection for Anonymous Speakers. ..................................................3

    B.    The First Amendment Permits Third Parties to Assert The Anonymous Speech Rights of Internet Users............................3

    C.    This Court Must Apply the Traditional First Amendment Test to Plaintiff's Discovery Requests. ......................................4

    D.    Before Courts Unmask Anonymous Speakers, Plaintiffs Must Meet a Substantial Evidentiary and Procedural Burden....6

II.    THE DISTRICT COURT FAILED TO APPLY THE FIRST AMENDMENT'S ANONYMOUS SPEECH STANDARD PRIOR TO ISSUING THE DISCOVERY ORDER ........................................8

    A.    Defendants Appear to Have Used the Marks in Question for Expressive Purposes. ..................................................8

    B.    There Is No Trademark Exception to First Amendment Protections for Anonymous Speakers.........................................9

    C.    The *Sony Music* Standard Concerned Copyright Claims Involving a Specific and Distinct Speech Interest....................13

CONCLUSION ................................................................................15

CERTIFICATE OF COMPLIANCE ...................................................17

CERTIFICATE OF SERVICE............................................................18

# TABLE OF AUTHORITIES

*Cases*

*1O Group, Inc. v. Does 1-19*,
    2010 WL 11583153 (N.D. Cal. Sept. 23, 2010)................................................14

*Arista Records, LLC v. Doe*,
    604 F.3d 110 (2d Cir. 2010) ..................................................................9

*Art of Living v. Does 1-10*,
    2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ...........................................5, 6, 7, 8

*Art of Living v. Does*,
    2011 WL 3501830 (N.D. Cal. Aug. 10, 2011) ..........................................3

*Brown v. Elec. Arts, Inc.*,
    724 F.3d 1235 (9th Cir. 2013) ................................................................12

*Brown v. Socialist Workers '74 Campaign Committee (Ohio)*,
    459 U.S. 87 (1982) .................................................................................5

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*,
    425 F.3d 211 (3d Cir. 2005) ...................................................................13

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*,
    886 F.2d 490 (2d Cir. 1989) ...................................................................12

*CPC Int'l v. Skippy, Inc.*,
    F.3d 456 (4th Cir. 2000)..........................................................................11

*Dendrite Int'l v. Doe No. 3*,
    775 A.2d 756 (N.J. App. Div. 2001) ...................................................5, 6, 7

*Doe v. 2TheMart.com Inc.*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................................3

*Doe v. Harris*,
    772 F.3d 563 (9th Cir. 2014) .................................................................5

*Faconnable USA Corp. v. John Does 1-10*,
    2011 WL 2015515 (D. Colo. May 24, 2011)
    *vacated as moot*, 799 F. Supp. 2d 1202 (D. Colo. 2011) ...................................10

*Highfields Capital Mgm't, L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005)......................................................6, 7, 8, 9

*In re Anonymous Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ...............................................................................7

*In re Indiana Newspapers*,
    963 N.E.2d 534 (Ind. App. 2012)..........................................................................4

*Independent Newspapers, Inc. v. Brodie*,
    966 A.2d 432 (Md. Ct. App. 2009) .......................................................................7

*Koch Indus. v. Does*
    2011 WL 1775765 (D. Utah May 9, 2011) .........................................................10

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
    811 F.2d 268 (1st Cir. 1987) ...............................................................................12

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 174.51.234.104*,
    2013 WL 3753436 (D. Colo. July 14, 2013).......................................................14

*McIntyre v Ohio Elections Com'n*,
    514 U.S. 334 (1995) ..............................................................................................5

*McVicker v. King*,
    266 F.R.D 92 (W.D. Pa. 2010) .............................................................................4

*Mobilisa, Inc. v. Doe*,
    170 P.3d 712, 716 n.2 (Ariz. App. 2007) ...........................................................4, 7

*Mortgage Specialists, Inc. v. Implode-Explode Heavy Industries, Inc.*,
    999 A.2d 184 (N.H. 2010)......................................................................................4

*New Kids on the Block v. News America Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ..............................................................................13

*Nike, Inc. v. Just Did It Enter.*,
    6 F.3d 1225 (7th Cir. 1993) .................................................................................11

*Pilchesky v. Gatelli*,
 12 A.3d 430 (Pa. Super. 2011) .................................................................4

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989) .................................................................11

*Ron Paul 2012 Presidential Campaign Committee v. John Does 1-10*,
 Case No. 3:12-cv-00240-MEJ (Mar. 8, 2012).....................................10

*Salehoo Grp v. ABC*,
 722 F.Supp.2d 1210 (W.D. Wa. 2010)..................................................10

*Sony Music Entertainment, Inc. v. Does 1-40*,
 326 F. Supp. 2d 556 (S.D.N.Y. 2004) ....................................... *passim*

*UMG Recordings, Inc. v. Does 1-4*,
 2006 WL 1343597 (N.D. Cal. Mar. 6, 2006) .......................................14

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
 F.3d 1170 (9th Cir. 2020)
 *cert. denied*, 141 S. Ct. 1054 (2021)....................................................11

**Constitutional Provisions**

U.S. Constitution, amendment IV .......................................................1, 3

**Other Authorities**

Harriette K. Dorsen, *Satiric Appropriation and the Law of Libel, Trademark and Copyright: Remedies Without Wrongs,* 65 B.U.L.Rev. 923 (1986)...................12

Mark Lemley, *The Modern Lanham Act and the Death of Common Sense*, 108 YALE L.J. 1687  (1999)........................................................................11

## INTEREST OF AMICUS CURIAE[1]

Electronic Frontier Foundation ("EFF") is a member-supported, non-profit civil liberties organization that works to protect free speech and privacy in the digital world. Founded in 1990, EFF has more than 35,000 dues-paying members. EFF represents the interests of technology users in both court cases and broader policy debates surrounding the application of law to technology.

As part of that mission, EFF has worked for decades to ensure that courts carefully weigh the First Amendment's protections for anonymous online speakers. EFF has repeatedly represented anonymous online speakers and appeared as *amicus curiae* in numerous cases where the First Amendment's protections for anonymous speech are at issue. *See, e.g.*, *Signature Mgm't Team, LLC v. Doe*, 876 F.3d 831 (6th Cir. 2017) (serving as *amicus curiae* in support of anonymous speaker).[2]

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus or their counsel has made any monetary contributions intended to fund the preparation or submission of this brief. All Defendants who have retained counsel in this matter consent to the filing of this brief. Plaintiff's counsel did not respond to multiple email messages and phone calls seeking its client's position on the filing of EFF's brief.

[2] A list of anonymous speech cases in which EFF has participated is available at https://www.eff.org/issues/anonymity.

## INTRODUCTION

It is essential that court conscientiously weigh online speakers' First Amendment right to anonymity before issuing orders that would unmask them. The loss of anonymity irreparably harms online speakers and discourages others from speaking at all. Although the right to speak anonymously is not absolute, the constitutional protections it affords to speakers required the district court to pause and meaningfully consider the First Amendment implications of the discovery order sought by Plaintiffs, applying the correct test designed to balance the needs of plaintiffs and defendants in Doe cases such as this one. The court failed to do so, and chose instead to adopt a lower standard that has no place in a trademark case, much less in case where, as here, a defendant appears to be using a trademark for a clearly expressive purpose.

EFF takes no position on the merits of this case or whether, having applied the appropriate legal test required by the First Amendment, the district court should proceed to authorize the disclosure of account information for the users in question. Instead, we simply urge this Court to take seriously the constitutional implications of the district court's order, and direct the district court to evaluate the Plaintiffs request for discovery under the well-established process adopted by numerous other courts.

# ARGUMENT

## I. THE FIRST AMENDMENT REQUIRED THE DISTRICT COURT TO APPLY A MORE RIGOROUS TEST BEFORE AUTHORIZING THE DISCLOSURE OF ANONYMOUS SPEAKERS' IDENTITIES.

### A. The First Amendment Provides Strong Protection for Anonymous Speakers.

The right to speak anonymously is deeply embedded in the political and expressive history of this country. Our founders knew that protecting anonymous speech was essential to enabling critical commentary and to fostering public debate.

Today, anonymous and pseudonymous speech has become an essential feature of our online discourse. "Internet anonymity facilitates the rich, diverse, and far-ranging exchange of ideas. The ability to speak one's mind on the Internet without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001). "Indeed, courts have recognized that the Internet, which is a particularly effective forum for the dissemination of anonymous speech, is a valuable forum for robust exchange and debate." *Art of Living v. Does*, 2011 WL 3501830 *2 (N.D. Cal. Aug. 10, 2011) (*Art of Living I*).

### B. The First Amendment Permits Third Parties to Assert The Anonymous Speech Rights of Internet Users.

Appellate courts typically allow Internet platforms to raise the First

Amendment rights of their users to speak anonymously when those rights are threatened by motions for early discovery. *See, e.g.*, *In re Indiana Newspapers*, 963 N.E.2d 534, 549 (Ind. App. 2012); *Pilchesky v. Gatelli*, 12 A.3d 430, 437 n.9 (Pa. Super. 2011); *Mortgage Specialists, Inc. v. Implode-Explode Heavy Industries, Inc.*, 999 A.2d 184, 191-193 (N.H. 2010) (considering host's First Amendment arguments without addressing standing); *Mobilisa, Inc. v. Doe*, 170 P.3d 712, 716 n.2 (Ariz. App. 2007) (trial court allowed host to raise speaker's First Amendment right to speak anonymously; appellate court did not need to reach that question). Courts have thus recognized that "entities such as newspapers, internet service providers, and website hosts may, under the principle of *jus tertii* standing, assert the rights of their readers and subscribers." *McVicker v. King*, 266 F.R.D 92, 95 (W.D. Pa. 2010).

Allowing internet intermediaries, including the defendant services here, to assert standing on behalf of their users is particularly appropriate when the district court has proceeded to unmask anonymous speakers without requiring notice to the to them so that they can assert their own First Amendment rights.

### C. This Court Must Apply the Traditional First Amendment Test to Plaintiff's Discovery Requests.

Unmasking anonymous online speakers without carefully considering their First Amendment rights can cause irreparable harm. *Art of Living v. Does 1-10*,

2011 WL 5444622 *9 (N.D. Cal. Nov. 9, 2011) (*Art of Living II*) (citing *McIntyre v Ohio Elections Com'n*, 514 U.S. 334, 342 (1995)). Litigants who do not like the content of Internet speech by anonymous speakers often misuse "discovery procedures to ascertain the identities of unknown defendants in order to harass, intimidate or silence critics in the public forum opportunities presented by the Internet." *Dendrite Int'l v. Doe No. 3*, 775 A.2d 756, 771 (N.J. App. Div. 2001). Unmasking a speaker can lead to serious personal consequences—for the speaker or even the speaker's family—including public shaming, retaliation, harassment, physical violence, and loss of a job. The risk is especially acute for speakers who would be subject to political or other persecution were their identities known. In the analogous context of identifying individuals' anonymous political activities, the Supreme Court has recognized how unmasked individuals can be "vulnerable to threats, harassment, and reprisals." *Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87, 97 (1982).

Further, unmasking may diminish the power of speaker's communication when their true identities are unpopular, as others may be more dismissive of the speakers' statements, and speakers may be chilled from continuing to speak publicly on that same topic. *See Doe v. Harris*, 772 F.3d 563, 581 (9th Cir. 2014) (anonymity "provides a way for a writer who may be personally unpopular to ensure that readers will not prejudge her message simply because they do not like

its proponent.") (internal quotations omitted); *Art of Living II*, 2011 WL 5444622

at *9 (recognizing that unveiling speakers' true identities "diminishes the free

exchange of ideas guaranteed by the Constitution.").

### D. Before Courts Unmask Anonymous Speakers, Plaintiffs Must Meet a Substantial Evidentiary and Procedural Burden

Given the importance of anonymous speech to our public discourse, and the

potential impact of unmasking, no court should effectively pierce anonymity

without weighing the First Amendment interests at stake. Accordingly, appellate

courts in twelve states, as well as many federal courts, have developed a rigorous

test for determining when plaintiffs are entitled to unmask anonymous online

speakers.

*Step one* requires providing notice to the anonymous speakers, and

withholding judgment on the unmasking request for a reasonable time sufficient to

enable the anonymous defendants to retain counsel and present argument why their

right to speak anonymously should be respected on the facts of the specific case.

*Dendrite*, 775 A.2d at 141.

*Step two* requires plaintiffs to meet some significant evidentiary burden to

show the legitimacy of their case. *Highfields Capital Mgm't, L.P. v. Doe*, 385 F.

Supp. 2d 969, 975-76 (N.D. Cal. 2005). Although courts have employed a variety

of evidentiary standards at this step, amicus believes the summary judgment

standard provides the proper protection for anonymous speakers. *Id*. at 975.

If plaintiffs provide notice and meet their evidentiary burden, *step three* requires courts to balance the competing interests at stake. *See, e.g., Dendrite*, 775 A.2d at 760; *Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432 (Md. Ct. App. 2009); *Highfields,* 385 F. Supp. 2d at 976; *Mobilisa*, 170 P.3d at 720.

The plaintiffs' two interests are the strength of their case (usually as demonstrated by their evidentiary showing) and the necessity of disclosing speakers' identities, including whether there are less invasive discovery tools available that would satisfy plaintiffs' needs. See *Art of Living II*, 2011 WL 5444622 at *10 (describing discovery alternatives short of an in-person deposition that would unmask Doe, such as depositions by telephone or via written questions).

On the other side of the scale, courts must consider the nature of the anonymous speech at issue in the case and the harm (or harms) that would result from loss of anonymity. Regarding the nature of the speech at issue, "the specific circumstances surrounding the speech serve to give context to the balancing exercise." *In re Anonymous Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011). Courts have found speakers have high First Amendment interests in anonymous political, religious, or literary speech. *See, e.g., Art of Living II*, 2011 WL 5444622 at *5-6 (finding critical commentary touched on matters of public concern). *Cf. Sony Music Entertainment, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004)

(finding the speech interest in downloading music to be more limited). Courts must also consider whether the disclosure will chill the speech of others. *See Art of Living II*, 2011 WL 5444622 at *7 ("[W]here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity").

Analyzing these factors ensures that courts properly assess the "magnitude of the harms that would be caused to competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Highfields*, 385 F. Supp. 2d at 976.

## II. THE DISTRICT COURT FAILED TO APPLY THE FIRST AMENDMENT'S ANONYMOUS SPEECH STANDARD PRIOR TO ISSUING THE DISCOVERY ORDER

Although the First Amendment's protections for anonymous speakers is not absolute, the district court erred by failing to subject Plaintiff's discovery request to the robust standard outlined above. EFF takes no position on the merits of the case or the outcome if the correct anonymity test is applied. We note, however, that adopting the correct test is especially appropriate here, given that the defendants appear to be using the marks, at least in part, to send a message.

### A. Defendants Appear to Have Used the Marks in Question for Expressive Purposes.

Based on the Complaint itself, as well as the supporting declarations filed in support of a preliminary injunction it appears that the Doe Defendants are using the

mark in question for expressive purposes; specifically, to communicate their anger and contempt for the Plaintiff. Complaint ¶¶ 137, 152, 166; *see* Dkt. No. 5 at 65-66 (defendants "are engaged in expressive political speech, in this case, comment, criticism, and mockery of Everytown"). Regardless of whether one agrees with those views, or any final ruling on the merits, the expression of such views should trigger the requisite First Amendment scrutiny to ensure that Plaintiff is not misusing trademark claims to unmask those who oppose its mission.

### B.    There Is No Trademark Exception to First Amendment Protections for Anonymous Speakers.

The district court gave only the barest nod to the important constitutional interests at stake, and applied a standard that is lower the required First Amendment test described above, Section I.D., based on the assertion that "anonymity is not protected to the extent that it is used to mask the infringement of intellectual property rights, including trademark rights." Order at 4, Dkt. No. 5, Exhibit H.

That cursory approach was mistaken, and the error stems in part from the court's reliance on a particular species of copyright case, rather than trademark cases. *Id*. at 3-4 (citing *Sony Music*, 326 F. Supp. 2d 556; *Arista Records, LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010). In the trademark context, numerous courts have correctly applied a more rigorous test. *See, e.g. Highfields,* 385 F.Supp.2d at 976

(applying two-step test); *Faconnable USA Corp. v. John Does 1-10*, 2011 WL 2015515, at *2 (D. Colo. May 24, 2011), *vacated as moot*, 799 F. Supp. 2d 1202 (D. Colo. 2011); *Koch Indus. v. Does* 2011 WL 1775765, at *10 (D. Utah May 9, 2011) (adopting *Dendrite* test); *Salehoo Grp v. ABC*, 722 F.Supp.2d 1210, 1216-17 (W.D. Wa. 2010) (same). *See also Ron Paul 2012 Presidential Campaign Committee v. John Does 1-10*, Case No. 3:12-cv-00240-MEJ (Mar. 8, 2012).

For example, in *Koch Industries*, an activist group created a parody web site that included fake press release in which Koch Industries took responsibility for financing bogus research denying that fossil fuels contribute to climate change. 2011 WL 1775765 at *1-2. Although the press release was widely reported in the media as a hoax, Koch sued for trademark infringement, cybersquatting and other theories. *Id*. The trial court initially granted a motion for early discovery to identify the perpetrators, but it later granted the anonymous defendants' motion to quash on First Amendment grounds, after adopting and applying a version of the test described in Section I.D. *Id*. at 10.

That careful approach is essential in trademark cases because, as courts around the country have recognized, trademark uses may implicate First Amendment interests in myriad ways. Thus, trademark rights must be carefully balanced against constitutional rights, to ensure that trademark rights are not used to impose monopolies on language and intrude on First Amendment values. *See*,

*e.g.*, *Nike, Inc. v. Just Did It Enter.*, 6 F.3d 1225, 1226 (7th Cir. 1993) ("When businesses seek the national spotlight, part of the territory includes accepting a certain amount of ridicule. The First Amendment, which protects individuals from laws infringing free expression, allows such ridicule in the form of parody."); *CPC Int'l v. Skippy, Inc.*, 214 F.3d 456, 462 (4th Cir. 2000) ("[i]t is important that trademarks not be 'transformed from rights against unfair competition to rights to control language.'" (quoting Mark Lemley, *The Modern Lanham Act and the Death of Common Sense*, 108 YALE L.J. 1687, 1710-11 (1999)). This is true even in cases involving straightforward commercial trademark use between competitors; rather than barring *any* use of a competitor's mark, trademark law accommodates the First Amendment by prohibiting only those uses that are likely to confuse consumers. *See VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (likelihood-of-confusion test "seeks to strike the appropriate balance between the First Amendment and trademark rights"), *cert. denied*, 141 S. Ct. 1054 (2021).

This Circuit has itself repeatedly noted that the public interest in consumer protection through trademark enforcement must be balanced against the public interest in free expression and that the analysis must be sensitive to the nature of the challenged expression. *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989) ([Lanham] Act should be construed to apply to artistic works "only where the

11

public interest in avoiding consumer confusion outweighs the public interest in free expression"); *see also, e.g. Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.,* 886 F.2d 490, 495 (2d Cir. 1989).  Under *Rogers*, courts evaluating claims of trademark infringement involving expressive works recalibrate this balance for the weightier First Amendment interests involved by applying a different test than the standard likelihood-of-confusion analysis. *Id*. at 1001-02.

Other Circuits have adopted a similar approach. *See e.g. Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013) ("Section 43(a) protects the public's interest in being free from consumer confusion about affiliations and endorsements, but this protection is limited by the First Amendment, particularly if the product involved is an expressive work."). Indeed, as the First Circuit noted in *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 28 (1st Cir. 1987) "trademarks have become a natural target of satirists who seek to comment on this integral part of the national culture." *Id*. (citing Harriette K. Dorsen, *Satiric Appropriation and the Law of Libel, Trademark and Copyright: Remedies Without Wrongs,* 65 B.U.L.Rev. 923, 939 (1986)).

For similar reasons, courts around the country have adopted nominative fair use tests, rather than the traditional likelihood of confusion analysis, where a defendant appears to be using a mark to refer to or comment on the mark owner itself. *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302 (9th Cir.

1992); *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211 (3d Cir. 2005).

The concerns that animate these doctrines also apply here, and explain why courts have normally applied a robust standard to request to unmask Does in trademark cases. The district court should have done the same.

### C. The *Sony Music* Standard Concerned Copyright Claims Involving a Specific and Distinct Speech Interest.

The *Sony Music* standard the district court relied on instead was developed in response to a very different sort of anonymous speech, and a different sort of intellectual property claim, than the speech against which Everytown seeks relief.

In *Sony Music*, a group of record companies sued 40 anonymous Internet users whose Internet Protocol addresses were associated with peer-to-peer music file sharing networks where musical recordings owned by the plaintiff companies had been made available for download. In analyzing the record label's discovery requests, the district court declined to apply a robust standard and instead identified five factors that should be weighed to decide whether their need for disclosure outweighed the First Amendment interests: "(1) a concrete showing of a prima facie claim of actionable harm (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's

expectation of privacy." 326 F Supp.2d at 564-65 (citations omitted).[3]

EFF respectfully disagrees that *Sony Music* is the right standard in any context involving anonymous speech, including claims of copyright infringement. Nonetheless in the seventeen years since *Sony Music*, EFF does not believe its rule has been applied outside of a narrow and specific context: when to allow copyright owners to identify anonymous Internet users accused of copyright infringement via peer to peer networks or BitTorrent swarms.[4]  To EFF's knowledge, not a single court outside the Second Circuit has relied on *Sony Music* to decide whether to identify defendants alleged to have engaged in actionable speech for any reason other than copyright infringement. Indeed, hardly any courts have applied the standard in copyright cases not involving mass downloading.

To the contrary, in every other jurisdiction where state appellate courts and federal trial courts have adopted First Amendment standards for deciding whether to approve unmasking orders in non-copyright cases, the courts have employed the test described above, Section I.D., because it is better suited to deciding whether to protect anonymous Internet users who engage in expressive speech. By requiring

---

[3] EFF notes that the district court failed to fully evaluate the discovery request even under the *Sony Music* standard. Order at 4, Dkt. No. 5 Exhibit H.

[4]  *UMG Recordings, Inc. v. Does 1-4*, 2006 WL 1343597, at *2–3 (N.D. Cal. Mar. 6, 2006); *1O Group, Inc. v. Does 1-19*, 2010 WL 11583153, at *2 (N.D. Cal. Sept. 23, 2010); *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 174.51.234.104*, 2013 WL 3753436, at *4 (D. Colo. July 14, 2013).

plaintiffs to meet three separate prongs–including a prima facie showing that the anonymous speech was actionable—the First Amendment standard described above focuses the court's attention on the likelihood that plaintiff has a valid claim. And the third prong focuses the court's attention on whether there are ways to provide plaintiff with the information it seeks short of publicly unmasking the anonymous speaker and thus irrevocably harming their First Amendment rights.

The *Sony Music* standard, by contrast, makes the existence of a prima facie case only one factor, to be weighed against four other factors, so that, in theory, even a plaintiff that has failed to state a prima facie case could be held entitled to identify an anonymous speaker because the lack of merit to the claim could be outweighed by the other four factors. And because each of the final four factors in the *Sony Music* standard will typically favor disclosure, they provide a one-way ratchet in favor of disclosure;  they do not aid courts in differentiating cases in which disclosure should be ordered from those in which it should be denied.

## CONCLUSION

For the above reasons, we urge the Court to grant the petition, vacate the unmasking order, and remand for further consideration. In the alternative, we urge the Court to issue a scheduling order to allow full briefing of the important issues at stake in this discovery order.

Dated:  November 17, 2021

Respectfully submitted,

By:   _/s/  Corynne McSherry_
    Corynne McSherry
Electronic Frontier Foundation
815 Eddy Street
San Francisco, California 94109
corynne@eff.org
(415) 436-9333

_Attorneys for Amicus Curiae_
_Electronic Frontier Foundation_

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1.     This Brief of Amicus Curiae Electronic Frontier Foundation in Support of Petition for Writ of Mandamus complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Second Circuit L. R. 29.1(c) and Fed. R. App. P. 21(d)(1) because this brief contains 3,479 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, the word processing system used to prepare the brief, in 14-point font in Times New Roman font.

Dated:  November 17, 2021

By:   */s/  Corynne McSherry*
Corynne McSherry

*Counsel for Amicus Curiae*
*Electronic Frontier Foundation*

**CERTIFICATE OF SERVICE**

I certify that on this 17th day of November 2021, I electronically filed the foregoing Brief of Amicus Curiae using the Court's CM/ECF system which will send notification of such filing to all parties of record.

Dated:  November 17, 2021

By:  ___/s/  *Corynne McSherry*_____
     Corynne McSherry

*Counsel for Amicus Curiae*
*Electronic Frontier Foundation*