# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| EVERYTOWN FOR GUN SAFETY ACTION FUND, INC., | ) ) ) ) | Civil Action No. 1:21-cv-08704-PGG |
| *Plaintiff* | ) ) |  |
| v. | ) ) |  |
| DEFCAD, INC.; ODYSEE USER XYEEZYSZN; DEFCAD USER XYEEZYSZN; ODYSEE USER THEGATALOG-PRINTABLEMAGAZINES; THE GATALOG; DEFCAD USER FREEMAN1337; TWITTER USER XYEEZYSZN; PHILLIP ROYSTER. | ) ) ) ) ) ) ) ) ) ) |  |
| *Defendants* | ) |  |

**MEMORANDUM OF LAW DEFCAD, INC., ODYSEE USER XYEEZYSZN, DEFCAD USER XYEEZYSZN, THE GATALOG, DEFCAD USER FREEMAN1337, TWITTER USER XYEEZYSZN, AND PHILLIP ROYSTER IN OPPOSITION TO PRELIMINARY INJUNCTION**

Daniel L. Schmutter, Esq.
Hartman & Winnicki P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
201-967-8040 (phone)
201-967-0590 (facsimile)
dschmutter@hartmanwinnicki.com

DATED: December 3, 2021

i

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 3

I.  The Court lacks the Power to Enter Injunctive Relief Because it
    Lacks Personal Jurisdiction Over the Defendants.  ................... 3

    A.  Factual background ......................................................... 4

        1.  Defendant Defcad, Inc. ........................................... 4

        2.  Anonymous and individual defendants ................... 8

        3.  Nature of the dispute ............................................. 9

    B.  Legal standard ............................................................... 11

    C.  Defendants are not subject to general jurisdiction in New
        York ............................................................................... 13

    D.  Defendants are not subject to specific jurisdiction in New
        York ............................................................................... 15

        1.  New York's long arm statute does not
            authorize jurisdiction ............................................ 15

            a)  No jurisdiction under §302(a)(1) ................... 15

            b)  No jurisdiction under §302(a)(2) ................... 20

            c)  No jurisdiction under §302(a)(3) ................... 22

        2.  Exercising personal jurisdiction over Defendants
            would violate their right to Due Process ............... 27

II. The Court lacks the Power to Enter Injunctive Relief Because
    Venue is Improper in this District ........................................... 31

    A.  Legal standard ............................................................... 31

    B.  Venue is not proper in this district ................................ 33

III. Preliminary Injunctive Relief Should be Denied Because Plaintiff
     Cannot Demonstrate the Substantial Proof Required for Such an
     Extraordinary Remedy ........................................................... 34

    A.  Everytown is not likely to succeed on the merits .......... 35

        1.  This Court lacks personal jurisdiction and venue is
            improper, and therefore Everytown is unlikely to
            succeed on the merits ............................................ 35

2.    Everytown is unlikely to succeed on its Lanham Act claims.................................................................35

       a)    The use of Everytown's is expressive, political speech protected by the First Amendment ..................................35

       b)    Confusion is unlikely.....................................................44

       c)    Defendant's use is noncommercial .................................53

3.    Everytown's state infringement claims fail ............................56

4.    Everytown's state dilution claim fails....................................57

B.    Plaintiff cannot demonstrate irreparable injury ............................59

C.    Public interest favors denying the injunction..................................62

D.    The injunction sought is overbroad..................................................63

1.    The proposed injunction seeks to broadly prohibit violation of the Lanham Act rather than specific acts of infringement .....................................................................63

2.    The proposed injunction prohibits lawful activity ................65

3.    The proposed injunction would impose an obligation on Defcad to seek out infringing activity on its platform ...............................................................................68

4.    An injunction based on New York law should be limited to New York...............................................................69

5.    If the Court enters injunctive relief it should be much narrower...............................................................................69

CONCLUSION AND REQUEST FOR BOND.......................................................69

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. WhenU.Com, Inc.,* 414 F.3d 400 (2d Cir. 2005) .............. 66

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,*
751 F.3d 796 (7th Cir. 2014) ........................................................................... 32

*Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 CIV. 4204 LTS SN,
2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013)................................................... 59

*AM Gen. LLC v. Activision Blizzard, Inc.,* 450 F. Supp. 3d 467
(S.D.N.Y. 2020) ............................................................................................... 43

*Armstrong Pump, Inc. v. Hartman,* 2010 WL 3547754 (W.D.N.Y. 2010) ........... 31

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp.
2d 557 (E.D.N.Y. 2011).................................................................................... 20

*AVRA Surgical Robotics, Inc. v. Gombert,*
41 F. Supp. 3d 350 (S.D.N.Y. 2014) ................................................................ 12

*be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011).................................................. 32

*Bensusan Restaurant Corp. v. King,* 126 F.3d 25 (2d Cir.1997).................... 20, 21

*Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672 (9th Cir. 2005) .......................... 54

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp.
2d 615 (S.D.N.Y. 2013) .............................................................................. 18, 25

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)................................... 12, 28

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334
F.3d 390 (4th Cir. 2003) ................................................................................... 32

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc*.,
886 F.2d 490 (2d Cir. 1989) .................................................................. 43, 45, 62

*College Essay Optimizer, LLC v. Edswell, Inc*., No. 14–cv–8586 (LAK),
2015 WL 5729681 (S.D.N.Y Sept. 30, 20215) ................................................ 18

*Cornette v. Graver,* 473 F. Supp. 3d 437 (W.D. Pa. 2020) ................................... 62

*CutCo Indus., Inc. v. Naughton,* 806 F.2d 361 (2d Cir. 1986) .............................. 15

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........................................................ 14

*Deere & Co. v. MTD Prod., Inc*., 41 F.3d 39 (2d Cir. 1994) ........................ 39, 69

*Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680
    (W.D. Tex. 2015) ............................................................................... 37

*D'Anton Jos, S.L. v. Doll Factory, Inc*., 937 F. Supp. 320 (S.D.N.Y. 1996) ......... 31

*DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81 (2d Cir. 2001) ............... 12

*Empresa Cubana del Tabaco v. Culbro Corp.,* 399 F.3d 462 (2d Cir. 2005) ....... 57

*Energy Brands Inc. v. Spiritual Brands, Inc*.,
    571 F. Supp. 2d 458 (S.D.N.Y. 2008) ............................................... 23

*Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193 (2d Cir.2000) ........................... 16

*French Transit v. Modern Coupon Sys.,* 858 F. Supp. 22 (S.D.N.Y. 1994) .......... 20

*Gidatex, S.r.L. v. Campaniello Imports, Ltd*.,
    13 F. Supp. 2d 417 (S.D.N.Y. 1998) ................................................. 60

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ..... 11, 13

*Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158
    (2d Cir. 2005) ................................................................................... 15

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60
    (2d Cir. 2007) ................................................................................... 34

*Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL)(AJP), 1997 WL
    97097 (S.D.N.Y. Feb. 26, 1997) ................................................. 18, 24

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984) ........... 28

*Hendricks v. Bank of America, N.A.,* 408 F.3d 1127 (9th Cir. 2005) .................... 31

*Hormel Foods Corp. v. Jim Henson Products, Inc.,*
    73 F.3d 497 (2d Cir. 1996) ..................................................... 47, 48, 58, 59

*In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264 (2d Cir. 2001) ............. 3

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC,*
    823 F.3d 153 (2d Cir. 2016) ............................................................. 40

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................................. 11

*ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81
(E.D.N.Y. 2006).............................................................................16, 18, 19, 21

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ..................................... 28

*Jordache Enters., Inc. v. Hogg Wyld, Ltd.,* 828 F.2d 1482 (10th Cir.1987) ......... 52

*Kaia Foods, Inc. v. Bellafiore,* 70 F. Supp. 3d 1178 (N.D. Cal. 2014) ................. 33

*Katz v. Modiri,* 283 F. Supp. 2d 883 (S.D.N.Y. 2003) ......................................... 56

*Kelly-Brown v. Winfrey,* 717 F.3d 295 (2d Cir. 2013) ......................................... 54

*Lamparello v. Falwell,* 420 F.3d 309 (4th Cir. 2005)...................................... 39, 48

*Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278 (S.D.N.Y. 2012) ....... 50

*L.L. Bean, Inc. v. Drake Publishers, Inc.,* 811 F.2d 26 (1st Cir.1987)............ 57, 58

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
464 F. Supp. 2d 495, (E.D. Va. 2006) ........................................................ 47, 50

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
507 F.3d 252 (4th Cir. 2007) ...................................................................... 45, 46

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
156 F. Supp. 3d 425 (S.D.N.Y. 2016) ............................... 45, 46, 47, 49, 50, 59

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012) .................................................. 36, 39, 57

*Magnetic Products, Inc. v. Trestain,* 2006 WL 1109250 (E.D. Mich. 2006).. 31, 32

*Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.,*
988 F. Supp. 404 (S.D.N.Y. 1997) ...................................................................... 60

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*,
264 F.3d 32 (2d Cir. 2001) ................................................................................. 13

*Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792 (9th Cir. 2003) ............. 48

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)....................................................... 34

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston
Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010)................................................. 30

*Mones v. Commercial Bank of Kuwait, S.A.K.*, 204 Fed. Appx. 988
(2d Cir. 2006)..................................................................................... 3

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018) ................................................... 34

*Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910 (S.D.N.Y. 1992) ............................... 51

*OBH, Inc. v. Spotlight Mag., Inc.*, 86 F. Supp. 2d 176
(W.D.N.Y. 2000) ................................................................ 53

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
946 N.E.2d 159, 16 N.Y.3d 295 (2011)................................. 25, 26, 27

*People for the Ethical Treatment of Animals v. Doughney*,
263 F.3d 359 (4th Cir. 2001) .............................................. 54

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961) ........ 46

*Protectmarriage.com v. Courage Campaign*,
680 F. Supp. 2d 1225 (E.D. Cal. 2010) ............................... 36

*Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316 (4th Cir. 2015) .................... 36

*Rates Technology Inc. v. Cequel Communications, LLC*, 15 F. Supp. 3d 409
(S.D.N.Y. 2014)................................................................. 13

*Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522 (N.D.N.Y. 2006) ................... 22

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).................... 36, 37, 39, 43, 48, 56

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ......................................... 3

*Shabrawy v. Ocean Ships, Inc.*, 226 A.D.2d 277, 641 N.Y.S.2d 36 (1996).......... 13

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221
(2d Cir. 2014).................................................................. 13

*Springs Mills, Inc. v. Ultracashmere House, Ltd.*,
724 F.2d 352 (2d Cir. 1983) .............................................. 69

*Starmedia Network, Inc. v. Star Media, Inc.*, 64 U.S.P.Q.2d 1791,
2001 WL 417118 (S.D.N.Y. Apr. 23, 2001) ............................. 24, 25

*Starter Corp. v. Converse, Inc.*, 170 F.3d 286 (2d Cir.1999)........................ 63, 64

*Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733 (2d. Cir. 1994) ....................... 63, 64

*Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131 (E.D.N.Y. 2000) ............... 24

*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y.2008)............. 59, 68

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
    221 F. Supp. 2d 410 (S.D.N.Y. 2002) ...................................... 43, 46, 47, 49, 52

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
    961 F. Supp 99 (S.D.N.Y. 1997) .................................................................. 27

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir.1995)......... 61

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ......... 67

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d. Cir. 2003) ...................... 32

*Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215
    (2nd Cir. 2013)................................................................................................ 26

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
    277 F.3d 253 (2d Cir. 2002) ........................................................................... 62

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) ......................................................................... 43

*Two Hands IP LLC v. Two Hands Am., Inc.*, No. 21-CV-3855 (JGK),
    2021 WL 4437975 (S.D.N.Y. Sept. 28, 2021) ........................................... 60, 61

*Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956) .................. 20

*Verragio, Ltd. v. S K Diamonds,* No. 16-CV-6931 (KBF), 2017
    WL 1750451 (S.D.N.Y. May 4, 2017) ............................................................ 27

*VIP Prod. LLC v. Jack Daniel's Properties, Inc.,*
    953 F.3d 1170 (9th Cir. 2020) ......................................................................... 37

*Walden v. Fiore*, 571 U.S. 277 (2014)..................................................... 12, 27, 29

*Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775 (2d Cir. 1994)....................... 65

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.,* 423 F.3d 137 (2d Cir. 2005) ........ 60

*WIZKIDS/NECA, LLC v. TIII Ventures, LLC,* No. 17-CV-2400 (RA),
    2019 WL 1454666 (S.D.N.Y. Mar. 31, 2019)................................................. 57

*Woodstock Ventures LC v. Woodstock Roots, LLC,* 387 F. Supp. 3d 306,
    (S.D.N.Y. 2019) ............................................................................................... 49

*Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F. Supp. 267
  (S.D.N.Y. 1992) ................................................................. 35, 36, 43, 44, 56, 64

*Y.Y.G.M. SA v. Redbubble, Inc.*, No. 219CV04618RGKJPR, 2020
  WL 3984528 (C.D. Cal. July 10, 2020) ............................................. 56

## Statutes

15 U.S.C. §1116(a) ........................................................................... 59

15 U.S.C. §1125(a)(1) ....................................................................... 53

28 U.S.C. §1391(b) ........................................................................... 31

C.P.L.R. §301 .................................................................................... 13

C.P.L.R. §302(a)(1) ........................................................................... 15

C.P.L.R. §302(a)(2) ........................................................................... 20

C.P.L.R. §302(a)(3) ........................................................................... 22

## Rules

Fed. R. Civ. P. 65(d)(1) ..................................................................... 63

## Other Authorities

McCarthy on Trademarks and Unfair Competition §31:153 (4th ed. 2001) .......... 47

## INTRODUCTION

Plaintiff Everytown for Gun Safety Action Fund, Inc. ("Everytown") seeks to make federal criminals out of Americans who own so-called "assault weapons," so-called "high capacity" gun magazines, and any gun parts made with 3D printers. Accordingly, Everytown is infamous and unpopular among gun enthusiasts generally, and the 3D gun printing community in particular.  Members of that community have chosen to send a message of defiance and criticism to Everytown by placing its marks on the very gun parts that Everytown wants banned.  This is unmistakably an expressive act - a simple and clear statement of disagreement with what Everytown stands for.  The use of Everytown's marks in this way is non-confusing, non-dilutive, and is protected as free expression under the First Amendment in any case. For these reasons, Everytown's application for a preliminary injunction in improper on its merits.

But equally importantly, Plaintiff's application must fail because this Court lacks the power to enter injunctive relief, as: (1) it lacks personal jurisdiction over the Defendants and (2) venue is improper in this district.

Plaintiff brings this action here in the United States District Court for the Southern District of New York because Plaintiff is located here.  But none of the Defendants has any connection to this district or to the State of New York.

1

None of the Defendants lives, works, has an office, is incorporated, owns property, or does business in New York.

Notably, no files are accessible in New York from the website of Defendant Defcad, Inc. ("Defcad"), as Defcad has intentionally blocked such access.

Plaintiff cannot show any events related to the cause of action connected to New York – no customer downloads, no confusion, nothing.

The best Plaintiff can do is argue that some of the allegedly infringing files are potentially accessible from a hypothetical computer in New York.

Of course, mere internet access is not enough to satisfy the constitutional requirements of Due Process. If it were, every court on Earth would be able to exercise personal jurisdiction over everything that takes place on the internet merely because of hypothetical access.

For the same reasons, venue is improper in this district. None of the requirements of 28 U.S.C. §1391(b) is satisfied.

On the other hand, two of the Defendants are actually located within the Western District of Texas and are therefore plainly amenable to jurisdiction and venue there.  The other Defendants consent to jurisdiction and venue in the Western District of Texas.  Therefore, the matter can be fully adjudicated as to all of these Defendants in the United States District Court for the Western District of Texas.

Further, there are already several other actions pending in the Western District of Texas and the United States Court of Appeals for the Fifth Circuit involving Defendant Defcad's 3D printable files for firearms related parts. Thus, that district and that circuit already have several years of direct familiarity with the specific subject matter and especially the First Amendment issues implicated by the subject matter.

This court has no power to hear this case. For this reason, the court should deny Plaintiff's application for a preliminary injunction.

## ARGUMENT

## I.     The Court lacks the Power to Enter Injunctive Relief Because it Lacks Personal Jurisdiction Over the Defendants.

The Court cannot enter an injunction against the defendants until it has found personal jurisdiction over them. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583-84 (1999); *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 267-68 (2d Cir. 2001); *Mones v. Commercial Bank of Kuwait, S.A.K.*, 204 Fed. Appx. 988 (2d Cir. 2006).  Here, there is no jurisdiction over the defendants because none of them lives or works in New York, owns property in New York, or has purposely sought contacts with New York, and in fact, Defcad takes pains to avoid contacts with New York.

### A.    Factual Background

### 1.    Defendant Defcad, Inc.

The Complaint names as a Defendant Defcad, Inc. Defcad is a corporation organized under the laws of Arkansas with a principal place of business of 2320 Donley Dr. Suite C, Austin, Texas 78758-4514. Defcad has appointed agents for receipt of process in both Arkansas and Texas.  *See* Declaration of Cody Wilson, Exhibit 1, (printout of search results for Defcad from the Arkansas Secretary of State's website, https://www.sos.arkansas.gov/corps/); Exhibit 2 (printout of search results for Defcad from the Texas Secretary of State's website, https://mycpa.cpa.state.tx.us).

Defcad has no employees or facilities in the State of New York.  Defcad does not engage in advertising targeted to New York.

Defcad has a policy to not provide files to individuals known or suspected to reside in New York, by any method. Defcad has not provided files to any individual known or suspected to reside in New York since at least as early as 2018.

Defcad does not derive substantial revenue from New York, because it actively blocks transactions from individuals known or suspected to reside in New York.

A review of the Complaint and the Declaration of Delia Green In Support Of Plaintiff's Application For Order To Show Cause For Preliminary Injunction,

Expedited Discovery, And Alternative Service, which have been filed in this lawsuit reveals that none of the files cited in the Complaint, or Ms. Green's Declaration, which are allegedly hosted on Defcad, have ever been provided, by any method, to individuals known or suspected by Defcad to be residents of the state of New York.

As is set forth in the supporting Declaration of Defcad employee Garret Walliman, before a user is able to receive any computer files from Defcad, Defcad's systems perform a number of security checks to try to ensure that the individual is located in the U.S., and that the files are being provided in accordance with the laws of the user's state.

Defcad's systems use a method called "IP geolocation" to try to determine the state from which the user is accessing the website. IP geolocation is a third-party service which correlates IP addresses with the last known physical location of the device using this IP address. The IP geolocation service provides this information in a searchable, regularly updated database. An IP geolocation lookup is performed by looking up the IP address of the computer being used in a geolocation database and retrieving the physical location information corresponding to that IP address. A computer's IP address provides information allowing for the routing of data packets over the internet to that computer. A computer's IP address acts like the physical address that one writes on an envelope when sending a letter through the mail.

In the case of Ms. Green, Defcad's systems indicated that the IP address of the computer being used by Ms. Green to access the website was located in Baltimore, Maryland, not New York.

All Defcad users are required to pass a series of tests when attempting to request access to a file on the website. A review of logs associated with Ms. Green's Defcad account indicates that she attempted to take this series of tests at least three times. The logs reveals that Ms. Green explicitly failed a test in two of these attempts. In her third attempt, Ms. Green did not explicitly fail any test, but also did not complete all of the tests in the series. Ms. Green did not successfully pass all of the tests in the series in any of her attempts.

Users accessing the website from computers with IP addresses associated with certain states are subject to additional requirements before they can complete a transaction on the website. These are called heightened requirements "Level 0 security". Maryland is one of these Level 0 states. Ms. Green was flagged as a Level 0 user. The system detected her as coming from a Maryland IP address, and she saw an "add to cart" button during her attempted transactions. (*See* Green Declaration, paragraphs 17, 20 and 29 and Exhibits C, D and G.) The "add to cart" experience is only provided to Level 0 security users.

Defcad only sends files to Level 0 users who hold a Federal Firearms License ("FFL"). To complete the checkout process, Level 0 security users must provide

information regarding their FFL, including the license number, licensee address, and the name of the licensee.  If they do this, they must then pay a fee for processing and handling of the files. This fee is paid in Bitcoin. At that point, the transaction is complete, and the order is forwarded to Defcad employees for fulfillment.

Defcad fulfills the Level 0 orders by loading the requested files on to a USB flash drive, then shipping it to the registered FFL address.  Level 0 users cannot download any files from the website.

Ms. Green set up an account on the website, but she never performed all the steps necessary to complete a transaction.  Ms. Green never received any files.  She was never in a position to receive any files because she never completed all the steps necessary to complete a transaction.  She was never able to download any files from the website, because she was flagged as a Level 0 Security user.

Even had she completed all the steps necessary to complete the transaction, she would never have received any files.  This is because Defcad does not ship files to any user known or believed to be in the state of New York.  If the computer Ms. Green had used to access the website had had a New York IP address, the order would have been automatically declined.  If Ms. Green had successfully completed one of her transactions, which apparently originated in Maryland, Defcad would still have refused the order once it became aware that Ms. Green was a resident of New York.  This would have occurred, at the latest, when the Defcad employee

7

responsible for shipping the order saw a New York FFL holder identified on the order.

Defcad has a policy to categorically refuse to ship files to New York FFL holders, in accordance with a similar policy to categorically refuse to ship files to New Jersey FFL holders.  These policies are in place because New York and New Jersey have objected to Defcad providing files to people in those states.  Defcad has had these policies in place since 2018.

Defcad has not permitted any individuals known or suspected by Defcad to be residents of the state New York to receive any files, by any method, since 2018.

None of the files cited in the Complaint, or Ms. Green's Declaration, which are allegedly hosted on Defcad, have ever been provided, by any method, to individuals known or suspected by Defcad to be residents of the state of New York.

### 2.    Anonymous and individual defendants

The Complaint names as defendants several anonymous on–line user accounts that it describes as follows: Odysee User xYeezySZN; Defcad User xYeezySZN; The Gatalog; Defcad User Freeman1337; Twitter User xYeezySZN, and Odysee User TheGatalog-PrintableMagazines (the "Anonymous Defendants") as well as one named individual, Phillip Royster. Plaintiff alleges that these defendants are among the infringers of their trademarks.

The Declarations ("Anonymous/Individual Decs") of Odysee User xYeezySZN, Defcad User xYeezySZN, The Gatalog, Defcad User Freeman1337, Twitter User xYeezySZN, and Phillip Royster ("Defendants") demonstrate that none of these Defendants lives or works or has ever lived or worked in the State of New York; none of these Defendants conducts business and none has ever conducted business in or with anyone in the State of New York; none of these Defendants owns property in New York; none of these Defendants has ever sent any files as alleged in the Complaint to anyone in the State of New York.

Importantly, Defendant Defcad User Freeman1337 lives within the Western District of Texas and each of the other forgoing Defendants consents to jurisdiction and venue in this lawsuit in the United States District Court for the Western District of Texas, but not in this district.

### 3. Nature of the dispute

The crux of the dispute arises from allegations of activities that plainly constitute First Amendment protected speech. Everytown alleges in the Complaint that "Everytown is the largest gun violence prevention organization in the United States." (Complaint ECF No.1 ¶ 45.) In fact, in describing its mission, Everytown portrays itself as the *number one* gun control advocacy group in the nation, holding rallies all over the country, selling t-shirts and placards, lobbying for and promoting

gun control laws, and generally leading the way to restrict and ban various firearms and firearms related parts and accessories. (Complaint ECF No. 1, ¶¶ 45-60.)

Importantly, among the missions Everytown most heavily emphasizes is seeking to ban what it hyperbolically refers to as: "assault weapons," "high capacity magazines," and "ghost guns." (Complaint ECF No.1 ¶ 174.) These are the very things Everytown most forcefully opposes. (*See* Declaration of Daniel L. Schmutter ("Schmutter Dec.").) Notably, notwithstanding the scary sounding and largely misleading names Everytown chooses to assign to these objects, Everytown cannot allege that they are anything other than broadly lawful to possess in most parts of the United States.  In fact, it is plain that what frustrates Plaintiff the most is the broad legality of these items that it so strongly dislikes.

The trademark related allegations are essentially as follows. Everytown alleges that certain anonymous individuals and internet platforms have created and/or made available on-line 3D printable computer files that, when 3D printed, produce objects that display Everytown's trademarks. But here is the twist – a twist essential to the defenses in this lawsuit, especially the First Amendment defenses. The objects alleged to display the Everytown trademarks when 3D printed are the very things Everytown *most* opposes. The Complaint alleges that the subject computer files will 3D print as: "assault weapons," "high capacity magazines," and

"ghost guns" that display Everytown's trademarks. (*See, generally,* Complaint, ECF No. 1 at ¶¶ 108-156.) (*See also* Schmutter Dec.)

In fact, as evidence of this allegation, the Complaint cites to numerous on-line photographs and tweets that mock, goad, prod, and vilify Everytown using the very objects Everytown so very much despises and rails against publicly and politically. (*Id.*)  Thus, the alleged use of Plaintiffs trademarks cannot be for the purpose of causing confusion, and it beggars belief that anyone would see the 3D printed parts and be confused into believing that they originated from Everytown. Rather, the purpose is plainly to criticize, parody, and mock Everytown for its political activity.

And this is borne out in the Complaint.  Everytown cannot and does not allege a single instance of actual confusion or that any files were actually downloaded by anyone in New York.

### B.    Legal standard.

There are "two bases in which personal jurisdiction can be established: general jurisdiction and specific jurisdiction". *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "Whether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process.  The touchstone of this analysis is whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945).  The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation."  *Walden* v. *Fiore*, 571 U.S. at 284 (internal quotation marks omitted). The defendant must conduct activity in the forum state to establish jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the "random, fortuitous, or attenuated" contacts it makes by interacting with other persons affiliated with the state.  *Id*.

"In deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's longarm statute and then analyzing whether jurisdiction comports with federal due process." *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001).  Under New York law, a court may exercise personal jurisdiction over a non-resident defendant based on either general or specific jurisdiction.  *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 358 (S.D.N.Y. 2014) (citing *Realuyo v. Abrille*, 93 Fed.Appx. 297, 298–99 (2d Cir.2004)).

The plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant. *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir. 2001) (*per curiam*).  Courts may rely on affidavits submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss, which, along with the

12

pleadings, are construed in the light most favorable to the plaintiff. *Id.* However, a court "will not draw 'argumentative inferences' in the plaintiff's favor" and need not "accept as true a legal conclusion couched as factual allegation." *Rates Technology Inc. v. Cequel Communications, LLC*, 15 F. Supp.3d 409, 414 (S.D.N.Y. 2014) (quoting *Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012).

### C.    Defendants are not subject to general jurisdiction in New York.

The New York law of general jurisdiction provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." C.P.L.R. §301. The New York Court of Appeals has interpreted this provision to mean that a "defendant foreign corporation is not amenable to suit in the courts of this State pursuant to C.P.L.R. §301 where it has not engaged in such a 'continuous and systematic course of doing business here that a finding of its presence in this jurisdiction is warranted". *Shabrawy v. Ocean Ships, Inc.,* 226 A.D.2d 277, 277, 641 N.Y.S.2d 36, 37 (1996) (internal quotation omitted).

The exercise of general jurisdiction must be compatible with Due Process. See *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224–25, (2d Cir. 2014). Under the due process analysis, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A

corporation is fairly regarded at home at its "place of incorporation and principal place of business". See *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation omitted).

As to a corporation, where a forum is not a corporation's place of incorporation or principal place of business, general jurisdiction may be found only when that "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG*, 51 U.S. at 138-139 (internal quotation omitted). A corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in exceptional cases. *Daimler*, 571 U.S. at 139 n.19 (internal quotation omitted). What is required is something like the foreign party treating the forum as "a surrogate for the place of incorporation or head office". *Id*. at 130 n.8.

Defendant Defcad is not subject to general jurisdiction in New York because it is organized in Arkansas, its principal place of business is Austin, Texas, and it maintains no facilities or employees in the State of New York. (Wilson Declaration, ¶¶3-5.) Thus, New York cannot be regarded as Defcad's home, and it does not have the sort of "continuous and systematic" affiliations with New York suggesting that the State is a surrogate for its place of incorporation or its principal place of business.

Similarly, the Individual Defendants are not subject to general jurisdiction in New York because none of them lives, works, owns property, or conducts business in New York.  (*See* Anonymous/Individual Decs.)

### D.    Defendants are not subject to specific jurisdiction in New York.

#### 1.    New York's long arm statute does not authorize jurisdiction.

New York's long-arm statute is codified at C.P.L.R.  §302.  The Complaint's jurisdictional allegations could arguably invoke three sub-sections of §302(a), none of which confer jurisdiction here.

#### a)    No jurisdiction under §302(a)(1)

Under C.P.L.R. §302(a)(1), jurisdiction may lie where a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state".  In determining jurisdiction under §302(a)(1), the Court looks at the totality of a defendant's business contacts with New York. *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 166 (2d Cir.2005).  A non-domiciliary transacts business for the purposes of §302(a)(1) when it purposefully avails itself of the privilege of conducting activities within New York, and thus invokes the benefits and protections of the state's laws. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986).  Where there is a showing that business was transacted, there must be an "articulable nexus" between the business and the cause of action. *Id.; see also Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193, 196 (2d Cir.2000)

(Section 302(a)(1) confers jurisdiction over a non-domiciliary corporation that "transacts business within the state," if there is a "direct relationship between the cause of action and the in state conduct.").

Here Plaintiff cannot establish specific jurisdiction under §302(a)(1) because the Complaint fails to show that any of its claims for trademark infringement directly arise from any transaction of business in New York by Defendants.  Plaintiff alleges in the Complaint, "[t]he downloadable 'printing kits' are accessible to consumers in New York and bear unauthorized identical copies of Everytown's registered trademarks.  Each Defendant has targeted New York consumers by uploading these files to a full interactive online website that is viewable by and accessible to New York consumers."  (Complaint, ECF No. 1 ¶9.)  Critically, Plaintiff does not allege that any New York consumer, apart from one of its attorney's paralegals[1], Ms. Green, has ever actually accessed or viewed Defcad's website or the Gatalog[2].  And the implication that "printing kits" are "accessible" to New York consumers through Defcad's website is untrue.

---

[1] *See* Declaration of Delia Green in support of Plaintiff's Motion for an Order to Show Cause, ECF No. 16 ("Green Declaration").

[2] No interaction of Plaintiff's legal team with Defcad's website can create personal jurisdiction over any Defendant.  See *ISI Brands, Inc. v. KCC Int'l, Inc*., 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006) ("It is beyond dispute that jurisdiction cannot be manufactured by the Plaintiff.")

As is set forth in the supporting declarations of Garrett Walliman and Cody Wilson, Defcad does not send any files to parties known or suspected of being in New York.  (Walliman Dec., ¶¶15-18, Wilson Dec., ¶¶6-9.)  No user known or suspected of being in the State of New York has received any files since 2018 from Defcad, much less the files that Plaintiff's assert are infringing.  (Walliman Dec., ¶¶15-18, Wilson Dec., ¶¶6-7 & 9.)  In reviewing the Green Declaration, while Ms. Green asserts that she was able to click an "add to cart" button while on a page relating to the allegedly infringing files (Green Dec. ECF No. 16, ¶¶17, 20, 29), she does not say that she was able to complete these transactions, that she got a download link, *or that she ever received any files from Defcad*.  This is because Ms. Green never completed a transaction on Defcad's website, and even if she had, Defcad would have refused shipment of any files once it became aware that she was a resident of New York.  (Walliman Dec., ¶¶9-16, Wilson Dec., ¶¶6-9.)

Thus, even if a digital file itself can be considered an infringing or dilutive good (and Defendants do not concede this point), Plaintiff does not allege that any such files were ever sent by Defcad or any of the Defendants into the State of New York, or even that Defcad permits New York users of its website to receive such files.  Indeed, neither of those allegations would be true, for the reasons set forth in Defcad's supporting declarations cited above.

17

Courts in this circuit routinely decline to find personal jurisdiction over defendants who, as here, have never supplied an infringing good into the forum state. See *Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL)(AJP), 1997 WL 97097 at *10-12 (S.D.N.Y. Feb. 26, 1997) (finding no jurisdiction under §302(a)(1) in the absence of an infringing sale despite the availability of defendant's website to New York Residents); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 622 (S.D.N.Y. 2013) (finding no jurisdiction under §302(a)(1) where no infringing merchandise was ever sold into New York, apart from one sale to Plaintiff's investigator); *College Essay Optimizer, LLC v. Edswell, Inc.*, No. 14–cv–8586 (LAK), 2015 WL 5729681 at *5 (S.D.N.Y Sept. 30, 2015) ("New York courts that have exercised personal jurisdiction over defendants with interactive websites generally have done so based on proof of direct sales in New York, or direct solicitation of business in New York.").

*ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81 (E.D.N.Y. 2006) is instructive. In that case, after surveying 2nd Circuit cases on this issue, the Court concluded that maintaining an e-commerce website accessible to New York residents was insufficient to find that the Defendant was "doing business" in New York for the purposes of §302(a)(1) absent some evidence of sales or other targeted activity into New York:

> Even the existence of an interactive "patently commercial" website that
> can be accessed by New York residents is not sufficient to justify the

exercise of personal jurisdiction unless some degree of commercial activity occurred in New York.  It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred.

458 F. Supp. 2d. at 88.

None of the Defendants satisfy this standard.   And as to Defcad, the allegations do not even rise to the level of those in *ISI*, where no personal jurisdiction was found.  As is set forth in the Wilson and Walliman Declarations, Defcad has not provided any files of any sort to known or suspected New York parties since 2018, it has never provided New York residents with the files that are the subject of this lawsuit, and in fact, users known or suspected of being New York residents are **actively barred** from completing transactions through Defcad's website.  (Walliman Dec., ¶¶15-18, Wilson Dec., ¶¶6-9.)  Thus, as to Defcad, this is not even a case like *ISI*, where infringing sales into New York have not yet occurred; it is a case where infringing sales into New York **cannot** occur because of steps taken by Defcad.

This means that, as to New York residents, www.defcad.com is not an interactive commercial website; it is a passive website that only presents information to visitors on the screen, and does not permit the consummation of sale.  Such websites do not give rise to personal jurisdiction, even if they are visible to residents of New York.  "Generally, a website that only provides information about services for sale and contact information for the seller, without any ability to directly

purchase the services through the website, is considered 'passive' and therefore 'insufficient to demonstrate that the website operator has purposefully availed itself of the privilege of conducting activities within New York.'" *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568, 2011 WL 6130149 (E.D.N.Y. 2011) quoting *Zibiz Corp. v. FCN Tech. Solutions*, 777 F.Supp.2d 408, 423 (E.D.N.Y.2011). While it is true that Defcad's webite accepted information from Ms. Green, Ms. Green was prompted to provide information to Defcad so that she could be barred in the event that her account information indicated she lived in a State like New York. Whatever "interactivity" Defcad's website has for New York residents exists for the purpose of not transacting business with those people.

### b) No jurisdiction under §302(a)(2)

C.P.L.R §302(a)(2) extends specific jurisdiction to claims arising from the commission of a tortious act within the state. The New York Court of Appeals has construed this provision to require that a defendant be physically present in New York when it committed the alleged tort. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir.1997). Specific to trademark claims, the Second Circuit has held that trademark infringement occurs "where the passing off occurs, *i.e.,* where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.), *cert. denied,* 352 U.S. 871, (1956); *see also French Transit v. Modern Coupon Sys.,*

858 F. Supp. 22, 25 (S.D.N.Y.1994) ("In trademark infringement claims, the actionable wrong takes place both where infringing labels are affixed to the goods and where confusion of purchasers is likely to occur."); *ISI Brands, Inc*., 458 F. Supp. 2d at 89 (stating that §302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act.") (quotation omitted).

As is set forth in the supporting declarations, none of the Defendants has any physical presence in New York, and the Complaint does not so allege. (*See* Anonymous/Individual Decs.; Wilson Dec., ¶¶3-4.)   As discussed above, the Complaint does not plausibly allege that any infringement occurred in New York, because it does not allege that any allegedly infringing files were ever sent to New York.  And, as detailed above, Plaintiff cannot so allege because Defendants have never sent any of the allegedly infringing files to New York, and in fact, Defcad blocks New York users from receiving any files through the website. (*See* Anonymous/Individual Decs.; Walliman Dec., ¶¶15-18, Wilson Dec., ¶¶6-9.)

Even if the infringement alleged is the display of Plaintiff's marks on Defcad's or Gatalog's websites, there is no personal jurisdiction under §302(a)(2), since that display would be caused by software created by Defcad or Gatalog's employees outside of the state of New York.   (*See* Walliman Dec, ¶4; The Gatalog Dec ¶5-6); *Bensusan Restaurant Corp.,* 126 F.3d at 29 ("The acts giving rise to Bensusan's

lawsuit—including the authorization and creation of King's web site, the use of the words "Blue Note" and the Blue Note logo on the site, and the creation of a hyperlink to Bensusan's web site—were performed by persons physically present in Missouri and not in New York.  Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2)."); *Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522, 532 (N.D.N.Y. 2006) ("[A]n attempt to pass off an infringing mark in New York is deemed to be a tort occurring in New York, whereas the mere display of a mark on a website occurs where the website is created and/or maintained.")

### c)       No Jurisdiction Under §302(a)(3)

Section 302(a)(3) extends jurisdiction to actions arising out of the commission of a tortious act outside New York, causing injury within the state, if the defendant either (1) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (2) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Harm to Plaintiff as a New York entity is not sufficient to find injury within the state under §302(a)(3).  "It is firmly established that the domicile or residence of an injured party within New York is not enough to establish personal jurisdiction—

rather, a more direct injury must have occurred within New York State…. in trademark infringement cases, the injury requirement is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet users in New York State." *Energy Brands Inc. v. Spiritual Brands, Inc*., 571 F. Supp. 2d 458, 467, 2008 WL 2747276 (S.D.N.Y. 2008) (quotation omitted).  For the reasons already discussed, as to Defcad, Plaintiff cannot plausibly allege confusion or dilutive injury to its marks in New York, because Defcad takes active measures to not send the allegedly infringing files to New York individuals. (Walliman Dec., ¶¶15-19, Wilson Dec., ¶¶6-9).

But as to all of the Defendants, Plaintiff may argue that New York residents may be confused, or its marks may be diluted in the minds of New York residents, merely by the act of seeing Plaintiff's marks displayed in connection with files on Defcad's and others' websites.  However, Plaintiff has not alleged that anyone in New York, apart from its legal team, has ever navigated to the Defcad or other website pages referencing the allegedly infringing files.  Moreover, even if this sort of passive viewing of the trademarks is cognizable New York harm under §302(a)(3), neither of the additional conditions set forth in §302(a)(3)(i) or (ii) apply to this case.

§302(a)(3)(i) provides, "[u]nder subparagraph (i), the defendant must be engaged in substantial commercial activities within New York consisting of

regularly doing or soliciting business, or engaging in any other persistent conduct, or deriving substantial revenues from dispensing goods or services in the state." Hearst Corp., 1997 WL 97097 at *14.   The Complaint includes no allegations that any of the Defendants is engaged in sustained commerce in New York of the sort that would meet this standard, and the "the mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of" §302(a)(3). *Telebyte, Inc. v. Kendaco, Inc*., 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000).   As is explained above, none of the Defendants conducts business in the state of New York, or derive substantial revenues from New York.   (Anonymous/Individual Decs; Wilson Dec., ¶¶4-9.)   And, in fact, Defcad actively seeks to prevent New York individuals from receiving files from its website.

As to §302(a)(3)(ii), Plaintiff simply cannot show that any of the Defendant has purposely availed itself of the benefits of the laws of New York, and as to Defcad specifically, given the steps it has taken to distance itself from New York, Defcad had no reasonable expectation that its actions would cause any harm in New York. As the court in *Starmedia Network, Inc. v. Star Media, Inc*., explained,

> [T]o establish a reasonable expectation of consequences [under §302(a)(3)(ii)] in New York, the plaintiff must show an effort by the defendant to serve the New York market.   New York courts have asserted that the simple likelihood or foreseeability that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required… Applying these principles to a claimed

24

trademark infringement through a website, a court has recently observed that, "[i]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit. However, one who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts.

*Starmedia Network, Inc. v. Star Media, Inc*., 64 U.S.P.Q.2d 1791, 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) quoting *National Football League v. Miller*, No. 99 Civ. 11846(JSM), 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000) (other internal citations and quotations omitted). Here, again, none of the Defendants has made any effort to "serve the New York" market by making sales to customers in New York. And Defcad has even done the opposite, by implementing active measures to block New York users from receiving files. (Wilson Dec., ¶¶6-9, Walliman Dec., ¶¶15-18.) Accordingly, none of the Defendants can reasonably have expected the occurrence of harm in New York. *See Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 626-627 (S.D.N.Y. 2013) (finding no jurisdiction under §302(a)(3)(ii) where an accused infringer displayed infringing marks on its website, but never sold to New York customers apart from Plaintiff's investigators).

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 162, 16 N.Y.3d 295, 302 (2011) does not compel finding jurisdiction this case. In *Penguin Grp.*, on certification of the question from the Second Circuit, the New York Court of Appeals

found the site of injury for copyright infringement, where the accused infringer had uploaded the copyright holder's printed books in electronic form to the internet, to be the copyright holder's location, which was New York.  Critical to that holding was the fact that the infringement could not be localized.  *See Troma Entertainment, Inc. v. Centennial Pictures Inc*., 729 F.3d 215, 219-220 (2d Cir. 2013) (noting that the *Penguin Grp*. court had "carefully cabined" its holding and stating "[t]he plaintiff in *Penguin* levied allegations of a form of infringement that works an injury that is virtually impossible to localize—the uploading and making available of copyrighted materials, free of charge, to anyone with an Internet connection.")  *Penguin Grp*. is not applicable to the facts at bar, because here the Plaintiff's injury can be localized: it occurs where customers are confused.  Plaintiff has not plausibly alleged that any New York consumers were actually confused by the files, and it could not do so as to any alleged act of infringement occurring through Defcad, since Defcad actively prevents files from being sent to New Yorkers.   Under these circumstances, §302(a)(3)(ii) is not satisfied.  See *American Girl, LLC v. Zembrka*, No. 1:21-cv-02372 (MKV), 2021 WL 1699928 at *6-8 (S.D.N.Y April 28, 2021) (" Plaintiff also cannot establish an injury in New York using this analysis because it has failed to allege or offer any evidence of any New York customers who were confused by the alleged counterfeits or who purchased them.")

Moreover, even if New York's long arm statute is satisfied when an out of state trademark defendant infringes marks owned by a New York party, the exercise of jurisdiction under such facts would not comport with Due Process.  As the Supreme Court noted in *Walden v. Fiore*, 571 U.S. 277, 285 (2014), decided after *Penguin Grp.*, the plaintiff cannot be the only link between the defendant and the forum state.  As is explained more fully below, for Due Process to be satisfied, the defendant must have some link to the forum state other than the plaintiff.

### 2. Exercising personal jurisdiction over Defendants would violate their right to Due Process.

If the Court determines that the New York long arm statute reaches Defendants, it must still evaluate "whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution."  *Verragio, Ltd. v. S K Diamonds*, No. 16-CV-6931 (KBF), 2017 WL 1750451, at *3 (S.D.N.Y. May 4, 2017) (quoting *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)).  As detailed in the preceding sections, there is no statutory basis for personal jurisdiction over Defendants, and it follows that jurisdiction does not comport with due process because C.P.L.R. §302 "does not reach as far as the Constitution permits." *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 961 F. Supp. 99, 90 (S.D.N.Y. 1997).

However, the full due process analysis further illuminates that there is no personal jurisdiction here.  In the due process inquiry, the Court considers first,

whether "a defendant purposefully established minimum contacts within the forum State," and second, "whether the assertion of personal jurisdiction would comport with fair play and substantial justice"—that is, whether it would be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotation marks omitted).

A single, isolated sale in the forum state is not sufficient to confer personal jurisdiction consistent with Due Process unless accompanied by "something more" than simply placing "a product in the stream of commerce," even if a defendant is aware that "the stream may or will sweep the product in to the forum State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888-89 (2011) (quoting *Asahi Metal Indus. Co. v. Sup. Court of Cal.*, 480 U.S. 102, 111, 112 (1987) (opinion of O'Connor, J.)). "Something more" includes, inter alia, "special state-related design, advertising, advice, marketing, or anything else," and evidence of "something more" may include evidence that a defendant "purposefully avail[ed] itself of the privilege of conducting activities" within the forum state. *Id.* at 889 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In addition, the "unilateral activity of another party or a third person is not an appropriate consideration" in the determination of whether a defendant has minimum contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Critically, "[T]he plaintiff cannot be the only link

28

between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.  *Walden v. Fiore*, 571 U.S. at 285.  "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*, at 286.  This is the case even "when intentional torts are involved." *Id*.

Reading Plaintiff's jurisdictional allegations closely, it is apparent that the only nexus between Defendants and New York is the *Plaintiff*.  The Complaint alleges "Personal jurisdiction is proper in this Judicial District because, upon information and belief, each Defendant has had contacts within New York through the actions complained of herein and has caused and is continuing to cause harm to Everytown, which has an office in New York, within this Judicial District." (Complaint ECF No. 1, ¶8.) But the allegation that Everytown, a New York resident, has suffered harm in New York is not relevant to whether *Defendants* created contacts with the forum.  As the Court noted in *Walden*,

> [M]ere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Walden,* 571 U.S. at 290.  Additionally, Plaintiff's alleged notice letter (*See* Complaint, ¶¶163-165) does not transmute Everytown's alleged injury into personal

jurisdiction over Defendants.   See *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.,* 623 F.3d 440, 447 (7th Cir. 2010) ("To find express aiming based solely on the defendant's receipt of [a cease and desist] letter would make any defendant accused of an intentional tort subject to personal jurisdiction in the plaintiff's home state as soon as the defendant learns what that state is. *Calder* requires more.")

As is set forth above, Defendants have never reached out to New York, and have not purposefully availed themselves of the privilege of doing business here. And, in fact, Defcad (and thereby also the several Defcad users: Defcad User xYeezySZN and Defcad User Freeman1337), specifically seeks to *avoid* doing business in New York.[3]  Under these circumstances, exercising personal jurisdiction over Defendants would not comport with Due Process.

Because the Court lacks personal jurisdiction over the Defendants, it cannot enjoin them.  At the very least, the Court should delay ruling on requested injunction until Defendants' forthcoming jurisdictional motion is fully briefed.

---

[3] Importantly, since the only allegations against these individual Defcad users is that they uploaded allegedly infringing files to Defcad, the fact that Defcad has blocked access to its files for New Yorkers means that no New Yorker could have or can download any of these Defcad user's files.

## II.     The Court lacks the Power to Enter Injunctive Relief Because Venue is Improper in this District.

Prior to considering whether to issue a preliminary injunction, venue must be proper in the district court. *Hendricks v. Bank of America, N.A.*, 408 F.3d 1127 (9th Cir. 2005); *Armstrong Pump, Inc. v. Hartman*, 2010 WL 3547754 (W.D.N.Y. 2010) ("Prior to considering Armstrong's request for injunctive relief, the Court must determine whether Armstrong has sufficiently demonstrated personal jurisdiction over the nonresident defendants, and whether dismissal for improper venue is warranted."); *Magnetic Products, Inc. v. Trestain*, 2006 WL 1109250 (E.D. Mich. 2006).

### A.     Legal standard.

Plaintiff alleges that venue is proper in this district under 28 U.S.C §1391(b)(2) which provides for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." The plaintiff bears the burden of proving that venue is proper. *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320 (S.D.N.Y. 1996).

Under that section, venue can only be proper for a trademark claim, if the defendant targets New York by advertising and actively pursues efforts to market the infringing product here or if the defendant sells a substantial amount of the allegedly infringing goods to customers here. *Id*. at 322 (venue improper because

plaintiff made no sale to New York and did not actively market its products to New York).

Further, merely operating an interactive website accessible in the district, without more directed specifically to the forum, is insufficient to conclude that the defendant is targeting the district. *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a "highly interactive" website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution"); *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d. Cir. 2003) ("the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.") *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 401 (4th Cir,. 2003) ("when CPC set up its generally accessible, semi-interactive Internet website, it did not thereby direct electronic activity into

Maryland with the manifest intent of engaging in business or other interactions within that state in particular."); *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1186 (N.D. Cal. 2014) (Venue under 1391(b)(2) improper because "[a]lthough internet users in this district can access Defendant's website, there is no evidence that any orders have ever been placed by purchasers in this district.").

**B.    Venue is not proper in this district.**

Venue is not proper in this district because there is no allegation or evidence of any actual interaction by the any of the Defendants with anyone in this district apart from Plaintiff's litigation team. The only allegation Plaintiff can maintain is that the platforms (Defcad and The Gatalog) maintain websites and that the individuals uploaded files to the internet.

As to Defcad and the several "Defcad Users" (Defcad User xYeezySZN and Defcad User Freeman1337), the foregoing discussion makes the record clear that not only has no one in this district downloaded any files from Defcad, but they literally cannot, as Defcad has explicitly precluded any files being downloaded in New York. Defcad has deliberately avoided any interaction with this district. Therefore, venue could not possibly be proper for Decad or the "Defcad Users" who are alleged to have upload files to Defcad.

Similarly, there is no allegation or evidence that anyone in New York has downloaded any files from The Gatalog nor is there any allegation or evidence that The Gatalog has engaged in any activities specifically direct to New York.

Further, as to the *all* of the individual user accounts, not only is there no allegation or evidence that anyone in New York apart from Plaintiff's litigation team downloaded any files, and no authority stands for the proposition that an internet user could merely upload a file to a website and thereby create the required connection to the forum required by §1392(b)(2).

Thus, because venue is not proper in this district, the Court has no power to issue a preliminary injunction.

## III.    Preliminary Injunctive Relief Should be Denied Because Plaintiff Cannot Demonstrate the Substantial Proof Required for Such an Extraordinary Remedy.

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007), and it "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n,*

*Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).   Plaintiff has failed to make this required showing.

## A.   Everytown is not likely to succeed on the merits.

Everytown brings claims for trademark infringement and false designation of origin under §§32 and 43(a) of the Lanham Act, Trademark Infringement and Unfair Competition under New York common law, and state dilution under New York General Business Law Section 360-L.   Everytown is not likely to succeed on the merits under any of these theories.

### 1.   This Court lacks personal jurisdiction and venue is improper, and therefore Everytown is unlikely to succeed on the merits.

Points I and II, *supra*, demonstrate that this Court lacks personal jurisdiction over Defendants and that venue is improper in this district. Since this Court lacks to power to hear this case and enter a judgment on the merits, Everytown is unlikely to succeed on the merits of its claims.

### 2.   Everytown is unlikely to succeed on its Lanham Act claims.

#### a)   The use of Everytown's is expressive, political speech protected by the First Amendment.

"[T]he First Amendment confers a measure of protection for the unauthorized use of trademarks when that use is a part of the expression of a communicative message." *Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F.Supp. 267, 275 (S.D.N.Y. 1992).   "In recognition of this … the Second Circuit has construed the

Lanham Act narrowly when the unauthorized use of the trademark is for the purpose of a communicative message, rather than identification of product origin." *Id.* at 276. In *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), the court considering the potentially confusing use of the trademarks "Ginger and Fred" in the title of a film not endorsed by Ginger Rogers. There, the Court held the public's interest in free speech outweighed its interest in being free from potential confusion. Under *Rogers*, the use of a trademark in an artistic work is permissible "unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* at 999. "The court in *Rogers* applied this test to the use of a trademark in a movie title, but courts have extended it to the content of expressive works as well." *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.,* 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) ("*Warner Bros.*"). An expressive work is any work that is "part of the expression of a communicative message." *Yankee Pub. Inc.,* 809 F. Supp. at 275-76. Courts have applied *Rogers* to political speech, for example, to protect the use of a political adversary's mark to express an opposing political message. See *Protectmarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1229 (E.D. Cal. 2010) (upholding the use of a slightly altered version of an anti-gay marriage organization's logo on a pro-gay marriage website.); *see also Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 322, 327-29 (4th Cir. 2015) (rejecting trademark

infringement claim under *Rogers* where defendant, a conservative activist group, used the mark "NAACP" in the title of a political article: "NAACP: National Association for the Abortion of Colored People").

Courts have also extended *Rogers* to expression inherent in simple objects.  In *VIP Prod. LLC v. Jack Daniel's Properties, Inc*., 953 F.3d 1170, 1175 (9th Cir. 2020) (internal quotations omitted below), the Court found that incorporating Jack Daniel's famous marks into a dog chew toy was expressive and entitled to Rogers protection:

> Like the greeting cards in *Gordon*, the Bad Spaniels dog toy, although surely not the equivalent of the *Mona Lisa*, is an expressive work....The toy communicates a humorous message, using word play to alter the serious phrase that appears on a Jack Daniel's bottle—'Old No. 7 Brand'—with a silly message—'The Old No. 2.'  The effect is 'a simple' message conveyed by 'juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner.

Here, the complained of uses of Everytown's marks are fully protected First Amendment political speech under *Rogers*.  The files themselves qualify for First Amendment protection.  See *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 691 (W.D. Tex. 2015), *aff'd sub nom., Def. Distributed v. United States Dep't of State,* 838 F.3d 451, 2016 WL 5383110 (5th Cir. 2016) (finding that gun CAD files constituted speech under the First Amendment for purposes of preliminary injunction motion and finding support in *Universal City Studios, Inc. v. Corley,* 273 F.3d 429 (2d Cir.2001)).  The politically expressive message being conveyed by the files and the parts produced from them is *inherent* in the juxtaposition of the logos

with the files and the parts.  When juxtaposed with Everytown's marks, the files, and

their listings and filenames, become political statements, in which the presence of

the Everytown marks is a necessary part of the biting, parodic message.   The

message being communicated is one of opposition to Everytown's anti-gun mission,

criticism of Everytown, celebration of Second Amendment rights, and defiance.

(*See* Anonymous/Individual Decs.)  The intent to express these sorts of views is also

made clear by the materials supporting Everytown's papers, e.g., the taunt below sent

to Everytown's twitter account.  (Complaint, ECF No. 1, ¶136.) The files are public

political speech registering disagreement with Everytown's political policy

positions.



This sort of use easily clears *Rogers'* initial "low threshold", which requires only that the use of the mark bear some "minimal artistic relevance" to the underlying work.  *Rogers*, 875 F.2d at 999.  Here, the message of opposition and defiance is in and relies on the combination of Everytown's mark with the gun parts that Everytown seeks to criminalize.  The marks have more than minimal relevance to the underlying work - they are the key to the message being sent.

The use of Everytown's marks also clears *Rogers*' other hurdle, in that it does not *explicitly* mislead as to source.  There mere use or reproduction of the plaintiff's mark, even unaltered and in its entirety, without more, is not *explicitly* misleading as to source.  See *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.,* 868 F. Supp. 2d 172, 179–80 (permitting complete reproduction of Louis Vuitton's trademarks in the context of a film) and see *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005) citing *Rogers*, 875 F.2d at 1000-01 ("Rather it has long been established that even when alleged infringers use *the very marks at issue* in titles, courts look to the underlying content to determine whether the titles create a likelihood of confusion as to source." (Emphasis added.))

Courts have suggested that the First Amendment right to use the marks of others for expressive purposes may be limited when the defendant has borrowed the plaintiff's mark in order to create confusion as to the source of goods.  *See Deere & Co. v. MTD Prod., Inc.*, 41 F.3d 39, 44–45 (2d Cir. 1994).  But this is not occurring

here.  Defendants are not using Everytown's marks as their own source identifiers, i.e., as their own trademarks.  In the printed parts, Everytown's marks, placed in the context of the parts themselves, are part of the expressive message.  In the filenames and the listings, the use of Everytown's marks is descriptive, rather than source identifying - it conveys to the viewer that the file is *for* printing gun parts that relate to Everytown and its trademarks, but the listings make clear that the files are *from* sources other than Everytown.  In this way, Defendants are engaged in a species of nominative fair use, where the Everytown marks are being used, unambiguously, to *refer to* Everytown and its mission, but not as source identifiers.  See *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ*., *LLC*, 823 F.3d 153, 167–68 (2d Cir. 2016) ("Nominative use involves using the mark at issue *as a mark* to specifically invoke the mark-holder's mark...").  This is clear in the listing provided in the Complaint, reproduced below.  (Complaint, ECF No. 1, ¶144.)



In the listing above, it is clear that the source of the file is the Gatalog, because the listing literally says "The Gatalog Presents"[4].  Additionally, "Everytown" is in single quotation marks, indicating that the listing relates to a file that is *about* Everytown, but *from* the Gatalog.  The same is true of the Defcad listings, one of which is reproduced below.  (Complaint, ECF No. 1, ¶147.)   Here again, the source

---

[4] The same source identifying language is used in the Gatalog listing shown at ¶140 of the Complaint.

41

of the file is FREEMAN1337, whose handle occurs both in the listing title, and in the filename.  The word EVERYTOWN is in quotes in the listing, indicating that the file is *about* Everytown, but it is *from* its uploader.  Moreover, "Everytown" is included in a list of descriptive "tags", that is, information that describes other attributes of the file other than source, e.g., "AR15" and ".22lr".



This non-source identifying, expressive use of Everytown's marks is entitled to protection under the First Amendment.  As the court noted in *Tommy Hilfiger Licensing, Inc. v. Nature Labs*, LLC, 221 F. Supp. 2d 410, 414 (S.D.N.Y. 2002):

> Cases finding that First Amendment interests prevail involve nontrademark uses of mark—that is, where the trademark is not being used to indicate the source or origin of consumer products, but rather is being used only to comment upon and, in the case of parody, to ridicule, the trademark owner.  In such cases, the parodist is not trading on the good will of the trademark owner to market its own goods; rather, the parodist's sole purpose for using the mark is the parody itself, and precisely for that reason, the risk of consumer confusion is at its lowest.

Importantly, because Defendants are engaged in protected speech, *Plaintiff must tolerate some level of potential confusion*.  See *Yankee Pub. Inc.,* 809 F. Supp. at 275, 281; *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1379 (2d Cir. 1993) ("However, the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers"); AM Gen. LLC v. Activision Blizzard, Inc.,* 450 F. Supp. 3d 467, 479 (S.D.N.Y. 2020) ("an artistically relevant use will outweigh a moderate risk of confusion where the contested user offers a 'persuasive explanation' that the use was an 'integral element' of an artistic expression rather than a willful attempt to garnish the trademark owner's goodwill for profit."); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.,* 886 F.2d 490, 497 (2d Cir. 1989) (finding book parody "raises only a slight risk of consumer confusion that is outweighed by the public interest in

free expression, especially in a form of expression that must to some extent resemble the original.").  For the reasons that follow, however, the likelihood of confusion in this case is minimal in any event.

### b)    Confusion is unlikely.

A trademark owner may not prevent all unauthorized uses of its marks.  "The trademark owner's rights are violated only where the unauthorized use has a substantial capacity to mislead consumers (or other concerned actors in the marketplace) into a confusion as to the entity furnishing the goods or services.  Mere unauthorized use does not by itself make out a cause of action; likelihood of confusion is also an essential element."  *Yankee Pub. Inc.*, 809 F. Supp. at 272-73 (1992).

Everytown's confusion theory is as follows.   Everytown's marks have tremendous commercial strength and widespread national recognition.   (*See* McTighe Dec. ECF No. 18), ¶¶23-40.)  One of the many Americans familiar with Everytown and its marks may navigate to an internet site on which users share digital files enabling them to print "assault weapons, high capacity magazines and ghost guns", things "that Everytown actively works to have regulated and prohibited through legislative and other advocacy".  *Id*., ¶52.  This person will see Everytown's marks used in connection with these files, and will be confused into believing that, for some reason, Everytown, "the largest gun violence prevention program in the

United States", has suddenly gotten into the business of creating or sponsoring gun printing files, which it hitherto staunchly and vocally opposed, and seeks to criminalize.

Confusion under these circumstances is unimaginable, not only because the goods and services of the parties are polar opposites, but because the complained of listings, files, and the printed parts themselves are a particular form of protected expression - unmistakable and non-confusing parodies, which express criticism of Everytown and its mission, by jarringly, and always simultaneously, juxtaposing Everytown's marks with the objects that Everytown opposes. "A 'parody' is 'a simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner.'" *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 434 (S.D.N.Y. 2016) ("*MOB*") quoting *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 260 (4th Cir.2007) ("*Haute Diggity Dog II*").  "A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is *not* the original and is instead a parody." *Cliffs Notes, Inc.*, 886 F.2d at 494 (emphasis in original).  The latter message "must not only differentiate the alleged parody from the original but must also communicate some articulable element of satire, ridicule, joking, or amusement." *Haute Diggity Dog II*, 507 F.3d at 260; *see Cliffs Notes*, 886 F.2d at 496 (stating that a work "is a parody if, taken as

a whole, it pokes fun at its subject"). The message of ridicule need not be explicit or textual: it may be inherent in the juxtaposition of the mark with an unlikely product, or the placement of the mark in an unlikely context. See *MOB*, 156 F. Supp. 3d at 435 (placement of Louis Vuitton's marks on a casual, canvas handbag); *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 416 (juxtaposing luxury brand trademarks with dog perfume); *Haute Diggity Dog II*, 507 F.3d at 260-61 ("the juxtaposition of the similar and dissimilar—the irreverent representation and the idealized image of an LVM handbag—immediately conveys a joking and amusing parody."). By juxtaposing Everytown's marks with the products that Everytown works to criminalize, the message could not be clearer: the sources of these files are *not* Everytown, and they are in fact taunting Everytown. And these are the very items Everytown *most strongly opposes*.

Courts in this circuit asses likelihood of confusion in reference to the factors set forth in *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 495 (2d Cir.1961), but in parody cases, the factors are analyzed differently. When correctly analyzed through the parody lens, it is clear that can be no confusion in this case.

**Strength of the Mark**. Everytown's marks are unquestionably strong, but this factor cuts *against* confusion here, because people familiar with Everytown's mark will immediately recognize that they are out of place on gun parts. "The strength and recognizability of the mark may make it easier for the audience to

realize that the use is a parody and a joke on the qualities embodied in trademarked word or image." McCarthy on Trademarks and Unfair Competition § 31:153 (4th ed.2001).  "That is, it is precisely because of the mark's fame and popularity that confusion is avoided, and it is this lack of confusion that a parodist depends upon to achieve the parody." *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 416 and see *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F. Supp. 2d 495, 499 (E.D. Va. 2006) ("*Haute Diggity Dog I*") ("Strength of mark is usually a strong factor in determining customer confusion. However, in cases of parody, the opposite can be true.")

**Similarity of the Marks**.  All parodies will be similar to the markholder's mark.  In a parody case, the court must look at whether the overall context of the marks' presentation is similar between the parties.   "[A]n inquiry into the degree of similarity between two marks does not end with a comparison of the marks themselves.... the setting in which a designation is used affects its appearance and colors the impression conveyed by it." *Hormel Foods Corp. v. Jim Henson Products, Inc.*, 73 F.3d 497, 503 (2d Cir. 1996) (internal quotations omitted) and see *MOB*, 156 F.Supp.3d at 441 (finding contextual differences and therefore no confusion where Plaintiff's mark for luxury handbags was placed on a casual canvas tote).  Here, as the excerpted ads above show, defendants always present the Everytown marks in conjunction with photographs or textual descriptions of guns

and gun parts, as well as with the uploader's own trademarks.  The listings are presented in subdued colors, with some listings, like the Defcad listings, heavily favoring black.  Everytown's use of its marks occurs in a much different context. Looking at the examples in the Complaint (see, ¶56), Everytown adheres to a bright, red-white-and-blue color scheme, and appears to avoid using its marks in conjunction with photographs of firearms and parts.   The strikingly different contexts in which the marks are presented makes clear that the files are originating from some entity other than Everytown.

Where, as here, the contextual presentation of the marks is sufficiently different, and the message being conveyed by the parodist is clear, there can be no confusion even if plaintiff's marks are used without alteration.  *See, e.g.*, *Lamparello*, 420 F.3d 316 n.4 (finding no confusion from the use of the entirety of plaintiff's mark in a domain name for a comment and criticism website); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir. 2003) (citing *Rogers* to find no liability in an photographer's use of plaintiff's unaltered BARBIE trademark and doll trade dress in allegedly tarnishing photographs featuring "a nude Barbie in danger of being attacked by vintage household appliances.").

**Proximity of the Goods.**  This factor could not tip more heavily in defendants' favor.  This factor looks to market overlap between the parties, including shared marketing channels and shared customers.  See *Hormel Foods Corp.*, 73 F.2d at 504.

The services Everytown provides under its marks include lobbying for the criminalization of so-called "assault weapons", so-called "high capacity" magazines, and 3D printed guns and parts. (*See* McTigue Dec. ECF No. 18, ¶52.) Defendants are using the Everytown marks to describe files to print precisely the sorts of goods that Everytown wants to criminalize. Not only is there not competitive overlap[5], the services provided by the parties are diametrically opposed. They could not be more diametrically opposed. The services in this case are clearly less similar than in many of the successful trademark parody cases considered by courts in this Circuit. *See e.g.*, *MOB*, 156 F. Supp. 3d at 442 (no competitive proximity between canvas tote bag and high end handbag); *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 418-19 (no competitive proximity between pet cologne and human cologne).

Moreover, the same stark differences between the goods and services of the parties makes post-sale confusion impossible. Even if someone sees a printed gun part bearing the Everytown marks at, for example, a shooting range, that person, who is likely also familiar with Everytown and its anti-gun mission, will not be confused. Courts in this circuit have rejected post-sale confusion theories based on much more similar goods. See *MOB*, 156 F. Supp. 3d at 443-44 (noting that "[t]he Second Circuit, however, has generally found post-sale confusion actionable only in

---

[5] *See Woodstock Ventures LC v. Woodstock Roots*, LLC, 387 F. Supp. 3d 306, 318 (S.D.N.Y. 2019) (finding no competitive overlap, and declining to issue preliminary injunction).

the context of knockoffs…" and "no reasonable observer is likely to infer from the cartoon-like bag-within-the-bag design and the juxtaposition of MOB's basic, canvas tote with the exclusive, luxury status of Louis Vuitton that Louis Vuitton sponsors or otherwise approves of MOB's tote bags.")

The fact that both parties use the Internet in their activities is irrelevant, since use of the Internet for marketing in 2021 is ubiquitous. See *Haute Diggity Dog I*, 464 F. Supp. 2d at 501. Additionally, the respective "customers" for the parties could not be more different. Defendant's files are sought and used by people interested in 3D printing gun parts - people who have a moral disagreement with Plaintiff and its message. (*See* Anonymous/Individual Decs.) Plaintiff's donors, members and allies are people who support the criminalization of 3D printing gun parts, and who presumably have a moral disagreement with Defendants. There is no overlap between these groups.

**Bridging the Gap**. This factor favors Defendants. The speculative musing of Everytown's attorneys (s*ee* Memorandum, ECF No. 14 at 13-14), unsupported by a Declaration from Everytown, that Plaintiff might get into the business of 3D printed gun parts for safety, is entitled to no weight. *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 295 (S.D.N.Y. 2012). ("A speculative intention is insufficient to demonstrate that bridging the gap is likely; a litigant should provide evidence of a concrete expansion plan."). As is clear from Everytown's website,

Everytown is a sworn enemy of 3D printed "ghost guns," "assault weapons," and "high capacity magazines." (*See* Schmutter Dec.)  The notion that Plaintiff might, someday, reverse course on this issue is ridiculous, and should not be seriously entertained by the Court.

**Actual Confusion.** This factor favors Defendants.  The absence of evidence of actual confusion despite a long period of Defendants' use of the mark is probative of no likelihood of confusion.  See *Nikon, Inc. v. Ikon Corp*., 803 F. Supp. 910, 921 (S.D.N.Y. 1992).  Here, the complained of files have been in circulation since June at the latest.  See, Defcad screenshot *supra*.  Everytown alleges that the file listings have been viewed on the Internet thousands of times and files themselves have been downloaded hundred times (*See, e.g*., Galloway Dec., ECF No. 17 at ¶¶ 22, 28, 37, 39, and 50).  Everytown alleges that Twitter user XYeezySZN, and other non-parties, have been publicly taunting Everytown on Twitter with photographs of printed gun parts bearing the marks.  *Id*., ¶¶30, 51.  Twitter user XYeezySZN has almost 4,000 Twitter followers.  *Id*., ¶32.  The fact that Everytown **cannot find a single person**, for example, a single person among its 250k Twitter followers, who was actually confused about the very public appearance of these designs is strong evidence that confusion is unlikely.

**Defendants' Good Faith.**  This factor favors Defendants.  The relevant bad faith in a trademark infringement action, particularly one involving parody, is not

the intent merely to *use* the plaintiff's mark, but the intent to *confuse* the public as to source.  Here, there is no evidence that Defendants intend to trick the public into believing that Everytown now makes gun printing files.  Rather, the intent is to communicate a message of disapproval of Everytown's mission through mockery. (*See* Anonymous/Individual Decs.)  Such intent does not show bad faith.  *See Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 419-20  citing *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir.1987) (holding that LARDASHE mark on jeans for oversized women was an intentional parody of JORDACHE, but finding no intent to confuse).

**The Quality of Defendants' Goods.**  This factor is neutral.  Everytown has offered no evidence that the files, or the parts printed from them, are low quality. The Defcad listing reproduced above indicates positive reviews.

**Customer Sophistication.**  This factor favors Defendants.  Contrary to Plaintiffs assertions, Defendants "customers" are not the general public - rather they are 3D printed gun enthusiasts, who presumably would have access to 3D printers. Not only, then, are barriers to entry to this insular community high, its members can be presumed to be very familiar with Everytown and its mission, since that mission is, quite literally, to turn 3D printed gun enthusiasts into federal criminals.  The only third party identified by Everytown as actually having put its marks on a gun, the twitter user "Lord Dianexis PhD", clearly knows exactly who Everytown is and is

taunting it.  (*See* Complaint, ECF No. 1 at ¶108.)   The idea that such people would carelessly assume a gun printing file originates from Everytown is unimaginable.

### c)   Defendant's use is noncommercial.

Plaintiff's §43(a) claims require that the defendant's use be "in commerce" and "on or in connection with any goods or services".  15 U.S.C. §1125(a)(1).  Its §32 claims require that defendant's use be "in commerce" and "in connection with the sale, offering for sale, distribution, or advertising of any goods or services".  But the complained-of activity here is the free sharing of information, not the sale or distribution of goods or services.  Anticipating a problem here, Plaintiff argues that Defendants' use of the marks is in connection with *Plaintiffs'* goods and services, because it affects the ability of Plaintiff to offer its own goods and services in commerce.  (Memorandum, ECF No. 14) at 12 & fn.3.  *OBH, Inc. v. Spotlight Mag., Inc.*, 86 F. Supp. 2d 176, 186 (W.D.N.Y. 2000), relied on by Plaintiffs, is distinguishable.  In that case, the Court found the use of an internet domain name containing the plaintiff's mark to be use of a mark in connection with goods and services because the defendant's website linked to another commercial website and the site potentially diverted internet searchers looking for plaintiff's internet presence.  But that is not occurring here.  Plaintiff's marks are being used with specific files, not as a domain name for entire commercial website.

More importantly, Plaintiff's view would sweep all non-commercial criticism of a markholder using its marks within the scope of the Lanham Act, since such criticism might result in decreased sales for the markholder. This stretches the Act too far, which is why other courts have declined to follow this approach. See *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (declining to follow Plaintiff's theory as expressed in *People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359 (4th Cir. 2001) noting "[t]he *PETA* court's reading of the Lanham Act would encompass almost all uses of a registered trademark, even when the mark is merely being used to identify the object of consumer criticism).

Moreover, while the Second Circuit interprets "in commerce" broadly, liability under the Lanham Act still requires that the mark be used as part of some commercial transaction. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013) ("In determining whether the plaintiffs have satisfied the 'use in commerce' requirement, we ask whether the trademark has been displayed to consumers in connection with a commercial transaction.") But Plaintiff fails to establish any commercial transaction involving its marks. The Complaint alleges that certain defendants (e.g., Royster, the xYeezySZN defendants, and the Gatalog defendants (collectively "uploader defendants") have uploaded files that use the marks in the file names, which files contain computer instructions for fabricating gun parts bearing the marks, to file sharing sites like Odysee and Defcad. (*See* Complaint,

ECF No. 1), ¶9.)  The Complaint also alleges that some files have been used by some third parties to fabricate parts bearing the marks ("fabricating parties").  *Id*., ¶152.

Essentially, the uploader defendants are being accused of writing instructions for how to draw plaintiff's trademarks, posting them on a bulletin boards owned by Defcad and Odysee, and then third parties are looking at the instructions, and some may be copying down the instructions, and using them to draw trademarks on objects that they fabricated themselves.  This is just information sharing.  None of this involves a commercial transaction.

As to the uploading parties, there is no allegation in the Complaint that any of them receive money in exchange for their files.  While the Complaint alleges that "Odysee users have the option to monetize their content for cryptocurrency and receive cash tips", it does not allege that any of the uploader defendants has monetized or received tips *for the accused files*.  (*See* Complaint, ECF No. 1 ¶105.) Indeed, one of Plaintiff's declarants, Ms. Green, states that was able to download files from Odysee, but she does not say that she had to pay for them.  (Green Dec., ECF NO. 16 ¶5.)  Accordingly, there is no allegation that either Odysee or the uploaders to Odysee are involved in any commercial transactions regarding these files.

As to Defcad, Ms. Green states that she was able to "access" files (i.e., view a listing), and had to pay a subscription fee, but *she does not state that she was able*

*to download anything or ever received any files from Defcad. Id.*, ¶6. Thus, while there may have been a transaction with Defcad, it does not appear to have been for the specific files. See *Y.Y.G.M. SA v. Redbubble, Inc.*, No. 219CV04618RGKJPR, 2020 WL 3984528, at *3 (C.D. Cal. July 10, 2020) (finding that an online marketplace for infringing goods committed no act of direct infringement despite charging a general "service fee" because "the service fee Redbubble imposes on transactions through its site bears no relation to the price of the goods sold.")

Ultimately, what is occurring here is non-commercial sharing of information that embodies a message of commentary and criticism directed at Plaintiff. The Court should not stretch the bonds of the Lanham Act to reach this activity.

### 3.   Everytown's state infringement claims fail.

Everytown's state infringement and unfair competition claims require likelihood of confusion and are subject to the same First Amendment concerns as its Lanham Act claims, and so fail for the same reasons. *Yankee Publ'g Inc.*, 809 F. Supp. at 282 ("[T]he same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law."); *AM Gen.,* 450 F. Supp. 3d at 477-87 (applying *Rogers* to New York infringement and unfair competition claims); *Katz v. Modiri*, 283 F. Supp. 2d 883, 899 (S.D.N.Y. 2003) (denying motion for preliminary injunction as to its state and federal unfair

competition claims because plaintiff was unlikely to prevail on the merits of its claim of infringement).

Additionally, in addition to likelihood of confusion, a "plaintiff claiming unfair competition under New York law must also show that the defendant acted in bad faith." *WIZKIDS/NECA*, *LLC v. TIII Ventures*, *LLC*, No. 17-CV-2400 (RA), 2019 WL 1454666, at *14 (S.D.N.Y. Mar. 31, 2019) (citing *Empresa Cubana del Tabaco v. Culbro Corp*., 399 F.3d 462, 485 (2d Cir. 2005) (dismissing unfair competition claims where there was no evidence the alleged infringer engaged in bad faith).  Here, there is no credible evidence of bad faith.  For the reasons set forth above, the marks are being used as part of a non-confusing and expressive message. There is no bad faith intent to confuse.

### 4.    Everytown's state dilution claim fails.

Because Defendants are engaged in free speech protected under the First Amendment, there can be no liability for state dilution under NYGBL §360-L. *Warner Bros*., 868 F. Supp. 2d at 184 ("Louis Vuitton's pendant state law claim under New York's anti-dilution statute and its common law claim of unfair competition are likewise dismissed because they are based on the same permissible conduct as its Lanham Act claim.");  *L.L. Bean, Inc. v. Drake Publishers, Inc*., 811 F.2d 26, 32 (1st Cir.1987) ( "It offends the Constitution ... to invoke the [Maine]

anti-dilution statute as a basis for enjoining the noncommercial use of a trademark by a defendant engaged in a protected form of expression.").

The *L.L. Bean* case from the First Circuit is instructive.  There, a pornographic magazine sold by Defendant included a parody article that "displayed a facsimile of Bean's trademark and featured pictures of nude models in sexually explicit positions using 'products' that were described in a crudely humorous fashion." *L.L. Bean*, 811 F.2d at 27.  Despite the fact that the article was present in a magazine, which people paid for, the Court found that it was protected, non-commercial speech that did not actionably tarnish plaintiff's trademark under Maine's dilution statute. Central to the Court's analysis was that L.L. Bean's marks were not being used to market a competing, but incompatible product, but rather "the instant defendant used plaintiff's mark solely for noncommercial purposes.  Appellant's parody constitutes an editorial or artistic, rather than a commercial, use of plaintiff's mark." *Id*. at 33. The 2nd Circuit adopted a similar analysis in *Hormel* where it permitted the parodic use (SPA'AM) of the mark SPAM on an ugly Muppet character.  Central to the court's holding was the fact that defendant was not using the mark to market competitive goods. *Hormel*, 73 F.3d at 507-08.  Here, as in these cases, Everytown's marks are not being used for any commercial purpose such as the marketing or advertising of any goods, much less competitive goods.  To the extent there are products here, the marks *are* an essential part of the products, or in the words of the

*Hormel* court, "inhere" in the products. *Id*.  It is the melding of the marks and the gun parts that forms the parodic, political, non-commercial speech, which is non-dilutive as a matter of law.

Everytown's position, ultimately, is that NYGBL §360-l prevents any party from using its marks to criticize it and its political policy positions, because such criticism tends to tarnish the marks.  But the law of dilution does not stretch so far. The federal dilution statute provides a fair use defense for precisely the sort of critical, parodic use at issue here.  Lanham Act §43(c)(3)(A)(ii) permits the use of another's mark for "identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.".  The Court should apply this exception here.  *Tiffany (NJ) Inc. v. eBay, Inc.,* 576 F. Supp. 2d 463, 523 (S.D.N.Y.2008) (interpreting §360-L in light of the Lanham Act); *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 CIV. 4204 LTS SN, 2013 WL 4245987, at *5 (S.D.N.Y. Aug. 12, 2013 (finding no tarnishment under §360-L when plaintiff's mark was used without alteration on a web blog devoted to criticism); *MOB*, 156 F. Supp. 3d at 433-40 (finding no dilution under New York law while applying the Lanham Act's dilution fair use defense to a trademark parody).

### B.    Plaintiff cannot demonstrate irreparable injury

The presumption of irreparable injury imposed by 15 U.S.C. §1116(a) only applies upon a showing a likelihood of confusion - a showing that Plaintiff has failed

to make here, for the reasons set forth above.  See *Two Hands IP LLC v. Two Hands Am., Inc.*, No. 21-CV-3855 (JGK), 2021 WL 4437975, at *4 (S.D.N.Y. Sept. 28, 2021) ("The presumption does not arise in this case, however, because, as explained below, the plaintiff has failed to demonstrate a likelihood of confusion.").  Plaintiff has otherwise failed to demonstrate irreparable harm.

First, Plaintiff's "significant delay in bringing the preliminary injunction motion counsels against a finding of irreparable injury."  *Two Hands IP*, 2021 WL 4437975 at *4.  While there is no bright-line rule for how much delay is too much, courts in the Second Circuit "typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."  *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); *see Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) (noting "delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm.").  Here, Plaintiff sent its first notice letters regarding the alleged infringement on August 24, 2021.  (Complaint, ¶¶161, 163.)  Thus, Plaintiff must have had actual notice of the alleged infringement prior to that date, but waited two months, until October 22, 2021, to file suit.  Having sat on its claims for two months,[6] Plaintiff should not be heard to complain about urgent irreparable injury now.

---

[6] Plaintiff's takedown requests do not justify this lengthy delay.  *See Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 406–08 (S.D.N.Y. 1997)

Additionally, in the absence of the statutory presumption, Plaintiff was required to come forward with actual evidence showing already suffered or faced imminent irreparable harm, which the Second Circuit has defined as "an injury that is not remote or speculative but actual and imminent, and "for which a monetary award cannot be adequate compensation." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 37 (2d Cir.1995).   Instead, all Plaintiff provides is a paragraph of attorney argument (Memorandum, ECF No. 14 at 21-22), and the self-serving and conclusory declaration of its COO. (McTighe Dec., ECF No. 18 at ¶¶49-52).   The crux of Plaintiff's argument is that members of the public will see the subject files, or gun parts printed from them, and will develop a negative reputation of Everytown as a result.   However, despite the fact that these listings and files have been circulating since June, and have been downloaded and seen by thousands, Plaintiff has been unable to produce a single person who has actually developed such a negative impression.   Thus, Plaintiff has failed to show imminent irreparable harm. *See Two Hands IP*, 2021 WL 4437975 at *5 (Moreover, the plaintiff has failed to show that it would be irreparably harmed because it has not adequately alleged that it will lose control over its reputation, nor provided sufficient evidence showing a possible loss of goodwill in the industry.)

---

(explaining delay because of "discussions about a license and a debate about the validity of plaintiff's copyrights" was unjustified).

Finally, to the extent that Everytown has been or will be harmed, the Lanham Act provides an adequate remedy at law. Any harm that Everytown has already suffered or might suffer in the future can be recovered as monetary damages. *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 260 (2d Cir. 2002).

### C.   Public interest favors denying the injunction

The public has a strong interest in the freedom of expression, particularly on important matters of public policy such as gun rights. That interest outweighs the vanishingly small risk of confusion in this case. *See Cliffs Notes, Inc.,* 886 F.2d 490, 497 (2d Cir. 1989) ("We conclude that the parody cover of Spy Notes, although it surely conjures up the original and goes to great lengths to use some of the identical colors and aspects of the cover design of Cliffs Notes, raises only a slight risk of consumer confusion that is outweighed by the public interest in free expression, especially in a form of expression that must to some extent resemble the original.); *Cornette v. Graver*, 473 F. Supp. 3d 437, 478 (W.D. Pa. 2020) ("Here, the public interest in protecting free expression and the ability to critique ideas found objectionable outweighs the public interest in protection of trademarks and the right of publicity, particularly when the party aggrieved by alleged infringement has failed to show a likelihood of success on the merits or that irreparable harm is likely.").

**D.     The injunction sought is overbroad**

The proposed injunction violates the Fed. R. Civ. P. 65(d)(1) requirements

that it "(B) state its terms specifically; and (C) describe in reasonable detail—and

not by referring to the complaint or other document—the act or acts restrained or

required".   It is vague, overbroad, prohibits lawful activity and is not narrowly

tailored to address the harm claimed by Everytown.   *See Starter Corp. v. Converse,*

*Inc.,* 170 F.3d 286, 300 (2d Cir.1999).

**1.     The proposed injunction seeks to broadly prohibit violation**
**of the Lanham Act rather than specific acts of infringement.**

Rather than enjoining the specific use of specific marks, the proposed

injunction simply parrots the language of the Lanham Act, essentially adopting the

form "you shall not violate the law."   Section 1(a) of the requested injunction tracks

the language of the Lanham Act by prohibiting sharing files for producing parts

"bearing the Everytown Marks or *any similar marks likely to cause confusion with*

*the Everytown Marks*…"   (Order, ECF No. 30 at 2.)   Similar language occurs in

Section 2.  *Id.*  In *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 748 & n.10 (2d. Cir.

1994), the Second Circuit vacated similar provisions that would have prohibited

"violating any of Sterling's rights in the trademark and trade name BAYER under

the Lanham Trademark Act, 15 U.S.C. §§ 1051, *et seq*."  The Court noted that,

> Though an injunction that follows the language of the statute at issue
> may be appropriate in some cases where the context clarifies the scope
> of the injunction, we do not think that the instant setting provides the

63

> necessary illumination to sustain these otherwise vague injunctive
> provisions.…requiring Bayer AG to guess—on pain of contempt—at
> what conduct the Lanham Act proscribes is too onerous a burden.

Similarly, here, Defendants would be required to guess, on pain of contempt, whether some future expressive, critical or parodic use of Everytown's marks, elements thereof, or even altered versions thereof, treads too close to the line to be "likely to cause confusion".

While *Sterling* involved two parties that shared rights in the marks at issue in different geographic markets, that is not very different from this case. As the nation's leading gun control organization Everytown is likely to be the target of future parody, criticism and commentary using elements of its trademarks, alterations of its trademarks, or even the marks themselves, in some lawful context. Importantly, as is pointed out above, a party can make use of another party's trademark, *even in a way that creates some possibility for confusion*, when they are engaged in protected free speech. See *Yankee Pub. Inc.*, 809 F. Supp. at 275, 281. Whether future uses of Everytown's marks by the Defendants are *unlawfully* confusing should be decided on the merits of future infringement lawsuits, not in contempt proceedings that potentially carry criminal penalties.

Additionally, the Second Circuit has warned "we have vacated injunctions in other trademark cases that have gone beyond the scope of the issues tried in the case." *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 300 (2d Cir. 1999). In its

allegations, Everytown's emphasizes that "[t]he Defendants are using Everytown's *identical* trademarks without alteration, addition or subtraction." (Memorandum, ECF No. 14 at 13 (emphasis in original).)  If the Court finds likelihood of success on the merits of Everytown's claims, it will be likelihood of success on *this* infringement theory: the use of Everytown's identical marks, without alteration, addition or subtraction.  Everytown should not receive an injunction that goes beyond the scope of the issues on which the Court finds likelihood of success.  The injunction should prohibit the infringement that the Defendants are accused of, which involves the use of Everytown's "identical trademarks, without alteration, addition or subtraction".  See *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) ("Injunctive relief should be narrowly tailored to fit specific legal violations.") (internal citation omitted).

### 2.    The proposed injunction prohibits lawful activity.

The injunction violates the principle that "an injunction should not impose unnecessary burdens on lawful activity."  *Waldman Pub. Corp*, 43 F.3d at 785 (internal citation omitted).

First, Section 2 of the injunction would prohibit "[m]anufacturing, making….offering to sell, selling or otherwise distributing…any product bearing the Everytown Marks or similar marks likely to cause confusion with the Everytown Marks…"  (Order, ECF No. 30 at 2.)  Thus, Section 2 of the requested injunction

would prohibit not just the use of Everytown's marks in connection with files for printing guns and gun parts, it would prohibit the use of Everytown's marks on "any product", even on products where the use of Everytown's marks would be plainly non-confusing, non-tarnishing, and therefore, lawful (e.g., Everytown brand concert cellos or solid rocket boosters).   Again, Everytown's theory is that it has been unlawfully harmed by the presence of its marks in connection with 3D printing files relating to guns.   That is theory on which the Court may find likelihood of success, and so the scope of the injunction should be limited to those products and not expanded to "any product".

Second, the requested injunction would prohibit "manufacturing" or "making" "Infringing Products" which are defined as "gun parts and/or accessories bearing the Everytown Marks".   (Order, ECF No. 30 at 2.)   This would prohibit Defendants from merely placing Everytown's marks on objects that they make themselves.   This sort of internal, non-public facing use of a trademark is not transactional, and not within the scope of the Lanham Act.   *1-800 Contacts, Inc. v. WhenU.Com, Inc*., 414 F.3d 400, 409 (2d Cir. 2005) ("A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a[n] individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods

or services in a manner likely to lead to consumer confusion as to the source of such goods or services.").

Third, the requested injunction would prohibit commerce in gun parts or files for producing gun parts "bearing the Everytown Marks".  "Everytown Marks", as defined in the Order, include unadorned word marks such as EVERYTOWN and MOMS DEMAND ACTION.  Thus, the injunction as requested would prevent obviously non-confusing uses of Everytown's plain word marks for comment and criticism.  Under the injunction, the marks could not be used even if surrounded by language clearly dispelling any association with Everytown such as "Everytown sucks" or "this magazine definitely did not originate with Everytown."  Such prohibitions are overbroad.  See *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010).

Fourth, the requested injunction would require the Defendants to "remove and/or disable any existing webpages offering or otherwise distributing the Infringing Products".  (Order, ECF No. 30 at 2.)  This could be read to require that Defcad take its entire website down.  The "webpages" language in this section of the injunction should be limited to "listings" or "posts" rather than "webpages", so that it does not reach the entirety of webpages, which contain non-infringing content.

**3.     The proposed injunction would impose an obligation on Defcad to seek out infringing activity on its platform.**

While the Complaint does not assert contributory infringement, it is unclear how Defcad, which is a file sharing platform where third parties upload and download files (*See* Complaint, ECF No. 1 at ¶20) can be a direct infringer.  As a service provider, Defcad can only be liable for contributory infringement if it knowingly provides its services to identified infringers - it has no affirmative duty to seek out and police infringing activity on its platform.  *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) ("For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.")  But the requested injunction would impose precisely the sort of extra-legal, affirmative duty rejected in *eBay*.  The requested injunction would order:

> The Restrained Parties shall further be required to remove and/or disable any existing webpages offering or otherwise distributing the Infringing Products to the public, and shall be prohibited from creating any additional listings or Webpages that offer, otherwise distribute, or promote the Infringing Products, and/or any other products that are likely to cause confusion with the Everytown Marks.

(Order, ECF No. 30 at 2-3.)  This language goes well beyond what *eBay* requires of platform providers whose services may be used by direct infringers.  Consistent with *eBay*, Defcad should be required only to remove the specific, identified listings using

Everytown's marks, of which it is aware or is made aware. It should not be required to hunt for infringing listings.

### 4. An injunction based on New York law should be limited to New York.

Even if the Court finds that it has jurisdiction over the Defendants, all of whom are non-residents of New York, if it enters an injunction based on violation of New York law (e.g., the New York dilution statute), it should limit the reach of that injunction to infringing activity taking place within New York. *See Deere & Co.*, 41 F.3d 3 at 46-47 (upholding injunction limited to New York as a matter of comity).

### 5. If the Court enters injunctive relief it should be much narrower.

Rather than the absolute injunction requested by the Plaintiff, the Court should enter a limited injunction requiring the Defendants to display a prominent disclaimer in the listings, in the filenames themselves, or both, to dispel confusion as to source. Such a limited remedy is within the discretion of the Court and has been approved by the Second Circuit. See *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 355 (2d Cir. 1983).

### CONCLUSION AND REQUEST FOR BOND

Defendants respectfully request that this Court deny Plaintiff's motion for a preliminary injunction. Plaintiff is not entitled to this relief for the reasons set forth

above.  If this Court disagrees, Defendants request that Plaintiff be ordered to pay a bond "in an amount that the court [determines] proper to pay the costs and damages sustained [if Defendants are] found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Defendants request that in considering the amount of this bond, the Court consider that it is being asked to restrain political free speech on policy issues of great social importance, something that is at the core of First Amendment, and of great value to both Defendants and the public.

HARTMAN & WINNICKI, P.C.
Attorneys for Defendants


By: s/DANIEL L. SCHMUTTER
DANIEL L. SCHMUTTER


DATED: December 3, 2021