**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EVERYTOWN FOR GUN SAFETY ACTION FUND INC., | Civil Action No: 1:21-cv-8704 |
| Plaintiff, | **TWITTER'S REPLY IN SUPPORT OF MOTION FOR MISCELLANEOUS RELIEF OR IN THE ALTERNATIVE FOR RELIEF UNDER F.R.C.P. 60** |
| v. | |
| DEFCAD, INC.; ODYSEE USER XYEEZYSZN; DEFCAD USER XYEEZYSZN; ODYSEE USER THEGATALOG-PRINTABLEMAGAZINES; THE GATALOG; DEFCAD USER FREEMAN1337; TWITTER USER XYEEZYSZN; PHILLIP ROYSTER. | |
| Defendants. | |

## I.   INTRODUCTION

Twitter asked this Court to modify its November 5, 2021 Order so that Twitter would have the opportunity to raise its concerns about producing information sought by Everytown. Everytown opposed Twitter's request because it claimed it could not pursue this litigation without obtaining identifying information and other expedited discovery from Twitter.  Through counsel, defendants have appeared in this Court, and their identities are known to their counsel. This neutralizes the urgency Everytown has claimed exists, and Everytown cannot explain why exceptional circumstances persist after defendants' appearances. For those reasons, as well as the reasons Twitter already raised in its Motion, this Court should modify the November 5 Order to strike the discovery compelled from Twitter and permit Everytown to serve a Rule 45 subpoena on Twitter for information not obtainable from defendants.

## II.   ARGUMENT

### a.   No Circumstances Justify any Discovery from Nonparty Twitter Absent a Rule 45 Subpoena.

Everytown first argues that Rule 26 authorized it to obtain discovery from a third-party rather than seek that information pursuant to Rule 45.  Rule 26 only authorizes such discovery under exceptional circumstances, which Everytown has not established.

In *Allstar Mktg. Grp., LLC v. allstar_place*, the court rejected the plaintiffs' effort to compel third-party discovery to disclose identifying information of counterfeiters by court order alone. Rather, the court ordered the plaintiff to pursue the information by subpoena, reasoning that third parties should not be put into the position of facing contempt of court for failure to provide information when there was no showing that the third party was "in league with Defendants."  *Allstar Mktg. Grp., LLC*, 2021 WL 5024520, at *2 (S.D.N.Y. Oct. 28, 2021). Twitter requests the same treatment.

1

The cases on which Everytown relies to support its chosen method of discovery all concerned situations where the third party was "in league" or "privity" with the defendants, or was otherwise liable for alleged infringement.  *See* Opp. at 7-8; *Cengage Learning, Inc. v. Doe 1*, 2018 WL2244461, at *1, 6 (S.D.N.Y Jan. 17, 2018) (third-party entities "in active concert or participation" with "anonymous and difficult to identify" defendants); *Institutional Cap. Network, Inc. v. Does # 1-10*, 2021 WL 1164213, at *3 (S.D.N.Y. Mar. 26, 2021) (limited discovery of "documents and records" relating to defendants who had not appeared in litigation and were "cybersquatting" on plaintiff's domain and demanding a ransom from parties enabling the use of the infringing domain name); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (involving the discovery and seizure of assets from financial institutions in a RICO case); *Brainstorm CC, LLC v. Doe 1*, 2020 WL 8267578 at *6 (E.D. Tex. July 21, 2020) (discovery from "companies in privity with defendants"); *Broadway Pine Brands LLC v. Shiro House, et al.*, 2021 WL 5293528, at *7 (W.D. Pa. Mar. 30, 2021) (permitting third party discovery from online storefronts and financial institutions associated with counterfeit sales accounts).[1]

Further, in each of these cases, the plaintiffs faced an immediate risk of financial harm and spoliation including the seizure of assets and infringing goods in the marketplace relevant to potential monetary damages.  *See* Opp. at 7-8; *see e.g. Cengage*, 2018 WL2244461, at *2 (Ongoing sale of counterfeit goods was "likely to deprive Plaintiffs of sales"); *Institutional Cap.*

---

[1] Further, some of these cases do *not* expressly permit any compelled third-party discovery of identifying information by court order alone.  *See Institutional Cap. Network, Inc. v. Does # 1-10*, 2021 WL 1164213 at *2-3 (ordering third parties "providing services in connection with any defendant" to provide "documents and records" relating to defendants, but separately ordering that plaintiff was "permitted to conduct expedited discovery" to obtain defendants' identifying information); *Ayyash*, 233 F.R.D. at 327 (involving only a requested order "permitting expedited discovery" and proposed attachment of unknown assets in a RICO action).

*Network, Inc.*, 2021 WL 1164213, at *1 (defendants cybersquatting and demanding a ransom in exchange for ceasing their infringing activities); *Broadway Pine Brands LLC*, 2021 WL 5293528, at *7 (involving the seizure of funds associated with counterfeit goods in online marketplaces).  No such exigency exists here.

Even in cases where plaintiffs cannot identify defendants through ordinary discovery, courts in this district routinely hold that proceeding by third-party *subpoena* is the proper vehicle for limited discovery.  *Allstar Mktg. Grp., LLC*, 2021 WL 5024520, at *2; *adMarketplace, Inc. v. Tee Support, Inc.*, 2013 WL 4838854, at *2 (S.D.N.Y., Sept. 11, 2013) (permitting third-party discovery by subpoena in a Lanham Act case to identify defendants only after plaintiff attempted through various channels, including hiring an investigator, to identify the relevant parties); *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171–72 (S.D.N.Y. 2012) ("Because Next Phase has alleged a prima facie case of copyright infringement and it cannot identify John Doe 1 without a court-ordered subpoena, the Court agrees that there is good cause to allow for early discovery."); *John Wiley & Sons, Inc. v. John Does 1–22*, 2013 WL 1091315, at *5 (S.D.N.Y. March 15, 2013) (same).  Expedited discovery remains available through this process. *Next Phase*, 284 F.R.D. at 171.

Here, Twitter is not alleged to be in league or participating with the defendants in their alleged misconduct, nor does Everytown claim that Twitter holds any of the defendants' assets or profits that Everytown might some day ask to freeze or recover.  Moreover, the defendants have now appeared and identified themselves to their counsel as of December 3, 2021, claiming responsibility for the online pseudonyms named in the Complaint.  (*See* Defendants' Declarations in Support of Response to Order to Show Cause, Doc. 56-3 ¶ 11, 56-4 ¶ 11, 56-5 ¶ 9, 56-6 (Declaration of Phillip Royster)).  Each anonymous defendant has stated, under penalty

of perjury, that they "agree to be bound by and comply with the orders of whichever federal court" established personal jurisdiction.  (Doc. 56-3 ¶ 12, 56-4 ¶ 12, 56-5 ¶ 10).  Thus, there is no urgency or "pressing need" to pull Twitter into this lawsuit and require it to produce documents without giving Twitter a chance to raise proper objections.

Finally, Everytown did not respond to Twitter's argument that it is not subject to personal jurisdiction in this Court absent a proper subpoena.  *See* Mot. at 7-8.  Without personal jurisdiction, Twitter, a nonparty, cannot be compelled to comply with the discovery request at issue.  *See Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) (collecting cases and stating that a court must have personal jurisdiction over a party to compel compliance with discovery requests).  A Rule 45 subpoena would efficiently resolve this procedural issue.

### b.  Twitter Is Entitled to a Full Showing that Unmasking Is Appropriate.

In response to Twitter's contention that there is no judicial finding that Everytown has satisfied the unmasking factors under *Arista*, Everytown claims the record is adequate to support such a finding.  Opp. at 8-9.  That may be so, but the November 9, 2021 Order addressing defendants' objections to third party discovery plainly does not address each element of the *Arista* test.

Specifically, the November 9 Order states only that "Everytown has alleged a <u>prima</u> <u>facie</u> case of trademark infringement and Plaintiff cannot effectively litigate its claims without obtaining the identities of the infringing parties."  (Doc. 38 at 4).  The Order does not address the remaining three factors, namely, "[the] specificity of the discovery request," "the absence of alternative means to obtain the subpoenaed information," or "the [objecting] party's expectation of privacy" in the context of First Amendment unmasking.  *Arista Records*, 604 F.3d 110 at 119 (2d Cir. 2010); *Bloomberg, L.P. v. John Does 1-4*, 2013 WL 4780036, at *3 (S.D.N.Y. June 26, 2013) (applying the Second Circuit's five factor test in the context of expedited discovery

regarding the defendant's identity).  Courts must consider all five factors to permit plaintiffs to discover the identities of unknown defendants through third-party subpoenas.  *See Next Phase Distribution, Inc. v. Does 1-138,* 2012 WL 691830, at \*2–3 (S.D.N.Y. Mar. 1, 2012) (analyzing each of the five factors); *Malibu Media, LLC v. John Does 1-13*, 2012 WL 1020243, at \*2 (E.D.N.Y. Mar. 26, 2012) ("[T]he Court finds that plaintiff has satisfied all five factors necessary for an order permitting plaintiff to serve third-party subpoenas to discover the identities of the Doe defendants.").

Because the Court has not addressed each *Arista* factor with respect to Twitter's obligation to provide identifying discovery, Twitter should be permitted to raise this objection (and others) through the subpoena process.  But, at the very least, the Court should modify the Nov. 5 Order to address each factor of the unmasking standard.  And, in doing so, the Court should consider that Everytown now has an alternative route to obtain this information, given the recent appearances of each defendant through counsel.  *See Arista Records*, 604 F.3d 110 at 119.

### c.  **Twitter Has Standing to Enforce the First Amendment Rights of its Account Holders.**

Everytown argues that Twitter lacks standing to object to the November 5 Order to enforce defendants' First Amendment rights because it did not demonstrate "a particularized injury to its rights."  *See* Opp. at 10; *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 n.1 (1992). That analysis should take place in the context of a Rule 45 subpoena, not *ex parte*, so a court can consider the First Amendment issues and Twitter's alleged obligation to unmask its account holders.

To start, businesses that provide a forum for speech may assert the First Amendment rights of account holders in opposing requests for information.  *See Enterline v. Pocono Med. Ctr.,* 751 F. Supp. 2d 782, 787 (M.D. Penn. 2008) (a newspaper had standing to assert First

Amendment rights of anonymous posters in its online forums); *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1022 (D. Minn. 2016) (a website has third-party standing to litigate its pseudonymous users' interests in opposing production of their identities); *McVicker v. King*, 266 F.R.D. 92, 97 (W.D. Penn. 2010) (a media company has standing to assert its anonymous bloggers' First Amendment rights in opposing a subpoena).

Further, Twitter faces potential harm if the November 5 Order remains unaltered.  It has an interest in maintaining a uniform response to similar demands for information about account holders. Otherwise, differing and possibly conflicting court orders, obtained *ex parte*, would create a standard of disclosure that would be difficult for Twitter to follow, and it would be impossible for Twitter to accurately advise its account holders when their confidential information might be subject to disclosure.  The inconsistent application of discovery standards has the potential to impact the health of its platform.  *See Enterline*, 751 F. Supp. 2d. at 786 (a newspaper established injury in fact because identifying anonymous online commentators would "compromise the vitality of the newspaper's online forums, sparking reduced reader interest and a corresponding decline in advertising revenues").

Twitter raised other objections plainly demonstrating particularized injury, including that the discovery ordered is overly broad and readily available from defendants, compels Twitter to violate the SCA, and forces Twitter to risk contempt of court without having been heard.

### d.  The Stored Communications Act Protects Content Within the Scope of the November 5 Order.

In response to the merits of Twitter's SCA-related objections, Everytown argues that the November 5 Order does not compel Twitter to breach the SCA because the content sought is either non-content or public information not within the scope of the SCA.  Each argument fails to resolve Twitter's concerns about violating the SCA.

**i.  The November 5 Order Compels Disclosure of Content Protected by the SCA, Which Requires Defendants Seek Such Content from Defendants.**

Everytown's argument does not sufficiently account for the breadth of the third-party discovery in the November 5 Order.  Its own description of the discovery undermines its argument, when it states that it seeks identifying information, complaints about defendants' infringement, and Tweets posted by defendants relating to their infringement.  Opp. at 12. Indeed, the Order Everytown drafted also calls for Twitter to produce "all documents related to the distribution of the Infringing Products," and "any correspondence with the Defendants' seller accounts pertaining to Everytown's notice of infringement."  (Doc. 30 at 3-4).

These categories necessarily include user content and communications and almost certainly implicate content sent or received by account holders through private channels like direct messages, protected Tweets, or Twitter's "report" function by which account holders can flag inappropriate or violative content.  *See* 18 U.S.C. § 2510(12) ("Electronic communication" implicated by the SCA includes "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . .").  The November 5 Order, as drafted, requires Twitter to cull through approximately 35,000 Tweets, while also searching for private communications relating to any infringing product or defendants' "notice" of potential infringement, among other categories.  (Doc. 30 at 3-4).  These latter categories are communications governed by the SCA.  *See Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264–65 (S.D.N.Y. 2008); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008).

Further, Everytown does not address Twitter's argument that the SCA provides no exception permitting civil plaintiffs to obtain user communications from content providers.

*United States v. Pierce*, 785 F.3d 832, 842 (2d Cir. 2015).  Especially now that each defendant has appeared through counsel, claiming ownership and responsibility for each of the online pseudonyms named as a defendant in this case, the SCA requires that Everytown seek the discovery set forth in the November 5 Order from these individual account holders who are parties to the litigation, not Twitter.  *See Pierce*, 785 F.3d at 842; *Suzlon Energy Ltd. V. Microsoft Corp.*, 671 F.3d 726, 731 (9th Cir. 2011).

> ### ii.   Twitter Does Not Have Valid Consent from Defendants to Disclose their Electronic Communications.

Everytown next argues that defendants' publicly posted Tweets are not protected by the SCA because the defendants consented to their disclosure by (1) posting public tweets and (2) agreeing to Twitter's privacy policy.  But again, this argument does not account for the scope of the information sought by Everytown in the November 5 Order.

First, even if public posts do not "fall within the purview of the SCA" as Everytown suggests, Opp. at 12-13, that contention has not been analyzed by this Court, and the November 5 Order requires production of account holders' communications outside the scope of "publicly posted communications."  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 875 (9th Cir. 2002) ("The legislative history of the ECPA suggests that Congress wanted to protect electronic communications that are configured to be private, such as email and private electronic bulletin boards.").  The categories of "any correspondence with Defendants' seller accounts pertaining to Everytown's notice of infringement," "any complaints received related to Defendants' Infringing Products," and "any and all documents related to the distribution of the Infringing Products" could be read to include private direct messages sent by any account holder relating to potential infringement, protected Tweets (that is, Tweets only an accountholder's followers can view), non-public account holder reports relating to defendants' content, and private communications

sent or received through Twitter's platform by defendants.  (Doc. 30 at 3-4).  These communications implicate still other third parties not before the Court. Neither those third parties nor defendants have impliedly consented to the distribution of those communications, and the SCA prohibits Twitter from disclosing them.

Second, Twitter does not have consent from the defendants, or any other user implicated by these requests, to disclose this content.  Agreement to terms of service does not constitute an account holders' consent to disclosure of the defendants' communications.  *See Viacom Int'l Inc.*, 253 F.R.D. at 264-265 (user consent to YouTube's terms of use and privacy policy, including the grant of a world-wide, non-exclusive license to distribute uploaded content, could not be construed as consent to reveal content users intended to share only with selected online recipients).  Each of the cases Everytown relies on for its claim of consent involved disclosure of account holder content to government entities, not civil litigants.  Opp. at 13; *see Rousset v. AT&T Inc.*, 2015 WL 9473821, at *1, 8 (W.D. Tex. Dec. 28, 2015) (adoption of terms of service amounted to consent for Yahoo to monitor and distribute communications to government agencies); *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 497 (S.D.N.Y. 2019) ("In light of the clear languages of these privacy policies, plaintiffs' terms of service appear themselves to establish effective user consent to the possibility that information **will be disclosed to governmental entities**."). Everytown does not show that the defendants have consented under the SCA.

### e.  Defendants' Failure to Cooperate Does Not Justify Imposing Overly Burdensome Discovery Obligations on a Third-Party.

In opposition to Twitter's argument that it and other litigants must d seek the required information from any available source other than nonparty discovery, Everytown contends that

the defendants "have gone to great lengths to oppose the Nov. 5 Order" and "the identities of Defendants are necessary for Everytown to litigate its claims."  Opp. at 13.

If that contention was true in the past, it is no longer true.  The defendants have appeared and identified themselves as the owners of the accounts implicated in this litigation through counsel.  (Docs. 56-3 ¶ 11, 56-4 ¶ 11, 56-5 ¶ 9, 56-6.).  Everytown can and should seek identifying information, as well as user content and documents and records relating to their seller accounts, communications, and infringing products, from the defendants themselves.  *Alcon Vision, LLC v. Allied Vision Group, Inc.*, 2019 WL 4242040, at *2 (S.D.N.Y. Sept. 6, 2019) (a subpoena should be limited or quashed if the plaintiff "can obtain that information from Defendants in the underlying action").

If Everytown still needs information about the defendants' Twitter use, then it should proceed by subpoena.  Everytown cannot justify any other procedure.

## III.    CONCLUSION

For the reasons stated above, Twitter respectfully requests that this Court modify its November 5, 2021 Order to strike the discovery compelled from Twitter.  If the parties to this lawsuit believe they require information from Twitter, they should serve proper nonparty subpoenas under Rule 45.  In the alternative, Twitter requests this Court narrow the scope of discovery compelled by the November 5 Order to comply with the SCA, the First Amendment, and the proper balance of discovery obligations between parties and nonparties.

Dated: December 5, 2021                    THE NORTON LAW FIRM PC

                                    By: */s/ David W. Shaprio*
                                         _____
                                         David W. Shapiro
                                         The Norton Law Firm PC
                                         Attorneys for Twitter, Inc.

                                         David W. Shapiro (NY SBN 2054054)
                                         dshapiro@nortonlaw.com
                                         Fred Norton (CA SBN 224725)
                                         fnorton@nortonlaw.com
                                         *Pro Hac Vice Pending*
                                         Matthew Ohlheiser (PA SBN 324958)
                                         mohlheiser@nortonlaw.com
                                         *Pro Hac Vice Pending*
                                         Gil Walton (CA SBN 324133)
                                         gwalton@nortonlaw.com
                                         *Pro Hac Vice Pending*
                                         THE NORTON LAW FIRM PC

                                         299 Third Street, Suite 200

                                         Oakland, California 94607

                                         Telephone: (510) 906-4900

                                         Facsimile: (510) 906-4910