**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
|  | : |  |
| EVERYTOWN FOR GUN SAFETY ACTION FUND, INC., | : | Civil Action No. 1:21-cv-8704 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
| DEFCAD, INC.; ODYSEE USER XYEEZYSZN; DEFCAD USER XYEEZYSZN; ODYSEE USER THEGATALOG-PRINTABLEMAGAZINES; THE GATALOG; DEFCAD USER FREEMAN1337; TWITTER USER XYEEZYSZN; PHILLIP ROYSTER. | : | |
|  | : |  |
|  | : |  |
|  | : |  |
| Defendants. |  |  |

**REPLY MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................. 1

**RELEVANT FACTS** ............................................................................................ 2

    **a.**    *The Undisputed Facts* ....................................................................... 2

    **b.**    *The Facts in Dispute* ........................................................................ 3

    **c.**    *Relevant Facts Omitted from Defendants' Declarations* ................... 5

**ARGUMENT** ....................................................................................................... 5

    **I.**    **Defendants' Anonymous Declarations Should be Stricken from the Record.** ..................................................................................... 5

    **II.**    **Everytown Has Put Forth Undisputed Evidence Satisfying the Preliminary Injunction Factors and Has Demonstrated a Likelihood of Success.** ....................................................................... 8

        a.    Everytown Is Likely to Succeed on its N.Y. State Dilution Claim, and Distribution of Defendants' Infringing Products Is Not Protected by the First Amendment. ........................... 8

        b.    Defendants' Use is Not Permissible Parody or Non-Commercial Use ........................................................... 9

        c.    Everytown is Likely to Succeed on the Merits of its Lanham Act Claims. ........................................................ 11

        d.    Everytown Is Currently Suffering Irreparable Injury. ............. 25

        e.    The Public Interest and Balance of Harm is in Everytown's Favor. ................................................................................ 26

    **III.**    **Personal Jurisdiction In New York is Proper as to the Defendants.** ..................................................................................... 27

        a.    Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(1) ............ 28

        b.    Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(3)(ii) ....... 35

    **IV.**    **Venue Is Proper in This District.** ....................................................... 40

    **V.**    **The Scope of the Injunction Sought is Narrowly Tailored and Specific to Provide Defendants Notice of Contemptable Conduct.** .......... 43

    **VI.**    **Everytown Should Not Be Required to Post A Bond.** ....................... 45

**CONCLUSION** ................................................................................................. 46

# TABLE OF AUTHORITIES

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,

751 F.3d 796 (7th Cir. 2014) ........................................................................... 41

*Allied Interstate LLC v. Kimmel & Silverman P.C.*,

2013 WL 4245987 (S.D.N.Y. 2013) ................................................................. 10

*Arrow Fastener Co., Inc. v. Stanley Works*,

59 F.3d 384 (2d Cir. 1995) ............................................................................... 12

*Asahi Metal Indus. Co. v. Cal. Super. Ct., Solano Cnty.*,

480 U.S. 102 (1987) .......................................................................................... 37

*Barrow v. Sutton*,

2014 U.S. Dist. LEXIS 94237 (S.D.T.X. July 11, 2014) ................................. 33

*be2 LLC v. Ivanov*,

642 F.3d 555 (7th Cir. 2011) ........................................................................... 41

*Bloomberg, L.P. v. John Does 1-4*,

2013 WL 4780036 (S.D.N.Y. June 26, 2013) ................................................. 40

*Brady v. Anker Innovations Ltd.*,

2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) .................................................... 29

*Brother Records, Inc. v. Jardine*,

318 F.3d 900 (9th Cir. 2003) ........................................................................... 21

*Calder v. Jones*,

465 U.S. 783 (1984) .......................................................................................... 38

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,

334 F.3d 390 (4th Cir. 2003) ........................................................................... 41

*Cartier v. Seah LLC*,

598 F. Supp. 2d 422 (S.D.N.Y. 2009) ............................................................. 30

*Chaiken v. VV Pub. Corp.*,

119 F.3d 1018 (2d Cir. 1997) ........................................................................... 38

*Chloe v. Queen Bee of Beverly Hills, LLC*,

616 F.3d 158 (2d Cir. 2010) ................................................................ 37, 38

*Citigroup Inc. v. City Holding Co.*,

97 F. Supp. 549 (SD.N.Y. 2000) ............................................................ 36

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*,

886 F.2d 490, 494 (2d Cir. 1989) ....................................................... 19, 27

*Coca-Cola Co. v. Gemini Rising, Inc.*,

346 F. Supp. 1183 (E.D.N.Y. 1972) ........................................................ 9

*Cornette v. Graver*,

473 F. Supp. 3d 437 (W.D. Pa. 2020) ..................................................... 27

*D.H. Blair & Co. v. Gottdiener*,

462 F.3d 95 (2d Cir. 2006) ................................................................... 42

*Deere & Co. v. MTD Prods. Inc.*,

41 F.3d 39 (2d Cir. 1994) ...................................................................... 9

*Defense Distributed v. U.S. Dept. of State*,

121 F. Supp. 3d 680 (W.D. Tex. 2015) ................................................... 18

*Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs.*,

21 A.D. 3d 90 (1st Dep't 2005) ......................................................... 29, 30

*Doctor's Assoc., Inc. v. Stuart*,

85 F.3d 975 (2d Cir. 1996) ................................................................... 46

*Doe v. L.A. Unified Sch. Dist.*,

No. 16-cv-00305, 2017 WL 797152 (C.D. Cal. 27, 2017) ............................. 8

*Doe v. Shakur*,

164 F.R.D. 359 (S.D.N.Y. 1996) ............................................................. 7

*Doe v. Weinstein*,

484 F. Supp. 3d 90 (S.D.N.Y. 2020) .................................................... 7, 8

*E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*,

No. 18-cv-3217, 2018 WL 6528496 (S.D.N.Y. Dec. 12, 2018) ...................... 29

iv

*Energy Brands Inc. v. Spiritual Brands, Inc.*,

571 F. Supp. 2d 458 (S.D.N.Y. 2008)............................................................ 29, 33, 37

*EnviroCare Techs., LLC v. Simanovsky*,

2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) .................................. 29, 39, 43

*Franchised Stores of N.Y., Inc. v. Winter*,

394 F.2d 664 (2d Cir. 1968)........................................................................... 23

*Goat Fashion Ltd. v. 1661, Inc.*,

2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020)................................................. 46

*Gucci Shops, Inc. v. R. H. Macy & Co., Inc.*,

446 F. Supp. 838 (S.D.N.Y. 1977) ................................................................. 17, 28

*Guthrie Healthcare Sys. v. Context Media, Inc.*,

826 F.3d 27 (2d Cir. 2016)............................................................................. 13, 44

*Harley–Davidson, Inc. v. Grottanelli*,

164 F.3d 806 (2d Cir. 1999)........................................................................... 10, 16, 28

*Hormel Foods Corp. v. Jim Henson Prod., Inc.*,

73 F.3d 497 (2d Cir. 1996)............................................................................. 11

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,

138 F. Supp. 2d 449 (S.D.N.Y. 2000)............................................................. 29, 38, 40

*Hypnotic Hats, Ltd. v. Wintermantel Enters.*,

2016 WL 7451306 (S.D.N.Y. Dec. 27, 2016) ................................................. 29

*Int'l Information Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*,

823 F.3d 153 (2d Cir. 2016)........................................................................... 21, 22

*Iovate Health Sciences, Inc. v. Masuda*,

No. 08–CV–809, 2009 WL 2878526 (W.D.N.Y. 2009)................................... 33

*ISI Brands, Inc. v. KCC Int'l, Inc.*,

458 F. Supp. 2d 81 (E.D.N.Y. 2006) .............................................................. 32

*Jordache Enters., Inc. v. Hogg Wyld, Ltd.*,

828 F.2d 1482 (10th Cir. 1987) ..................................................................... 14

v

*Kaia Foods, Inc. v. Bellafiore*,

70 F. Supp. 3d 1178 (N.D. Cal. 2014) ................................................. 41

*Kernan v. Kurz-Hastings, Inc.*,

175 F.3d 236 (2d Cir. 1999)................................................................ 39

*KeyView Labs, Inc. v. Barger*,

2020 WL 8224618 (M.D. Fla. Dec. 22, 2020)....................................... 8

*Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*,

411 F.2d 1097 (2d Cir. 1969)............................................................. 13

*King v. Innovation Books*,

976 F.2d 824 (2d Cir. 1992)............................................................... 26

*Kraft General Foods, Inc. v. Allied Old English, Inc.*,

831 F. Supp. 123 (S.D.N.Y. 1993) ..................................................... 46

*Kreutter v. McFadden Oil Corp.*,

71 N.Y. 2d 460 (1988) ...................................................................... 29

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,

811 F.2d 26 (1st Cir. 1987)................................................................ 10

*Lamparello v. Falwell*,

420 F.3d 316 (4th Cir. 2005) ........................................................ 11, 18

*Louis Vuitton Malletier S.A. v. Warner Bors. Entm't, Inc.*,

868 F. Supp. 2d 172 (S.D.N.Y. 2012).................................................. 18

*Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*,

No. 10-cv-1611, 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012).................. 11

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,

156 F. Supp. 3d 425 (S.D.N.Y. 2016).................................................. 19

*Malmsteen v. Cleopatra Records, Inc.*,

2011 U.S. Dist. LEXIS 167853 (S.D.N.Y. Mar. 21, 2011) ...................... 43

*Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*,

988 F. Supp. 404 (S.D.N.Y. 1997) ..................................................... 25

*Mattel, Inc. v. Adventure Apparel,*

No. 00-cv-4085, 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001)............................................ passim

*Mattel, Inc. v. Walking Mountain Prods.,*

353 F.3d 807 (9th Cir. 2003) ...................................................................................... 11

*MetLife, Inc. v. Metro. Nat. Bank,*

388 F. Supp. 2d 223 (S.D.N.Y. 2005)........................................................................... 26

*MGM–Pathe Commc'n v. Pink Panther Patrol,*

774 F. Supp. 869 (S.D.N.Y.1991) ............................................................................... 24

*Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Organization LLC,*

875 F. Supp. 2d 211 (W.D.N.Y. 2012) ............................................................. 32, 33, 41

*N.Y. Marine & Gen, Ins. Co. v. Lafarge N. Am.,*

599 F.3d 102 (2d Cir. 2010).......................................................................................... 42

*Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.,*

2021 WL 3271829 (S.D.N.Y. July 30, 2021) ......................................................... 17, 28

*Nespresso USA, Inc. v. Africa Am. Coffee Trading Co., LLC,*

No. 15-cv-5553, 2016 WL 3162118 (S.D.N.Y. June 2, 2016) .................................... 22

*Newmont Mining Corp. v. Anglogold Ashanti Ltd.,*

344 F. Supp. 3d 724 (S.D.N.Y. 2018)........................................................................... 29

*Nikon, Inc. v. Ikon Corp.,*

803 F. Supp. 910 (S.D.N.Y. Oct. 1992)....................................................................... 13

*Omega SA v. 375 Canal, LLC,*

984 F.3d 244 (2d Cir. 2021).......................................................................................... 44

*People for the Ethical Treatment of Animals v. Doughney,*

263 F.3d 359 (4th Cir. 2001) ....................................................................................... 16

*Pilates, Inc. v. Pilates Inst., Inc.,*

891 F. Supp. 175 (S.D.N.Y. 1995) ............................................................................... 40

*Piper Aircraft Co. v. Reyno,*

454 U.S. 235 (1981)....................................................................................................... 43

vii

*Planned Parenthood Federation of Am., Inc. v. Bucci*,

No. 97-cv-0629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) .................................. 17, 23, 24, 28

*Poof-Slinky, LLC v. A.S. Plastic Toys Co.*,

2020 U.S. Dist. LEXIS 162529 (S.D.N.Y. Sept. 4, 2020) ..................................................... 31, 32

*Protectmarriage.com v. Courage Campaign*,

680 F. Supp. 2d 1225 (E.D. Ca. 2010) ........................................................................................ 18

*Radiance Found., Inc. v. N.A.A.C.P.*,

786 F.3d 316 (4th Cir. 2015) ....................................................................................................... 18

*Rapp v. Fowler*,

No. 21-cv-9586, 2021 WL 1738349 (S.D.N.Y. May 3, 2021) ...................................................... 6

*Rogers v. Grimaldi*,

875 F.2d 994 (2d Cir.1989) ............................................................................................... 15, 18, 20

*Savage Universal Corp. v. Grazier Const., Inc.*,

2004 WL 1824102 (S.D.N.Y. Aug. 13, 2004) ............................................................................. 36

*Schieffelin & Co. v. Jack Co. of Boca*,

850 F. Supp. 232 (S.D.N.Y. 1994) .............................................................................................. 10

*Sealed Plaintiff v. Sealed Defendant*,

537 F.3d 185 (2d Cir. 2008) .......................................................................................................... 6

*Smart Study Co., Ltd. v. A Pleasant Trip Store*,

No. 20 Civ. 1733 (MKV), 2020 WL 2227016 (S.D.N.Y. May 7, 2020) ..................................... 31

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*,

450 F.3d 100 (2d Cir. 2006) ......................................................................................................... 28

*Sony Music Entm't Inc. v. Does 1-40*,

326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................................... 35, 40

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,

588 F.3d 97 (2d Cir. 2009) ........................................................................................................... 19

*Starmedia Network, Inc. v. Star Media, Inc.*,

2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. Apr. 24, 2001) ........................................................ 36, 37

*Starter Corp. v. Converse, Inc.*,
170 F.3d 286 (2d Cir. 1999) .................................................................. 45

*Sterling Drug, Inc. v. Bayer AG*,
14 F.3d 733 (2d Cir. 1994) .................................................................... 45

*Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*,
923 F. Supp. 1077 (S.D.N.Y. 1993) ....................................................... 12

*Tecnimed SRL v. Kidz-Med, Inc.*,
763 F. Supp. 2d 395 (S.D.N.Y. Jan. 18, 2011) ...................................... 46

*The Cousteau Society, Inc. v. Cousteau*,
498 F. Supp. 3d 287 (D. Conn. 2020) .................................................... 33

*The Sports Auth., Inc. v. Prime Hospitality Corp.*,
89 F.3d 955 (2d Cir.1996) ..................................................................... 13

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F. Supp. 2d 463 (S.D.N.Y. 2008) .................................................... 10

*Tommy Hilfiger Licensing, Inc., v. Nature Labs, LLC*,
221 F. Supp. 2d (S.D.N.Y. Aug. 13, 2002) ........................................... 14

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d. Cir. 2003) ................................................................. 41

*Two Hands IP LLC v. Two Hands America, Inc.*,
2021 WL 4437975 (S.D.N.Y. Sept. 28, 2021) ....................................... 26

*United We Stand Am., Inc., v. United We Stand, Am. N.Y., Inc.*,
128 F.3d 86 (2d Cir. 1997) ......................................................... 10, 23, 24

*Victorinox AG v. B&F Sys, Inc.*,
709 Fed. App'x 44 (2d Cir. 2017) ......................................................... 44

*Victorinox AG v. B&F Sys., Inc.*,
No. 13-cv-4534 [ECF. 169] (S.D.N.Y. December 20, 2017) .................. 44

*VIP Prods LLC v. Jack Daniel's Props., Inc.*,
953 F.3d 1170 (9th Cir. 2020) ............................................................... 18

ix

*Walden v. Fiore*,

571 U.S. 277 (2014)......................................................................................... 39

*Waldman Pub. Corp. v. Landoll, Inc.*,

43 F.3d 775 (2d Cir. 1994)................................................................................ 45

*Ward v. Rhode*,

544 Fed. App'x 349 (5th Cir. 2013) ................................................................. 33

*Wildwood Imps. v. M/V Zim Shanghai*,

No. 04-CV-5538, 2005 U.S. Dist. LEXIS 2736, 2005 WL 425490 (S.D.N.Y. Feb. 20, 2005) ... 42

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,

809 F. Supp. 267 (S.D.N.Y. 1992) .............................................................. 11, 15, 17

**Statutes**

15 U.S.C. § 1114(a)(a) ..................................................................................... 24

15 U.S.C. § 1127................................................................................................ 23

28 U.S.C. § 1391(b)(2) ..................................................................................... 40

28 U.S.C. § 1746................................................................................................. 8

**Other Authorities**

H. R. Rep. No. 374, 104th Cong., 1st Sess. 3, reprinted in 1995 U.S.C.C.A.N. 1029, 1030)........ 9

Moms Demand Action, *Moms Demand Action Finds New Ways to Encourage Secure Gun Storage Around the* Country, https://momsdemandaction.org/moms-demand-action-finds-new-ways-to-encourage-secure-gun-storage-around-the-country/ (last accessed Dec. 8, 2021) ..... 14

Monetization of Content, https://odysee.com/@OdyseeHelp:b/Monetization-of-Content:3 (last accessed Dec. 6, 2021).............................................................................................. 34

World Intellectual Property Organization, Class 9,  Nice Classification (Nov. 23, 2021), https://www.wipo.int/classifications/nice/nclpub/en/fr/?basic_numbers=show&class_number=9&explanatory_notes=show&lang=en&menulang=en&mode=flat&notion=&pagination=no&version=20210101 (last accessed Dec. 10, 2021).................................................................. 24

**Treatises**

McCarthy on Trademarks & Unfair Competition, § 23:11 (5th Ed.) ............................... 21, 23, 27

**Regulations**

C.P.L.R. § 302(a)(3) ......................................................................................... 36

## INTRODUCTION

Plaintiff Everytown for Gun Safety Action Fund, Inc. ("Everytown") submits this Reply in response to Defendants' Opposition. Defendants should be enjoined from their unlawful conduct because (1) Everytown has put forth sworn evidence sufficient to satisfy all elements of injunctive relief; (2) the Court has personal jurisdiction over them such that injunctive relief is proper; and (3) venue is proper in this judicial district.

Defendants do not dispute that Everytown has valid protectable rights to the Everytown Marks or that Defendants have used the Everytown Marks in promotion and distribution of Infringing Products without Everytown's consent. Instead, Defendants argue that their promotion and distribution of Infringing Products bearing the Everytown Marks, in exchange for payment, is shielded by the First Amendment as parody. However, the law is clear that Defendants' use of the Everytown Marks as a source identifier without any modification is not parody, as it does not communicate a clear and immediate message that the products are not Everytown's or are not otherwise approved or endorsed by Everytown. Further, Defendants have already admitted that their intent was aimed at "disparag[ing]" Everytown and the Everytown Marks – the exact sort of conduct prohibited by anti-dilution law.

Personal jurisdiction and venue are proper with this Court because Defendants have promoted, advertised, and distributed the Infringing Products on the Internet to New York consumers. Defendants have entirely failed to meet their burden for any request to transfer, particularly since multiple declarations of the Defendants are anonymous, and do not comport with 28 U.S.C. § 1746, as they cannot be held to their statements under penalty of perjury.

Defendants' conduct demonstrates that unless enjoined by this Court, they will continue to engage in their unlawful acts aimed at "disparag[ing]" Everytown and the Everytown Marks.

1

The injunction requested by Everytown is narrowly tailored to the claims of this case, warranted to prevent continued irreparable harm from occurring, and respectfully should be granted.

**RELEVANT FACTS**

      **a.**  *The Undisputed Facts*

Defendants do not dispute the *prima facie* evidence of the validity and strength of the registered Everytown Marks and acknowledge that "Everytown's marks are unquestionably strong . . . ." Everytown Memorandum of Law in Support of Application for Order to Show Cause ("Memo") at *4-5; Opp. at *46.

Defendants do not dispute that they used the Everytown Marks on the Infringing Products by offering and distributing them online using the marks in the product listings, product descriptions, file names, and within the actual files. Memo. at *7-8. The Defendants do not dispute the authenticity of the screenshots Everytown submitted. *Id.*; Opp. at *41-42. Defendants do not dispute that the Infringing Products and 3-D printing instructions for firearm parts are available on various websites, including [www.odysee.com](www.odysee.com) ("Odysee") and [www.defcad.com](www.defcad.com) ("Defcad"). Memo. at *6.

Defendants do not dispute that the Infringing Products were available to the public for download; were downloaded by New York residents from Odysee; a New York resident's credit card was charged by Defcad for a subscription; or that the Infringing Products were advertised, and viewable to the public, including New York consumers in New York. *See* Declaration of Delia Green (ECF 16) ("Green Decl."), ¶¶ 4, 5, 8-14, 20, 21-26, 29, 30-31, Exs. A-B, E-G.

Defendants do not dispute that firearm parts and accessories printed using Defendants' files are illegal in New York and other states on their own (high-capacity magazines) and when combined with other parts (to make assault weapons), and that Everytown would not want to be

associated with Defendants' misbranded high-capacity magazines, assault weapons, and ghost guns. *Id.* at *8-9, 15.

### b. *The Facts in Dispute*

Defendants dispute that they received money in exchange for their files. Opp. at *55. This is false and contradicted by the screenshots and sworn statements made within Everytown's Application. The Infringing Products on Defcad's platform are "sold" to consumers through fees required to access those files, namely a fee for the individual file *in addition to* the subscription fee that users must pay to access the full Defcad.com website. *See, e.g.*, Green Decl. ¶¶ 6, 30-31; Reply Declaration of Delia Green simultaneously filed ("Green Reply Decl."), at ¶¶ 17-25, Exs. B-C. For example, Defendant Defcad User xYeezySZN's Infringing Product advertising and displaying the "MOMS DEMAND ACTION" trademark is available to New York consumers for sale on defcad.com for $11.00. *See Id.* ¶¶ 23-25, Ex. C (fee added when put in user's cart):



Defendants are also compensated for their Infringing Products on Odysee where they receive monetary incentives in the form of "tips." *See* Green Decl. Ex. A, and E[1]:



*Id.* A, and E. Indeed, since this action was filed, Odysee User theGatalog-PrintableMagazines has earned additional compensation from the Infringing Products. *See* Green Reply Dec. ¶ 40.

Defendants' contention that Defcad, Inc. does not "engage in advertising targeted to New York" (Declaration of Cody Wilson ("Wilson Decl.") (ECF 56-1), at ¶ 5) is also untrue. Defcad sends newsletters including a "monthly recap featuring curated lists of files" to users via email, including to users in New York. *See* Green Reply Dec. ¶¶ 26-30, Ex. D. Defcad sends advertising emails to New York residents after subscribing to the site. *Id.* (emails sent to New York resident from Defcad).

---

[1] *See also* Monetization of Content, https://odysee.com/@OdyseeHelp:b/Monetization-of-Content:3 (last accessed Dec. 6, 2021) (discussing monetization of content).

Although Defcad maintains it "has a policy to not provide files to individuals known or suspected to reside in New York, by any method" (Wilson Decl., at ¶ 6), such policy is nowhere to be found on Defcad's website. *See* Green Reply Dec. ¶¶ 7-14, Ex. A. In reality, Defcad charged a New York resident's credit card associated with a New York address, and received a New York state driver's license and other information to charge for the subscription. *Id.* ¶¶ 15-22, Ex. B. After charging the subscription fee, Defcad does not notify New York subscribers that it does not provide goods or services to New York residents. *Id.* The subscriber in this case, Ms. Green, was physically present in New York while paying the subscription fee and viewing and accessing the listings for the Infringing Products, and is a resident of New York. *Id.*

### c. *Relevant Facts Omitted from Defendants' Declarations*

Defendants have conspicuously omitted crucial facts from their anonymous declarations. For example, Defendants have not confirmed if (1) Philip Royster is in fact the owner/operator of Defendants Odysee User xYeezySZN, Defcad User xYeezySZN, and Twitter User xYeezySZN; (2) if The Gatalog is the owner/operator of the Defendant Odysee User theGatalog-PrintableMagazines; or (3) if Defendant Defcad User Freeman1337 is owned/operated by any of the other Defendants in this case. Defcad also remains silent as to whether (1) it is/was a registered domestic Delaware corporation (file number 5296872); (2) it charged a New York resident for a subscription; (3) it refunded the funds collected from a New York resident for the subscription; or (4) it revoked the subscription as a result of the subscriber being a resident of New York. These facts are relevant to various issues, including jurisdiction.

### ARGUMENT

### I.   **Defendants' Anonymous Declarations Should be Stricken from the Record.**

Defendants' anonymous declarations (ECF Nos. 56-3, 56-4, 56-5) ("Anonymous

Declarations") should be stricken because proceeding anonymously is in direct contravention of the Court's November 5 Order ("Nov. 5 Order") (ECF 30), Defendants did not seek leave of Court to proceed anonymously, and the Anonymous Declarations do not allow the Court to hold the declarants to statements made under "penalty of perjury" as required by 28 U.S.C. § 1746.

*First*, the Anonymous Declarations should not be considered as the Court's Nov. 5 Order already required Defcad to disclose the identities of the Defendants. Defcad has not complied. The Court's Nov. 5 Order required that their identities be disclosed, and the Second Circuit upheld that Order on appeal. *See* 21-2806 [ECF 44] (denying Mandamus Writ).

*Second*, Defendants have not sought leave of Court to proceed anonymously and fail to meet the requirements to so proceed. *See Rapp v. Fowler*, No. 21-cv-9586, 2021 WL 1738349, at *3 (S.D.N.Y. May 3, 2021) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008)) (denying request to proceed anonymously, and evaluating factors enumerated by Second Circuit pertaining to the inquiry).[2] Here, if considered, the factors do not support anonymous proceeding as the Defendants are not minors, the claims do not involve matters that are highly sensitive and of a personal nature (*e.g.,* sexual assault), and allowing Defendants to remain anonymous would severely prejudice Everytown, which would not be able to enforce an injunction against anonymous individuals. Indeed, certain Defendants appear to have already

---

[2] Among the factors analyzed are whether (1) the litigation involves matters of highly sensitive and a personal nature; (2) identification poses a risk of retaliatory physical or mental harm; (3) whether the identification presents other harms; (4) the individual is particularly vulnerable to harms, particularly in light of age; (5) the suit is challenging the actions of the government or that of private parties; (6) the defendant is prejudiced by proceeding anonymously; (7) the individual's identity has thus far been kept confidential; (8) public's interest in the litigation is furthered by disclosure; (9) because of the purely legal nature of the issues presented the public has a weak interest in knowing the litigant's identities; and (10) alternative mechanisms for protecting the confidentiality of the individual. *Rapp,* 2021 WL 1738349, at *3.

spoliated evidence and deleted Internet activity in response to receiving notice of this lawsuit. Green Reply Dec. ¶¶ 41-64.  Everytown cannot verify their identities to ensure compliance with future Court orders.

Moreover, Philip Royster's conduct online through Defendants Defcad User xYeezySZN, Twitter User xYeezySZN, and Odysee User xYeezySZN was not confidential, which disfavors proceeding anonymously. Mr. Royster's name appeared on a PayPal account connected to Twitter User xYeezySZN on or around the time of filing this action. *See id.* ¶¶ 41-52; Declaration of Erin Galloway, at ¶ 32-34. Defendants Defcad User xYeezySZN, Twitter User xYeezySZN, and Odysee User xYeezySZN all share the same identifier and appear to be related to Mr. Royster. Yet they submitted anonymous declarations, while Mr. Royster submitted a declaration that fails to refute the connection between the Defendants operating under his same username.

Defendant The Gatalog has given no reason that it should be entitled to the extraordinary relief of remaining anonymous, stating only "that anonymity is important because it provides protection from retaliation and vindictive behavior as a result of unfavored and unpopular viewpoints." The Gatalog Decl. ¶ 4. Such claim is insufficient and in contravention of Fed. R. Civ. P. 10. "[C]laims of public humiliation and embarrassment" due to "significant media attention.... are not sufficient grounds for allowing a plaintiff in a civil suit to proceed anonymously."[3]

---

[3] *Doe v. Shakur*, 164 F.R.D. 359, 361-62 (S.D.N.Y. 1996) (denying motion brought by woman who alleged that rapper Tupac Shakur assaulted her despite the media attention the case was likely to attract); *see also Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) (denying motion by woman who alleged that movie producer Harvey Weinstein assaulted her despite that Weinstein's "notoriety" was likely to cause significant media attention).

Defcad User Freeman's vague alleged threats, unspecified in time, unspecified as to these platforms or others, and unspecified in relation to 3-D printing of guns are insufficient for the same reason. *See, e.g.*, *Weinstein*, 484 F. Supp. 3d at 94-95.

*Third*, the Anonymous Declarations fail to satisfy the requirements of 28 U.S.C. § 1746, which "requires that unsworn declarations be signed by the declarant under penalty of perjury." *Doe v. L.A. Unified Sch. Dist.*, No. 16-cv-00305, 2017 WL 797152, at *9 (C.D. Cal. 27, 2017) (citing 28 U.S.C. § 1746). "Without any record whatsoever of a witness's identity or their signature, a declarant cannot be held to their statements under 'penalty of perjury.'" *Id.* (rejecting anonymous declarations offered in support of an opposition); *KeyView Labs, Inc. v. Barger*, 20-cv-2131, 2020 WL 8224618, at *6 (M.D. Fla. Dec. 22, 2020), *adp't* 2021 WL 510295 (M.D. Fla. Feb. 11, 2021) (rejecting anonymous declaration in preliminary injunction context).[4]

## II. Everytown Has Put Forth Undisputed Evidence Satisfying the Preliminary Injunction Factors and Has Demonstrated a Likelihood of Success.

### a. Everytown Is Likely to Succeed on its N.Y. State Dilution Claim, and Distribution of Defendants' Infringing Products Is Not Protected by the First Amendment.

Defendants do not challenge Everytown's evidence in support of its New York law tarnishment claim under § 360–l (Memo. at *18-19) and admit the Everytown marks are famous and strong. *See* Opp. at 46 ("Everytown's marks are unquestionably strong."). In fact, Defendants have already admitted that their use of the Everytown Marks was intended to "disparage" Everytown, thus harming Everytown's reputation. *See* Defendants' Writ of Mandamus, 21-2806, 1 at *5.

---

[4] Everytown notes that the declaration submitted purportedly on behalf of Defcad User Freeman1337 is not even dated.

Preventing "disparagement" is exactly what anti-dilution laws seek to do. *See, e.g.*, H. R. Rep. No. 104-374, at 2 (1995), *reprinted in* 1995 U.S.C.C.A.N. 1029, 1030) (discussing how federal anti-dilution statute "protect[s] famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it...."). Tarnishment "arises when the plaintiff's trademark is linked to products of shoddy quality or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Deere & Co. v. MTD Prods. Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (describing tarnishment as occurring under New York law in situations where a distinctive mark is depicted in a context of sexual activity, obscenity, or illegal activity).

Defendants also do not contest that their use of the Everytown Marks on the Infringing Products will cause the Everytown Marks to suffer negative reputational associations by linking Everytown to high-capacity magazines, assault weapons, and ghost guns, which are illegal in New York and other states. *See* Memo. at *19-20; *see also Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183 (E.D.N.Y. 1972) (finding tarnishment and enjoining defendant where "Enjoy Cocaine" was found to be unsavory). Associating a brand owner's marks with criminal, unsavory, and unpopular activities constitutes dilution by tarnishment. *See Deere & Co.*, 41 F.3d at 43-44. Defendants have not disputed that the parts made from their files are illegal in New York and other states both on their own (high-capacity magazines) and when combined with other parts (to make assault weapons). Writ of Mandamus, 21-2806, ECF 1, at *5. Everytown has met all elements of its New York General Business Law § 360–l claim.

> **b.  Defendants' Use is Not Permissible Parody or Non-Commercial Use.**

Defendants argue that their use of the Everytown Marks is permissible parody or non-commercial use. However, Defendants are using the Everytown Marks as a source identifier, in

exchange for funds and advertising, marketing and distributing them in connection with their own Infringing Products, not the products of Everytown. This is not permissible parody or non-commercial use. *See* Memo. at \*16, n.6; *United We Stand Am., Inc., v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 93 (2d Cir. 1997); *Schieffelin & Co. v. Jack Co. of Boca*, 850 F. Supp. 232, 249 n. 9 (S.D.N.Y. 1994).

The cases cited by Defendants in support of the parody argument are inapposite. In *Allied Interstate LLC v. Kimmel & Silverman P.C.*, 12-cv-4204, 2013 WL 4245987 (S.D.N.Y. 2013), the defendant used the "Allied Interstate" mark within its website to ask prospective customers if "Allied Interstate" had contacted them, and to click a link to "stop Allied Interstate Debt Harassment." The defendants were not advertising or distributing their own "Allied Interstate" products. Here, Defendants are not discussing or offering authentic "Everytown" 3-D downloadable products, but are marketing their own products branded with the Everytown Marks as source identifiers in the product listings, on the website landing pages, and in the software files that allow printing of actual firearm parts and accessories displaying the Everytown Marks on finished guns. Their conduct is in flagrant violation of Section 360–l. *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 523,525, (S.D.N.Y. 2008) is similarly inapposite as the defendants were marketing authentic Tiffany goods and describing them as "Tiffany" goods.

Defendants also cite to *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811, F.2d 26, 32 (1st Cir. 1987), which does not pertain to New York General Business Law § 360–l. In *L.L. Bean*, the court found parody and expressive speech where the defendant's use of a mark occurred within a magazine article, was prominently labeled as "humor" and "parody," and the trademark was not

used to "identify or promote goods or services to consumers" because it *was not for sale*. Such facts are entirely absent here.

### c.   Everytown is Likely to Succeed on the Merits of its Lanham Act Claims.

Defendants do not dispute that the Everytown Marks are valid and protectable, and that Defendants used the Everytown Marks without Everytown's consent. In arguing against the remaining element, whether Defendants' Infringing Products are likely to cause confusion with the Everytown Marks, Defendants overstep in their analysis of the *Polaroid* factors and their reliance on *Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F. Supp. 267, 75 (S.D.N.Y. 1992).

### i.   The Polaroid Factors Weigh in Everytown's Favor.

**Strength of Mark.** Defendants admit that Everytown's marks are "unquestionably strong." Opp. at 46. The cases cited by Defendants relating to the strength of the mark factor, *Hormel Foods Corp. v. Jim Henson Product, Inc.*, 73 F.3d 497, 503 (2d Cir. 1996), *Lamparello v. Falwell*, 420 F.3d 309, 315 (4th Cir. 2005), and *Mattel, Inc. v. Walking Mt. Prods.*, 353 F.3d 807 (9th Cir. 2003), are not applicable. They "involve over-the-top, unmistakable parodies of an original," where multiple differences and modifications to the mark, coloring, and/or content were made along with labeling the alleged parody as "satire." *See Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10-cv-1611, 2012 WL 1022247, at *20 (S.D.N.Y. Mar. 22, 2012) (distinguishing *Hormel*, among other cases).

Where, as here, an alleged parodic use of a mark is not "obviously different" "and the 'jest or commentary' reflected in the marks' use is less apparent than" an over-the-top parody, the strength of the mark does not weigh against a movant. *See, e.g.*, *Louis Vuitton Malletier, S.A.*, 2012 WL 1022247, at *21 (discussing *Yankee Publishing* and distinguishing the case). Since

Defendants' use of the identical Everytown Marks on the Infringing Products is not clear parody (or a parody at all), the strength of the Everytown Marks weighs in Everytown's favor.

**Proximity of the Goods.** Defendants argue that because Everytown and the Defendants are not "competitors," the goods are not proximate. Opp. at *49. Products do not need to compete with one another to be proximate. *See Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 396 (2d Cir. 1995). The proximity of the marks factor was "specifically designed for a case like this one, in which the secondary user is not in direct competition with the prior user but is selling a somewhat different product or service." *Virgin Enters. v. Nawab,* 335 F.3d 141, at 149-51 (2d Cir. 2003). Since the public can (mis)interpret gun parts and accessories printed from Defendants' downloadable files in the field of guns using the Everytown Marks as being from the same source as Everytown, the proximity factor weighs in Everytown's favor. *Id.*

**Similarity of the Marks**. Defendants do not dispute that they are using Everytown's *identical* trademarks without alteration, addition, or subtraction. Opp. at *47-48. Instead, they argue that the coloration of the font used and the background website colors negate their wholesale identical use of the entirety of the Everytown Marks. The vast majority of the Everytown Marks are not registered as to any specific font or color, and as such Defendants' contention that their use of the Everytown Marks in a different font or color is dissimilar ignores the context of Everytown's trademark registrations. *See* Ballard, Ex. 1 (registration certificates). Further where a defendant uses an identical mark, this factor can favor the movant even where there are lettering and stylistic differences and the products are not identical. *See Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1086 (S.D.N.Y. 1993) (finding similarity of "Miracle Gro" for plant food product and "Miracle Gro" for hair care product where "lettering and stylistic differences between the marks" were present to weigh in

favor of movant). Likewise, where a title of a good, even one arguably in an expressive work, overlaps with the movant's mark and contains the movant's mark, courts have found marks similar. *See Tri-Star Pictures, Inc.*, 14 F. Supp. 2d at 355 (finding "The Bridge on the River Kwai," and "River Kwai" in the title of a motion picture similar). This factor strongly favors Everytown.

**Actual Confusion**. Courts have repeatedly found "actual confusion is very difficult to prove and [the Lanham Act] requires only a likelihood of confusion as to source."[5] "[T]he absence of evidence of actual confusion does not necessarily prove anything, especially when there has been neither long nor significant experience of the two trademarks operating side-by-side in the same market." *Guthrie Healthcare Sys. v. Context Media, Inc.*, 826 F.3d 27, 44 (2d Cir. 2016). The case cited by Defendants, *Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 921 (S.D.N.Y. 1992), is not analogous, as the marks at issue in that case co-existed in the marketplace for *five years*. This factor should be neutral.

**Defendants' Bad Faith.** The bad faith prong considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir.1996) (quotation marks omitted). Defendants assert, in unsworn declarations, that they acted in good faith to engage in "mockery" of Everytown, but they are not actually engaging in parody as explained below. *See* Opp. at 52. Further, bad faith can be demonstrated by a showing of actual or constructive knowledge of the prior user's mark. Memo.

---

[5] *Lois Sportswear*, *U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986); *accord Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 170-71 (2d Cir. 1991).

at *14. Where the infringing marks are identical, defendant has the burden to persuade the court that there is a credible innocent explanation. *See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1101 (2d Cir. 1969). Where a defendant receives notice of a party's rights to a trademark, but continues the infringing conduct anyway, courts have found bad faith. Memo at *14. The cases cited by Defendants, *Tommy Hilfiger Licensing, Inc*., *v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 417-18 (S.D.N.Y. 2002), and *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1483-84 (10th Cir. 1987), are inapposite, as the defendants' alleged conduct involved use of modified marks that clearly conveyed parody. In *Jordache*, the two marks at issue were JORDACHE, and LARDASHE in connection with a pig logo design for jeans for "larger women." Such difference produced a successful parody, which relied "upon a difference from the original mark . . . in order to produce its desired effect." 828 F.2d at 1486 (noting "[o]f course, a parody of an existing trademark can cause a likelihood of confusion. For example, where two marks are confusingly similar… a likelihood of confusion can exist despite the intent to create a parody.").  Likewise, in *Tommy Hilfiger*, the use of Timmy Holedigger for pet perfume was a clear parody.

**Bridging the Gap**. Despite Defendants' assertions, Everytown engages in gun safety advocacy and could conceivably endorse a particular firearm safety mechanism or safety accessory in the future because Everytown is not anti-gun, but pro-gun safety. *See* McTighe Decl. ¶ 13. Further, firearm safety devices have previously been discussed and distributed in connection with Everytown's rallies and events.[6] The firearm parts and accessories made using

---

[6] *See, e.g.*, Moms Demand Action, *Moms Demand Action Finds New Ways to Encourage Secure Gun Storage Around the* Country, https://momsdemandaction.org/moms-demand-action-finds-

Defendants' Infringing Products also may not look like traditional firearms parts or accessories to many, and may actually confuse the public into believing they are some sort of firearm safety mechanisms. *See* Compl. ¶ 118, 123, Ex. 5 (depicting 3-D printed firearms bearing the Everytown Marks in red, white and blue color scheme).  Accordingly, Defendants' assertions that Everytown is doing nothing more than "speculative musing" is unfounded. Opp. at *50.

**The Quality of Defendants' Goods.** Where a defendant's goods and/or services are associated with potential illegal activity, this *Polaroid* factor weighs in favor of the movant. *See* Memo. at *14-15. Defendants' argument that this factor is neutral ignores Everytown's arguments and the case law. This factor heavily favors Everytown.

**Customer Sophistication**. The Defendants cite no record facts and no case law disputing Everytown's assertion that Defendants' Infringing Products are inexpensive (a small subscription fee, or tips in some instances), and available to anyone who comes across them on the internet, which makes confusion more likely. Memo. at *14.

Given that all the *Polaroid* factors either weigh in Everytown's favor or are neutral, and Defendants have not contested that Everytown has rights to the Everytown Marks or that the Defendants' have used the Everytown Marks without authorization, Everytown is likely to succeed on the merits of its Lanham Act claims.

### ii. Defendants' Infringing Products Are Not Protected by Parody or the First Amendment Such That an Injunction Is Improper.

As the case law cited by the Defendants makes clear: "[f]ree speech rights do not extend to labelling or advertising products in a manner that conflicts with the trademark rights of others.

---

new-ways-to-encourage-secure-gun-storage-around-the-country/ (last accessed Dec. 8, 2021) (discussing how volunteers assisted with distributing gun locks to nurses among other actions).

In these circumstances, the exclusive right guaranteed by the trademark law is generally superior to the general free speech rights of others." *See Yankee Pub.*, 809 F. Supp. at 275 (citing *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir.1989)). "When another's trademark (or a confusingly similar mark) is used without permission for the purpose of source identification, the trademark law generally prevails over the First Amendment." *See Yankee Pub. Inc.*, 809 F. Supp. at 276. That is exactly that the Defendants have done here – they have used the Everytown Marks as source identifiers to label their products as from "Everytown" and advertised the products as "Everytown" products. Where a "mark is being used at least in part to promote a somewhat non-expressive, commercial product, the First Amendment does not extend to such use, or to the extent that it does, the balance tips in favor of allowing trademark recovery, if in fact consumers are likely to be confused."[7] "The heart of any parodist's claim…is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's work…The comment must have some 'critical bearing on the substance or style of the original composition.'" *Harley Davidson, Inc.*, 164 F.3d at 812-13 (rejecting parody defense where defendants made no comment on mark and "simply use[d] it somewhat humorously to promote his own products and services"); *see also People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359,366 (4th Cir. 2001) (rejecting parody where defendant simply copied "PETA's Mark, conveying the message that it is related to PETA" where defendant's use did "not convey the second, contradictory message needed to establish a parody—a message that the domain name is not related to PETA, but that it is a parody of PETA").

---

[7] *See Harley–Davidson, Inc.*, 164 F.3d at 812–13; *United We Stand Am., Inc.*, 128 F.3d at 93; *Schieffelin & Co.*, 850 F. Supp. at 249 n. 9.

Defendants' use of the identical Everytown Marks as source identifiers without any additions, subtractions, commentary, or other prominent source identifiers falls woefully short of such requirements and cannot be considered parody particularly where Defendants' Infringing Products are commercial in nature and are being exchanged for monetary compensation. Courts have rejected parody arguments when presented with similar scenarios. *See e.g., Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, No. 20-cv-7269, 2021 WL 3271829, at *5 (S.D.N.Y. July 30, 2021) (rejecting parody defense because "a secondary work that simply appropriates material from an existing work without directing its criticism at the copied work itself is not parody") (internal citation omitted)); *Gucci Shops, Inc. v. R. H. Macy & Co., Inc.,* 446 F. Supp. 838, 839-40 (S.D.N.Y. 1977) (granting preliminary injunction and rejecting parody defense because "[t]he fact that the offending product was intended only as a joke [was] of no consequence," when except for the addition of the letter "H," Defendant's use of the GUCCHI GOO mark was identical to Plaintiff's registered GUCCI mark); *Planned Parenthood Federation of Am., Inc. v. Bucci*, No. 97-cv-0629, 1997 WL 133313, at *8 (S.D.N.Y. Mar. 24, 1997) (rejecting parody argument and granting preliminary injunction where defendant, who ideologically opposed Planned Parenthood's mission and sought to present opposing viewpoint used domain name "plannedparenthood.com," because plaintiff's PLANNED PARENTHOOD Mark and the domain name used by Defendant were "nearly identical"). Defendants do not distinguish any of the cases where Courts have rejected parody defenses from their use of the Everytown Marks.

In contrast, **all** of the cases relied upon by the Defendants are easily distinguishable from the Defendants' conduct in this case. *Yankee Publishing* concerned a trade dress dispute involving the "The Old Farmer's Almanac" trade dress being parodied on the cover of *New York*

17

Magazine, where the magazine featured "New York" prominently in the magazine's bold usual font on the cover and did not mention the word "Almanac" at all, among other differences in the trade dress.[8] Likewise, *Rogers* is distinguishable as involving the title of an "artistic work" – a movie – that did not use the entirety of the movant's asserted trademarks.[9] *Louis Vuitton Malletier S.A. v. Warner Bors. Entm't, Inc.,* 868 F. Supp. 2d 172, 174-75, 78 (S.D.N.Y. 2012), is even further removed from Defendants' use of the Everytown Marks, as the challenged trademark use did not appear on the product or title of the work, but concerned the use of a look-a-like bag within the movie itself. Defendants' remaining cited cases are similarly inapposite.[10] Accordingly, Defendants' efforts to claim the First Amendment somehow shields them from

---

[8] Everytown disputes Defendants' representation that *Yankee Publishing* supplied a definition of "an expressive work." Opp. at *45.

[9] Defendants' efforts to label their Infringing Products as "expressive" fails because there is no comparison to traditional "artistic works" like movies and books as contemplated within *Rogers*, 875 F.2d at 1000 (discussing the difference between "artistic works" and "the names of ordinary commercial products," explaining that "[s]ince consumers expect an ordinary product to be what the name says it is, we apply the Lanham Act with some rigor to prohibit names that misdescribe such goods").

[10] *See, e.g.*, *VIP Prods LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1175 (9th Cir. 2020) (involving modification of mark to "Bad Spaniels" on dog toy with "old no. 2" text visible); *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 319 (4th Cir. 2015) (involving use of NAACP article title on website including "National Association for the Abortion of Colored People" where use was in connection with entire article critical of the NAACP and altered the use from "National Association for the Advancement of Colored People"); *Lamparello*, 420 F.3d at 311 (involving modified version of mark in website URL with URL pages critical of mark owner); *ProtectMarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225 (E.D. Cal. 2010) (involving an altered the movant's logo by adding different text, different images of figures, and the Defendants actions did not involve the sale of goods or other economic activity). *Defense Distributed v. U.S. Dept. of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015) cited by the Defendants does not concern a Lanham Act matter, or an action under N.Y. Gen. Bus. Law 360-l. The case relates to a failed challenge by the parent company of Defendant Defcad, Inc. to enjoin prepublication approval requirement for "technical data" related to "defense articles" related to the Arms Export Control Act. The decision was affirmed.

liability in this case for distributing the Infringing Products is without merit.

Defendants cannot rely on parody, the First Amendment, and artistic expression. The cornerstone of parody is distortion and alteration. Or as the Second Circuit put it in *Cliffs Notes*:

> A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody. To the extent that it does only the former but not the latter, it is not only a poor parody but also vulnerable under trademark law, since the consumer will be confused.

*Cliffs Notes, Inc. v. Bantam Boubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 494 (2d Cir. 1989) (emphasis in original).; *see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 113 (2d Cir. 2009) ("[a] parody relies upon a difference from the original mark…in order to produce its desired effect.") (citation omitted). Defendants' conduct in this case—*i.e.*, the use of an identical mark without alteration, on the good itself, in the promotion and advertisement of the good, without other prominent source identifiers—falls into the former category and thus does not qualify as parody. Defendants are certainly entitled to express their distaste for Plaintiff's gun-safety mission; however, courts have consistently made clear that defendants are not entitled to the wholesale copying of a protected trademark, without any alteration or related commentary, to convey that message.[11]

Defendants fail to cite any authority for the proposition that their conduct is some sort of exception to the rationale that identical or nearly identical uses of a mark are likely to confuse. Such use makes it unclear to consumers whether or not a defendant is connected to the trademark owner. Indeed, no such exception would make sense, as the same concerns regarding confusion exist here. Defendants' identical use makes it far from clear to the ordinary observer—*i.e.*,

---

[11] *See* discussion *supra* at 24 (listing cases where parody rejected because marks were identical or nearly identical); *see also* discussion *supra* at 25 n. 13 (distinguishing Defendants' cases and noting that where use of mark was protected by first amendment it involved modified marks).

someone seeing the mark used on the internet as a file name or the mark branded on a semi-automatic rifle that someone is carrying—that Everytown is not the source. *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 435 (S.D.N.Y. 2016) ("A parody clearly indicates to the ordinary observer that the defendant is not connected in any way with the owner of the target trademark."). Even in *Rogers*, the court made clear that any limiting construction of the Lanham Act would not apply in cases where a defendant's alleged expressive or artistic use of a trademark was confusingly similar to the original. *Rogers*, 875 F.2d at 999 n. 5 ("This limiting construction would not apply to misleading titles that are confusingly similar to other titles. The public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles."). In other words, the First Amendment does not give Defendants unbridled freedom to use a trademark in ways that are likely to cause confusion simply by claiming parody.

### iii.  Defendants' Use of the Everytown Marks is Not Nominative Fair Use.

Defendants' use of the Everytown Marks as prominent source identifiers to refer to their own products is not a "species of nominative fair use." Opp. at *39-40. Courts within the Second Circuit look to the following factors when evaluating nominative fair use: (1) "whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark"; (2) "whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service"; and (3) "whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services." *Int'l Info. Sys. Sec. Certification*

*Consortium, Inc. v. Security Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016).

When assessing the second factor, courts consider whether the alleged infringer "step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition." McCarthy on Trademarks & Unfair Competition, § 23:11 (5th Ed.).[12] Here, Defendants have used the entirety of the Everytown Marks in bold large font, using much more than only so much of the mark as necessary. The images highlighted in Defendants' Opposition *undercut* their argument as "Everytown" is featured more prominently than any other source identifier and no other source identifiers are even pictured. *See Nespresso USA, Inc. v. Africa Am. Coffee Trading Co., LLC*, No. 15-cv-5553, 2016 WL 3162118, at *3-5 (S.D.N.Y. June 2, 2016) (finding against nominative fair use where user depicted Nespresso mark on packaging as "Nespresso compatible"). The screenshot from CtrlPew depicts the Everytown Marks at least four times. *See* Opp. at *41. Three of those times are featured in substantially larger font than either "freeman1337" or "the gatalog" as Defendants suggest. *Id. at* 41-42.  Likewise, in the image featured from Defcad, "Everytown" is the most prominent source identifier on the page, and appears again within the file description itself, and within the product tag. *See* Opp. at *42. Any other conceivable source identifier on the page pales in comparison in size and mentions. Further, the Twitter post highlighted by the Defendants indicates that the user may have been hired or sponsored by Everytown to design the gun, stating "I designed it special for you," and tagging Everytown in the post. Opp. at *38. Defendants' usernames in connection with the Infringing Product listings are unlikely to alleviate

---

[12] *See, e.g., Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003) (noting confusion among event organizers and audience members by use of the mark "'The Beach Boys' more prominently and boldly" than the rest of its name, "The Beach Boys Family and Friends").

confusion given they are in much smaller text then the Everytown Marks in the Infringing

Product listings and file names, and the Defendants "tagged" the product listings with

"Everytown" to make them easier for consumers to find. Where the most dominant feature in

connection with a product is the plaintiff's trademark, courts have found such use is likely to

cause confusion. *See* Memo. at *15, n.5. Defendants' argument also ignores the fact that the

Lanham Act is not just concerned with confusion as to source, but also "confusion regarding

affiliation, sponsorship, or endorsement by the mark holder," *Int'l Information Sys. Security

Certification Consortium*, 823 F.3d at 168, all of which are likely to be present here. Thus,

Defendants' use of the Everytown Marks is not nominative fair use.

### iv.   Defendants' Use of the Everytown Marks is Commercial Use.

Defendants' contention that their Infringing Products are not used in commerce because

they are merely engaging "in the free sharing of information, not the sale or distribution of goods

or services," is incorrect. *See* Opp. at 53. Defendants' use of the identical Everytown Marks in

connection with the Infringing Products is unauthorized use in commerce. The Lanham Act

defines "use in commerce," in relevant part, as:

> (1) on goods when-
> (A) it is placed in any manner on the goods or their containers or the displays associated
> therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such
> placement impracticable, then on documents associated with the goods or their sale, and
> (B) the goods are sold or transported in commerce, and
> (2) on services when it is used or displayed in the sale or advertising of services and the
> services are rendered in commerce ....

*See* 15 U.S.C. § 1127. The scope of "use in commerce" within the Lanham Act is "broad and has

a sweeping reach" (*Planned Parenthood Federation of Am.*, 1997 WL 133313, at *3), and

constitutes "all commerce which may lawfully be regulated by Congress." *See Franchised Stores

of N.Y., Inc. v. Winter*, 394 F.2d 664, 669 (2d Cir. 1968) (citing 15 U.S.C. § 1127). Further,

"[t]he history and text of the Lanham Act show that 'use in commerce' reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause, rather than to limit the Lanham Act to profit-seeking uses of a trademark." *See United We Stand Am.*, 128 F.3d at 92 (use of identical mark between two groups in connection with non-profit political activities can constitute use in commerce for purposes of the Lanham Act). Activities constituting "use in commerce" can be: (1) activities a defendant takes which affect a plaintiff's ability to offer its services in commerce; and (2) activities a defendant takes on the internet using a mark as a source identifier. *See Planned Parenthood*, 1997 WL 133313, at *3 (discussing use of PLANNED PARENTHOOD trademark in a website URL). "When an alleged infringing mark is used on the internet, the use is clearly a 'use in commerce' that can be regulated by the Lanham Act under the Constitution." *See supra*, McCarthy, § 25:54:50 (collecting cases).

Here, the Infringing Products are being distributed and transported as downloadable files on the Internet, making them a "good" under the classifications articulated by international trademark law.[13] Moreover, to the extent Defendants' distribution of the Infringing Products is considered a "service" for purposes of the Lanham Act, courts have found that "communicating ideas and purveying points of view is . . . a service subject to the controls established by trademark law." *See United We Stand*, 128 F.3d at 90 (discussing non-profit services).

---

[13] Under the Nice Classification of goods and services applied to the registration of trademarks established by the Nice Agreement (of which the United States is a party), downloadable image files and graphics, as well as downloadable computer programs and downloadable software applications, constitute *goods* under International Class 9. World Intellectual Property Organization, Class 9,  Nice Classification (Nov. 23, 2021), https://www.wipo.int/classifications/nice/nclpub/en/fr/?basic_numbers=show&class_number=9&explanatory_notes=show&lang=en&menulang=en&mode=flat&notion=&pagination=no&version=20210101 (last accessed Dec. 10, 2021).

Defendants are being paid in connection with their distribution of the Infringing Products. However, even if the Defendants were not being compensated for the Infringing Products, which they are, Courts have also found that just because a defendant was not "selling" a product, did not mean that the use of a trademark did not constitute "use" in commerce. *See Planned Parenthood*, 1997 WL 133313, at *4 (citing *MGM–Pathe Commc'n v. Pink Panther Patrol*, 774 F. Supp. 869 (S.D.N.Y.1991) (holding that a group formed to offer the free service of protecting gay individuals from assault was subject to § 1114)). Further, whether the Infringing Products are available for "sale" is not dispositive as to the issue of "use in commerce" or commercial use for purposes of the Lanham Act (*see* 15 U.S.C. § 1114(1)(a) (describing various "uses" including "sale, offering for sale, distribution, or advertising" as infringing uses)).

Defendants' arguments are similar to the arguments made by the defendant in *Planned Parenthood*, which were rejected by the court where the defendant's website plannedparenthood.com displayed materials about a book entitled "The Cost of Abortion," from which the defendant did not receive money or personal profit. The court reasoned that the defendant's conduct satisfied the requirement of 15 U.S.C. § 1114 "in a variety of ways" as (1) it related to advertisement and distribution of the book, (2) the defendant was offering his own services concerning the anti-abortion movement, but was using the plaintiff's mark in connection with those services over the Internet, and (3) defendant's conduct may have resulted in users being unable to access plaintiff's services or website. Like in in *Planned Parenthood*, Defendants' use of the Everytown Marks is "use in commerce" even if the Infringing Products are available for free download, as the "nature of the Internet itself" makes Defendants' use of the Marks "use in commerce" *and* Defendants' unauthorized use of the Marks "affects [Everytown's] ability to offer [its] services [and goods] in commerce. Memo. at *12.

### d. Everytown Is Currently Suffering Irreparable Injury.

Defendants' argument that Everytown has failed to establish irreparable harm ignores the basic tenants of trademark law, the unique nature of goodwill, and the speed at which Everytown sought relief. *First*, Everytown is entitled to a presumption of irreparable harm because it is likely to succeed on the merits of its claims, as detailed above and within Everytown's Application. *See supra* II.b; Memo. at *20-22. *Second*, Everytown has not unduly delayed in seeking relief. The case cited by Defendants, *Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 406-08 (S.D.N.Y. 1997), for the proposition that "Plaintiff's takedown requests do not justify this lengthy delay" (*see* Opp. at *60 n.6) is not analogous to the facts of this case as the plaintiff in *Markowitz* waited *over a year* to seek injunctive relief. Here, Everytown sought relief within two months of learning of Defendants conduct and within five weeks of the posts being reenabled after Everytown's initial take-down requests.[14] *Third*, Defendants do not rebut Everytown's sworn testimony pertaining to irreparable harm and admit that the Infringing Products bearing the Everytown Marks "have been downloaded and seen by thousands." Opp. at *61. Such harm is not speculative. "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark…because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" Memo. at *21. Everytown has not authorized the Defendants to use the Everytown Marks, and the Defendants are currently distributing the Infringing Products that are

---

[14] *See MetLife, Inc. v. Metro. Nat'l Bank*, 388 F. Supp. 2d 223, 237-38 (S.D.N.Y. 2005) (finding no undue delay where relief was sought within 3.5 months of learning of infringing conduct) (citing *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992) (finding no undue delay where plaintiff waited 8 months to seek injunctive relief where plaintiff was repeatedly objecting to alleged infringing conduct and seeking to alleviate infringing conduct)).

fundamentally at odds with and undermining of Everytown's goodwill and trusted brand as a staunch advocate for gun safety and ending gun violence – that threatens to undermine Everytown's reputation and is irreparable harm.

The sole case cited by the Defendants, *Two Hands IP LLC v. Two Hands America, Inc.*, 2021 WL 4437975, at *5 (S.D.N.Y. Sept. 28, 2021), involving restaurants of different cuisines, and differing marks, again is not analogous, as the Court found that the movant did not put forth evidence that the defendants' "goods were of inferior quality" or that there may be "detrimental effects from the purported confusion." *Id.* at *5. Here, the Defendants' Infringing Products are illegal to 3-D print and assemble and possess in New York, and multiple other states, and the Defendants' use of the Everytown Marks on the Infringing Products is directly "contrary to Everytown's core mission." McTighe Decl. ¶ 51-52. Defendants' contention that Everytown "has been unable to produce a single person who has actually developed such a negative impression" (Opp. at *61) ignores the realities of this case – namely that the individuals who have downloaded Defendants' Infringing Products are anonymous to Everytown. *Fourth*, Defendants' argument that Everytown's harm can be compensated by monetary damages is unsupported by black letter law given that Everytown's reputation and goodwill are at risk. *See supra*, McCarthy, § 30:46 ( "[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand . . . .").

### e.  The Public Interest and Balance of Harm Weigh in Everytown's Favor.

Defendants do not dispute that the public has an interest in not being deceived or confused as to the source of a good or service. Memo. at *22. The only public interest rationale against an injunction articulated by the Defendants is their claimed "freedom of expression." Opp. at *62. In support of their argument Defendants cite two cases: *Cliffs Notes, Inc. v. Bantam*

*Boubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 497 (2d Cir. 1989) and *Cornette v. Graver*, 473 F.

Supp. 3d 437, 478 (W.D. Pa. 2020). Neither assists them in this case. In *Cliffs Notes*, the two

marks at issue were "Cliffs Notes" and "Spy Notes," where the name "Spy" was in the title of

the publication, the notation "A Spy Book" was emblazoned on the cover, and the label "A

Satire" was also printed multiple times on the front and back covers of the work. *Cliffs Notes*,

886 F.2d 490 at 496. Likewise, in *Cornette*, the non-movant significantly modified images on the

distributed t-shirts at issue by adding "several tattoo needles protruding from his forehead, duct

tape over his mouth, and red "Xs" over his eyes" along with obscenities, "zombified" the image

making it green, and depicted the movant as a clown, and the phrase "Clownette" added, among

other changes. *Cornette*, 473 F. Supp. 3d at 452-53.

Such facts are not even remotely analogous to the Defendants' conduct, as Defendants

have not made *any* similar modifications to Everytown's marks but display the exact marks on

the Infringing Products without any other indicia of parody. *Harley Davidson, Inc.*, 164 F.3d at

812-13 (rejecting parody defense); *Nat'l Acad. of TV Arts & Scis., Inc.*, 2021 WL 3271829, at *5

(rejecting parody defense); *Gucci Shops, Inc.*, 446 F. Supp. at 839-40 (rejecting parody defense);

*Planned Parenthood*, 1997 WL 133313, at *8 (rejecting parody argument). As the Defendants'

products are not entitled to "freedom of expression" in this case by the wholesale use of

Everytown's trademarks without any modification, the public interest decidedly weighs in

Everytown's favor. Defendants' Opposition completely fails to address the balance of harm

preliminary injunction factor and, as to that factor, it should be deemed waived or conceded.

## III.   Personal Jurisdiction In New York is Proper as to the Defendants.

Everytown has put forth sufficient facts to establish personal jurisdiction under New

York's long-arm statute and to satisfy Due Process. For the reasons detailed below, long-arm

jurisdiction is satisfied under NY C.P.L.R. § 302(a)(1) and under NY C.P.L.R. § 302(a)(3)(ii).

### a.   Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(1).[15]

Where a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state[,]" C.P.L.R. § 302(a)(1) jurisdiction is proper. Courts look to whether (1) the defendant has transacted business within the state; and (2) the claim arises from the business activity. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "'[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York as long as the requisite purposeful activities and the connection between the activities and the transaction are shown."[16] The inquiry into whether the relevant acts constituted "personal availment" is an objective one that "always requires a court to closely examine the defendant's contacts for their quality" and under the totality of the circumstances. *Newmont Mining Corp. v. Anglogold Ashanti Ltd.*, 344 F. Supp. 3d 724, 736 (S.D.N.Y. 2018) (citation omitted). Where a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is

---

[15] For purposes of this motion, Plaintiff is not arguing that the Court has general jurisdiction over Defendants or jurisdiction under New York's Long Arm Statute pursuant to § 302(a)(2). However, given the continued anonymity of certain Defendants in this case, Plaintiff does not waive its right to assert those jurisdictional bases.

[16] *Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs.*, 21 A.D. 3d 90, 93-94 (1st Dep't 2005) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y. 2d 460, 467 (1988)); *see also EnviroCare Techs., LLC v. Simanovsky,* 2012 U.S. Dist. LEXIS 78088, at *8 (E.D.N.Y. June 4, 2012) (noting that "courts in New York have explained that C.P.L.R. 302(a)(1) 'is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction….").

"transacting business" in New York subject to the court's jurisdiction.[17] Even where a defendant merely posts its items through a third-party website, jurisdiction exists and is proper. *See EnviroCare Techs., LLC*, 2012 WL 2001443, at *3 (citing cases); *see also Brady v. Anker Innovations Ltd.*, 2020 WL 158760, at *5 (S.D.N.Y. Jan. 13, 2020). Likewise, where a "substantial nexus" between the business transaction and the claim exists, the "arising out of" prong is met. *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008). "Lanham Act trademark infringement claims – where products are sold to New York consumers, competitively harming a plaintiff – satisfy the substantial nexus requirement." *Carson Optical, Inc. v. RQ Innovasion, Inc.*, 16-cv-1157, 2020 U.S. Dist. LEXIS 55223, at *10 (E.D.N.Y. Mar. 30, 2020); *Hypnotic Hats, Ltd. v. Wintermantel Enters.*, 2016 WL 7451306, at *3 (S.D.N.Y. Dec. 27, 2016). Here, New York consumers have downloaded the Infringing Products and/or purchased a subscription to access Defendants' Infringing Products via the Internet, harming Everytown and New York consumers (*see* Green Reply Decl. ¶¶ 17, 31-40, Ex. B-C, E).

### 1.   The Court Has Jurisdiction Over Defendant Defcad Transacting Business Within New York.

Defendant Defcad transacted business within New York when it charged the credit card of a New York resident for a subscription to the Defcad website.[18] *See supra*. The subscription is a prerequisite for users to purchase 3-D printing files and instructions for various firearms and

---

[17] *See, e.g., Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000); *Mattel, Inc. v. Adventure Apparel*, No. 00-cv-4085, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001)); *see also Energy Brands Inc.*, 571 F. Supp. 2d at 466.

[18] This transaction is not only sufficient to confer jurisdiction over Defcad, but also the individual Defcad users (XYeezySZN and Freeman1337) that uploaded the files or Infringing Products to Defcad, which users require a subscription to access and download.

firearms parts and accessories available on the Defcad website, including the Infringing Products. *See* Green Decl. ¶ 6, 15-20, 27-31. Defendants' Opposition ignores this transaction, focusing on whether Defcad or any of the individual defendants sent files into New York. *See* Opp. at 15-20. This subscription transaction alone is enough to confer jurisdiction over Defcad and individual Defcad users pursuant to § 302(a)(1). *See Deutsche Bank Sec., Inc.*, 21 A.D. 3d at 93-94 (quoting *Kreutter*, 71 N.Y. 2d at 467).[19] The fact that Defendant Defcad and the individual defendants *offer* the Infringing Products is enough to establish jurisdiction, it does not matter whether the transaction was completed or Plaintiff received the actual files from Defcad. "The *offering* for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3." *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009) (emphasis added) (finding "sale of the single watch to plaintiffs' paralegal alone seems sufficient for . . . jurisdiction.").[20]

### 2. The Court Has Jurisdiction Over Individual Defendants As They Transacted Business Within The State of New York.

Moreover, Defendants Odysee User TheGatalog-Printable Magazines[21] and Odysee User

---

[19] Defcad also transacts business by allowing users to post reviews of content available for download and directing advertising at New York by prompting users who visit the website to sign up for a monthly newsletter featuring curated lists of files. Supp. Green. Decl. ¶ X.

[20] *See also Smart Study Co., Ltd. v. A Pleasant Trip Store*, No. 20 Civ. 1733 (MKV), 2020 WL 2227016, at *3 (S.D.N.Y. May 7, 2020) (finding jurisdiction over defendants where plaintiff had only consummated purchases with ten percent of them because defendants' websites were highly interactive); *Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, 2020 U.S. Dist. LEXIS 162529, at *12 (S.D.N.Y. Sept. 4, 2020) (finding jurisdiction even where orders were never fulfilled and the few orders that were completed were for a nominal amount of money).

[21] Defendant The Gatalog linked and promoted a listing for a file to www.ctrlpew.com. *See* Green Decl. ¶ 24. When attempting to download the file via a link, the link directs consumers to

XYeezySZN transacted business in New York by allowing consumers to download the Infringing Products from the Odysee website in exchange for potential "tips" provided to the defendants. *See* Compl. Ex. 5; Green Decl. ¶¶ 8-14, 21-23. Importantly, as made apparent by the declaration submitted concurrently with Defendants' Opposition (Dkt. 56-4), Defendants (1) Odysee User xYeezySZN, (2) Defcad User xYeezySZN, and (3) Twitter User xYeezySZN, are all the same individual (believed to be Mr. Royster). Jurisdiction follows the individual.[22] Therefore, if the Court were to find that it has jurisdiction over Odysee User xYeezySZN, it must also find that it has jurisdiction over the respective Defcad and Twitter user as well. In other words, by virtue of xYeezySZN transacting business by sending files into New York as an Odysee User, xYeezySZN has also transacted business in New York as a Defcad User.

### 3. Defendants Do Not Rebut Everytown's Jurisdictional Showing.

The fact that it was Plaintiff's paralegal who accessed, viewed, and downloaded the Infringing Products from the Odysee website and purchased a subscription from the Defcad website does not change the jurisdictional analysis.[23] Defendants cite to *ISI Brands, Inc. v. KCC*

---

Defendant Odysee User TheGatalog-Printable Magazines' listing on Odysee. *Id.* ¶25-26. Accordingly, The Gatalog transacted business in New York by allowing New York consumers to download Infringing Products from the Odysee website.

[22] This jurisdictional fact makes the identities of the Defendants particularly important—as well as third party discovery seeking information relating to Defendants' identities—as it is possible that certain Defendants are the same individual.

[23] *See, e.g.*, *Poof-Slinky, LLC*, 2020 U.S. Dist. LEXIS 162529, at 12-13 (finding jurisdiction alleged where Plaintiff made trap purchase because nature of such a purchase is "irrelevant to the question of whether the defendants purposefully availed themselves of doing business in the forum"); *Cartier*, 598 F. Supp. 2d at 425 (finding single sale to Plaintiff's paralegal enough to satisfy jurisdiction absent showing of entrapment into a sale it would not have otherwise made); *Mattel, Inc.*, 2001 U.S. Dist. LEXIS 3179, at *9-10 (finding that there being "only one transaction does not vitiate personal jurisdiction due to the nature of the contact, that is, because

*Int'l, Inc.*, 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006), for the proposition that jurisdiction cannot be manufactured by the Plaintiff, and that maintaining an e-commerce website accessible to New York residents is insufficient to find that Defendants were "doing business" in New York, absent some evidence of sales or other targeted activity. *See* Opp. at 16 n.2, 18. The facts of *ISI* are not analogous, as the purchase in that case was done during the *pendency* of litigation – whereas Plaintiff's purchase here was done pre-litigation, which are the only "contacts [] relevant to the jurisdictional question." *Id.* at 88. Further, unlike in *ISI*, there is evidence of sales and other targeted activity into New York as Defcad has also emailed promotional materials to a New York resident. To "target" New York does not mean that a defendant "must have *singled out* New York as a particular focus of their commercial activity." *See Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org. LLC*, 875 F. Supp. 2d 211, 222 (W.D.N.Y. 2012) (emphasis in original) (where defendants solicited business from a nationwide base of potential customers, they cannot be heard to complain when hailed into one of those states as a result of that activity).

Further, contrary to Defendants' assertions (*see* Opp. at 19-20), the Odysee and Defcad sites are highly interactive. Courts utilize a sliding scale approach with "passive" websites, which may not confer jurisdiction, on one hand, and "active" website, which can confer jurisdiction on the other. *See Mrs. U.S. Nat'l Pageant,*, 875 F. Supp. 2d at 220. Where a website allows consumers to purchase goods online, establish an online account, communicate with the owner of the site or its representatives, or download order forms or other documents, jurisdiction is proper. *Id* at 220-21 (quoting and collecting cases); *see also The Cousteau Society, Inc. v.*

---

[Defendant's] activities were purposeful and there was a substantial relationship between the transaction and the claim asserted").

*Cousteau*, 498 F. Supp. 3d 287, 304 (D. Conn. 2020) ("Active websites are those 'where individuals can directly interact with a company over their Internet site, download, transmit[,] or exchange information, and enter into contracts with the company via computer.") (citing case). "Generally, an interactive website supports a finding of personal jurisdiction over a defendant." *Iovate Health Sciences, Inc. v. Masuda*, No. 08–CV–809, 2009 WL 2878526, at *4 (W.D.N.Y. 2009). Where "defendants' website sales required the exchange of billing, shipping, and contact information for the sales to New York consumers to be consummated, [it] indicat[ed] the 'active' nature of the commercial website." *See Energy Brands Inc.*, 571 F. Supp. 2d at 496.

Both Defcad.com and Odysee.com are highly interactive. Defcad.com allows users to create an account, sign up for newsletters, and charges credit cards for subscription services. Green Decl. ¶¶ 4, 30-31; Green. Reply Decl ¶¶ 15-16, 26-30, Ex. B, D; *see also Barrow v. Sutton*, 2014 U.S. Dist. LEXIS 94237, at *12 (S.D.T.X. July 11, 2014) (suggesting that a website that allows users to purchase subscriptions to view content makes a website active rather than passive and weighs in favor of exercising personal jurisdiction) (citing *Ward v. Rhode*, 544 Fed. App'x 349, 353 (5th Cir. 2013) (unpublished) (implying that selling subscriptions to users to view content suggests a website is interactive). Defcad.com users can also post reviews of content available for download, and charges users for downloading the Infringing Products. Green Reply Decl. ¶¶ 23-25, Ex. C. Further, Defendants' own Opposition describes various "security checks" and protocols (*e.g.*, "IP geolocation") performed by Defcad, as well as "series of tests" which consumers must pass before purchases are authorized and executed. *See* Opp. at 5-8. More specifically, Defcad notes that "Level 0 security users must provide information regarding their [Federal Firearms License], including the license number, licensee address, and the name of the licensee. If they do this, they must then pay a fee for processing and handling of

33

the files. This fee is paid in Bitcoin." *Id.* at 6-8. These are not merely a "passive website that only presents information to visitors on the screen," as Defendants suggest. *Id.* at 19. Odysee.com is similarly interactive as it allows users to comment on listings and download the Infringing Products in exchange for potential "tips" provided to the defendants. *See* Compl. Ex. 5; *see also* Monetization of Content, https://odysee.com/@OdyseeHelp:b/Monetization-of-Content:3 (last accessed Dec. 6, 2021) (discussing monetization of content).

### 4. Assertions Made By Individual Defendants That They Have Not Sent Files Into New York Are False, And Defendant Defcad's Claimed Policy Of Blocking The Availability Of Files To New York Consumers Is Flawed And Should Not Be Relied On For Purposes of Analyzing Jurisdiction.

Defendants assert that no files by Defcad or any of the Defendants have been sent into New York. *See* Opp. at 17, 30; *see also* Dkt. Nos. 56-1, 56-3 through 56-6 (Declarations of Defendants). Defcad further asserts that it does not permit New York users to receive files from Defcad (Opp. at 17), noting that since 2018 it has had a policy to categorically refuse shipping files to New York Federal Firearms License ("FFL") holders, in accordance with a similar policy to categorically refuse to ship files to New Jersey FFL holders. *See* Opp. at 8.

*First*, Defendants' assertions that files have not been sent into New York are wholly untrue as to the individual defendants. It is undisputed that the two Odysee User Defendants and Defendant The Gatalog have made files available for download by New York consumers via Odysee, which were downloaded by a New York consumer. *See* Green Decl. ¶¶ 8-14, 21-26. In addition, the same individual operates each of the three XYeezySZN accounts. Therefore, by virtue of XYeezySZN transacting business by sending files into New York as an Odysee User, XYeezySZN has also transacted business in New York as a Defcad User. As such, any argument that individual Defcad defendants have not sent files into New York is untrue.

*Second*, despite Defcad alleging that its purported policy has been in place since 2018,

such policy is not on the Defcad website. Green Reply Decl. ¶¶ 7-14, Ex. A. Defcad *does* affirmatively notify users on its landing page that it does have such a policy in relation to *New Jersey*. *Id.* ¶¶ 7-9. At the bottom of its website, Defcad states "DEFCAD files and other hardware are not currently available to persons outside the United States and are not available to residents of and persons in . . . New Jersey who do not possess a federal firearms license." *Id.* ¶7.

*Third*, Defcad claims it "actively blocks transactions from individuals known or suspected to reside in New York" through the use of "IP geolocation." *See* Opp. at 4-5. However, IP addresses are an imperfect litmus test for determining a consumer's location. They can easily be masked, changed, or re-routed. *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567-68 (S.D.N.Y. 2004) (noting that the technique of using of IP addresses to ascertain locations is, at best, only suggestive of the "likelihood" of someone's location). Defcad's flawed technique is perfectly demonstrated here by Ms. Green, who is a resident of New York and was located in New York at the time of purchasing a Defcad subscription and adding the infringing files to her cart on the Defcad website. Green Decl. ¶¶ 2-6, 15-20, 27-31. She was not located in Baltimore, MD, as Defendants allege. Green Reply Decl. ¶ 22. Upon information and belief, Defcad's "IP geolocation" likely showed Ms. Green was in Baltimore, MD because of Ms. Green use of the Venable law firm's VPN or "virtual private network," which routes firm traffic through Baltimore, MD. Accordingly, Defcad should not be allowed to rely on its flawed "IP geolocation" technique to allege it does not send files to users in New York.

### b. Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(3)(ii).

To establish jurisdiction under CPLR § 302(a)(3)(ii), plaintiff must sufficiently allege that (1) defendant performed a "tortious act" outside of New York, (2) the alleged tortious act caused injury within New York, (3) defendant expected or reasonably should have expected that

its action would have consequences in New York, and (4) defendant derives "substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3); *Starmedia Network, Inc. v. Star Media, Inc.*, 2001 U.S. Dist. LEXIS 4870, *5 (S.D.N.Y. Apr. 24, 2001). "Injury within the state includes harm to a business in the New York market in the form of lost sales or customers." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 549, 568 (SD.N.Y. 2000) (citing case).

Plaintiff has met the first two prongs of C.P.L.R. § 302(a)(3), as its Lanham Act and New York state law claims involve tortious acts the Defendants committed outside of New York and the injury from the acts have occurred in New York given that Plaintiff trademark owner is based in New York and conducts business in New York. *See* Compl. ¶¶ 8-10, 12-14, 9, 135-36, 160-66; *see also Savage Universal Corp. v. Grazier Const., Inc.*, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) (finding that plaintiff's allegations that defendant's infringing use of trademark on website amounts to a tortious act resulting in an injury in New York—the place where plaintiff, the trademark owner, resides and conducts business—and meets the first two requirements of CPLR § 302(a)(3)).

Defendants assert that jurisdiction cannot be established because Plaintiff cannot meet the third requirement of C.P.LR § 302(a)(3)(ii) – that defendant expected or reasonably should have expected its allegedly tortious actions to have consequences in New York. *See* Opp. at *24-25. Put another way, Defendants argue that they have not made any effort to serve the New York market, as required by C.P.L.R. § 302(a)(3)(ii). At the very least, the Defendants reasonably should have been on notice that their tortious acts would have consequences in New York through constructive notice of Everytown's trademark registrations. Compl. Ex. 3. Defendants cite to *Starmedia Network, Inc.* in support of their argument otherwise. *See* Opp. at 24-25. However, *Starmedia* makes clear that "*one who uses a web site to make sales to customers in a*

*distant state can thereby become subject to the jurisdiction of that state's courts*." *Starmedia Network, Inc.*, 2001 WL 417118, at *3 (emphasis added). As discussed, Defendants have made an effort to serve the New York market.

Finally, Defendants' sale of the Infringing Products are commercial transactions affecting interstate commerce as they occurred over interactive websites involving either subscriptions or "tips" for downloading the Infringing Products. There is no bright-line rule regarding when a specific level of revenue becomes substantial for purposes of Section 302(a)(3)(ii). *See Energy Brands Inc.*, 571 F. Supp. 2d at 468.

### i. Exercising Personal Jurisdiction Comports with Due Process.

Exercising personal jurisdiction over Defendants also comports with the Constitution's due process guarantees. "There are two components to the due process analysis undertaken to determine whether [a defendant] is subject to the court's jurisdiction for commercial activity involving the State of New York: (1) the minimum contacts inquiry and (2) the reasonableness inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (citing case). Here, the Defendants have minimum contacts with New York, have purposefully availed themselves of conducting transactions in New York, and exercising jurisdiction is reasonable.

The requisite minimum contacts with the forum are established when a defendant purposefully avails itself of the privilege of doing business in New York. *See Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997). Here, Defendants have purposefully availed themselves to New York as they advertised and promoted the files to New York consumers through the Odysee, Defcad, and CtrlPew websites (including via a monthly newsletter), offered New York users the ability to download the Infringing Products and provide "tips" in exchange on Odysee, and offered New York users subscriptions in order to access and download the

Infringing Productions on Defcad.[24] Additionally, New York is where the brunt of Everytown's injury is felt. *Calder v. Jones*, 465 U.S. 783, 790 (1984) (finding jurisdiction in state where brunt of reputation harm was to occur in tort case).

In determining the reasonableness of jurisdiction, a court must consider: (1) the burden on the defendant, (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Chloé*, 616 F.3d at 173. As to factor one, Defendants have not articulated any burden. But even if Defendants articulated a travel burden, courts have rejected that traveling from another location to New York constitutes an unreasonable burden.[25] As to factor two, New York "has a manifest interest in providing effective means of redress for its residents." *See also Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (application of New York law supports reasonableness of jurisdiction). As to factor three, where a plaintiff is based in New York, and its witnesses and documentary evidence are in New York, the third factor favors the plaintiff. *Carson Optical*, 2020 U.S. Dist. LEXIS 55223, at *20 (citing *EnviroCare Techs.*, 2012 WL 2001443, at * 5). As to factor four, Everytown is based in New

---

[24] *See Chloé*, 616 F.3d at 171 (defendant who offered product for sale to New York consumers on website and sold the product to New York consumers "'purposefully avail[ed] [him]self' to New York) (alterations in original); *see also Hsin Ten Enter. U.S.*, 138 F. Supp. 2d at 456 (finding jurisdiction where website allowed consumers to purchase products, communicate with defendant's representatives, and download materials); *Mattel, Inc.*, 2001 U.S. Dist. LEXIS 3179, at *7-11 (holding single Internet sale to a forum state resident satisfied the due process requirement in a trademark infringement case).

[25] *See EnviroCare Techs.*, 2012 WL 2001443, at * 5 (finding "complaints of inconvenience" from residing in Oregon and being sued in New York did not make jurisdiction unreasonable).

York, and its claims involve issues pertaining to New York state law (in addition to federal law), and thus New York has an interest in providing an effective means of redress for Everytown.

Defendants' assertion that the only nexus between Defendants and New York is the Plaintiff ignores undisputed facts of this case (*see* Opp. at 29-30), and Defendants' reliance on *Walden v. Fiore* is misplaced. In *Walden*, the Court found that the police officer's conduct had nothing to do with Nevada, as he seized money from persons in Georgia who had displayed California identification and were at their departure gate to fly to Las Vegas. *Walden v. Fiore*, 571 U.S. 277, 288 (2014). Here, by contrast, the Plaintiff is not the only link with the forum, as Defendants have advertised and promoted the Infringing Products to New York consumers through highly interactive websites, allowed New York users to download the Infringing Products, and allowed New York users to purchase a subscription to access and download the Infringing Products.[26] Finally, whether a sale was made to the Plaintiff or an agent of Plaintiff is irrelevant to the jurisdictional determination. *See Mattel, Inc.*, 2001 U.S. Dist. LEXIS 3179, at *9-10 (rejecting argument that there was no jurisdiction where the only sale was to Plaintiff's investigator). Accordingly, exercising jurisdiction over Defendants satisfies Due Process.

### ii. Any Challenges to Personal Jurisdiction Prior to Disclosure of Defendants' Identities Is Improper and Should Be Denied.

It would be premature to hold personal jurisdiction is lacking where defendants' identities are still unknown. *Bloomberg, L.P. v. John Does 1-4,* 2013 WL 4780036, at *4 (S.D.N.Y. June

---

[26] Try as they might, Defendants cannot dispute that the Infringing Products or subscriptions to purchase the Infringing Products are available to New York consumers. The fact that at this juncture, Plaintiff cannot specifically identify other New York consumers who have transacted business with Defendants—because that is the type of information only available to Defendants—is not enough to declare a lack of jurisdiction.

26, 2013) (denying request to rule on personal jurisdiction); *Sony Music Entm't Inc.*, 326 F.

Supp. 2d at 567-68 (finding personal jurisdiction analysis premature where identities unknown).

## IV.     Venue Is Proper in This District.

Venue is proper in this Judicial District because a substantial part of the events or

omissions giving rise to Plaintiff's claims, and a substantial part of the harm caused by

Defendants has occurred here. *See* 28 U.S.C. § 1391(b)(2). Under Section 1391(b)(2), venue is

proper for a trademark infringement claim in each jurisdiction where infringement is properly

alleged to have occurred. *See Hsin Ten Enter. U.S.*, 138 F. Supp. 2d at 459; *see also Pilates, Inc.*

*v. Pilates Inst., Inc.*, 891 F. Supp. 175 (S.D.N.Y. 1995). A substantial part of events occurs in

New York if the defendant targets New York by advertising and actively pursuing efforts to

market the infringing product here, or if the defendant sells a substantial amount of the allegedly

infringing goods to customers here*. See Hsin Ten Enter.*, 138 F. Supp. 2d at 460 (citation and

quotations omitted). Further, when the marketing activity or sale occurred via the Internet, [t]he

principles which govern the personal jurisdiction inquiry . . . are also applicable to the venue

issue." *Mattel, Inc.*, 2001 U.S. Dist. LEXIS 3179, at 12. Therefore, for the same reasons

jurisdiction is proper, venue is proper here. The cases Defendants rely on in their Opposition are

not factually analogous and are outside the Second Circuit. *See* Opp. at 32-33.[27] The facts here

---

[27] *See be2 LLC v. Ivanov,* 642 F.3d 555, 559 (7th Cir. 2011) (involving out-of-state website operator where there was no evidence of any interaction between the Defendant and account users); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (involving two paint ball companies where no evidence was present that sales within jurisdiction were related to the case at hand); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d. Cir. 2003) (involving website entirely in Spanish; prices for merchandise in pesetas or Euros; and merchandise that could only be shipped to addresses in Spain); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 401 (4th Cir. 2003) (involving "semi-interactive" website with local Chicago services); *Kaia Foods, Inc. v.*

are more analogous to cases like *Adventure Apparel* and *Mrs. U.S. Nat'l Pageant* where venue was found to be proper, as New York users were able to establish an account, sign up for a newsletter, and purchase a subscription using a credit card from Defcad, download Infringing Products from Odysee, as well as post reviews of products available to download.[28] Defendants also contend that venue is improper because there are no allegations or evidence of any actual interaction by any of the Defendants with anyone in this district apart from Plaintiff's litigation team. *See* Opp. at 33. As discussed above, it is irrelevant whether interactions involved Plaintiff's paralegal. *See e.g., Mattel, Inc.,* 2001 U.S. Dist. LEXIS 3179, at *9-10 (rejecting argument concerning sale to plaintiff's investigator).

To the extent the Defendants seek a transfer of venue, transfer should be denied. District courts may transfer a matter from one venue to another "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In deciding whether a transfer is warranted, courts consider factors that include: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)

---

*Bellafiore*, 70 F. Supp. 3d 1178, 1186 (N.D. Cal. 2014) (involving no evidence that orders for infringing product were placed within judicial district).

[28] *See Mattel, Inc.,* 2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. Mar. 22, 2001) (finding venue proper where product was ordered over interactive website using credit card, and defendant sent product into New York); *Mrs. U.S. Nat'l Pageant*, 875 F. Supp. 2d at 220-22, n.6 (finding venue proper where website allowed consumers to purchase goods online, establish an online account, communicate with the owner of the site or its representatives, or download order forms).

(alteration in original) (internal quotation marks and citation omitted). The party requesting transfer carries the burden (*N.Y. Marine & Gen, Ins. Co. v. Lafarge N. Am.*, 599 F.3d 102, 113-14 (2d Cir. 2010), and the plaintiff's choice of forum "should not be disturbed unless the balance of factors tips decidedly in favor of a transfer," *Wildwood Imps. v. M/V Zim Shanghai*, No. 04-CV-5538, 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005).

Defendants have failed to meet their burden. It is not clear where the majority of defendants are located, and Everytown is only aware of where Defcad and Defcad User Freeman1337 reside or have a principal place of business.[29] Therefore, the Court cannot analyze factors such as convenience of the witnesses, the location of relevant documents and relative ease of access to sources of proof, the convenience of parties, or the locus of operative facts. Defendants have also failed to show why Everytown's choice of forum should not be given great weight, especially when Everytown, its witnesses and documentary evidence are in New York. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("[P]laintiff's choice of forum is entitled to greater deference when the plaintiff has chosen [plaintiff's] home forum.").[30] Defendants also failed to provide evidence as to the relative means of the parties.

In fact, Defendants have only provided two pieces of information, neither of which support a change in venue. First, Defendants assert that two of them are located in the Western District of Texas ("W.D.T.X."), and that the other Defendants consent to jurisdiction and venue there. *See* Opp. at *2. However, without sworn declarations and without knowing where the

---

[29] Mr. Walliman (ECF 56-2), who could be a witness for Defendants, also does not provide a location, only noting that he is not a resident of New York and that he works outside New York.

[30] *See also EnviroCare Techs.*, 2012 U.S. Dist. LEXIS 78088, at 21-22 (denying transfer where majority of evidence related to trademark claim will likely come from Plaintiff's records).

other Defendants are located, it is impossible to test the veracity of the assertions or conduct the requisite analysis to know whether they have sufficient contacts with the proposed forum for jurisdictional purposes. *See Malmsteen v. Cleopatra Records, Inc.*, 2011 U.S. Dist. LEXIS 167853, at *12-14 (S.D.N.Y. Mar. 21, 2011) (denying transfer where defendants offered no factual support for their assertion that they have "substantial contacts" with the proposed forum). Also, the fact that Defendants would not object to a transfer of venue to the W.D.T.X. is "immaterial" because "a defendant's consent to submit to [the] jurisdiction of a proposed transferee court after an action is filed will not satisfy Section 1404(a)." *Id.* at *13 (citing case).

The second piece of information provided by Defendants in support of transfer is that there are already several other actions pending in the W.D.T.X. and the Fifth Circuit involving Defendant Defcad's 3-D printable files for firearms-related parts, which according to Defcad makes those forums familiar with the subject matter of 3-D printable firearms. *See* Opp. at 3. The cases cited by the Defendants do not involve trademark infringement claims, or the Everytown Marks. Moreover, this Court and the Second Circuit are fully capable of adjudicating First Amendment issues and are already familiar with this matter from the early appellate proceedings initiated by Defendants, further weighing against transfer.

## V. The Scope of the Injunction Sought is Narrowly Tailored and Specific to Provide Defendants Notice of Contemptable Conduct.

The scope of the proposed injunction is narrowly tailored and supported by case law. The Second Circuit has repeatedly held that while injunctions should be "'narrowly tailored'," "'it does not follow that the injunction may extend only into areas for which the senior user has shown probability of confusion' for trademarks." *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 259 (2d Cir. 2021) (quoting *Guthrie Healthcare Sys. v. Context Media, Inc.*, 826 F.3d 27, 46 (2d Cir. 2016)). "Once the senior user has proven entitlement to an injunction, the scope of the

injunction should be governed by a variety of equitable factors – the principal concern ordinarily being providing the injured senior user with reasonable protection from the junior user's infringement." *Id.* (quoting *Guthrie,* 826 F.3d at 46) (internal quotations omitted). If the Court finds that Everytown has satisfied the requirements for a preliminary injunction, the Defendants "may be required to suffer a position less advantageous than that of an innocent party." *Guthrie*, 826 F.3d at 47 (citation omitted). The language of the proposed injunction identified in the Court's Nov. 5 Order is almost identical to, and in many respects, mirrors the language of the injunction issued in *Victorinox AG v. B&F Sys., Inc.*, No. 13-cv-4534 [ECF. 169], at *11-13 (S.D.N.Y. December 20, 2017), that was identified as "tailored to the infringement at issue" by the Second Circuit.[31] The proposed injunction is proper.

The cases against cited by Defendants are not analogous because Defendants do not have, and have not claimed, any right to the Everytown Marks. *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733 (2d Cir. 1994), concerned two concurrent lawful users of the same trademark that had rights pursuant to a co-existence agreement regarding the term "Bayer." Given the concurrent use rights, the court reasoned: "[i]n this case, where the parties share rights to the "Bayer" mark, both internationally and in the United States, requiring Bayer AG to guess—on pain of contempt—at what conduct the Lanham Act proscribes is too onerous a burden." *Id.* at 748. Such circumstances are not the case here. Likewise, in *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d

---

[31] *Victorinox AG v. B&F Sys, Inc.*, 709 Fed. App'x 44 (2d Cir. 2017) (noting injunction language in trademark infringement case prohibiting "manufacturing importing, advertising, marketing, promoting, supplying, distributing, drop-shipping, offering for sale, exporting, or selling any products which bear the Plaintiffs' Marks ... or which bear any marks or designs that are identical with, substantially indistinguishable from, and/or confusingly similar to Plaintiffs' Marks" was "tailored to the infringement at issue" and remanding to modify the scope of injunction as to separate trade dress claim elements).

775 (2d Cir. 1994), the district court originally enjoined the defendants from publishing and

selling "books that are substantially similar to" the plaintiff's books – a remedy more appropriate

under the Copyright Act, which was not a claim at issue. The Court modified the scope of the

injunction reasoning the plaintiff "could not seek an injunction based on copyright infringement"

when it was not a claim. Here, unlike the facts of *Waldman*, likelihood of confusion is an

element of the claims plead by Everytown. Additionally, *Starter Corp. v. Converse, Inc.*, 170

F.3d 286 (2d Cir. 1999), concerned a permanent injunction after a jury verdict that found specific

instances of use of a mark as not confusing – which are not the facts here.

Lastly, Defendants challenge language of the proposed injunction prohibiting them from

"[m]anufacturing, making….offering to sell, selling or otherwise distributing…any product

bearing the Everytown Marks or similar marks likely to cause confusion with the Everytown

Marks…." (Nov. 5 Order at 2.). Defendants ignore the limiting "likelihood of confusion"

language, and then go on to allege the injunction would prohibit "the use of Everytown's marks

on 'any product,' even on products where the use of Everytown's marks would be plainly non-

confusing, non-tarnishing, and therefore, lawful" – Opp. at *66 – which is clearly contradicted

by the plain language of the proposed order. Thus, the proposed injunction order is proper.

**VI.    Everytown Should Not Be Required to Post A Bond.**

A bond should not be ordered in this case as the Defendants have not articulated any

monetary harm that would incur from being enjoined. Courts have "wide discretion in the matter

of security and it has been held proper for the court to require no bond where there has been no

proof of likelihood of harm." *Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

Defendants have not established any monetary harm that would incur as a result of being

enjoined. Accordingly, a bond is not required. *See, e.g., Goat Fashion Ltd. v. 1661, Inc.*, 2020

WL 5758917, at *16, n. 6 (S.D.N.Y. Sept. 28, 2020).

Should the Court be inclined to order a bond in conjunction with injunctive relief,

Everytown suggests a $25,000 bond as no lost revenue amount has been alleged by Defendants,

no costs have been alleged, no information as to financial state has been provided, and no

products would be spoiled due to a preliminary injunction.[32]

## CONCLUSION

For the foregoing reasons, and the reasons articulated in Everytown's memorandum of

law in support of injunctive relief, a preliminary injunction should be entered.

Respectfully submitted,

Dated: December 10, 2021          VENABLE LLP

/s/Marcella Ballard

Marcella Ballard
Maria Sinatra
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Tel.: 212-307-5500
Fax: 212-307-5598
mballard@venable.com
mrsinatra@venable.com

Meaghan H. Kent (*pro hac vice*)
Alicia M. Sharon (*pro hac vice*)
600 Massachusetts Avenue NW
Washington, DC 20001
mhkent@venable.com
asharon@venable.com

---

[32] *See, e.g.*, *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 421-22 (S.D.N.Y. 2011)
(ordering security of $95,000 for injunction where non-movants alleged "out-of-pocket costs,
[their] financial state, the loss of all revenue from principal product, and the risk of customer
loss"); *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123 (S.D.N.Y. 1993)
(ordering security of $100,000 for injunction involving BBQ sauce).

*Counsel for Plaintiff Everytown for Gun Safety Action Fund, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

On December 10, 2021, I caused a true and correct copy of the foregoing to be served on

the following counsel of record via the Court's ECF system:

Daniel Louis Schmutter
Hartman & Winnicki, P.C
74 Passaic Street
Ridgewood, NJ 07450
dschmutter@hartmanwinnicki.com

David William Shapiro
The Norton Law Firm
299 Third Street
Suite 200
Oakland, CA 94607
dshapiro@nortonlaw.com

/s/Marcella Ballard