

VENABLE LLP | 1270 AVENUE OF THE AMERICAS
24TH FLOOR | NEW YORK, NY 10020
T +1 212.307.5500 F +1 212.307.5598 Venable.com

December 22, 2021

**T 212.370.6289**
**F 212.307.5598**
MBallard@Venable.com

Honorable Paul G. Gardephe
United States District Court Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc. et al.*, 21-cv-08704

Dear Judge Gardephe:

We represent Plaintiff Everytown for Gun Safety Action Fund, Inc. ("Everytown") and write to address the Court's Dec. 14 Order [ECF 68] (1) directing Defendant Defcad Inc. to comply with the Nov. 5 Order [ECF 30] and produce, *inter alia*, Defendants' identifying information noting that the previously filed anonymous declarations were of "no evidentiary worth"; and (2) directing Plaintiff Everytown to file a letter brief detailing whether it intends to proceed against Defcad under a theory of direct and/or contributory liability for trademark infringement.

Everytown reports to the Court on the first directive that, to date, Defcad has not provided any information to Everytown pursuant to the Nov. 5 Order and Everytown needs this information to proceed with the litigation. On the second directive, Everytown by this letter brief seeks leave to file a first amended complaint ("FAC") to add a claim for contributory infringement against Defcad and to add evidence of Defendants' continued infringement discovered since the filing of Everytown's original complaint.[1]

## I. Everytown's Complaint and FAC Support Direct Infringement by Defcad.

Under the Lanham Act, an individual or business is liable for direct infringement where, without the consent of the trademark owner, they engage in: "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). "A defendant's sale of infringing goods suffices to establish direct liability." *See Abbott Labs v. Adelphia Supply USA*, 2019 WL 5696148, at *6 (E.D.N.Y. Sept. 30, 2019) (citing *El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986)). Likewise, "offering for sale" in the statute

[1] Under Federal Rule of Civil Procedure 15, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court has broad discretion in determining whether to grant leave to amend...." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). A motion to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing case). As the Defendants have also filed a pre-motion letter with the court concerning Rule 12 matters on November 29, 2021 and have not yet served a responsive pleading or motion, Everytown believes it may also amend its complaint as a matter of course. Fed. R. Civ. P. 15(1).



"means that the defendant need not be proven to be in possession of infringing or counterfeit goods at the time of the offer to sell or that the defendant made an actual sale" – an "offer to sell" alone may establish liability. *See* 4 McCarthy on Trademarks & Unfair Competition § 25:26 (5th Ed.) (citing cases). Courts have found that a "defendant who does not directly sell, but materially participates in the sale or transport of infringing goods, may be held directly liable for infringement." *Abbott Labs*, 2019 WL 5696148, at *6 (citing *BMW of N. Am., LLC v. WIN.IT Am., Inc.*, No. 17-cv-8826 (PSG), 2019 WL 926326, at *2 (C.D. Cal. Jan. 25, 2019). In situations where a party brokers a sale, even where the party only derives a "small profit," courts have found direct infringement. *Abbott Labs*, 2019 WL 5696148, at *6. Where an online marketplace allows third parties to post sales listings for an infringing good, the online marketplace has possession of the infringing good, and the online marketplace assists with the dissemination of the infringing good to the public, courts have found such facts sufficient to support direct infringement against the online marketplace. *See Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10-cv-8588, 2012 WL 3954518 (S.D.N.Y. Sept. 7, 2012) (denying online marketplace's motion for summary judgment on direct infringement trademark theory).

Here, Everytown is not fully aware of all the facts that bear on its direct infringement claims because it does not have the information that is uniquely in Defcad's possession. Nevertheless, Defcad's website (https://www.defcad.com/faq/), and statements Defcad has made in opposition to Everytown's request for injunctive relief, make clear that Defcad is materially participating in the sale or transport of the Infringing Products. Specifically, the Declaration of Garret Walliman [ECF 56-2] alleges that "[a]ll Defcad users are required to pass a series of tests when attempting to request access to a file on the website" (¶ 10), and that "Defcad fulfills the Level 0 orders by loading the requested files on to a USB flash drive, then shipping it to the [users] address." *See* ¶ 13. Further Mr. Cody Wilson (who operates Defcad's website) previously has made public statements concerning the nature of how Defcad works indicating that Defcad receives direct proceeds from the sale of the files listed on its website (which would also include the Infringing Products in this case). Specifically, Mr. Wilson previously announced that he would begin selling copies of different 3-D printed gun files on Defcad for a "suggested price" of $10 each.[2] These specific facts support Everytown's allegation that "Defendant Defcad is the owner and operator of the website Defcad.com . . . which hosts and distributes downloadable instructions for various firearms and firearm parts and accessories, including instructions for the Infringing Products . . .." Compl. ¶ 20. *See Abbott Labs v. Adelphia Supply USA*, 2019 WL 5696148, at *6 (E.D.N.Y. Sept. 30, 2019) (describing how selling the infringing products supports direct liability). Mr. Wilson's prior statements indicate that Defcad shares the profits collected from the sale of the Infringing Products with the other Defendants.[3]

[2] *See* Lopez, German, *Despite court order, owner of 3D-printed gun blueprints is distributing them anyway*, Vox.com (Aug. 29, 2018) https://www.vox.com/2018/8/29/17795668/3d-printed-gun-blueprints-cody-wilson-defcad (last accessed Dec. 18, 2021).

[3] *See supra*, Lopez, at n. 2 (quoting Mr. Wilson as stating "I'm also inviting the public to share their own files and share the profit with me.").



Even if Defcad does not receive a portion of the sale proceeds from the Infringing Products, Defcad acts as a gatekeeper for the file uploads and downloads on its website sufficient for direct liability. Namely, Defcad restricts access to certain files, including the Infringing Product files, and facilitates user's access to files through requests for information, and other requirements. See Declaration of Delia Green [ECF 65-1], at ¶¶ 15-16, Ex C. Further, it materially participates in the review of the Defendants' listings prior to the Infringing Products appearing for distribution on the defcad.com website.[4] The "DEFCAD staff" then generate renderings for the listings, adding those renderings depicting the Everytown Marks to the "project's gallery" for users to view in connection with the Infringing Product's being offered for sale. *See id.* A sample of one of the "renderings" Defcad created in connection with the Infringing Product listings is depicted below, and in Complaint Ex. 5:

Such conduct, as detailed more fully in Everytown's original complaint (at pars. 20, 106-107, 108, 110, 152, 153-154163-165) and its proposed FAC (at pars. 28-30, 121-139), is sufficient to establish direct infringement against Defcad.

## II. Contributory Infringement Liability Against Defcad is Also Proper.

To establish trademark infringement under a contributory liability theory, a plaintiff must show that a manufacturer, distributor, or service provider "intentionally induces another to infringe a trademark" or "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *See Slep-Tone Entm't Corp. v. Golf 600 Inc.*, 193 F. Supp. 3d 292, 296-97 (S.D.N.Y. 2016) ((quoting *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 103, 104 (2d Cir. 2010)). In the context of service providers, courts have also required the provider "exercise 'sufficient control over the means of the infringing conduct.'" *See Slep-Tone*, 193 F. Supp. 3d at 296-97 (quoting *Tiffany*, 600 F.3d at 105). Whether a party "knows or has reason to know [it] is engaging in trademark infringement" requires a "service provider ... have more than a general knowledge or reason to know that its service is being used to sell [infringing products]. Some contemporary knowledge of [the particular infringing items] is necessary." *Slep-Tone*, 193 F. Supp. 3d at 296-97 (quoting *Tiffany*, 600 F.3d at 107). Where a trademark owner has put a defendant service provider on notice as to particular infringing conduct, prong two is met. *Slep-Tone*, 193 F. Supp. 3d at 298.

[4] See https://www.defcad.com/faq/ (describing how "DEFCAD staff" reviews 3-D file uploads, and generates "renders" of those uploads, then adds the "renders" to a user's project gallery prior to the listing being made "live" in the Defcad library).

Here, Defcad continued to supply its services to the Defendants, whom it knew or had reason to know were engaging in trademark infringement. Defcad knew of the infringement and ignored it. *See* FAC ¶¶ 210-214; Declaration of Erin Galloway [ECF 17], at ¶¶ 52-54.[5] "Defendant Defcad did not respond to Everytown's complaint nor remove the listings for the Infringing Products." FAC ¶ 211. Defcad exercises sufficient control over the means of distributing the Infringing Product on its website as it controls which files are uploaded to its website and limits who can upload files to defcad.com to "Defcad Partners" – *i.e.*, registered users who applied to Defcad and were approved. *Id.* ¶¶ 123-125, 137-39. As described above, "Defcad staff" then "review" uploads from Defcad approved partners, and Defcad "will generate renders of your product, and will add these renders to your project's gallery." *Id.* ¶ 128. Accordingly, a contributory theory of liability also applies to Defcad's conduct in this case as detailed in the FAC at pars. 123-125, 128, 137-39, 210-214, and 240-250.

## III. The Evidence Further Supporting Everytown's Claims Discovered Since the Filing of Everytown's Original Complaint.

Everytown also includes information in the proposed FAC that was discovered after its original complaint was filed concerning the confusing and diluting use of the Infringing Domain, www.momsdemand.org. *See* FAC ¶¶ 189-202. As of December 14, 2021, when accessed, the Infringing Domain immediately re-directs to one of Defendants' Infringing Product listings for a "Moms Demand Action – Firebolt 5.56 Bolt Catch Magwell." *See* Supplemental Delia Green Declaration ("Supp. Green Decl."), at ¶¶ 5-6. Everytown has made efforts to identify the exact registrant of the Infringing Domain, but the registrant information is currently privacy protected. *See Id.* ¶ 7, Ex. A. Historical Wayback Machine Internet Archive captures indicate that the Infringing Domain formerly forwarded to the URL www.deterrencedispensed.com, which appears to be owned and/or operated by the same individual(s) who operate Defendant The Gatalog. *Id.* ¶¶ 8-13 (discussing how the https://www.deterrencedispensed.com/ homepage currently indicates "[w]e're moving to The Gatalog. Please bear with us through this transition." and how the www.thegatalog.com homepage currently states "[p]lease bear with us during our transition. For more visit Deterrence Dispensed.")

The Infringing Domain incorporates some of the Everytown Marks, namely U.S. registration numbers 5092084 and 4569205 for MOMS DEMAND ACTION, and thus is likely to be confused with www.momsdemandaction.org, one of Everytown's Websites used for Everytown's non-profit and gun safety advocacy work. *See* Declaration of Matthew McTighe [ECF 18], at ¶ 11. The Infringing Domain re-directing to Defendants' Infringing Product listing is additional evidence that Defendants' ongoing behavior is causing Everytown harm.

[5] Mr. Wilson admits to having received the Everytown's notice of infringement, but that he chose to take no action. *See* https://www.kommandoblog.com/2021/11/01/everytown-sues-twitter-users-defcad/ (last accessed Dec. 21, 2021) (stating "I was ready for this lawsuit the same week they sent the takedown"). In this same article, Mr. Wilson – a registered sex offender –publicly calls one of Plaintiff's declarants (a paralegal at the undersigned law firm) a "dumb bitch" and threatens to sue and get "my pound of flesh from her." *Id.*



December 22, 2021

Such facts further support Everytown's original claims and the need for preliminary injunctive relief, and full disclosure of the Defendants' identifying information. In addition to the Defendants' other conduct, the re-directing of the Infringing Domain to the Infringing Product listing for the "Moms Demand Action – Firebolt 5.56 Bolt Catch Magwell" further demonstrates that the Defendants are actively using the Everytown Marks in commerce without Everytown's consent in a manner likely to cause confusion and dilution. Like the defendant in *Planned Parenthood Federation of America, Inc. v. Bucci*, the Defendants are using a domain that is likely to cause confusion with Everytown's MOMS DEMAND ACTION mark as it contains almost the entirety of the mark, again with no other distinguishing features, and contains the same domain ending ".org" as Everytown's authentic www.momsdemandaction.org website. *See Planned Parenthood Federation of Am., Inc. v. Bucci*, No. 97 Civ. 0629, 1997 WL 133313, at *1, 8 (S.D.N.Y. Mar. 24, 1997) (discussing how domain name containing almost the entirety of plaintiff's mark PLANNED PARENTHOOD was likely to cause trademark confusion).

Moreover, the Infringing Domain further supports that the Defendants' unlawful conduct is "use in commerce" under the Lanham Act as "it is likely to prevent some Internet users from reaching plaintiff's own Internet web site" and "[Defendants] [have] appropriated plaintiff's mark . . . to reach an audience of Internet users who want to reach plaintiff's services and viewpoint, intercepting them and misleading them in an attempt to offer [their own goods]." *Planned Parenthood*, at *6; *accord PETA*, 263 F.3d at 365 ("To use PETA's Mark 'in connection with' goods or services, [defendant] need not have actually sold or advertised goods or services on the *www.peta.org* website. Rather, [defendant] need only have prevented users from obtaining or using PETA's goods or services, or need only have connected the website to other's goods or services").[6] Once re-directed from the Infringing Domain, consumers are confronted with an Infringing Product listing for a "Moms Demand Action" firearm part likely to further cause confusion and dilution.

In sum, we respectfully request leave to file the FAC and, for the reasons stated herein and in Plaintiff's Application, further respectfully request that Defcad be ordered to comply with the Nov. 5 Order. Plaintiff's proposed FAC is attached hereto as **Exhibit A** in a redline version for the Court's convenience.[7] We include the Supp. Green Dec. as **Exhibit B.**

                                                Respectfully submitted,
                                                /s/ Marcella Ballard

---

[6] *See also Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 404 (S.D.N.Y. Feb. 26, 2021) (finding "use in commerce" plead where defendant used plaintiff's trademark in domain name URL).

[7] For convenience, Everytown identifies FAC paragraphs 3-4, 6, 7, 13-17, 28-30, 102-103, 118, 121-139, 189-202, 203, 205, 210, 212, 214, 220, 229, 236, 240-250, 254, and 255 as being modified from the original complaint. To the extent the filing of the FAC requires Plaintiff's to file an updated proposed order on its application for a preliminary injunction – including to encompass the new allegations in the FAC described above – Plaintiff is prepared to do so forthwith.