# HARTMAN & WINNICKI, P.C.

74 PASSAIC STREET
RIDGEWOOD, NEW JERSEY 07450
Phone: (201) 967-8040
Fax:   (201) 967-0590

December 31, 2021

**VIA ECF**
Hon. Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

      Re:    **Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc., et al.**
              Civil Action No. 21-cv-8704 (PGG)

Dear Judge Gardephe:

We represent Defendants Defcad, Inc. ("Defcad"), Odysee User xYeexySZN, Defcad User xYeezySZN, The Gatalog, Defcad User Freeman1337, Twitter User xYeezySZN, and Phillip Royster ("Defendants") in the above-referenced matter, and we write in response to Plaintiff's submissions filed at ECF No. 76 and pursuant to the Court's order at ECF No. 68.[1]

## 1. DEFENDANTS CANNOT BE LIABLE FOR DIRECT OR CONTRIBUTORY INFRINGMENT.

Trademark liability attaches only to the use of a trademark in commerce. There is no liability for merely reproducing a mark on goods neither offered for sale, nor shipped in commerce. *See, E.g., Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 181 (N.D.N.Y. 2011).

Plaintiff alleges that Defendants offered computer files containing instructions for printing firearms or firearm parts, ostensibly with Plaintiffs' trademarks embossed upon the parts so created. However, there is *no allegation* that guns or parts so embossed have entered the stream of commerce, particularly not in New York. There is no allegation or proof that any products created from these files have been sold or offered for sale, moved in commerce, or been transferred from any downloader. Moreover, there is no evidence that anyone printed the guns or parts, or that anything other than satirical pictures were conveyed to anyone. In fact, the images in the complaint (and proposed First Amended Complaint), purporting to show items printed from the files at issue, do not even actually show items printed from any of the files at issue. *See* Declaration of Joseph Chavez. As far as the allegations are concerned, all that has happened is that some defendants have created computer files containing instructions for printing guns or parts and have made them available for download. Another defendant, Defcad, has hosted the files on its website.

---

[1] Plaintiff gratuitously offers that Defcad has not yet produced any information but omits that the Second Circuit ordered a stay and also omits that the parties have been negotiating a protective order with, strangely, *no response of any kind* from Plaintiff's counsel within the last 10 days.

In the absence of a credible allegation that guns or parts embossed with Plaintiff's trademarks have been transferred, sold or offered for sale, there can be no liability for direct trademark infringement.

The creation and dissemination of the "offending" files cannot itself be a direct trademark infringement, because the files do not themselves contain Plaintiff's trademarks on goods in commerce. *Rescuecom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393, 400 (N.D.N.Y. 2006) ("Use" must be decided as a threshold matter). At worst, the files contain code that informs the printer to emboss Plaintiff's trademark upon the finished product. But until the user places the finished product into commerce, there is no liability for trademark infringement. *Id.*

Nor can there be liability for contributory infringement. Contributory infringement "can arise when a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows is engaging in trademark infringement." *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869, 901 (S.D.N.Y. 2016) (cleaned up); *David Berg and Co. v. Gatto International Trading Company, Inc.*, 884 F.2d 306, 311 (7th Cir. 1989). Thus, there can be no liability for contributory infringement without direct infringement. ". . . to survive a motion to dismiss, a complaint need only plausibly allege facts tending to establish the elements of a contributory infringement cause of action, *including direct infringement by a third party.*" *Ferring B.V. v. Fera Pharmaceuticals, LLC*, No CV 13-46410 (SJF) (AKT) 2015 U.S. Dist. Lexis 100553 *29 (E.D.N.Y. July 6, 2015) (emphasis added). If a complaint, and the facts, would not survive the easier standard of a motion to dismiss, it would be highly irregular and improper for an injunction to issue when there is no proof of a direct infringer.

There are no allegations indicating that any party has directly infringed Plaintiffs' marks. Plaintiff provides no evidence that these files were used to print guns. Even if users download the files, print out the guns or parts and keeps them for themselves, there would be no infringement. Direct infringement requires use of the offending mark *in commerce*. And, in the absence of direct infringement, there can be no contributory infringement *even if the defendants knew that the plaintiffs' trademarks were being embossed on the gun parts.* Without an allegation of a transfer of the parts or gun themselves, there is no use in commerce and thus no trademark infringement. *Google, Inc.,* 456 F. Supp. 2d at 400. Additionally, if there is no direct infringer subject to the personal jurisdiction of this Court, this Court does not have jurisdiction to consider the matter.

**2. DEFENDANTS' USE OF THE EVERYTOWN MARKS AND VARIATIONS THEREOF IN THE DATA FILES AT ISSUE IS CLEAR PARODY**

Defendants' use of Everytown's marks (and variations) in these files is clear parody. Parody is a "simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the marks' owner." *L.L. Bean, Inc. v. Drake Publishers, Inc.,* 881 F.2d 26, 34 (1st Cir. 1987); *see also Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.,* 156 F. Supp. 3d 434 (S.D.N.Y. 2016) ("*MOB*"). While parody necessarily includes humor or entertainment, it will be subjective, and so even commentary viewed as criticism to some may still be parody. Here, the relevant audience (i.e. the sophisticated members of defcad.com) are likely to find the irreverent juxtaposition of an Everytown mark, or a variation thereof, with a small arms technical data file available on defcad.com very humorous and entertaining. Supplemental Declaration of Cody Wilson ("Wilson Dec.") at ¶16. Contrastingly, as evidenced

from the fact that this case is even being litigated in the first place, a vocal anti-gun organization like Everytown will likely find this satirical juxtaposition less humorous or even critical and will seek to stifle this free speech and suppress criticism and satire thrown in its direction. *Id.* at ¶24.

The interests of Everytown and its supporters and the interests of Defcad and its members are very publicly and vocally diametrically opposed. *Id.* at ¶4, 13-15. The defcad.com platform, which is the world's largest repository for small arms technical data ("Data Files"), was created as a platform for free speech and in support of the Second Amendment. *Id.* at ¶4. The ability to download the Data Files on defcad.com is limited to individuals who specifically request and are approved for a membership ("Members"). *Id.* at ¶3. These Members share beliefs similar to Defcad and have formed a community invested in protecting First Amendment free speech and the Second Amendment right to keep and bear arms, including specifically the rights surrounding small arms technical data files, which are the only type of data files available for Members on defcad.com. *Id.* at ¶4. In stark contrast to Defcad and its Members, Everytown is the largest anti-gun group in the United States. *Id.* at ¶13. Everytown's widespread recognition and the strength of the Everytown marks makes it easier for the relevant Defcad Members to recognize that the use of these marks, and variations thereof, in the Data Files is a parody and a joke. McCarthy on Trademarks and Unfair Competition §31:153 (4th ed. 2001) ("The strength and recognizability of the mark may make it easier for the audience to realize that the use is a parody and a joke on the qualities embodied in trademarked word or image"); *see also Tommy Hilfiger Licensing, Inc.,* 221 F. Supp. 2d at 416 ("It is precisely because of the mark's fame and popularity that confusion is avoided, and it is this lack of confusion that a parodist depends upon to achieve the parody"); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog,* LLC, 464 F. Supp. 2d 495, 499 (E.D. Va. 2006) ("*Haute Diggity Dog II*") ("Strength of mark is usually a strong factor in determining customer confusion. However, in cases of parody, the opposite can be true."). Everytown is very publicly and vocally involved in sponsoring, organizing and holding large anti-gun rallies and marches, and in funding and supporting heavily publicized anti-gun litigation. Wilson Dec. ¶13. Everytown has publicly opposed Defcad's parent company, Defense Distributed, and has even attempted to intervene in several lawsuits in opposition to Defense Distributed. *Id.* at ¶15. Everytown is not only vocally opposed to firearms, generally, but has also publicly voiced its opposition to the specific content available on defcad.com. *Id.* at ¶13. Everytown's knowledgeable and involved supporters are well aware of Everytown's positions, otherwise they would not be supporting the organization in the first place. *Id.* at ¶14. It would be challenging to find two more diametrically opposed organizations, especially two organizations that are so well known and highly publicized. These types of directly opposed organizations are natural reciprocal parody targets.

The relevant audience here is Defcad's Members as the only individuals with access to the Data Files. *Id.* at ¶3-4, 11-12. There is no chance that this sophisticated and knowledgeable audience is likely to be confused by the use of Everytown's marks and variations thereof as part of these Data Files. Instead, these Members will immediately recognize the parody. Conveniently avoided by Plaintiff in its Complaint and Proposed First Amended Complaint is that these Data Files are only downloadable by Members. As such, the only relevant audience is the Defcad Members, a highly sophisticated group that is knowledgeable of the politics surrounding firearms and free speech and highly engaged in the debate over the First and Second Amendments in the United States. *Id.* at ¶10. Defcad's passionate Members are very likely to be aware of Everytown and its beliefs as unquestionably the most well-known organization vocally opposed to Members'

views. *Id.* Suggesting they would be unaware of Everytown is like suggesting passionate supporters of President Trump are unaware of President Biden and his contrasting beliefs and that passionate supporters of President Biden are unaware of President Trump and his contrasting beliefs – simply unreasonable. Thus, the intended parody of juxtaposing Everytown's marks and variations with these Data Files would most certainly be immediately recognized and very much appreciated by Defcad's Members. *Id.* at ¶16. A message of parody or ridicule need not be explicit or textual and may, instead, be inherent in the juxtaposition of the mark with an unlikely product, or the placement of the mark in an unlikely context. *See MOB,* 156 F. Supp. 3d at 435 (involving a finding of parody where the Louis Vuitton marks were placed on a casual, canvas bag); *Tommy Hilfiger Licensing, Inc.,* 221 F. Supp. 2d at 416 (juxtaposing luxury brand trademarks with dog perfume found sufficient for parody); *Haute Diggity Dog II,* 507 F.3d at 260-61 ("the juxtaposition of the similar and dissimilar – the irreverent representation and the idealized image of an LVM handbag – immediately conveys a joking and amusing parody." Parody is clear from the juxtaposition of Everytown's marks with a type of data file Everytown works to criminalize.

There is no reasonable scenario in which confusion is likely, making the parody even stronger. While Members may hope that in some parallel universe Everytown flips 180 degrees and begins supporting gun rights, this far-fetched dream is enough to cause a Member to laugh. Similarly, while Everytown's engaged supporters may not find these Data Files humorous and may, instead, find the irreverent juxtaposition frustrating, they obviously will not be confused. Wilson Dec. ¶16. However, for Everytown's supporters to be frustrated by this parody, they would first have to visit defcad.com and become a member of a site that opposes everything they stand for – this simply would not happen. As much as Everytown may not like being the butt of a joke in the opposing Defcad community, the intended parody is certainly not lost on the relevant group of Defcad Members. The standard for parody is not whether the target of the parody gets its feelings hurt, but whether the relevant audience will appreciate the humorous, entertaining or critical message.

These Data Files not only incorporate Everytown's marks, but also non-identical, humorous variations. While the juxtaposition of these marks, without variation, and the Data Files themselves are sufficient to clearly communicate the intended parody, an additional humorous element simply adds to the message. *See, e.g., Lamparello v. Falwell,* 420 F.3d 309, 316 n.4 (4th Cir. 2005) (no confusion from use of entirety of plaintiff's mark in domain name for a comment and criticism website); *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 807 (9th Cir. 2003) (no liability in photographer's use of plaintiff's unaltered BARBIE trademark and doll trade dress in photographs featuring "nude Barbie in danger of being attacked by vintage household appliances."). Upon downloading these Data Files, the downloader automatically receives three files, two of which incorporate humorous, non-identical variations of Everytown's marks. Wilson Dec. ¶21. These variations include, for example, "MILFS DEMAND ACTION FOR GUN SENSE IN AMERICA" (a humorous modification of Everytown's purported MOMS DEMAND ACTION FOR GUN SENSE IN AMERICA mark) and "EVERYGUN SHOULD BE FULL AUTO" (a humorous modification of Everytown's purported EVERYTOWN FOR GUN SAFETY mark). *Id.* "A parody must convey two simultaneous – and contradictory – messages: that it is the original, but also that it is *not* the original and is instead a parody." *Cliffs Notes, Inc. v. Bentam Doubleday Dell Publishing Group, Inc.,* 886 F.2d 490, 494 (2d Cir. 1989) (emphasis in original). The latter message "must not only differentiate the alleged parody from the original, but must also communicate some articulable element of satire, ridicule, joking or amusement." *Haute Diggity*

*Dog II,* 507 F.3d at 260); *see Cliffs Notes,* 886 F.2d at 496 (a work "is a parody if, taken as a whole, it pokes fun at its subject"). If a Defcad Member somehow missed the clear parody communicated by the juxtaposition itself, which would be nearly impossible, it is implausible that the relevant Member would still miss the parody after viewing these humorous variations. Wilson Dec. ¶21. The download of the three-file group is unavoidable – a Member cannot just select one of the files for download. *Id.* The download of this three-file group simply emphasizes the two necessary simultaneous messages of being the original, but *not* the original and instead a parody. As such, the recognition of the intended parody is simply unavoidable for the relevant audience.

3. **THE REQUEST FOR A PRELIMINARY INJUNCTION RAISES SERIOUS FIRST AMENDMENT CONCERNS.**

As discussed at greater length elsewhere in this brief, the placement of Plaintiff's marks on guns or parts created with the files allegedly distributed by Defendants is an obvious use of parody. Users of the files (and of defcad.com) are sophisticated users with an obvious interest in the controversies surrounding Defcad and its users. They will certainly recognize Plaintiffs' marks as they appear on parts made using the Data Files, and also recognize that the placement of the marks is an obvious parody. It defies credulity that a user printing out guns or parts from these Data Files would be confused and believe that such guns were sponsored by, or approved by, Everytown. The key to infringement is likelihood of confusion. *Polariod Corp v. Polariod Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961). Here, there can be no likelihood of confusion.

Thus, even assuming—contrary to the evidence—that the users of these Data Files engage in direct infringement, the question is whether a prohibition on posting those files—a prior restraint on speech—satisfies the First Amendment. While Defendants make Data Files incorporating Plaintiff's marks as a form of parody, available, nothing Defendants do or have done requires the subsequent use of these files to print and assemble a physical product bearing the marks. Defendants' conduct is non-commercial satirical free speech where Defendants' provide the Data Files and nothing more. *Universal City Studios Inc. v. Corley,* 273 F.3d 429, 445-448 (2d Cir. 2001) (Computer code is not exempted from First Amendment). Further, as discussed above, when a downloading these Data Files, the download is a grouping of three files involving both the Everytown marks and variations. Wilson Dec. ¶21. The download as a whole further emphasizes the parody. Notwithstanding this clear satirical display, incorporation of the marks in the Data File is political commentary. Even if Defendants actually provide physical guns or parts, which they do not, placement of the marks on the user's guns or gun parts is not a "functional" part of the weapon; rather, it is a pure political commentary. Even if the ultimate downloader chooses to take the data file and take multiple additional and complex steps to actually create a physical item from the file, defendants cannot be liable simply for making the parodies available. *Corley*, 273 F.3d at 447. Any other outcome would be a prior restraint on defendants' expression.

               Respectfully submitted,
               /s/ Daniel L. Schmutter
               DANIEL L. SCHMUTTER

DLS/srs
cc: Marcella Ballard, Esq. (via ECF)
   Meaghan Kent, Esq. (via ECF)