# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| EVERYTOWN FOR GUN SAFETY ACTION FUND, INC., | ) ) ) | |
| *Plaintiff* | ) ) | Civil Action No. 1:21-cv-08704-PGG |
| v. | ) ) | |
| DEFCAD, INC.; ODYSEE USER XYEEZYSZN; DEFCAD USER XYEEZYSZN; ODYSEE USER THEGATALOG-PRINTABLEMAGAZINES; THE GATALOG; DEFCAD USER FREEMAN1337; TWITTER USER XYEEZYSZN; PHILLIP ROYSTER. | ) ) ) ) ) ) ) ) ) | |
| *Defendants* | ) ) ) | |

**REVISED MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER PURSUANT TO 28 U.S.C. §1404 AND/OR §1406**

Daniel L. Schmutter, Esq.
Hartman & Winnicki P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
201-967-8040 (phone)
201-967-0590 (facsimile)
dschmutter@hartmanwinnicki.com

DATED: June 16, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION AND SUMMARY .............................................................................. 1

STATEMENT OF FACTS ............................................................................................... 1

    A.   Defendant Defcad, Inc. ...................................................................................... 1

    B.   Anonymous and Individual Defendants ........................................................... 4

    C.   Nature of the Dispute........................................................................................ 5

    D.   Litigation Pending in the Western District of Texas and the Fifth
        Circuit. .............................................................................................................. 6

ARGUMENT .................................................................................................................... 7

  I.   The Court Should Dismiss the Complaint for Lack of Personal
      Jurisdiction ........................................................................................................ 7

    A.   Defendants are not subject to general jurisdiction in New York. .................... 7

    B.   Defendants are not subject to specific jurisdiction in New York. ................... 9

        1.   New York's Long Arm Statute Does Not Authorize
           Jurisdiction. ............................................................................................ 9

        2.   For the Same Reason the Court Also Cannot Exercise Personal
           Jurisdiction Over The Gatalog.............................................................16

        3.   For the Same Reason the Court Also Cannot Exercise Personal
           Jurisdiction Over Phillip Royster and Odysee User xYeezySZN ...........18

        4.   Exercising Personal Jurisdiction over Defendants would violate Their
           Right to Due Process .............................................................................20

  II.  The Court Should Dismiss the Complaint for Improper Venue ...............................21

    A.   Venue is not proper in this district................................................................ 22

    B.   The Court should dismiss or, in the alternative, transfer the case to
        the United States District Court for the Western District of Texas. .............. 22

  III. In the Alternative, the Court Should Transfer the Case to the
     Western District of Texas Pursuant to 28 U.S.C. §1404. ...........................................23

CONCLUSION................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Cases**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557,
2011 WL 6130149 (E.D.N.Y. 2011) ............................................................... 11

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....................................................................... 22

*ALS Scan v. Digital Services Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ............... 12

*Anthony v. Kaufman*, 193 F.2d 85 (2d Cir. 1951)............................................................ 23

*Asahi Metal Indus. Co. v. Sup. Court of Cal.*, 480 U.S. 102 (1987)................................. 20

*Ayla, LLC v Ayla Skin Pty. Ltd.*, 11 F.4d. 972 (9th Cir. 2021) ......................................... 12

*be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011) ....................................................... 19, 22

*Bensusan Restaurant Corp. v. King,* 126 F.3d 25 (2d Cir.1997)................................. 12, 13

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC,*
935 F. Supp. 2d 615 (S.D.N.Y. 2013) ...................................................... 10, 15

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)................................................. 7, 20

*Calder v. Jones*, 465 U.S. 783 (1984).............................................................................. 12

*College Essay Optimizer, LLC v. Edswell, Inc.*, No. 14–cv–8586 (LAK),
2015 WL 5729681 (S.D.N.Y Sept. 30, 2015) ................................... 10, 12, 16

*CutCo Indus., Inc. v. Naughton,* 806 F.2d 361 (2d Cir. 1986) .......................................... 9

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................... 8

*Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC,* 90 A.D.3d 977 (2011) ........ 18

*D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320 (S.D.N.Y. 1996)................... 21

*Defense Distributed et al. v. United States Department of State, et al.*, No. 1:18-cv-
00637-RP (W.D. Tex.) ................................................................................. 6

*Defense Distributed v. Grewal*, 364 F. Supp. 3d 681 (W.D. Tex. 2019).......................... 7

*Defense Distributed v. Grewal*, 971 F. Supp. 3d 485 (5th Cir. 2020)........................... 7

*Defense Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015).......... 7

*Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016) ....................... 7

*Defense Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017) ....................... 7

*DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81 (2d Cir. 2001) ........................... 7

*Energy Brands Inc. v. Spiritual Brands, Inc*., 571 F. Supp. 2d 458,
    2008 WL 2747276 (S.D.N.Y. 2008) .............................................................. 14

*Enigma Software Group USA, LLC v. Malwarebytes Inc.*,
    260 F. Supp. 3d 401 (S.D.N.Y. 2017) ........................................................ 23

*Ferguson v. Ford Motor Co*., 89 F. Supp. 45 (S.D.N.Y. 1950)....................................... 23

*Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193 (2d Cir. 2000) ...................................... 9

*French Transit v. Modern Coupon Sys.,* 858 F. Supp. 22 (S.D.N.Y. 1994)................... 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)................... 7, 8

*Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158 (2d Cir.2005) ................. 9

*Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL)(AJP),
    1997 WL 97097 (S.D.N.Y. Feb. 26, 1997) ............................................. 10, 14

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).................................................... 7

*ISI Brands, Inc. v. KCC Int'l, Inc*., 458 F. Supp. 2d 81 (E.D.N.Y. 2006)…………9, 10, 13

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ............................................. 20

*Paterno v. Laser Spine Institute*, 112 A.D.3d 34 (2013) ........................................ 15, 18

*Rates Technology Inc. v. Cequel Communications, LLC,*
    15 F. Supp.3d 409 (S.D.N.Y. 2014) ............................................................. 7

*Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522 (N.D.N.Y. 2006)............................. 13

*Shabrawy v. Ocean Ships, Inc.,* 277, 641 N.Y.S.2d 36 (1996)...................................... 8

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ................. 8

*Stanley Steemer Int'l, Inc. v. Stanley Steam Carpet Cleaning*, No. CV 12-1653
    (SLT)(VVP), 2014 U.S. Dist. LEXIS 163556 (E.D.N.Y. Oct. 28, 2014).................... 19

*Starmedia Network, Inc. v. Star Media, Inc.*, 64 U.S.P.Q.2d 1791, 2001 WL 417118
(S.D.N.Y. Apr. 23, 2001) ............................................................................................. 15

*Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131 (E.D.N.Y. 2000) ............................ 15

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d. Cir. 2003) ................................... 22

*Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633 (2d Cir.), *cert. denied,* 352 U.S.
871, (1956) ............................................................................................................ 13

*Verragio, Ltd. v. S K Diamonds*, No. 16-CV-6931 (KBF),
2017 WL 1750451 (S.D.N.Y. May 4, 2017) .................................................................. 20

*Walden* v. *Fiore*, 571 U.S. 277 (2014) ........................................................................... 7

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................... 20

*Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408 (E.D.N.Y. 2011) ..................... 11

**Statutes**

28 U.S.C. §1391 .................................................................................................. 21, 22, 23
28 U.S.C. §1404 .......................................................................................................... 23

**Rules**

C.P.L.R. § 301 .................................................................................................... passim

## INTRODUCTION AND SUMMARY

Plaintiff's filing this action in the Southern District of New York must fail. None of the Defendants has any connection to New York; none lives, works, has an office, owns property, is incorporated, or does business here. None of the files of which Plaintiff complains are accessible in New York from the website of Defcad, Inc. ("Defcad"), as Defcad has intentionally blocked such access. Despite Plaintiff's efforts, it has been unable to obtain these files from New York.

Plaintiff cannot show any events related to the cause of action connected to New York – no customer downloads, no confusion, nothing. The best Plaintiff can do is argue that some of the allegedly infringing files are potentially accessible from a hypothetical computer in New York.

Mere internet access is not enough to satisfy Due Process. If it were, every court on Earth could exercise jurisdiction over everything on the internet merely because of hypothetical access.

Yet, two Defendants are located in the Western District of Texas and are subject to jurisdiction and venue there. The other movants consent to jurisdiction and venue there.  Therefore, the matter can be fully adjudicated as to all of these Defendants in the Western District of Texas. The court should dismiss the case or, in the alternative, transfer it to the Western District of Texas.

## STATEMENT OF FACTS

On October 22, 2021, Everytown For Gun Safety Action Fund, Inc. ("Everytown") filed a Complaint alleging Federal and New York State trademark infringement claims. (Complaint, ECF No. 1.) On May 3, 2022, Plaintiff filed its First Amended Complaint ("FAC") (ECF No. 89).

### A.      Defendant Defcad, Inc.

The FAC names as a Defendant Defcad, Inc. Defcad is a corporation organized under the laws of Arkansas with a principal place of business of 2320 Donley Dr. Suite C, Austin, Texas 78758-4514. Defcad has appointed agents for receipt of process in both Arkansas and Texas.  *See*

Declaration of Cody Wilson, Exhibit 1, (printout of search results for Defcad from the Arkansas Secretary of State's website, https://www.sos.arkansas.gov/corps/); Exhibit 2 (printout of search results for Defcad from the Texas Secretary of State's website, https://mycpa.cpa.state.tx.us).

Defcad does no advertising targeted to New York, conducts no business and has never conducted business in or with anyone in the State of New York. Defcad has no offices, employees, or agents in New York. Defcad has never paid taxes in New York. Defcad does not own use or possess any real or personal property in New York. Defcad has no bank accounts in New York.

Defcad has not registered to do business in New York because it does no business there.

Defcad does not provide files to individuals believed to reside in New York, by any method. With one exception in May of 2021 (not any the subject files), and it has not provided files to any individual suspected to reside here since at least as early as 2020. For these reasons, Defcad does not derive substantial revenue from New York.

None of the files cited in the FAC or Ms. Green's Declarations, which are allegedly hosted on Defcad, have ever been provided, by any method, to individuals believed by Defcad to be residents of the state of New York. Before a user is able to receive any computer files from Defcad, Defcad's systems perform a number of security checks. (Dec. of Garret Walliman, ¶10-13.)

The user's computer's IP address is determined, and the user is subject to varying levels of security depending on the state they appear to be accessing the site from. Ms. Green was identified as coming from a high security state because her computer was identified as having a Maryland IP address. For such states, Defcad only supplies files to users with a Federal Firearms License ("FFL"). Before receiving files, these users must provide information regarding their FFL. If they do this, they must pay a fee paid in Bitcoin. Then, the order is forwarded to Defcad employees for fulfillment. These high security orders, if approved during the final analysis, are fulfilled by

loading the requested files onto a USB flash drive, then shipping it to the registered FFL address. Ms. Green was never able to download any files from the website, because she was flagged as a high security user and could not apply for treatment as an FFL or user associated with an FFL.

Even had she completed all the steps necessary for the transaction, she would never have received any files.  This is because Defcad has yet another security policy by which it does not ship files to any user known or believed to be in New York.  Defcad bars New York transactions because the state has objected to Defcad providing files to residents in that state without an FFL. Defcad has done this since 2020, and, with a single exception in May 2021 (not the subject files), has not sent any files into New York since that time. Since the computer Ms. Green had used to access the website had had a New York IP address, the order would have been declined. If Ms. Green had tried to complete a transaction, which appeared to originate in Maryland, Defcad would still have refused the order once it became aware that Ms. Green was a resident of New York.

The system is highly reliable because if Defcad cannot, using geolocation, confirm with a high level of accuracy, that the user is outside of the areas identified as "Restricted," Defcad treats such user as being located in a "Restricted Area" and being a "Restricted User". (Wilson Dec ¶26.)

Next the user is asked to register with the Legio Foundation, a related third party that further verifies the user's details and manages the list of users that have access to the Defcad website. Once users have registered, Defcad takes additional steps to confirm the bona fides of the user. Users are required to submit drivers' licenses and photographs and, most recently, answer questions from a then-current knowledge base. (Wilson Dec ¶27.)

If this process determines that a user is a Restricted, he or she is barred from downloading any files but may, if he or she is, or is associated with, a holder of a federal firearms license (an "FFL") permitted to order a file loaded on a flash drive; he or she is asked to pay $11.00 for this

service and then, requested to provide the details of his or her FFL in order to complete this request. Since the alleged "Infringing Files" were uploaded in June 2021, Defcad has not delivered any files this way to users in New York. Prior to that date, one file was delivered to an FFL licensee located in New York. Since March 2020, Defcad has delivered ten (10) files to FFL licensees across the United States in this way. Thus, none of the files cited in the FAC, or Ms. Green's Declarations, which are allegedly hosted on Defcad, have ever been provided, by any method, to individuals known or believed by Defcad to be residents of New York. (Wilson Dec ¶28-9.)

### B.   Anonymous and Individual Defendants

The FAC names as defendants several anonymous on–line user accounts that it describes as follows: Odysee User xYeezySZN; Defcad User xYeezySZN; The Gatalog; Defcad User Freeman1337; Twitter User xYeezySZN, and Odysee User TheGatalog-PrintableMagazines (the "Anonymous Defendants") as well as one named individual, Phillip Royster. Plaintiff alleges that these defendants are among the infringers of their trademarks.

The Declarations ("Individual Decs")[1] of Odysee User xYeezySZN, Defcad User xYeezySZN, The Gatalog, Defcad User Freeman1337, Twitter User xYeezySZN, and Phillip Royster ("Defendants") demonstrate that none of these Defendants live or work or have ever lived or worked in New York; none conduct business or have ever conducted business in or with anyone in New York; none have offices, employees, or agents in New York; none have ever paid taxes in New York; none own, use, or possess any real or personal property in New York; none have bank accounts in New York; and none have sent files as alleged in the FAC to anyone in New York.

The Declaration of The Gatalog demonstrates that defendant The Gatalog has not availed

---

[1] Defendants The Gatalog, Odysee User xYeezySZN; Defcad User xYeezySZN; and Twitter User xYeezySZN have filed under seal declarations providing their true identities pursuant to the Court's Stipulation Confidentiality Agreement and Protective Order (ECF No. 82) and have publicly filed redacted versions of those declarations.

itself of the privilege of doing business in the state.  The Gatalog does not host the gun part files that are at issue in this lawsuit; instead, it provides links to a website of a totally different company called Odysee where the files are located.[2] The Gatalog is a simple, non-interactive website with links to another website where the offending files are hosted.  It does no business in this state.

Even for defendants alleged to have uploaded files to an Odysee account, such as Odysee User xYeezySZN, there is no personal jurisdiction. Merely obtaining computer files is not the same as placing infringing articles into the stream of commerce - necessary for trademark liability.

Importantly, Defendant Defcad User Freeman1337 lives within the Western District of Texas, and each of the other forgoing Defendants consents to jurisdiction and venue in this lawsuit in the United States District Court for the Western District of Texas.

### C.    Nature of the Dispute

This dispute arises from allegations of activities constituting First Amendment protected speech.  Everytown alleges that "Everytown is the largest gun violence prevention organization in the United States."  (FAC ECF No. 89 ¶ 61.) In describing its mission, Everytown portrays itself as the *number one* gun control advocacy group in the nation, generally leading the way to restrict and ban various firearms and firearms related parts and accessories. (FAC ECF No.89, ¶¶ 61-76.)

Importantly, among Everytown's highest priorities is to ban what it hyperbolically refers

---

[2] The Plaintiff has named as a defendant in this lawsuit a party called ODYSEE USER THEGATALOG-PRINTABLEMAGAZINES. That account is one of the many accounts the website, TheGatalog.com, contains a link to. That account is an account with a whole different website called Odysee.  Defendant The Gatalog does not own and has never owned that account. Defendant The Gatalog does not use and have never used that account. Defendant The Gatalog does not have access, and has never had access to log in to that account.  None of the files that account hosts belong to Defendant The Gatalog or have ever belonged to Defendant The Gatalog. None of the files that account hosts or has hosted were created or uploaded by Defendant The Gatalog. None of the files that account hosts or has hosted were upload through the website TheGatalog.com. A person with an Odysee user account cannot upload a file to Odysee through TheGatalog.com. Defendant The Gatalog does not now know nor has he ever known who owns or uses the Odysee account THEGATALOG-PRINTABLEMAGAZINES.

to as: "assault weapons," "high capacity magazines," and "ghost guns." (FAC ECF No. 89 ¶ 229.) Notwithstanding the scary and misleading names Everytown gives these objects, Everytown cannot allege that they are anything other than lawful to possess in most parts of the United States. What frustrates Plaintiff the most is the broad legality of these items that it so strongly dislikes.

Everytown alleges that certain anonymous individuals and internet platforms have created or made available on-line 3D printable computer files that, when 3D printed, produce objects that display Everytown's trademarks. But, essential to the First Amendment defenses in the case, the objects alleged to display the Everytown trademarks when 3D printed are the very things Everytown *most* opposes: "assault weapons," "high capacity magazines," and "ghost guns" that display Everytown's trademarks. (*See, generally,* FAC, ECF No. 89 at ¶¶ 146-207.)

The FAC cites to photographs and tweets that mock Everytown using the very objects Everytown rails against. (*Id.*)  Thus, the alleged use of these trademarks cannot be for causing confusion. No one would see the 3D printed parts and believe that they originated from Everytown. The purpose is plainly to criticize and parody Everytown for its politics.

And this is borne out in the FAC. Everytown cannot and does not allege a single instance of actual confusion or that any files were actually downloaded by anyone in New York.

### D.   Litigation Pending in the Western District of Texas and the Fifth Circuit.

Currently pending in the United States District Court for the Western District of Texas is *Defense Distributed et al. v. United States Department of State, et al.*, No. 1:18-cv-00637-RP (W.D. Tex.).  Just like the instant matter, that case concerns Defcad and its parent Defense Distributed's publication of information concerning 3D-printed firearms and opponents efforts to stop and/or punish those publications.  The instant case and that case share keystone legal issues, such as whether and to what extent the computer files at issue constitute First Amendment speech.

Both the U.S. Court of Appeals for the Fifth Circuit and the Western District of Texas have longstanding experience with these issues, as reflected in published decisions going back to at least 2015. *See Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020); *Defense Distributed v. Grewal*, 364 F. Supp. 3d 681 (W.D. Tex. 2019) (Pitman, J.); *Defense Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017); *Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016); *Defense Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015).

## ARGUMENT

### I.    The Court Should Dismiss the Complaint for Lack of Personal Jurisdiction

Jurisdiction may be either general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Jurisdiction must satisfy Due Process, which requires that defendants have "certain minimum contacts with [the state] . . . ." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  This inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014). The defendant must conduct activity in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985).

The plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant. *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir. 2001) (per curiam). Courts may rely on affidavits submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss.  *Id.*  However, a court "will not draw 'argumentative inferences' in the plaintiff's favor" and need not "accept as true a legal conclusion couched as factual allegation."  *Rates Technology Inc. v. Cequel Communications, LLC*, 15 F. Supp.3d 409, 414 (S.D.N.Y. 2014) .

### A.    Defendants are not subject to general jurisdiction in New York.

New York law provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." C.P.L.R. § 301. The Court of Appeals

has held that a "defendant foreign corporation is not amenable to suit in the courts of this State pursuant to CPLR 301 where it has not engaged in such a 'continuous and systematic course of doing business here that a finding of its presence in this jurisdiction is warranted". *Shabrawy v. Ocean Ships, Inc.,* 226 A.D.2d 277, 277, 641 N.Y.S.2d 36, 37 (1996) (internal quotation omitted).

General jurisdiction must be compatible with Due Process.  See *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224–25, (2d Cir. 2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011), that is, its "place of incorporation and principal place of business".  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Defcad is not subject to general jurisdiction because it is organized in Arkansas, its principal place of business is Austin, Texas, and it does not engage in advertising targeted to New York, does not conduct business and has never conducted business in or with anyone in the State of New York. It has no offices, employees, or agents in New York. Defcad has never paid taxes in New York. Nor does it own use or possess any real or personal property in New York. Defcad has no bank accounts in New York, and it has not registered to do business in New York because Defcad does not do business there. (Wilson Dec ¶¶3-12)  Thus, New York cannot be regarded as Defcad's home, and it does not have the sort of "continuous and systematic" affiliations with New York suggesting that it is a surrogate for its place of incorporation or its principal place of business.

The Individual Defendants are also not subject to general jurisdiction because none live or work or have ever lived or worked in New York; do not conduct business or have ever conducted business in or with anyone in New York; have no offices, employees, or agents in New York; have ever paid taxes in New York; do not own use or possess any real or personal property in New

York; have no bank accounts in New York; and none have ever sent any files as alleged in the Complaint to anyone in New York. (*See* Anonymous/Individual Decs.)

**B.      Defendants are not subject to specific jurisdiction in New York.**

      **1.      New York's Long Arm Statute Does Not Authorize Jurisdiction.**

            **a)      No Jurisdiction Under Section 302(a)(1)**

Under C.P.L.R. §302(a)(1), jurisdiction may lie where a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state". Under § 302(a)(1), the courts look at the totality of a defendant's business contacts with New York. *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 166 (2d Cir.2005). A non-domiciliary transacts business for the purposes of § 302(a)(1) when it purposefully avails itself of the privilege of conducting activities within New York, and thus invokes the benefits and protections of the state's laws. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986). Further, there must be a direct and "articulable nexus" between the business and the cause of action. *Id.; see also Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193, 196 (2d Cir.2000).

Here the FAC fails to show that any of its claims for trademark infringement directly arise from any transaction of business in New York by Defendants. Plaintiff alleges in the FAC, "[t]he downloadable 'printing kits' are accessible to consumers in New York and bear unauthorized identical copies of Everytown's registered trademarks. Each Defendant has targeted New York consumers by uploading these files to a full interactive online website that is viewable by and accessible to New York consumers." (FAC ECF No. 89, ¶11.) Critically, Plaintiff does not allege that any New York consumer, apart from one of its attorney's paralegal, Ms. Green, has ever actually accessed or viewed Defcad's website or the Gatalog[3]. And the implication that "printing

---

[3] Plaintiff's legal team cannot create personal jurisdiction over Defcad. See *ISI Brands, Inc. v. KCC Int'l, Inc*., 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006).

kits" are "accessible" to New York consumers through Defcad's or The Gatalog's website is untrue.

Defcad does not send files to parties suspected of being in New York. (Walliman Dec., ¶¶7-18, Wilson Dec., ¶¶24-29.)  With one exception in May 2021 (not the subject files), no user suspected of being in New York has received files since 2020 from Defcad, much less the files that Plaintiff's assert are infringing.  (*Id*.)  Ms. Green asserts that she could click om "add to cart" while on a page relating to the allegedly infringing files (Green Dec, ECF. No. 16, ¶¶17, 20, 29).  She does not say that she was able to complete these transactions, that she got a download link, *or that she ever received files from Defcad*.  This is because she never completed a transaction on Defcad's website, and even if she had, Defcad would have refused shipment of files once it became aware that she was a resident of New York. (Walliman Dec., ¶¶9-15, Wilson Dec., ¶¶24-29.)

Thus, even if somehow a digital file itself could be considered an infringing or dilutive good (it is not), Plaintiff does not allege that any such files were ever sent by Defcad or any of the Defendants into the State of New York.  Indeed, as set forth above, the allegations would be false.

Courts in this circuit routinely decline to find personal jurisdiction over defendants who, as here, have never supplied infringing goods or services into the forum state.  See *Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL)(AJP),  1997 WL 97097 at *10-12 (S.D.N.Y. Feb. 26, 1997) (finding no jurisdiction under §302(a)(1) in the absence of an infringing sale despite the availability of defendant's website to New York Residents); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 622 (S.D.N.Y. 2013) (no infringing merchandise was ever sold into New York, apart from one sale to Plaintiff's investigator); *College Essay Optimizer, LLC v. Edswell, Inc.*, No. 14–cv–8586 (LAK), 2015 WL 5729681 at *5 (S.D.N.Y Sept. 30, 2015) (need "proof of direct sales in New York, or direct solicitation of business in New York.").

In *ISI Brands, Inc.* 458 F. Supp. 2d at 87-88, the Court held maintaining an e-commerce

website accessible to New Yorkers was insufficient to find "doing business" in New York for the purposes of §302(a)(1) absent some evidence of sales or other targeted activity into New York:

> Even the existence of an interactive "patently commercial" website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York. It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred.

No Defendant satisfies this. And as to Defcad, the allegations do not even rise to the level of those in *ISI*, where no jurisdiction was found. Defcad has not provided any files to suspected New Yorkers since 2018. It has never provided New Yorkers with the files that are the subject of this lawsuit, and in fact, users suspected of being New Yorkers are ***actively barred*** from completing transactions through Defcad.com. (Walliman Dec., ¶¶9-15, Wilson Dec., ¶¶24-29.) Thus, as to Defcad, this is not even a case like *ISI*, where infringing sales into New York have not yet occurred; it is a case where infringing sales into New York ***cannot*** occur because of steps taken by Defcad.

As to New York residents, www.defcad.com is not an interactive commercial website; it is a passive website that only presents information on the screen, and does not permit the consummation of sale. Such websites do not give rise to personal jurisdiction, even if they are visible to residents of New York. "Generally, a website that only provides information about services for sale and contact information for the seller, without any ability to directly purchase the services through the website, is considered 'passive' and therefore 'insufficient to demonstrate that the website operator has purposefully availed itself of the privilege of conducting activities within New York.'" *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568, 2011 WL 6130149 (E.D.N.Y. 2011) quoting *Zibiz Corp. v. FCN Tech. Solutions*, 777 F.Supp.2d 408, 423 (E.D.N.Y.2011). While Defcad's website accepted information from Ms. Green, she was

prompted to provide information so she could be barred in the event that her account information indicated she lived in a State like New York.  Whatever "interactivity" Defcad's website has for New York residents exists for the purpose of *not* transacting business with those people.

The same applies to the claim that the files are referenced and discussed on websites such as Twitter.com and Ctrlpew.com, which Plaintiff describes this as "advertis[ing]" and "promot[ion]." Such general discussion is insufficient to confer personal jurisdiction. A defendant's conduct must actually be *expressly aimed* at the forum state.  *Calder v. Jones*, 465 U.S. 783 (1984); *Ayla, LLC v Ayla Skin Pty. Ltd.*, 11 F.4d. 972 (9th Cir. 2021); *ALS Scan v. Digital Services Consultants, Inc*., 293 F.3d 707 (4th Cir. 2002). General internet discussion (even couched as "promotion" as plaintiff tries to do) cannot suffice. Nothing was *expressly aimed* at New York, and therefore none of that general internet activity can confer personal jurisdiction.

Everytown suggests providing a membership to a New York resident is sufficient for personal jurisdiction over Defcad.  But Plaintiff must show that the "cause of action arises from such a business transaction."  *College Essay Optimizer, LLC v. Edswell, Inc*., No. 14-cv-8586 (LAK), 2015 U.S. Dist. LEXIS 133488, at *9 (S.D.N.Y. Sep. 30, 2015).  Even if Everytown tries to argue (erroneously) that Defcad has transacted business in New York through providing a membership, Everytown's trademark cause of action does not arise from that transaction.

Further, the membership is not with Defcad but with a separate entity, Legio. A membership with a different entity cannot possibly confer personal jurisdiction.

### b)  No Jurisdiction Under Section 302(a)(2)

C.P.L.R § 302(a)(2) extends specific jurisdiction to claims arising from the commission of a tortious act within the state. A defendant be physically present in New York when it committed the alleged tort. *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 28 (2d Cir.1997). The

12

Second Circuit has held that trademark infringement occurs "where the passing off occurs, *i.e.,* where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.), *cert. denied,* 352 U.S. 871, (1956); *see also French Transit v. Modern Coupon Sys.,* 858 F. Supp. 22, 25 (S.D.N.Y.1994) (". . . the actionable wrong takes place both where infringing labels are affixed to the goods and where confusion of purchasers is likely to occur."); *ISI Brands, Inc*., 458 F. Supp. 2d at 89 (stating that §302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act.") (quotation omitted).

No Defendant has a physical presence in New York, and the FAC does not so allege.  (*See* Anonymous/Individual Decs.; Wilson Dec., ¶¶3-12.)  The FAC does not plausibly allege that any infringement occurred in New York, because it does not allege that any files were ever sent to New York.  Plaintiff cannot so allege because Defendants have never sent any of the allegedly infringing files to New York, and in fact, Defcad blocks New York users from receiving any files through the website. (*See* Anonymous/Individual Decs.; (Walliman Dec., ¶¶9-15, Wilson Dec., ¶¶24-29.).)

Even if the infringement alleged is the display of Plaintiff's marks on Defcad's or Gatalog's websites, there is no personal jurisdiction under §302(a)(2), since that display would be caused by software created by Defcad or Gatalog's employees outside of the state of New York (*See* Walliman DeclDec, ¶4; The Gatalog Dec; ¶5-6); *Bensusan Restaurant Corp.,* 126 F.3d at 29; *Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522, 532 (N.D.N.Y. 2006) ("the mere display of a mark on a website occurs where the website is created and/or maintained.")

### c)    No Jurisdiction Under Section 302(a)(3)

Section 302(a)(3) applies to tortious acts outside New York, causing injury in the state, if the defendant either (1) "regularly does or solicits business, or engages in any other persistent

course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (2) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Harm to Plaintiff is not sufficient to find injury within the state under §302(a)(3).  "It is firmly established that the domicile or residence of an injured party within New York is not enough to establish personal jurisdiction—rather, a more direct injury must have occurred within New York State…. in trademark infringement cases, the injury requirement is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet users in New York State." *Energy Brands Inc. v. Spiritual Brands, Inc*., 571 F. Supp. 2d 458, 467, 2008 WL 2747276 (S.D.N.Y. 2008) (quotation omitted). Plaintiff cannot allege confusion or dilution in New York. Defcad takes measures to not send these files to New York individuals. ((Walliman Dec., ¶¶9-15, Wilson Dec., ¶¶24-29.)), and TheGalatog.com host no such files for download.

But as to all of the Defendants, Plaintiff may argue that New York residents may be confused, or its marks may be diluted in the minds of New York residents, merely by the act of seeing Plaintiff's marks displayed in connection with files on Defcad's and others' websites. However, Plaintiff has not alleged that anyone in New York, apart from its legal team, has ever navigated to any website pages referencing the allegedly infringing files.  Moreover, even if this sort of passive viewing of the trademarks is cognizable New York harm under §302(a)(3), neither of the additional conditions set forth in §302(a)(3)(i) or (ii) apply to this case.

§302(a)(3)(i) provides, "[u]nder subparagraph (i), the defendant must be engaged in substantial commercial activities within New York consisting of regularly doing or soliciting business, or engaging in any other persistent conduct, or deriving substantial revenues from dispensing goods or services in the state." *Hearst Corp*., 1997 WL 97097 at *14.  The FAC

includes no allegations that any of the Defendants is engaged in sustained commerce in New York of the sort that would meet this standard, and the "the mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of" §302(a)(3). *Telebyte, Inc. v. Kendaco, Inc*., 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000).

As to §302(a)(3)(ii), Plaintiff cannot show that any Defendant has purposely availed itself of the benefits of the laws of New York, and as to Defcad specifically, given the steps taken to distance itself from New York, Defcad had no reasonable expectation that its actions would cause any harm in New York. As the court in *Starmedia Network, Inc. v. Star Media, Inc*., explained,

> [T]o establish a reasonable expectation of consequences [under §302(a)(3)(ii)] in New York, the plaintiff must show an effort by the defendant to serve the New York market. New York courts have asserted that the simple likelihood or foreseeability that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required… Applying these principles to a claimed trademark infringement through a website, a court has recently observed that, "[i]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit.

*Starmedia Network, Inc. v. Star Media, Inc*., 64 U.S.P.Q.2d 1791, 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) (other internal citations and quotations omitted). Here, again, none of the Defendants has made any effort to "serve the New York" market by making sales to customers in New York. And Defcad has even done the opposite, by implementing active measures to block New York users from receiving files. (Wilson Dec., ¶¶6-9, Walliman Dec., ¶¶15-18.) Accordingly, none of the Defendants can reasonably have expected the occurrence of harm in New York. *See Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 626-627 (S.D.N.Y. 2013) ( Defendant never sold to New York customers apart from Plaintiff's investigators).

In fact, Defendants' contacts with New York are far less that those of the defendant in *Paterno v. Laser Spine Institute*, 112 A.D.3d 34 (2013), where the court determined that there was

no personal jurisdiction in New York.  In that case, the defendants heavily advertised in this State for operations to be performed in Florida.  The plaintiff underwent surgery in Florida; once the surgery started to fail, the Florida defendants arranged for the plaintiff to obtain tests in New York, telephoned prescriptions into the state and consulted with the plaintiff's New York State doctors. Notwithstanding that all of these contacts directly related to the plaintiff's malpractice action, the court found insufficient contacts, since the situs of the injury was Florida (and even though the plaintiff suffered his damages primarily in New York state).  112 A.D.3d at 41-44.

Defendants' activities were not targeted at New York residents.  Everytown has provided "no evidence that any New York resident actually engaged in any relevant transactions." *College Essay Optimizer,* 2015 U.S. Dist. LEXIS 133488, at *11.  "New York courts that have exercised personal jurisdiction over defendants with interactive websites generally have done so based on proof of direct sales in New York, or direct solicitation of business in New York." *Id.* at *12.

And because Defendant Defcad User Freeman1337 only ever uploaded files to Defcad, the same analysis applies to Defendant Defcad User Freeman1337 and also applies to any files uploaded through Defcad User xYeexySZN.

Moreover, even if New York's long arm statute is satisfied when an out of state trademark defendant infringes marks owned by a New York party, the exercise of jurisdiction under such facts would not comport with Due Process.  As the Supreme Court noted in *Walden v. Fiore*, 571 U.S. 277, 285 (2014) the plaintiff cannot be the only link between the defendant and the forum state.  As is explained more fully below, for Due Process to be satisfied, the defendant must have some link to the forum state other than the plaintiff.

> **2.    For the Same Reasons the Court Also Cannot Exercise Personal Jurisdiction Over The Gatalog.**

Similarly, defendant The Gatalog has not availed itself of the privilege of doing business

in the state.  The Gatalog does not host the gun part files that are at issue in this lawsuit; instead, it provides links to a website of a totally different company called Odysee where the files may possibly be downloaded.  The individual defendant named as "The Gatalog" is the owner of the web domain, TheGatalog.com, which hosts a website that serves as an index with links to various accounts owned by other people that host 3-D printable firearm parts related computer files. TheGatalog.com does not host and at all times relevant to this lawsuit has never hosted any 3-D printable firearms related computer files on the site or on its server. (*See* Dec of The Gatalog.)

The Plaintiff has named as a defendant in this lawsuit a party called ODYSEE USER THEGATALOG-PRINTABLEMAGAZINES. That account is one of the many accounts the website, TheGatalog.com, contains a link to. That account is an account with a whole different website called Odysee which is not a party.  Defendant The Gatalog does not own and has never owned that account. Defendant The Gatalog does not use and have never used that account. Defendant The Gatalog does not have access, and has never had access to log in to that account. None of the files that account hosts belong to Defendant The Gatalog or have ever belonged to Defendant The Gatalog.  None of the files that account hosts or has hosted were created or uploaded by Defendant The Gatalog. None of the files that account hosts or has hosted were upload through the website TheGatalog.com. A person with an Odysee user account cannot upload a file to Odysee through TheGatalog.com. Defendant The Gatalog does not now know nor has he ever known who owns or uses the Odysee account THEGATALOG-PRINTABLEMAGAZINES. (*Id.*)

TheGatalog.com website contains links to other websites that Defendant The Gatalog does not own or control, much like this Court's COVID-19 response page at https://www.nysd.uscourts.gov/covid-19-coronavirus contains a link to a webpage of the United States Centers for Disease Control at   https://www.cdc.gov/coronavirus/2019-ncov/index.html.

Any website can include a link to any other website regardless of ownership or control. (*Id.*)

Defendant The Gatalog should be no more liable for trademark infringement than any other website that simply provides a link to another website. The Gatalog does not "advertise" a link to the Odysey website, nor does it undertake to drive traffic to that website. The Gatalog is a simple, non-interactive website with links to another website where the offending files are hosted. It is not amenable to personal jurisdiction in this state because it does no business in this state.

### 3. For the Same Reasons the Court Also Cannot Exercise Personal Jurisdiction Over Phillip Royster and Odysee User xYeezySZN

Although the Odysee website is nominally *in part* interactive, the degree of interactivity is insufficient for personal jurisdiction. The degree of interactivity that is possible with Odysee is much less than that in *Paterno v. Laser Spine Institute*, where patients could communicate with their doctors in New York and obtain prescriptions written out of state but filled in New York. Odysee simply allows users to upload files which other users can download. Jurisdiction under C.P.L.R. 302 depends upon purposeful activities by the defendant availing itself of the privilege of conducting business in the forum State. *Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC,* 90 A.D.3d 977, 978 (2011). Here, Odysee simply served as a host to other users' files.

According to the declaration of Everytown's paralegal, Ms. Green, she was able to download files that, she believes, contain instructions for printing gun parts that display Everytown's trademarks. It is unclear, however, if the files she downloaded have any connection to any defendant—as noted earlier, the gun parts shown in pictures in the amended complaint appear to have been posted on Odysee by a non-defendant, Joseph Chavez. They are not files created, owned, controlled, or uploaded by any defendant in this case. (*See* Dec of Joseph Chavez.)

New York courts are reluctant to find personal jurisdiction even on the basis of an interactive website where there is no proof that articles of commerce were sold into the state. *ISI*

*Brands, Inc.*, 458 F. Supp. at 87-88 ("It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred"); *see also be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7ᵗʰ Cir. 2011) ("If the defendant merely operates a website, even a "highly interactive" website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution"); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d. Cir. 2003) ("the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. … there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.")

In any event, trademark liability lies where an item is introduced *in commerce* that may infringe another's trademark.  *See* 15 U.S.C. § 1114; *see also, e.g., Stanley Steemer Int'l, Inc. v. Stanley Steam Carpet Cleaning*, No. CV 12-1653 (SLT)(VVP), 2014 U.S. Dist. LEXIS 163556, at *7 (E.D.N.Y. Oct. 28, 2014).  What Ms. Green obtained is not an infringing article of commerce. Rather, she obtained *instructions* that would allow her (if she had an appropriate 3-D printer and the expertise to use it) to print gun parts that allegedly would display the Everytown marks.

Obviously, if Odysee or others affiliated with it were to regularly send the allegedly-offending gun *parts* into New York, they might be amenable to personal jurisdiction under C.P.L.R. section 302(a)(1).  But *none* of the Defendants alleged to have uploaded files to Odysee sent offending articles in commerce. These files are nothing more than instructions.

The fact that what is involved here are computer instructions complicates what would

otherwise be an easy question to answer.  If someone wanted to create an aluminum can that duplicated the famous COKE branded cans and someone out of state were to send instructions that told the user what type of paint and font to use, the out-of-state person would not be amenable to personal jurisdiction in New York.  It is no different when the out-of-state person sends computer instructions. We know of no case holding that infringement liability can be premised upon mere instructions as to how to make an allegedly-infringing product.

### 4.  Exercising Personal Jurisdiction over Defendants would violate Their Right to Due Process.

The Court must also evaluate "whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Verragio, Ltd. v. S K Diamonds*, No. 16-CV-6931 (KBF), 2017 WL 1750451, at *3 (S.D.N.Y. May 4, 2017). Courts consider whether "a defendant purposefully established minimum contacts within the forum State," and "whether the assertion of personal jurisdiction would comport with fair play and substantial justice"—that is, whether it would be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

One isolated sale in the state is not sufficient to confer personal jurisdiction consistent with Due Process unless accompanied by "something more" than simply placing "a product in the stream of commerce," even if a defendant is aware that "the stream may or will sweep the product in to the forum State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888-89 (2011) (quoting *Asahi Metal Indus. Co. v. Sup. Court of Cal.*, 480 U.S. 102, 111, 112 (1987) (opinion of O'Connor, J.)). "Something more" includes, inter alia, "special state-related design, advertising, advice, marketing, or anything else," and evidence of "something more" may include evidence that a defendant "purposefully avail[ed] itself of the privilege of conducting activities" within the forum state.  *Id.* at 889 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Plaintiff's allegations show that the only nexus between Defendants and New York is the *Plaintiff*.  The FAC alleges "Personal jurisdiction is proper in this Judicial District because, upon information and belief, each Defendant has had contacts within New York through the actions complained of herein and has caused and is continuing to cause harm to Everytown, which has an office in New York, within this Judicial District."  (FAC, ECF No. 89 at ¶8.)  But the allegation that Everytown, has suffered harm in New York is not relevant to whether Defendants created contacts with the forum.  As the Court noted in *Walden*, 571 U.S. at 290:

> [M]ere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

Defendants have never reached out to New York, and have not purposefully availed themselves of the privilege of doing business there.  Defcad (and thereby also the several Defcad users: Defcad User xYeezySZN and Defcad User Freeman1337), specifically seeks to *avoid* doing business in New York. Exercising personal jurisdiction would not comport with Due Process.

## II.     The Court Should Dismiss the Complaint for Improper Venue

Plaintiff alleges that venue is proper in this district under 28 U.S.C §1391(b)(2). The plaintiff bears the burden of proving that venue is proper.  *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320 (S.D.N.Y. 1996). But venue can only lie for a trademark claim if the defendant targets New York and actively pursues efforts to market the infringing product here or if the defendant sells a substantial amount of the allegedly infringing goods here. *Id*. at 322 (venue improper; plaintiff made no sale to New York and did not actively market to New York).

Further, merely operating an interactive website accessible in the district, without more directed specifically to the forum, is insufficient to conclude that the defendant is targeting the

district. *be2 LLC*  642 F.3d at 559; *Advanced Tactical Ordnance Systems, LLC*, 751 F.3d at 803; *Toys "R" Us, Inc.,* 318 F.3d at 454  ("the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.").

### A.   Venue is not proper in this district.

Venue is not proper because there is no evidence of any interaction by the any of the Defendants with anyone in this district. The only allegation is that the platforms (Defcad and The Gatalog) maintain websites and that the individuals uploaded files to the internet.

Defcad has explicitly precluded any files being downloaded in New York.  Defcad has deliberately avoided any interaction with this district. The Gatalog does not host or have any connection to the subject files nor has The Gatalog engaged in any activities directed to New York.

Further, as to the *all* of the individual user accounts, there no allegation or evidence that anyone in New York apart from Plaintiff's litigation team downloaded any files, and no authority stands for the proposition that an internet user could merely upload a file to a website and thereby create the required connection to the forum required by §1392(b)(2).

### B.   The Court should dismiss or, in the alternative, transfer the case to the United States District Court for the Western District of Texas.

28 U.S.C. §1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The court can also transfer to a district in which the case could have been brought, such as the Western District of Texas. 28 U.S.C. §1391(b) provides that a case may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; . . .

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal

jurisdiction with respect to such action.

Defcad has an office in Austin, Texas, which lies within the Western District of Texas. Defcad User Freeman1337 lives within the Western District of Texas. Therefore, two defendants are unambiguously subject to both jurisdiction and venue in that district. All the other movants consent to jurisdiction and venue in the Western District of Texas.

Accordingly, venue is proper in the Western District of Texas either pursuant to 28 U.S.C. §1391(b)(1) because two defendants reside there and the others consent, or pursuant to 1391(b)(3) because two defendants are subject to the court's jurisdiction there, the others consent to jurisdiction and venue there, and there is no district in which this action may otherwise be brought.

## III.   In the Alternative, the Court Should Transfer the Case to the Western District of Texas Pursuant to 28 U.S.C. §1404.

In the event the Court finds venue proper in this district, the Court should nevertheless transfer the case to the Western District of Texas pursuant to 28 U.S.C. §1404(a) which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The Court first must determine whether the action could have been brought in the transferee district. *Enigma Software Group USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017). As set forth in detail above, the action could have been brought in the Western District of Texas. Importantly, a court has the power to transfer under 1404(a) if the transferee forum is proper venue as to one of defendants and other defendants consent to transfer. *Anthony v. Kaufman*, 193 F.2d 85 (2d Cir. 1951); *Ferguson v. Ford Motor Co.*, 89 F. Supp. 45 (S.D.N.Y. 1950). Here, venue in the Western District of Texas is proper as to two of the Defendants and the rest of the movants consent to the transfer. If the action could have been brought in the transferee district, the Court then must determine whether transfer would be an appropriate exercise of the

Court's discretion. 260 F. Supp. 3d 401, 407.

A court should balance the following factors in deciding a motion to transfer. (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *Id.*

Factors 1 and 2: Only the Plaintiff has any connection to this district. And yet, in its FAC Everytown admits that it operates nationwide: "Everytown has a nationwide presence and advocates for gun safety measures in state legislatures across all 50 states and the District of Columbia . . . ." (FAC, ECF No. 1, ¶70.) Litigating in Texas could pose no hardship to Plaintiff. None of the Defendants has any connection to New York, while two, Defcad and Defcad User Freeman1337, reside in the Western District of Texas.

Factor 3: With its offices in Texas, Defcad's employees, documents, servers, etc. would be located in Texas. The other Defendants would have no documents or proofs in this district.

Factor 4: This substantially favors transfer when a party has not shown that the operative facts arose in this District. 260 F. Supp. 3d at 410. Where there is no material connection between this district and the operative facts, the interests of justice require the transfer of the action. *Id.*

Factor 5: The only witnesses that might be in New York would be Plaintiff's own people, and compulsory process would not be necessary to obtain their testimony.

Factor 6 (relative means): Defendant are a series of individuals and a small software company. Plaintiff is a giant nationwide organization that holds itself out as "the largest gun violence prevention organization in the country . . ." (FAC, ECF No.1, ¶50.) Plaintiff can afford

to hire an 800 lawyer firm and can go anywhere to litigate without hardship.

Factor 7 (forum's familiarity): The Western District of Texas and Fifth Circuit are handling several cases involving Defcad and its parent company Defense Distributed involving issues arising from some of these same 3-D printable computer files for firearms and how their creation and dissemination is protected by the First Amendment.

Factor 8: Plaintiff's choice merits less deference where the connection between the case and the chosen forum is minimal. 260 F. Supp. 3d at 412. Plaintiff is a national organization and alleges that the effects of the alleged infringement would be felt nationally, not locally.

Factor 9: Nothing about this district would contribute to trial efficiency. Everyone but Plaintiff is either in the Western District of Texas or elsewhere. There is no doubt that this Court has no jurisdiction over Defcad and the Defcad Users.  Thus, even if the Court were to determine that it could exercise jurisdiction and venue over the rest of the Defendants, the case would proceed here piecemeal without Defcad and the Defcad Users. There are common issues of law and fact among all parties. Efficiency and the interests of justice call for the case to be litigated in a single forum, and the only forum where the entire case can be heard is the Western District of Texas.

Thus, in the event the Court finds jurisdiction and venue proper in this district, the Court should nevertheless order the case transferred to the Western District of Texas.

## CONCLUSION

Accordingly, Defendants respectfully request that the Court dismiss the Complaint or, in the alternative, transfer to the United States District Court for the Western District of Texas.

HARTMAN & WINNICKI, P.C.
By: s/DANIEL L. SCHMUTTER

DATED: June 16, 2022                    DANIEL L. SCHMUTTER

25
