**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| EVERYTOWN FOR GUN SAFETY | : | |
| ACTION FUND, INC., | : | Civil Action No. 1:21-cv-08704- |
| Plaintiff, | : | PGG-RWL |
| | : | |
| v. | : | |
| DEFCAD, INC.; ODYSEE USER | : | |
| XYEEZYSZN; DEFCAD USER | : | |
| XYEEZYSZN; ODYSEE USER | : | |
| THEGATALOG-PRINTABLEMAGAZINES; | : | |
| THE GATALOG; DEFCAD USER | : | |
| FREEMAN1337; TWITTER USER | : | |
| XYEEZYSZN; PHILLIP ROYSTER. | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.    **Legal Standards Applicable to Defendants' Motion**....................................... 1

II.   **Relevant Facts** ................................................................................................ 1

     A.    Defendants' Unlawful Conduct Directed to New York.**........................... 1**

          1.    The Highly Interactive Online Platforms Where Defendants
         Have Advertised and Distributed the Infringing Products...................................... 2
          2.    Summary of Defendants' Contacts with New York. ................................. 6

     B.    The False and Misleading Statements Made by Defendants ................................ 11

III.   **Argument** .................................................................................................... 14

     A.    Personal Jurisdiction Is Proper In New York ....................................... 14
          1.   Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(1)...................................... 14
          2.   Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(3)(ii)................................ 18
          3.   Exercising Personal Jurisdiction Comports with Due Process. .......................... 19

     B.    Defendant Defcad User Freeman1337's Declaration Should be
     Stricken. ............................................................................................. 21

     C.    Defendants Have Waived Any Right to Challenge Personal
     Jurisdiction ........................................................................................ 22

     D.    Venue is Proper in the Southern District of New York. ....................................... 23

     E.    Defendants Failed to Establish A Transfer of Venue is Warranted...................... 24

IV.   **Conclusion** ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*A.I. Trade Fin., Inc. v. Petra Bank*,
989 F.2d 76 (2d Cir. 1993)..................................................................................................... 1

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
2018 WL 5118638 (S.D.N.Y. Oct. 22, 2018) ..................................................................... 15

*Allen v. Auto Specialties Mfg. Co.*,
45 A.D.2d 331, 357 N.Y.S.2d 547 (3d Dep't.1974)........................................................... 18

*Azkour v. Haouzi*,
No. 11 Civ. 5780, 2012 WL 1681438 (S.D.N.Y. Apr. 25, 2012)........................................ 23

*Brady v. Anker Innovations Ltd.*,
2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) ................................................................. 15, 16

*Calder v. Jones*,
465 U.S. 783 (1984)............................................................................................................ 20

*Capital Records, Inc. v. Mp3Tunes, LLC*,
No. 07-cv-9931, 2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008) ................................... 1, 15

*Carson Optical, Inc. v. RQ Innovasion, Inc.*,
16-cv-1157, 2020 U.S. Dist. LEXIS 55223 (E.D.N.Y. Mar. 30, 2020)....................... 16

*Cartier v. Seah LLC*,
598 F. Supp. 2d 422 (S.D.N.Y. 2009)........................................................................... 16, 18

*Chaiken v. VV Pub. Corp.*,
119 F.3d 1018 (2d Cir. 1997)............................................................................................. 20

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010).......................................................................................... 19, 20

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 549 (SD.N.Y. 2000)......................................................................................... 18

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir.2006)................................................................................................... 15

*Doe v. L.A. Unified Sch. Dist.*,
No. 16-cv-00305, 2017 WL 797152 (C.D. Cal. 27, 2017) ................................................ 22

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
571 F. Supp. 2d 458 (S.D.N.Y. 2008)........................................................................... 16, 19

*EnviroCare Techs., LLC v. Simanovsky,*
2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ...................................................... passim

*Hamilton v. Atlas Turner, Inc.*,
197 F.3d 58 (2d Cir. 1999)..................................................................................................... 22

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
590 F.3d 87 (2d Cir. 2009)..................................................................................................... 22

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
138 F. Supp. 2d 449 (S.D.N.Y. 2000)............................................................................. 15, 20, 23

*In re DES Cases*,
789 F. Supp. 552 (E.D.N.Y. 1992) ......................................................................................... 18

*Joint Stock Co. v. Informir, LLC*,
2017 WL 1321007 (S.D.N.Y. Mar. 30, 2017) ......................................................................... 15

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986)................................................................................................... 1

*Kernan v. Kurz-Hastings, Inc.*,
175 F.3d 236 (2d Cir. 1999)............................................................................................... 18, 21

*KeyView Labs, Inc. v. Barger*,
2020 WL 8224618 (M.D. Fla. Dec. 22, 2020)......................................................................... 22

*Malmsteen v. Cleopatra Records, Inc.*,
2011 U.S. Dist. LEXIS 167853 (S.D.N.Y. Mar. 21, 2011) ...................................................... 25

*Mattel, Inc. v. Adventure Apparel*,
No. 00-cv-4085, 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001)...................................... 15, 20, 23

*Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Organization LLC*,
875 F. Supp. 2d 211 (W.D.N.Y. 2012) .......................................................................... 16, 17, 23

*N.Y.C. v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011)................................................................................................... 22

*Nabisco, Inc. v. Brach's Confections, Inc.*,
No. 00 Civ. 5875, 2000 WL 1677935 (S.D.N.Y. Nov. 8, 2000). ................................................ 24

*Pilates, Inc. v. Pilates Inst., Inc.*,
891 F. Supp. 175 (S.D.N.Y. 1995) ......................................................................................... 23

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ..................................................................................................... 24

*Savage Universal Corp. v. Grazier Const., Inc.*,
2004 WL 1824102 (S.D.N.Y. Aug. 13, 2004) ................................................... 18, 19

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir.1994) ......................................................................................... 22

*Sony Music Entm't Inc. v. Does 1-40*,
326 F. Supp. 2d 556 (S.D.N.Y. 2004) ...................................................................... 18

*Walden v. Fiore*,
571 U.S. 277 (2014) ..................................................................................................... 21

*Warner Bros. Entm't Inc. v. Ideal World Direct*,
516 F. Supp. 2d 261 (S.D.N.Y. 2007) ...................................................................... 15

*Wildwood Imps. v. M/V Zim Shanghai*,
No. 04-CV-5538, 2005 U.S. Dist. LEXIS 2736, 2005 WL 425490 (S.D.N.Y. Feb. 20, 2005) ... 24

**Statutes**
28 U.S.C. § 1746 ................................................................................................... 21, 22
N.Y. C.P.L.R. § 302(a)(3)(ii) ......................................................................................... 18
N.Y. C.P.L.R. §§ 302(a)(1) ........................................................................................... 14

**Rules**
Fed. R. Civ. P. 12(h)(1) ................................................................................................. 22

Everytown for Gun Safety Action Fund, Inc. ("Everytown") submits this Opposition to Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(2) and 12(b)(3). Defendants' Motion should be denied because: (1) Everytown's First Amended Complaint ("FAC") and sworn declarations demonstrate specific facts that establish personal jurisdiction and venue are proper over each Defendant within this judicial district; (2) Defendants have failed to rebut Everytown's strong jurisdictional showing by providing incomplete, false and misleading declarations; and (3) Defendants waived their opportunity to challenge jurisdiction when they failed to timely respond to Everytown's FAC. Defendants' request to transfer this action to the U.S. District Court for the Western District of Texas ("WDTX") must also be denied because Defendants have failed to meet their burden to demonstrate transfer is warranted or proper; and the request is nothing more than a thinly veiled attempt to forum shop.

## I.      Legal Standards Applicable to Defendants' Motion

When evaluating Defendants' Motion, all allegations must be viewed "in the light most favorable to [Everytown]", and all doubts must be resolved in Everytown's favor." *Capital Records, Inc. v. Mp3Tunes, LLC*, No. 07-cv-9931, 2008 WL 4450259, at *3 (S.D.N.Y. Sept. 29, 2008) (citing *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).  Everytown must establishing jurisdiction is proper, and may rely on its FAC, and affidavits, among other evidence. *Capital Records*, 2008 WL 4450259, at *3 (internal citations omitted). A court may strike evidence submitted on a motion to dismiss for lack of jurisdiction if the evidence is not competent. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

## II.     Relevant Facts

### A.      Defendants' Unlawful Conduct Directed to New York.

Defendants are a group of interrelated organizations and individuals who have created

and distributed the Infringing Products[1] with the intent to tarnish and harm Everytown—a non-profit corporation conducting business in and located in New York. FAC ¶¶ 26-60. New York consumers have downloaded the Infringing Products from the Royster Defendants[2], Defcad User Freeman1337[3], and the Gatalog Defendants[4], and purchased a subscription from Defendant Defcad, Inc. ("Defcad") to access Defendants' Infringing Products via the Internet. *See* Declaration of Delia Green filed December 10, 2021 [ECF 65-1] ("Green Reply Decl.") ¶¶ 17, 31-40, Ex. B-C, E. Everytown is suffering irreparable harm as a result. FAC ¶¶ 225-30.

### 1.  The Highly Interactive Online Platforms Where Defendants Have Advertised and Distributed the Infringing Products

Defendants use online platforms to advertise, promote, and distribute the Infringing Products, including but not limited to, www.odysee.com, www.twitter.com, www.ctrlpew.com, www.thegatalog.com, and www.defcad.com across the United States and to N.Y. consumers.

***Odysee.com***

Odysee.com is an online digital library that allows users, like Defendants, to upload, promote and distribute the Infringing Products to consumers worldwide, including to New York. Declaration of Erin Galloway duly sworn to and filed October 22, 2021 [ECF 17] ("Galloway Decl.") ¶¶ 4-51; Declaration of Delia Green duly sworn to and filed October 22, 2021 [ECF 16], ("Green Decl.") ¶¶ 4-29; FAC ¶ 122. Odysee users have the option to monetize their content and

---

[1] All undefined terms herein are defined as in Everytown's FAC.

[2] The Royster Defendants consist of Defendants Phillip Royster, Odysee User xYeezySZN, Defcad User xYeezySZN, and Twitter User xYeezySZN. Mr. Royster owns the Odysee User xYeezySZN, Defcad User xYeezySZN, and Twitter User xYeezySZN accounts. *See* Declaration of YeezySZN Defendants ¶ 3.

[3] Defendant Defcad User Freeman1337 owns and operates the odysee.com account Odysee User Freeman1337 GunCAD Mirror (together, Defcad User Freeman1337 and Odysee User Freeman1337 GunCAD Mirror, "Freeman1337").

[4] The Gatalog Defendants consist of Defendants The Gatalog, and Odysee User thegatalog-printablemagazines.

can receive cash "tips". *See, e.g.*, Green Decl. ¶ 5-6 (describing downloading Defendants'

Infringing Products while being in New York); *see also* https://lbry.com/faq/view-rewards#apply

(describing the monetization of content on odysee.com). Users, like Defendants, who post

content on odysee.com can receive monetary funds in connection with the number of views of

their content in the form of cash tips or through crypto currency payments.[5] Defendants received

monetary compensation in connection with their Infringing Product listings on Odysee.com as

detailed further below. *See* Green Reply Decl., ¶ 40; Green Decl., Exs. A, E; FAC, Ex. 6.

**Ctrlpew.com**

   Ctrlpew.com ("CTRL+Pew") is an online platform used by Defendants to advertise,

promote, and link to the Infringing Products. FAC ¶¶ 181-84. CTRL+Pew is owned and operated

by Alexander Holladay, the same individual who claims to own www.thegatalog.com. *See*

Declaration of Erin Galloway In Opposition to Defendants' Motion duly sworn to July 8, 2022

(hereinafter "Galloway Rebuttal Decl.") ¶¶ 5, 10-11, Ex. 2; *see also* Declaration of The Gatalog

(hereinafter "Gatalog Decl."), at ¶¶ 3, 5. CTRL+Pew users located in New York can access files

for the 3-D printing of firearms, make purchases, and donate monetary funds to individuals—

including at least one of the Defendants. *See* Galloway Rebuttal Decl. ¶¶ 13, 71-76, 78-79,

Exs.14-17 (CTRL+Pew advertising Freeman1337 as the "[c]reator of the Everytown Mag," an

Infringing Product).  The donations accepted via Mr. Holladay's website are not restricted to

prevent N.Y. individuals from donating, and are made with Bitcoin cryptocurrency via the

application BTCPAY. *Id.* ¶¶ 75-76, 89-90, Ex. 17, 18. Ctrl+Pew allows users to purchase almost

80 different products in exchange for U.S. dollars, including but not limited to products such as

---

[5] *See also* https://lbry.com/faq/view-rewards#apply; https://odysee.com/@OdyseeHelp:b/cash-tips4:c (depicting instructional video from Odysee.com regarding cash tips).

apparel related to "thegatalog", "deterrencedispensed", and "IvanTheTroll". *Id.* ¶ 72, Ex. 15. CTRL+Pew also provides links to affiliates and discounts codes to consumers, including to N.Y. consumers. *Id.* ¶ 74, Ex. 16.  Mr. Holladay has promoted and advertised the Infringing Products via his highly interactive website[s], which are accessible to, and were viewed by N.Y. consumers. *Id.* ¶¶ 13, 71-76, 78-79, Exs.14-17 (attaching screenshots of the CTRL+Pew advertisements). The screenshots demonstrate that Mr. Holladay's CTRL+Pew website represented that Defendant "The Gatalog" was involved with the presentation of the Infringing Product using the same "Gatalog" logo used and listed on the Gatalog Website connected with Defendant The Gatalog, Mr. Holladay, and Defendant Odysee User thegatalog-printablemagazines. *Id.* ¶¶ 19-30, Exs 4-6.

### *Thegatalog.com*

Thegatalog.com is an online platform used by the Defendants to advertise, promote, and distribute the Infringing Products to consumers worldwide, including N.Y. consumers. FAC at ¶¶ 187-90.  Thegatalog.com ("Gatalog Website") directs users to the Infringing Products through links on its homepage, and allows members of the public, including N.Y. consumers to upload files for the printing of firearm parts and accessories. FAC at ¶¶ 187-190. The Gatalog Website homepage provides links to nine accounts on odysee.com. Galloway Rebuttal Decl. ¶ 20, Ex. 5. The nine links to Odysee.com are identified below within the red box.



4

When a user clicks on one of the links, they are redirected to a corresponding account on odysee.com related to "thegatalog" ("hereinafter "Gatalog Odysee Accounts"). For example, when a user clicks on "3D Printable Magazines" they are redirected to a corresponding account on odysee.com entitled "TheGatalog-PrintableMagazines", which is identified in this lawsuit as Defendant Odysee User thegatalog-printablemagazines. A screenshot of the Odysee.com page for "TheGatalog-PrintableMagazines" linked to by the "3D Printable Magazines" link on the Gatalog Website is depicted below.



All nine Gatalog Odysee Accounts contain usernames incorporating the term "thegatalog" such as "TheGatalog-printableframesReceivers", "TheGatalog-PrintableMagazines", and "TheGatalog-accessories". *Id.* ¶¶ 23-24, Ex. 6. The Gatalog Website does not link to any other odysee.com accounts besides the nine Gatalog Odysee Accounts. *Id.*

The Gatalog Website does not "serve as an index" to other accounts but allows users to submit their 3-D printable firearm files for release "via The Gatalog" by corresponding with the website through its "Submit Your Files" page. *Id.* ¶¶ 8-9, Ex. 1 (attaching screenshot). Thus, the Gatalog Website is directly involved with the publication and distribution of said files. *Id.* The Gatalog Website also links to a "beta" program for 3-D printable firearm files hosted and/or maintained by another domain, www.deterrencedispensed.com that is also affiliated with The Gatalog and Mr. Holladay. *Id.* ¶¶ 39-46, Exs. 4, 9, 10, 11.

*Twitter.com*

Twitter.com is a social media platform where users can post statements, pictures, links, and repost posts from other users.  Defendants use twitter.com to advertise and promote the Infringing Products to consumers worldwide, including N.Y. consumers, and to interact with Internet users who have used the Infringing Products to print actual functional firearms. *See* FAC ¶¶ 146, 155, 173-75, 203.

*Defcad.com*

Defendants also use defcad.com to promote and pursue their unlawful conduct. Defcad.com is the "World's Largest 3-D Gun Repository" which Defendants have used to upload, promote, and distribute the Infringing Products to consumers, including N.Y. consumers. *Id.* at ¶ 125; Galloway Decl. ¶¶ 4-51; Green Decl. ¶¶ 4-29. Defcad's website allows users to browse a collection of 3-D printing instructions for various firearms and firearm parts for a subscription fee. Green Decl. ¶ 4-29. Defcad users can create an account, sign up for newsletters, submit their credit card information to sign up for Defcad's subscription services, and post reviews of content available for download. *Id.* ¶¶ 4, 30-31; Green Reply Decl. ¶¶ 15-19, 23-30, Ex. B, C, D.  Defcad collaborates with users known as "Defcad Partners", individuals who have accounts with defcad.com and submit files for distribution on defcad.com. Galloway Rebuttal Decl. ¶ 136, Ex. 24. To become a "Defcad Partner", users like Freeman1337 and the Royster Defendants had to "apply for partnership" to Defcad and fill out an online form. *Id.* Defcad Partners receive funds from Defcad in connection with the distribution of their product postings on the website, such as the Infringing Products in this case. *Id.* Ex. 20.

### 2.     Summary of Defendants' Contacts with New York.

Defendants have extensive contacts with New York via advertising, promoting, and

distributing the Infringing Products through highly interactive websites that are accessible by N.Y. consumers, and have been downloaded by N.Y. consumers. *See* FAC at ¶¶ 11; Green Decl. ¶¶ 4-6, 8-14, 20, 21-26, 29, 30-31, Ex. A-B, E-G. Defendants have received monetary funds for their distribution of the Infringing Products. Green Decl. ¶¶ 6, 30-31; Green Reply Decl. ¶¶ 15-17. Defendants have also advertised the Infringing Products in New York through newsletters and social media. *See* FAC ¶ 174-75, 181, 203; Green Reply Decl. ¶¶ 26-30, Ex. D. Defendants have intentionally targeted Plaintiff Everytown—a nonprofit corporation incorporated and located in New York. *See* 21-cv-8704, Defendants' Second Circuit Brief, ECF 58, Page ID # 17 (stating Defendants' "purpose is plainly to . . . disparage Plaintiff-Appellee…").

### *Defendant Defcad, Inc.*

Defcad is the owner and operator of defcad.com and claims to be both a "Delaware corporation" and "a corporation organized under the laws of Arkansas." Declaration of Cody Wilson ("Wilson Decl.") at ¶¶ 2-3. Defcad collects monetary compensation for the distribution of the Infringing Products. FAC ¶ 36; Reply Green Decl. ¶¶ 23-25, Ex. C (depicting Defendant Defcad User xYeezySZN's Infringing Product for a price of $11.00). Defcad charged N.Y. consumers membership fees to access files on its website, including but not limited to the Infringing Products. Green Decl. ¶¶ 30-31; Reply Green Decl. ¶¶ 15-22, Ex. B (describing how Defcad charged a N.Y. consumer's credit card after it was aware that she was a N.Y. resident). Defcad materially participates in the sale and distribution of the products to consumers by reviewing all products, generating renderings of products and creating the product listings. FAC ¶¶ 128-132. Defcad deliberately chose to offer and distribute the Infringing Products including Defendant Freeman1337's "Everytown" AR15 22LR Magazine and the Royster Defendants' "Everytown" and "Moms Demand Action" Firebolt 5.56 Bolt Catch Magwell Panels all of which

display or bear at least one of the Everytown Marks as source identifiers. *Id.* at ¶¶ 156, 161, 192. Defcad has facilitated and received compensation in connection with hundreds of downloads of the Infringing Products. *Id.* at ¶ 37.  Defcad directs advertising into New York by sending newsletters to N.Y. consumers including a "monthly recap featuring curated lists of files." Green Reply Decl. 26-30, Ex. D. Defcad has specifically discussed featuring the Infringing Products in these newsletters and advertised Defendant Freeman1337's other product listings. DEFCAD000007; Green Reply Decl., Ex. D. Defcad did not advise N.Y. consumers that it had any policy prohibiting sales to N.Y. residents. *See* Reply Green Decl. ¶¶ 5-11, 30. Contrary to Defcad's statements that it has a policy against serving the N.Y. market, in addition to charging N.Y. consumers subscription fees, Defcad processed and shipped a flash drive containing files to New York in May 2021. Declaration of Garret Walliman ("Walliman Dec.") ¶ 17; *see also* Green Decl. ¶¶ 30-31; Reply Green Decl. ¶¶ 15-22, Ex. B.

Defcad also further explicitly directed and targeted harm into New York by purposefully targeting Everytown. Defcad went out of its way to contact the Royster Defendants to solicit posting their Infringing Products on Defcad. FAC ¶ 215; DEFCAD000007-9. After Defendants' Infringing Products were available on defcad.com, Everytown submitted a notice to Defcad complaining of trademark infringement. Galloway Decl. ¶ 52. Defcad ignored Everytown's notice and Everytown's rights. FAC at ¶ 217-18; Galloway Decl. ¶ 52-53.

***The Royster Defendants: Phillip Royster, Odysee User xYeezySZN, Defcad User xYeezySZN, and Twitter User xYeezySZN***

The Royster Defendants created and uploaded the downloadable files containing 3-D printing instructions titled "Everytown – Firebolt 5.56 Bolt Catch (R) Magwell Panel" and "Moms Demand Action – Firebolt 5.56 Bolt Catch Magwell" to defcad.com and odysee.com, which are available to N.Y. consumers and **have already been downloaded by N.Y.**

**consumers**. FAC ¶¶ 151, 157, 162, 167. The Royster Defendants' Infringing Products are available to the public on two highly interactive websites—Odysee and Defcad—and have been downloaded by N.Y. residents from Odysee. Green Decl. 4-6, 8-14, 20, 21-26, 29, 30-31, Ex. A-B, E-G. The Royster Defendants receive portions of the monetary funds charged by Defcad (*id.* at ¶ 136) and have been viewed and downloaded hundreds of times. *See* DEFCAD000001. The Royster Defendants have also received tips in connection with his distribution of the Infringing Products that can be redeemed for cash. Galloway Rebuttal Decl., Ex. 21. For example, the Royster Defendants' listing for "Everytown Firebolt Magwell" shows they received "11.7" LBRY credits as "Supports and Tips" in connection with the Infringing Product listing. *Id.* ¶ 109.

The Royster Defendants also use Twitter to interact with Internet users who have downloaded the Infringing Products. FAC ¶ 174-75, 203. Through Twitter, the Royster Defendants targeted Everytown in New York on multiple occasions tagging Everytown in connection with references to the Infringing Products, stating he made them special for Everytown. *See* Galloway Decl. ¶ 30. Through Twitter, Mr. Royster has also solicited funds to "support [his] projects" by linking to Mr. Royster's PayPal account so that his followers could provide him with monetary funds. *Id.* ¶ 32-33. The Royster Defendants escalated their conduct and effort to harm Everytown by offering the Infringing Products on Defcad after receiving a takedown notice. *Id.* ¶¶ 17, 23.

### *Defendant Freeman1337 and Odysee User Freeman1337 GunCAD Mirror*

Freeman1337 created and uploaded the Infringing Product titled "'Everytown' 3D Printable AR15 22LR Magazine" to defcad.com, which is available to N.Y. consumers and accessed by N.Y. consumers. FAC ¶ 191. Freeman1337's "Everytown" magazine includes Everytown's identical EVERYTOWN® trademark in the product title. *Id.* at ¶ 192.

Freeman1337 uses multiple highly interactive websites including Defcad, Odysee, and Twitter with regard to the Infringing Products.  Freeman1337 receives portions of the monetary funds charged by Defcad. *Id.* at ¶ 136. Freeman1337's Infringing Product has been viewed on Defcad over thousands of times and downloaded over hundreds of times. DEFCAD000001. Freeman1337 also owns and/or operates Odysee User Freeman1337-GunCAD-Mirror. FAC ¶ 194. Freeman1337 has uploaded the same Infringing Product file to Odysee under the listing "AR15 22lr magazine - 25 round capacity - CMMG compatible." *Id.* ¶ 196. When the file is downloaded, the name of the file is "freeman1337-everytown-cmmg-22lr-mag-25round". *Id.* Freeman1337 has received some "tips" in connection with the distribution of this file on Odysee. *See* https://odysee.com/@freeman1337-GunCAD-Mirror:b/freeman1337:7. Freeman1337's Infringing Product on Odysee has been downloaded by N.Y. consumers, and has been viewed hundreds of times. *Id.*; FAC ¶ 198. Freeman1337 also solicits donations from Internet users, including N.Y. consumers, through Ctrl+Pew by advertising and promoting himself as the "creator of the Everytown mag", using Everytown's identical EVERYTOWN® trademark for the solicitation of funds. Galloway Rebuttal Decl. ¶¶ 87-90, Ex. 17-18. Users donate to Freeman1337 on CTRL+Pew by transferring Bitcoin cryptocurrecy via the application "BTCPAY". *Id.* BTCPAY does not show where the donator is located. *Id.* Freeman1337 similarly promotes himself as the "Creator of the Everytown Mag" on his Twitter page. Freeman1337's files have also been advertised in New York through Defcad's newsletter. Green Reply Decl., Ex. D.

***The Gatalog Defendants: The Gatalog, and Odysee User thegatalog-printablemagazines***

The Gatalog Defendants are an interrelated group of entities and individuals operating the Gatalog Website, and the Gatalog Odysee Accounts, among other websites. Galloway Rebuttal

Decl. ¶¶ 6-79. The Gatalog Defendants appear to be owned, operated and/or controlled by

Alexander Holladay, Matthew Larosiere, and an individual known as "Ivan the Troll" because:

1. Mr. Larosiere submitted a response to Everytown's Odysee takedown notice on behalf of "The Gatalog" and "The Gatalog Foundation" (*id.* ¶¶ 16-17, Ex. 4);
2. public information listed with the State of Florida lists The Gatalog Foundation's officers/directors as Mr. Holladay, Mr. Larosiere, and a Mr. John Elik (*id.* ¶ 15, Ex. 3);
3. expedited discovery received from Odysee demonstrates that the same email address affiliated with "Ivan the Troll" was used to register the nine Gatalog Odysee Accounts linked to from the Gatalog Website, and "Ivan the Troll" corresponded with Mr. Larosiere, and Odysee concerning Everytown's takedown notice (*id.* ¶ 26-30);
4. The Gatalog Website operated by Defendant The Gatalog only links to the nine Gatalog Odysee Accounts, and no other Odysee accounts (*id.* ¶¶ 20-24, Ex. 5-6); and
5. Mr. Holladay, Mr. Larosiere, and Ivan the Troll have collaborated as co-authors on an opinion article regarding the subject of firearms. *Id.* ¶¶ 61-62, n. 3.

The Gatalog Defendants created and uploaded the downloadable file containing 3-D

printing instructions for the Infringing Product titled "'Everytown 3D Printable AR15 22lr

Magazine" to odysee.com, which is available to, and has been downloaded by, N.Y. consumers.

FAC ¶ 181; Green Decl. 4, 5, 7, 21-26, Ex. E, F. The Gatalog Defendants' "Everytown"

magazine includes Everytown's identical EVERYTOWN® trademark in the product title and has

been downloaded from Odysee thousands of times. *see also* Expedited Discovery Received from

Odysee. The Gatalog Defendants have also received compensation in the form of tips in

connection with their distribution of the Infringing Products. FAC ¶ 178-79.  The Gatalog

Defendants also promote the Infringing Products on Instagram as available for download on

Ctrl+Pew, which links to their Odysee product listing. FAC ¶ 181. CTRL+Pew linked to one of

the Gatalog Odysee Accounts, Defendant Odysee User TheGatalog-PrintableMagazines

affiliated with The Gatalog and Mr. Holladay, which offered and distributed the Infringing

Products to N.Y. consumers. *See* Green Decl., Exs. E, F; Green Reply Decl., at ¶ 40.

     **B.**     **The False and Misleading Statements Made by Defendants**

*False and Misleading Statements Made by Alexander Holladay*

- In paragraph 5 Mr. Holladay falsely states (1) the Gatalog Website is a mere "index" to the websites/accounts of others; (2) the Gatalog Website is passive when it is not; (3) the Gatalog Website links to accounts Mr. Holladay doesn't own or operate, when it does; (4) misleadingly omits that the links on the Gatalog Website homepage take users to nine different Gatalog Odysee Accounts affiliated with Defendant The Gatalog; and (5) misleadingly omits that Mr. Holladay is an officer at an entity called the Gatalog Foundation, Inc. (*id.* ¶¶ 6-30);

- in paragraph 6, Mr. Holladay omits the fact that other than the nine Gatalog Oydsee Accounts associated with Defendant The Gatalog, no other "gatalog" accounts are present on Odysee.com (*id.* ¶¶ 31-34);

- paragraph 7 Mr. Holladay omits that The Gatalog does distribute 3D Printing files, and the Gatalog Website directs users to Defendant Odysee User THEGATALOG-PRINTABLEMAGAZINES, affiliated with The Gatalog, distributing one of the Infringing Products (*id.* ¶¶ 35-51);

- paragraph 8 is false because Mr. Holladay does know Defendant Odysee User Thegatalog-printablemagazines; and the Gatalog Website only links to accounts and other Gatalog Odysee Accounts affiliated with Defendant The Gatalog (*id.* ¶¶ 52-63);

- paragraph 9 is misleading because the Gatalog Website links to at least one website, CTRL+Pew, that Mr. Holladay owns and controls (*id.* ¶¶ 64-65);

- paragraph 11 is misleading because Mr. Holladay has not been operating anonymously with regard to his online activities as owner of CTRL+Pew, an officer of the Gatalog Foundation, Inc., or as an author in connection with firearm publications (*id.* ¶¶ 66-69);

- paragraph 13 is misleading since Mr. Holladay conducts business on highly interactive websites for the Infringing Products (*id.* ¶¶ 70-76); and

- paragraph 18 is false because it omits that Mr. Holladay has promoted and advertised the Infringing Products via his highly interactive website[s], which are accessible to, and were viewed by N.Y. consumers. *Id.* ¶¶ 77-79.

### *False and Misleading Statements Made by Freeman1337*

- paragraph 4 is misleading since it omits any specific information relevant to Freeman1337's request to remain anonymous (*id.* ¶¶ 82-85);

- paragraph 6 is false because the platforms where Freeman1337 promotes, advertises, and distributes the Infringing Products, and receives donations are accessible to N.Y. consumers who have downloaded Freeman1337's Infringing Product on odysee.com and N.Y. consumers can donate to Freeman1337's on Ctrl+Pew (*id.* ¶¶ 86-91);

- Freeman1337's statement that he/she lives within the WDTX may be false as the area code of a phone number obtained from Defcad in connection with Freeman1337's Defcad.com account is associated with the state of Idaho (*id.* ¶¶ 92-93); and

- paragraph 8 is false as Freeman1337 has distributed one of the Infringing Products to N.Y. consumers through his/her odysee.com account. *Id.* ¶¶ 94-98.

### False and Misleading Statements Made by Phillip Royster

- paragraph 4 is false because Mr. Royster's Infringing Product on Defcad.com is being sold for a purchase price of $11.00 USD and Odysee User xYeezySZN received monetary compensation in connection with the Infringing Products (*id.* ¶¶ 101-111);

- Mr. Royster's statement in paragraph 7 that his "purpose in all of this activity is entirely political. It is not financial" is also false and/or misleading as he linked his PayPal account to his Twitter account so that followers could provide him funding (*id.* ¶ 112-13);

- paragraph 8 is false as Mr. Royster provided the public with his name in connection with his Twitter and PayPal accounts, and was therefore not anonymous (*id.* ¶¶ 114-115);

- paragraph 9 regarding "SWAT-ing" is misleading because Royster describes "SWAT-ing" as "the act of anonymously" making a report to police and does not know who called police in the instances he describes; and prior to the instant action, Mr. Royster, and his mother, were involved with a business managing social media accounts for incarcerated individuals that may have resulted in the alleged "SWAT-ing" (*id.* ¶¶ 116-122);

- paragraph 11 is false and contradicted by messages produced by Defcad demonstrating Mr. Royster was fine with sharing his "actual identity" and that he was "willing to offer whatever help, anything I can do . . . If you need an affidavit or anything that's fine too." (*id.* ¶¶ 123-129); and

- paragraph 18 is false given N.Y. consumers have accessed and downloaded the Royster Defendants' Infringing Product files on odysee.com. *Id.* ¶¶ 128-129.

### False and Misleading Statements Made by Garret Walliman

- paragraph 8 is false because Defcad's IP Geolocation Services do not accurately determine where users are located. Defcad's use of IP geolocation is flawed because it recognized Ms. Green as residing in Maryland when she resides in NY and provided Defcad with a NY driver's license and credit card address, and Defcad is not even aware of where its Defcad Partners, like Defendant Freeman1337, are located due to the use of tor/VPN applications (*id.* ¶¶ 132-141) (Green Reply Decl. ¶¶ 15-23, Ex. B);

- paragraph 15 is misleading as Defcad has shipped files to New York via a flash drive as recently as May 2021 (*id.* ¶¶ 142-144); and

13

- paragraph 16 is false because the publicly available information on Defcad's website does not state it will not ship files to New Jersey, or New York (*Id.* ¶¶ 145-148).

***False and Misleading Statements Made by Cody Wilson***

- paragraphs 2, and 3 pertaining to Defcad being a "Delaware corporation" and Defcad being a "corporation organized under the laws of Arkansas" are inconsistent and false as Defcad cannot be an entity with its place of incorporation in two different states (*id.* ¶ 150-52);

- paragraph 6 is misleading because Defcad sends emails containing promotional materials to N.Y. consumers. (*id.* ¶¶ 153-54 (Green Reply Decl. ¶¶ 26-30, Ex. D);

- paragraph 7 is false since Defcad has charged and obtained subscription fees from N.Y. consumers, and has sent files to N.Y. consumers in exchange for a shipping fee (*id.* ¶¶ 155-159);

- paragraph 24 is misleading as (1) Mr. Walliman stated that Defcad has shipped a flash drive to a N.Y. consumer within 2021, and (2) the publicly available information on Defcad's website says nothing about that it will not ship files to New York (*id.* ¶¶ 163-164); and

- paragraphs 25, and 26 are misleading as Defcad's reliance on geolocation is flawed considering it recognized Ms. Green as residing in Maryland when she resides in New York and provided Defcad with a N.Y. driver's license and credit card information, and Defcad does not even know Defendant Freeman1337's location, a Defcad Partner, as Freeman1337 used "tor/VPN" to sign up for Defcad's website. *Id.* ¶¶ 165-169.

## III.   Argument

### A.   Personal Jurisdiction Is Proper In New York

The Court has jurisdiction over the Defendants under both NY C.P.L.R. §§ 302(a)(1) and 302(a)(3)(ii), and such jurisdiction comports with due process whereas here Defendants are targeting N.Y. consumers and causing harm to Everytown within this Judicial District. The declarations submitted by the Defendants do not rebut Everytown's jurisdictional showing.

#### 1.   Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(1).

Jurisdiction is proper over an out-of-state defendant who "transacts any business within [New York]" when the cause of action "arises from" such acts. C.P.L.R. § 302(a)(1). Courts look

to the totality defendant's "interactions with, and activities within, the state," and their relation to the matter that gives rise to the lawsuit. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir.2006). "'[P]roof of one transaction in New York is sufficient to invoke jurisdiction . . . .'"[6] When analyzing § 302(a)(1) over the internet, courts have recognized three categories of websites – on one end, "passive" not resulting in personal jurisdiction, and on the other end, a website that "clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states." *Capital Records*, 2008 WL 4450259, at *3 (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)). Where a website is interactive and allows a buyer in New York to submit an order, courts typically find that the website operator is "transacting business" in New York subject to the court's jurisdiction. *See, e.g., Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000)[7]. The transmission of files in exchange for membership fees is sufficiently interactive for jurisdiction under § 302(a)(1).[8] Even where a defendant posts its products through a third-party website, jurisdiction is proper. *See EnviroCare Techs., LLC*, 2012 WL 2001443, at *3 (citing cases); *see also Brady v. Anker Innovations Ltd.*, 2020 WL 158760, at *5 (S.D.N.Y.

---

[6] *EnviroCare Techs., LLC v. Simanovsky,* No. 11-CV-3458, 2012 WL 2001443, at *8 (E.D.N.Y. June 4, 2012) (noting that "courts in New York have explained that C.P.L.R. 302(a)(1) "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction…."); *accord, Capital Records*, 2008 WL 4450259, at *3

[7] *Mattel, Inc. v. Adventure Apparel*, No. 00-cv-4085, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001)); *see also Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008); *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, 2018 WL 5118638, at *4 (S.D.N.Y. Oct. 22, 2018) (finding personal jurisdiction proper under NY long arm statute over a website sufficient for preliminary injunction).

[8] *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 265 (S.D.N.Y. 2007) (finding jurisdiction proper over website that transmitted files to customers in exchange for membership fees); *see also Joint Stock Co. v. Informir, LLC*, 2017 WL 1321007, at *2 (S.D.N.Y. Marc. 30, 2017) (finding jurisdiction *Informir, LLC*, 2017 WL 1321007, at *2 (S.D.N.Y. Marc. 30, 2017) (finding jurisdiction involving sale of subscriptions on website).

Jan. 13, 2020) (finding jurisdiction over seller on e-commerce website).  In other instances, the exchange of information between users in another state and the defendant may also give rise to a basis for jurisdiction. *Capital Records*, 2008 WL 4450259, at *3; *Mattel, Inc.*, 2001 WL 286728, at *3 (finding jurisdiction supported by defendant emailing a New York resident in furtherance of the business). Like here, where a "substantial nexus" between the business transaction and the claim exists, the "arising out of" prong is met. *Energy Brands*, 571 F. Supp. 2d at 466. "Lanham Act trademark infringement claims – where products are sold to New York consumers, competitively harming a plaintiff – satisfy the substantial nexus requirement."[9] For the purposes of the jurisdiction analysis to "target" New York does not mean that a defendant "must have *singled out* New York as a particular focus of their commercial activity." *See Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org. LLC*, 875 F. Supp. 2d 211, 222 (W.D.N.Y. 2012) (emphasis in original).

      *First*, Defcad transacted business within New York when it charged the credit card of a N.Y. resident for a subscription to its website. The subscription is a prerequisite for users to purchase 3-D printing files and instructions for various firearms and firearms parts and accessories available on Defcad, including the Infringing Products. This subscription transaction alone is enough to confer jurisdiction over Defcad. *See EnviroCare Techs.,* 2012 WL 2001443, at *8.  The fact that Defcad and the individual defendants *offer* the Infringing Products is also enough to establish jurisdiction. *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009).

      *Second*, the Gatalog Defendants, Royster Defendants, and Freeman1337 transact business in New York by allowing consumers to download the Infringing Products from Odysee in

---

[9] *Carson Optical, Inc. v. RQ Innovasion, Inc.*, 16-cv-1157, 2020 U.S. Dist. LEXIS 55223, at *10 (E.D.N.Y. Mar. 30, 2020).

exchange for potential "tips." The Gatalog Defendants also have transacted business in New York through the fully interactive Gatalog Website where they allow users to upload 3-D printing materials, and provide users with links to their Infringing Product, which have been accessed by N.Y. consumers. *See supra* Facts. Additionally, Freeman1337 has transacted business in New York by soliciting donations through fully-interactive website Ctrl+Pew and advertising himself as the "[c]reator of the Everytown Mag" referencing his distribution and creation of one of the Infringing Products. *See supra* Facts.

   *Third*, the websites used by Defendants to advertise, promote, and distribute the Infringing Products are highly interactive conferring jurisdiction. *See Mrs. U.S. Nat'l Pageant,* 875 F. Supp. 2d at 220. Defcad allows users to create an account, sign up for newsletters, and charges credit cards for subscription service. Defcad users can also post reviews of content available for download, and charges users for downloading the Infringing Products. *Id.* Further, Defcad conducts various security checks and protocols, as well as "series of tests" which consumers must pass before purchases are authorized. *See* Walliman Decl. ¶¶ 8-10. Odysee is interactive as it allows users to comment on listings and download the Infringing Products in exchange for potential tips provided to Defendants. Ctrl+Pew, where the Gatalog Defendants and Freeman1337 are active, is interactive allowing for purchases, donations, and comments by users. *Id.* Through Ctrl+Pew, the Gatalog Defendants were able to promote, and link to an Infringing Product on Odysee, and Freeman1337 was able to solicit and accept monetary donations. *Id.*

   Defendants' assertions that files have not been sent into New York are wholly without merit and false as to the individual defendants. It is undisputed that the Gatalog Defendants, the Royster Defendants, and Freeman1337 have made files available for download by N.Y.

consumers via Odysee, which were downloaded by N.Y. consumers. *Id.* The fact that it was Plaintiff's agent who accessed, viewed, and downloaded the Infringing Products from the Odysee.com and purchased a subscription from the Defcad does not change the analysis.[10] Despite Defcad alleging that its purported policy has been in place since 2018, such policy is absent from Defcad's website. Green Reply Decl. ¶¶ 7-14, Ex. A. *Lastly*, Defcad purported "IP geolocation" blocking policy (*see* Opp. at 4-5) should not be credited as IP addresses are an imperfect litmus tests and can easily be masked, changed, or re-routed. *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567-68 (S.D.N.Y. 2004).

### 2.    Jurisdiction is Proper Under NY C.P.L.R. § 302(a)(3)(ii)[11].

Under prong one, "[i]njury within the state includes harm to a business in the New York market in the form of lost sales or customers."[12] Under prong two, "[t]he test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one.'" *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir.1999) (quoting *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547 (3d Dep't.1974)).  The "reasonable expectation" element "requires that a defendant foresee that its tortious act will have some consequences in New York, although not necessarily the exact consequences that occurred." *In re DES Cases*, 789 F. Supp. 552, 570 (E.D.N.Y.1992) (citing

--------

[10] *See, e.g.*, *Poof-Slinky, LLC v. A.S. Plastic toys Co., Ltd.*, 19 Civ. 9399, 2020 WL 5350537, at *12-13 (S.D.N.Y. 2020); *Cartier*, 598 F. Supp. 2d at 425.

[11] Jurisdiction is present under § 302(a)(3)(ii) if the party (1) "commits a tortious act without the state causing injury to person or property within the state"; (2) "expects or should reasonably expect the act to have consequences in the state"; and (3) "derives substantial revenue from interstate or international commerce."

[12] *Citigroup*, 97 F. Supp. at 568 (citing case); *see also Savage Universal Corp. v. Grazier Const., Inc.*, No. 04 Civ. 1089, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) (finding that plaintiff's allegations that defendant's infringing use of trademark on website amounts to a tortious act resulting in an injury in New York—the place where plaintiff, the trademark owner, resides and conducts business—and meets the first two requirements of CPLR § 302(a)(3)).

*Allen*, 45 A.D.2d 331, 357 N.Y.S.2d 547). "[O]ne who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts." *Starmedia Network*, 2001 WL 417118, at *3. Under prong three, there is no bright-line rule regarding when a specific level of revenue becomes substantial for purposes of Section 302(a)(3)(ii). *See Energy Brands Inc.*, 571 F. Supp. 2d at 468.  Here, Everytown meets the first two prongs of § 302(a)(3), as its claims involve tortious acts Defendants committed outside of New York and the injury from the acts occurred in New York given that Everytown is based and conducts business in New York. *See supra* Facts; *see also Savage Universal*, 2004 WL 1824102, at *9. Everytown has met prong three as Defendants reasonably should have been on notice that their tortious acts would have consequences in New York because: (1) Defendants have admitted that their conduct was designed to "disparage" the Everytown Marks (*see supra* Appeal Brief); (2) Defendants had constructive notice of the Everytown Marks; (3) The Royster Defendants tagged Everytown in at least one Twitter post about the Infringing Products stating that they made it "special" for Everytown; and (4) Defcad purposefully solicited the posting of the Infringing Products on Defcad from a Defendant following their initial removal from Odysee. The Infringing Products have been downloaded hundreds of times from Defcad and have been viewed and downloaded thousands of times on Odysee demonstrating that Defendants' actions were not one-off occurrences. *See EnviroCare Techs, LLC*, 2012 WL 2001443, at *4.

### 3.      Exercising Personal Jurisdiction Comports with Due Process.

"There are two components to the due process analysis undertaken to determine whether [a defendant] is subject to the court's jurisdiction for commercial activity involving the State of New York: (1) the minimum contacts inquiry and (2) the reasonableness inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (citing case).  Here, the

Defendants have minimum contacts with New York, have purposefully availed themselves of conducting transactions in New York, and exercising jurisdiction is reasonable.  The requisite minimum contacts with the forum are established when a defendant purposefully avails itself of the privilege of doing business in New York. *See Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997). Defendants have purposefully availed themselves to New York as they advertised and promoted the files to N.Y. consumers through the Odysee, Defcad, and CtrlPew, offered N.Y. users the ability to download the Infringing Products and provide "tips" in exchange on Odysee, and offered N.Y. users subscriptions to access and download the Infringing Productions on Defcad.[13] New York is where the brunt of Everytown's injury is felt. *Calder v. Jones*, 465 U.S. 783, 790 (1984) (finding jurisdiction where brunt of reputation harm was to occur).  In determining the reasonableness of jurisdiction, courts consider: (1) the burden on the defendant, (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Chloé*, 616 F.3d at 173.  Where a defendant conducts business in the forum state, it should reasonably anticipate being sued in that state. *Mattel, Inc.*, 2001 WL 286728, at *3 (single internet sale in the forum state satisfied the due process in a trademark infringement case).

As to factor one, Defendants have not articulated any burden, and courts have rejected that traveling from another location to New York constitutes an unreasonable burden.[14] Even

_____

[13] *See Chloé*, 616 F.3d at 171 (defendant who offered product for sale to N.Y. consumers on website and sold the product to N.Y. consumers "'purposefully avail[ed] [him]self") (alterations in original); *see also Hsin Ten Enter. U.S.*, 138 F. Supp. 2d at 456 (finding jurisdiction where website allowed consumers to purchase products, communicate with defendant's representatives, and download materials); *Mattel, Inc.*, 2001 U.S. Dist. LEXIS 3179, at *7-11.

[14] *See EnviroCare Techs.*, 2012 WL 2001443, at * 5 (finding Oregon resident's "complaints of inconvenience" did not make jurisdiction unreasonable).

where a defendant may be subjected to financial burden by litigating in New York, courts have found exercising jurisdiction is reasonable as it "can be mitigated by telephonic and electronic communication and is insufficient to render the exercise of jurisdiction constitutionally unreasonable."[15]   As to factor two, New York "has a manifest interest in providing effective means of redress for its residents." *See also Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999). As to factor three, where a plaintiff is based in New York, and its witnesses and documentary evidence are in New York, the third factor favors the plaintiff. *Carson Optical*, 2020 U.S. Dist. LEXIS 55223, at *20 (citing *EnviroCare Techs.*, 2012 WL 2001443, at * 5). As to factor four, Everytown is based in New York, and its claims involve issues pertaining to New York state law (in addition to federal law), and thus New York has an interest in providing an effective means of redress.  Defendants' reliance on *Walden v. Fiore* is misplaced. In *Walden*, the Court found that the police officer's conduct had nothing to do with Nevada, as he seized money from persons in Georgia who had displayed California identification and were at their departure gate to fly to Las Vegas. *Walden v. Fiore*, 571 U.S. 277, 288 (2014). Here, by contrast, the Plaintiff is not the only link with the forum.

### B.      Defendant Defcad User Freeman1337's Declaration Should be Stricken.

Defendant Freeman1337's declaration ("Freeman Dec.") should be stricken because Defendants' request to proceed anonymously has been denied (*See* Dkt. 97), and the Freeman Dec. does not allow the Court to hold the declarant to statements made under penalty of perjury. 28 U.S.C. § 1746 "requires that unsworn declarations be signed by the declarant under penalty of perjury." *Doe v. L.A. Unified Sch. Dist.*, No. 16-cv-00305, 2017 WL 797152, at *9 (C.D. Cal. 27,

---

[15] *Joint Stock Co. v. Informir, LLC*, 2017 WL 1321007, at *2 (S.D.N.Y. Marc. 30, 2017) (quoting *John Wiley & Sons v. Treeakarabenjakul*, No. 09 Civ. 2108, 2009 WL 1766003, at *8 (S.D.N.Y. June 18, 2009)).

2017) (citing 28 U.S.C. § 1746). "Without any record whatsoever of a witness's identity or their signature, a declarant cannot be held to their statements under 'penalty of perjury.'" *Id.* (rejecting anonymous declarations); *KeyView Labs, Inc. v. Barger*, 20-cv-2131, 2020 WL 8224618, at *6 (M.D. Fla. Dec. 22, 2020), *adp't* 2021 WL 510295 (M.D. Fla. Feb. 11, 2021) (rejecting anonymous declaration). Here, the Freeman Dec. is not only unsigned, but is undated. Thus, the Freeman Dec. should be stricken as it is of "no evidentiary worth." Order, Dkt. 68, at *3.

### C.   Defendants Have Waived Any Right to Challenge Personal Jurisdiction

A party must raise a defense of lack of personal jurisdiction either by motion or in a responsive pleading; otherwise, the defense is deemed waived. *See* FED. R. CIV. P. 12(h)(1). Personal jurisdiction can be waived either explicitly or implicitly. *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009). Even if a party meets the requirements of Rule 12(h)(1), however, "[a] court will obtain, through implied consent, personal jurisdiction over a defendant if '[t]he actions of the defendant [during the litigation] ... amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" *N.Y.C. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) (internal quote omitted). "[A] delay in challenging personal jurisdiction by motion to dismiss may result in waiver, even where the defense was asserted in a timely answer." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999) (alteration and internal quotation marks omitted). A party may forfeit a personal jurisdiction defense by litigating other issues. In assessing whether waiver or forfeiture has occurred courts consider the "relevant circumstances." *Id.* at 61.

Where a plaintiff files an amended complaint, the amended complaint supersedes the original. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (an amended complaint renders the original "of no legal effect"). When an amended complaint is filed,

motions to dismiss the original complaint are rendered moot. *See, e.g.*, *Azkour v. Haouzi*, No. 11 Civ. 5780, 2012 WL 1681438, at *2 (S.D.N.Y. Apr. 25, 2012). Accordingly, if a defendant fails to timely move to dismiss the amended complaint, defenses based upon personal jurisdiction and venue are waived. *See, e.g., id.* Here, Defendants filed a pre-motion conference letter seeking leave to dismiss Everytown's original complaint on November 29, 2021. ECF 46. Everytown then filed its FAC on May 2, 2022 and served the FAC on the Defendants the same day. ECF 89-90. Defendants had until May 16, 2022 to answer or otherwise respond to the FAC and did not do so. Thus, Defendants have waived any challenge to jurisdiction or venue by failing to timely assert the challenge to the FAC.

### D.     Venue is Proper in the Southern District of New York.

Under § 1391(b)(2), venue is proper for a trademark infringement claim in each jurisdiction where infringement is properly alleged to have occurred. *See Hsin Ten Enter.*, 138 F. Supp. 2d at 459. A substantial part of events occur in New York if the defendant targets New York by advertising and actively pursuing efforts to market the infringing product here, <u>or</u> if the defendant sells a substantial amount of the allegedly infringing goods to customers here. *See id.* at 460 (citation and quotations omitted). Further, when the marketing activity or sale occurred via the Internet, [t]he principles which govern the personal jurisdiction inquiry . . . are also applicable to the venue issue." *Mattel, Inc.*, 2001 U.S. Dist. LEXIS 3179, at 12. Therefore, for the same reason that jurisdiction is proper, venue is proper here. Similar to *Adventure Apparel* and *Mrs. U.S. Nat'l Pageant* where venue was proper[16], as New York users were able to

---

[16] *See Mattel, Inc.,* 2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. Mar. 22, 2001) (finding venue proper where product was ordered over interactive website using credit card, and defendant sent product into New York); *Mrs. U.S. Nat'l Pageant*, 875 F. Supp. 2d at 220-22, n.6 (finding venue proper where website allowed consumers to purchase goods online, establish an online account, communicate with the owner of the site or its representatives, or download order forms).

establish an account, sign up for a newsletter, and purchase a subscription using a credit card

from Defcad, download Infringing Products from Odysee, as well as post reviews of products

available to download, venue is proper.

### E.    Defendants Failed to Establish A Transfer of Venue is Warranted.

Defendants' request to transfer should be denied. Under 28 U.S.C. § 1404(a), "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought." The burden is on

the moving party "to make a clear and convincing showing that 'transfer will serve the interests

of convenience and fairness.'"[17]  The movant must support its venue motion with a detailed

factual affidavit. *See Nabisco, Inc. v. Brach's Confections, Inc.*, No. 00 Civ. 5875, 2000 WL

1677935, at *1 (S.D.N.Y. Nov. 8, 2000). Everytown's choice of forum should not disturbed

"unless the balance of factors tips decidedly in favor of a transfer." *Wildwood Imps. v. M/V Zim

Shanghai*, No. 04-CV-5538, 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005).

In evaluating a motion to transfer, courts consider: (1) the plaintiff's choice of forum, (2)

the convenience of witnesses, (3) the location of relevant documents and relative ease of access

to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the

availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative

means of the parties. *See D.H. Blair*, 462 F.3d at 106-07 (alteration in original) (internal

quotations and citations omitted). All the factors weigh against transfer.  First, Everytown's

choice of forum should be given great weight because Everytown, its witnesses and documentary

evidence are in New York. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

---

[17] *NBA Props. v. Salvino, Inc.*, No. 99 Civ. 11799, 2000 WL 323257, at *3 (S.D.N.Y. Mar. 27, 2000) (citations omitted); *see also N.Y. Marine & Gen, Ins. Co. v. Lafarge N. Am.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

Second, the convenience of the witnesses weighs against transfer as Everytown's witnesses and documentary evidence are in New York, and what information we do know about Defendants' locations indicates New York is a more convenient forum. Defendant Phillip Royster's location in Ohio is more convenient to New York than the W.D.T.X. Likewise, Mr. Holladay has alleged that he is located in Iowa a state where it is evenly convenient to travel to New York as it would be to travel to the W.D.T.X. Moreover, third-party discovery indicates Freeman1337 is located in Idaho, not Texas. *See supra* facts. Defendants also do not have sufficient contacts with the proposed forum for jurisdiction. *See Malmsteen v. Cleopatra Records, Inc.*, 2011 U.S. Dist. LEXIS 167853, at *12-14 (S.D.N.Y. Mar. 21, 2011) (denying transfer where defendants offered no factual support for their assertion that they have "substantial contacts" with the proposed forum). The fact that Defendants would not object to a transfer of venue to the W.D.T.X. is "immaterial" because "a defendant's consent to submit to [the] jurisdiction of a proposed transferee court after an action is filed will not satisfy Section 1404(a)." *Id.* at *13 (citing case). The pending actions in the W.D.T.X. and the Fifth Circuit involving Defcad's parent company do not involve trademark infringement claims, or the Everytown Marks. Moreover, this Court is fully capable of adjudicating First Amendment issues and is already familiar with this matter. Defendants' request to transfer should be denied.

## IV.    Conclusion

As Everytown has put forth sworn evidence that jurisdiction and venue is proper in this Judicial District, and the Defendants have failed to rebut Everytown's strong jurisdictional showing, Defendants' Motion should be denied.

Respectfully submitted,

Dated: July 8, 2022

VENABLE LLP

/s/Marcella Ballard

Marcella Ballard
Maria Sinatra
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Tel.: 212-307-5500
Fax: 212-307-5598
mballard@venable.com
mrsinatra@venable.com

Meaghan H. Kent (*pro hac vice*)
Alicia M. Sharon (*pro hac vice*)
600 Massachusetts Avenue NW
Washington, DC 20001
mhkent@venable.com
asharon@venable.com


*Counsel for Plaintiff Everytown for Gun Safety Action Fund, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

On July 8, 2022, I caused a true and correct copy of the foregoing to be served on the

following counsel of record via email per the Court's bundling rule:

Daniel Louis Schmutter
Hartman & Winnicki, P.C
74 Passaic Street
Ridgewood, NJ 07450
dschmutter@hartmanwinnicki.com

/s/Maria R. Sinatra

27