**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| EVERYTOWN FOR GUN SAFETY | : | |
| ACTION FUND, INC., | : | Civil Action No. 21-cv-08704- |
| Plaintiff, | : | PGG |
| | : | |
| v. | : | |
| DEFCAD, INC.; ODYSEE USER | : | **DECLARATION OF ERIN** |
| XYEEZYSZN; DEFCAD USER | : | **GALLOWAY IN** |
| XYEEZYSZN; ODYSEE USER | : | **OPPOSITION TO** |
| THEGATALOG-PRINTABLEMAGAZINES; | : | **DEFENDANTS' MOTION TO** |
| THE GATALOG; DEFCAD USER | : | **DISMISS AND REFUTING** |
| FREEMAN1337; TWITTER USER | : | **CERTAIN STATEMENTS** |
| XYEEZYSZN; PHILLIP ROYSTER. | : | **MADE IN DEFENDANTS'** |
| Defendants. | : | **DECLARATIONS** |
| | : | |

## TABLE OF CONTENTS

I.      False and Misleading Statements Made by Alexander Holladay ................................. 1

II.     False and Misleading Statements Made by Defendant Defcad User
        Freeman1337 ............................................................................................................. 19

III.    Misleading Statements Made by Phillip Royster (owner of the
        accounts Twitter User xYeezyszn, Odysee User xYeezyszn, and
        Defcad User xYeezyszn) ........................................................................................... 23

IV.     False and Misleading Statements Made by Garret Walliman ................................... 29

V.      False and Misleading Statements Made by Cody Wilson ........................................ 33

I, Erin Galloway, declare as follows:

      1.     I am a paralegal at Venable LLP, counsel for Plaintiff Everytown for Gun Safety Action Fund, Inc. ("Everytown"), I am a resident of North Carolina, over eighteen years old and competent to testify to the facts in this declaration based on my personal knowledge.

      2.     I have reviewed the declarations submitted in support of Defendants' Motion to Dismiss and submit this declaration to rebut certain statements made in the declarations of (i) Alexander Holladay (related to Defendant The Gatalog); (ii) Defcad User Freeman1337; (iii) Phillip Royster the owner of Defendants Odysee User xYeezySZN, Defcad User xYeezySZN, and Twitter User xYeezySZN; (iv) Garrett Walliman, Lead Software Developer for Defense Distributed, Inc.[1]; and (v) Cody Wilson, President of Defendant Defcad, Inc.

## I.    <u>False and Misleading Statements Made by Alexander Holladay</u>

      3.     Mr. Holladay is an individual who admits that he owns the domain www.thegatalog.com ("Gatalog Website"), named in this action as Defendant The Gatalog. *See* Declaration of The Gatalog (hereinafter "Gatalog Decl."), ¶ 3.

      4.     The Gatalog has promoted and offered one of the Infringing Products, namely the "Everytown 3D Printable AR15 22lr Magazine" via an affiliated account TheGatalog-PrintableMagazines on Odysee.com, a Defendant in this action[2]. Users can access many of the

---

[1] Defendant Defcad, Inc.'s parent company.

[2] Odysee User The Gatalog-Printablemagazines is a named Defendant in this action and has not appeared through counsel yet and thus is in default, therefore it is particularly misleading for Mr. Holladay to omit the many and varied connections between The Gatalog, Odysee User The Gatalog-Printablemagazines, and "Ivan The Troll" as described in paragraphs 15-30, 36-63 within this declaration.

Infringing Products on TheGatalog-PrintableMagazines page through a link provided on the homepage of the Gatalog Website.

5.      The Gatalog Website also promotes and advertises the Infringing Product named "Everytown 3D Printable AR15 22lr Magazine" through links to the website www.ctrlpew.com ("CTRL+Pew"), a website that is also owned and operated by Mr. Holladay, although he makes no mention of CTRL+Pew whatsoever in his declaration.

***In Paragraph 5 Holladay Falsely States the Gatalog Website Is a Mere "Index"; Falsely Implies the Gatalog Website is Passive When it is Interactive; Falsely States that the Gatalog Website Links to Accounts Holladay Doesn't Own or Operate; Misleadingly Omits that the Links on the Gatalog Website Homepage Take Users to Nine Gatalog-owned Odysee Accounts; and Omits that Holladay is an Officer at "The Gatalog Foundation, Inc."***

6.      Mr. Holladay states in paragraph 5 that: [m]y web domain, TheGatalog.com, hosts a website which serves as an index with links to various accounts owned by other people that host 3-D printable firearm parts related computer files." Gatalog Decl. ¶ 5.

7.      This statement is false because on its face the Gatalog Website does not just "serve as an index" to various other accounts.

8.      When a user accesses the Gatalog Website, a user has the option to correspond with the website through a page entitled "Submit Your Files." The "Submit Your Files" page allows users to submit their name, email, and the name of their design project among other information.

9.      The "Submit Your Files" page also states: "Submit your files below and our team will contact you regarding its publishing." Thus, the Gatalog Website is not merely a passive website serving as an "index" to files on other accounts (such as the Infringing Products), but rather is directly involved with the publication and distribution of those files. A true and correct copy of the "Submit Your Files" page on the Gatalog Website is attached as **Exhibit 1**.

2

10.     Mr. Holladay's statement that the Gatalog Website "links to various accounts owned by other people" is also false.

11.     The Gatalog Website directly links to another website Mr. Holladay owns and operates called Ctrl+Pew.

12.     Mr. Holladay's publicly available LinkedIn page identifies him as the "Owner at CTRLPew." A true and correct copy of Mr. Holladay's LinkedIn listing is attached as **Exhibit 2**.

13.     Ctrl+Pew advertises and promotes the Infringing Products, provides links to the Infringing Products, and solicits donations to another Defendant, Defcad User Freeman1337 by advertising that Freeman is the "[c]reator of the Everytown Mag," one of the Infringing Products.

14.     Mr. Holladay's statement "[m]y web domain, TheGatalog.com" is also misleading as he fails to admit or acknowledge that Defendant The Gatalog is owned and operated by not just him alone.

15.     Publicly available incorporation documents with the State of Florida demonstrate that Mr. Holladay is an officer/director of the "Gatalog Foundation, Inc." The Articles of Incorporation and 2022 Annual Report for the Gatalog Foundation, Inc. are included in **Exhibit 3**. Two additional individuals, Mr. Matthew Larosiere, and Mr. John Elik, are also listed as officers and/or directors of the Gatalog Foundation, Inc.

16.     Everytown believes that Matthew Larosiere and John Elik are also involved with Defendant The Gatalog and Mr. Holladay's actions in this case due to Defendant The Gatalog's response to Everytown's takedown notice submitted to Odysee.com on August 24, 2021 pertaining to Everytown's request that Odysee take down the Infringing Product from its website.

3

17.     In response to Everytown's takedown notice, on August 31, 2021, Matthew Larosiere submitted a counternotice stating "**this office has the pleasure of representing The Gatalog, Gatalog Foundation, et al in all matters relating to intellectual property" and that "this office acts on behalf of the Gatalog and its members."** A true and correct copy of the takedown notice and response submitted to Odysee.com is attached as **Exhibit 4**.

18.     Accordingly, Everytown believes that the entity the Gatalog Foundation, Inc., Matthew Larosiere, and an individual known named John Elik are also involved with operating the Gatalog Website in addition to Mr. Holladay as Mr. Larosiere is an officer/director of the Gatalog Foundation, and he submitted a response to Everytown's takedown request concerning the Infringing Products on behalf of "The Gatalog" and "Gatalog Foundation".

19.     Mr. Holladay's statement in paragraph 5 that the Gatalog Website "links to various accounts owned by other people" is misleading because it claims that the odysee.com user accounts linked to from the Gatalog Website homepage are not owned, operated and/or affiliated with Mr. Holladay and Defendant The Gatalog, when the takedown notice response filed by Mr. Larosiere (**Exhibit 4**), and the expedited discovery received from Odysee.com demonstrate otherwise.

20.     The homepage of the Gatalog Website provides direct links to nine accounts on odysee.com. A true and correct copy of the homepage of the Gatalog Website is attached as **Exhibit 5**, and is depicted within the screenshot below. The nine links to Odysee.com are identified within the red box.



21.     When a user clicks on one of the nine links listed on the homepage, they are redirected to a corresponding account on odysee.com related to "thegatalog" ("hereinafter "Gatalog Odysee Accounts"). For example, when a user clicks on "3D Printable Magazines" on the Gatalog Website one is redirected to a corresponding account on odysee.com entitled "TheGatalog-PrintableMagazines."

22.     A screenshot of the Odysee.com page for "TheGatalog-PrintableMagazines" linked to by the "3D Printable Magazines" link on the Gatalog Website is depicted below.



23.     All nine Gatalog Odysee Accounts contain usernames incorporating the term "thegatalog" such as "TheGatalog-printableframesReceivers", "TheGatalog-PrintableMagazines", and "TheGatalog-accessories".

24.     The Gatalog Website does not link to any odysee.com accounts other than the nine Gatalog Odysee Accounts. True and correct copies of the "content" pages for the nine Gatalog Odysee Accounts are attached as **Exhibit 6**.

25.     As demonstrated in **Exhibit 6**, all nine Gatalog Odysee Accounts use the same "Gatalog" logo in their account profiles as is depicted on the Gatalog Website.

26.     Expedited discovery from third party Odysee.com did not identify the actual name of the owner/operator Defendant Odysee User thegatalog-printablemagazines, but provided the same email address, ivanthetroll@protonmail.com for all nine Gatalog Odysee Accounts linked to from the homepage of the Gatalog Website. The email ivanthetroll@protonmail.com is associated with an individual known as "Ivan" or "Ivan the Troll".

6

27.    In addition, the same email address, ivanthetroll@protonmail.com, which was used to register the nine Gatalog Odysee Accounts, was used to correspond with a representative from Odysee.com (tom@lbry.com) pertaining to Everytown's takedown notice regarding Infringing Products listed by Defendant Odysee User THEGATALOG-PRINTABLEMAGAZINES.

28.    Within the correspondence between Ivan the Troll and Odyssee, the operator of the email address ivanthetroll@protonmail.com states: "I'll forward [the takedown request] to our lawyer. I suspect the plan will be for us to contest the claim then." The use of the term "our lawyer" indicates that the operator of email ivanthetroll@protonmail.com and the Gatalog Odysee Accounts is not acting alone, but in concert with other individuals.

29.    Later in the conversation, the operator of the email address ivanthetroll@protonmail.com appears to be speaking on behalf of "Thegatalog-printablemagazines" when he states: "What was their email about specifically (if you can share that info)? Matt is curious," in response to an email sent by Everytown to Odysee.com pertaining to removing the Infringing Products listed on Odysee in connection with Defendant Odysee User THEGATALOG-PRINTABLEMAGAZINES.

30.    Accordingly, the correspondence with Odysee.com from email address ivanthetroll@protonmail.com, and the takedown notice submitted by Matthew Larosiere in connection with Defendant Odysee User THEGATALOG-PRINTABLEMAGAZINES, along with the publicly filed entity information related to the Gatalog Foundation, Inc. demonstrate that Mr. Holladay's statement in paragraph 5 that the Gatalog Website links "to various accounts owned by other people" is misleading because (1) the Gatalog Odysee Account Defendant Odysee User THEGATALOG-PRINTABLEMAGAZINES is owned/affiliated with Defendant

The Gatalog and Mr. Holladay; and (2) Mr. Holladay does not solely operate Defendant The Gatalog, but appears to act in with others in a coordinated fashion.

***Paragraph 6 is Misleading Because Holladay Omits the Meaning of "Gatalog" and Omits that Others in Fact do not Use the Term***

31.     Mr. Holladay states in paragraph 6 that: "[t]he word 'Gatalog' is a term shared by a community of thousands of on-line persons who share an interest in 3-D printable firearm related computer files. I do not own any proprietary interest in the word. Anyone can use the word in their on-line presence, and many people do. I have no ownership or control over the activities of those people."  Gatalog Decl. ¶ 6.

32.     Mr. Holladay's statement in paragraph 6 is misleading because he does not define what "gatalog" means. "Gatalog" accounting to www.urbandictionary.com means "a catalog of firearms." A true and correct copy of the www.urbandictionary.com results for "gatalog" is attached as **Exhibit 7**.

33.      Mr. Holladay claims to own the Gatalog Website owned by Defendant The Gatalog, and Mr. Holladay operates and/or is affiliated with the Gatalog Odysee Accounts linked to by the Gatalog Website as described above.

34.     I conducted a search on Odysee.com for "the gatalog" and it produced dozens of hits, relating to the nine Gatalog Odysee Accounts linked to by the Gatalog Website.  The search produced zero hits to accounts other than those nine Gatalog Odysee Accounts. The odysee.com search results for "the gatalog" are attached hereto as **Exhibit 8**.

***Paragraph 7 is False Because Defendant The Gatalog Does Distribute 3D Printing Files; and The Gatalog Website Directly Links to Defendant Odysee Account THEGATALOG-PRINTABLEMAGAZINES, affiliated with The Gatalog, Distributing One of the Infringing Products.***

35.    Mr. Holladay states in paragraph 7: "TheGatalog.com does not host and at all times relevant to this lawsuit has never hosted any 3-D printable firearms related to computer files on the site or on its server."

36.    Holladay's statement is misleading since the Gatalog Website does in fact receive 3-D printing file information through its "Submit Your Files" page. *See* **Exhibit 1**.

37.    The Gatalog Website's "Submit Your Files" page invites users to submit 3-D printing files for printable firearms if they "[w]ish to release [the files] via The Gatalog" and asks the user to identify if their design relates to the "frame/receiver", "accessory/component/mag" or some other part of a firearm.

38.    As the Gatalog Website is involved with distributing and releasing files "via The Gatalog" related to 3-D printable firearms, it must have a means by which to provide them to the public, such as the nine Gatalog Odysee Accounts, including Defendant Odysee User THEGATALOG-PRINTABLEMAGAZINES.

39.    Similarly, Mr. Holladay's statement that "TheGatalog.com does not host and at all times relevant to this lawsuit has never hosted any 3-D printable firearms" files is false.

40.    The Gatalog Website links to a "beta" program for 3-D printable firearm files that is hosted and maintained by another domain, www.deterrencedispensed.com that is also affiliated with Defendant The Gatalog. A true and correct copy of the Gatalog Website's "Beta Program" page is attached as **Exhibit 9**.

41.    When a user clicks the link to "view the current betas" on the Gatalog Website the user is redirected to the url https://chat.deterrencedispensed.com/channel/z.beta. *See* **Exhibit 10**.

9

42.     The domain name www.deterrencedispensed.com ("Deterrence Dispensed") is again affiliated with and/or owned and operated by Defendant The Gatalog, and Mr. Holladay.

43.     Deterrence Dispensed is a website that is a stand-in for the Gatalog Website.  On the Gatalog Website homepage written in red font is the text: "Please bear with us during our transition. For more visit Deterrence Dispensed." *See* **Exhibit 5**.

44.     A screenshot of the Gatalog Website homepage depicting the text referring to "Deterrence Dispense" is also provided below outlined in a red box.



45.     When a user clicks on that red font referencing Deterrence Dispensed on the Gatalog Website homepage, they are then re-directed to the domain Deterrence Dispensed. A true and correct copy of the homepage for Deterrence Dispensed is attached as **Exhibit 11**.

46.     The Deterrence Dispensed homepage in turn states the following on the top of the homepage: "We're moving to The Gatalog. Please bear with us through this transition." *See*

**Exhibit 11**. A screenshot of the Deterrence Dispensed homepage depicting the text referring to "The Gatalog" is also provided below outlined in a red box.



47.     When a user clicks on the font on the Deterrence Dispensed homepage referencing "The Gatalog" one is re-directed back to the homepage of the Gatalog Website.

48.     In addition, searches on www.icann.org demonstrate that the Gatalog Website, and Deterrence Dispensed are also likely owned and operated by the same entity or individual. Both websites are registered with the same domain registrar, Epik Holdings, Inc., and utilize the same privacy protection service through Anonymize, Inc.  True and correct copies of the ICANN search results for the Gatalog Website, and Deterrence Dispensed are attached within **Exhibit 12**.

49.     Mr. Holladay's statement that "TheGatalog.com does not host and at all times relevant to this lawsuit has never hosted any 3-D printable firearms" files is also false based on

11

the expedited discovery received from Odysee.com which demonstrates that the same email,

ivanthetroll@protonmail.com, listed in connection with operation of the Gatalog Odysee

Accounts, including Defendant Odysee User THEGATALOG-PRINTABLEMAGAZINES, is

also used to operate the Odysee Account Deterrence-Dispensed.

50.     The "about page" on the "Deterrence-Dispensed" Odysee account states:

"Deterrence Dispensed has moved over to **thegatalog.com** - find all the files and information

over there!" A true and correct copy of the "Deterrence-Dispensed" Odysee.com account is

included within **Exhibit 13**.

51.     Thus, it was misleading for Mr. Holladay to state that Defendant The Gatalog and

the Gatalog Website have no involvement with "hosting" 3-D files when Defendant The Gatalog

and Mr. Holladay distributed files on Odysee.com through the affiliated Gatalog Oydsee

Accounts, "Deterrence-Dispensed" Odysee.com account, and through Deterrence Dispensed.

***Paragraph 8 is False Because Holladay Does Know Defendant Odysee User
Thegatalogprintablemagazines; Holladay's Website Links Only to That Account and Other
Gatalog Odysee Accounts affiliated with Defendant The Gatalog; and Holladay Did an
Interview With LaRosiere and Ivan The Troll.***

52.     Mr. Holladay states in paragraph 8 of the declaration that:

"I am aware that the Plaintiff has named as a defendant in this lawsuit a party called
Odysee User Thegatalogprintablemagazines. That account is one of the many accounts
my website, TheGatalog.com, contains a link to. That account is an account with a whole
different website called Odysee. I do not own and have never owned that account. I do
not use and have never used that account. I do not have access, and I have never had
access to log into that account. None of the files that account hosts belong to me or have
ever belonged to me. None of the files that account hosts or has hosted were created or
uploaded by me. None of the files that account hosts or has hosted were uploaded through
my website TheGatalog.com. A person with an Odysee user account cannot upload a file
to Odysee through my website TheGatalog.com. I do not know nor have I ever known
who owns or uses the Odysee account THEGATALOGPRINTABLEMAGAZINES."

53.     Mr. Holladay's statement that "[t]hat account is one of the many accounts my

website, TheGatalog.com, contains a link to" is misleading because the Gatalog Website only

12

links to three types of webpages: (1) Deterrence Dispensed, which is connected to Defendant

The Gatalog, and a stand-in for the Gatalog Website (*see* **Exhibit 13**); (2) CTRL+Pew, which is

owned by Mr. Holladay (*see* **Exhibits 2 and 5**), and (3) the nine Gatalog Odysee Accounts listed

on the Gatalog Website, using the same email address and using the same "Gatalog" logo. *See*

**Exhibits 5, and 6**.

54.    Mr. Holladay's statement in Paragraph 8 also omits the fact that the Gatalog

Website *only* links to the nine Gatalog Odysee Accounts and no other Odysee.com accounts.

55.    First, the nine Odysee Accounts, including Defendant Odysee User

THEGATALOG-PRINTABLEMAGAZINES are all operated through the same email address,

ivanthetroll@protonmail.com, that also is used to operate the odysee.com account for

"Deterrence-Dispensed", an account that again provides links and information to the Gatalog

Website. *See* **Exhibits 5, 6, 11 and 13**.

56.    Second, Mr. Holladay's statement that he does "not own and [has] never owned",

does not use and [has] never used" and does "not have access, and [has] never had access to log

into" the "THEGATALOGPRINTABLEMAGAZINES" Odysee.com account is misleading

because it omits the fact that Mr. Holladay is not the only individual that is associated with, and

controls Defendant The Gatalog and its related operations.

57.    As detailed above, at least two individuals besides Mr. Holladay are publicly

involved with "The Gatalog" as officers and/or directors through the Gatalog Foundation, Inc.,

an entity that is associated with Defendant The Gatalog through the representation made by Mr.

Larosiere in his response to Everytown's takedown request to Odysee.com. *See* **Exhibits 3, and**

**4** (Mr. Larosiere stating: "this office has the pleasure of representing The Gatalog, Gatalog

13

Foundation, et al in all matters relating to intellectual property" and that "this office acts on behalf of the Gatalog and its members.").

58.     Third, Mr. Holladay's statement that "[n]one of the files that account hosts or has hosted were created or uploaded by me. None of the files that account hosts or has hosted were uploaded through my website TheGatalog.com" is false because it omits the fact that the Gatalog Website distributes files obtained through its "Submit Your Files" page even if those files may not be explicitly processed or uploaded by Mr. Holladay. *See* **Exhibit 1**.  The "Submit Your Files" page states that the files submitted by users through the "Submit Your Files" page are reviewed "*by our admin team.*" *See* **Exhibit 1** (emphasis added).

59.     Lastly, Mr. Holladay's statement that "I do not know nor have I ever known who owns or uses the Odysee account THEGATALOGPRINTABLEMAGAZINES" must be false.

60.     Mr. Holladay repeatedly directs links to the nine Gatalog Odysee Accounts using the same logo that Defendant The Gatalog uses utilizes through both The Gatalog Website and Mr. Holladay's website CTRL+Pew. A true and correct copy of Mr. Holladay's website CTRL+Pew linking to the same THEGATALOGPRINTABLEMAGAZINES Odysee.com account is attached as **Exhibit 14**.

61.     As detailed above, expedited discovery received from Odysee.com demonstrates that "Ivan" using the email ivanthetroll@protonmail.com corresponded with Odysee.com in connection with Everytown's takedown request to the platform, and coordinated submitting the response with Mr. Larosiere.

62.     Given all these connections, it is perhaps unsurprising that Mr. Holladay, Mr. Larosiere, and "Ivan the Troll" have collaborated publicly as "opinion" authors on a submission

to the firearms related website www.ammoland.com. A true and correct screenshot of the byline from the www.ammoland.com submission is below.[3]



The Threat of DRM-Infused Home Gunbuilding

Ammoland Inc. Posted on April 9, 2021 by F Riehl, Editor in Chief

Opinion By: Alex Holladay, Ivan the Troll, and Matt Larosiere

63.    Accordingly, Mr. Holladay's statement that he does not know "who owns or uses the Odysee account THEGATALOGPRINTABLEMAGAZINES" is false as at a minimum, he is aware of at least an individual known as "Ivan" associated with the Gatalog Odysee Accounts, and Deterence-Dispensed Odysee account that has communicated with Mr. Larosiere and coordinated with Mr. Larosiere to submit a response to Everytown's take down notice on behalf of Defendant "The Gatalog" and "The Gatalog Foundation", businesses which Mr. Holladay owns and/or is an officer.

***Paragraph 9 is False: Holladay's Gatalog Website Links to Websites He Owns and Controls***

64.    Mr. Holladay states in paragraph 9 that: "My website contains links to other websites that I do not own or control, much like this Court's COVID-19 response page . . . ." yet the Gatalog Website contains links to CTRL+Pew, at least one other website that Mr. Holladay owns and/or controls. *See* **Exhibits 2, and 5**.

65.    As discussed above, Mr. Holladay's statement is misleading because the nine Gatalog Odysee Accounts that his Gatalog Website links to, and Deterrence Dispensed are all affiliated with Defendant The Gatalog and Mr. Holladay in some capacity.

---

[3] *See* https://www.ammoland.com/2021/04/the-threat-of-drm-infused-home-gunbuilding/#axzz7YINXRogG (describing Mr. Holladay as "operating the site CTRL+Pew")

15

***Paragraph 11 is Highly Misleading Because Holladay Is Not and Has Not Been Operating Anonymously on Ctrl+Pew, Is Publicly Visible as an Officer of the Gatalog Foundation, Inc. and has Appeared in Publicly Available Interviews in Trade Publications All in Connection with His "unfavored and unpopular" Viewpoints.***

66.     Mr. Holladay states in paragraph 11 that: "I believe that anonymity is important because it provides protection from retaliation and vindictive behavior as a result of unfavored and unpopular viewpoints."

67.     Mr. Holladay suggests that his activities involved with The Gatalog, the Gatalog Foundation, Inc. and Ctrl+Pew have been completely anonymous, when in fact they most certainly are not.

68.     Mr. Holladay's publicly available LinkedIn profile connects him to Ctrl+Pew as its owner, and the public filings of the Gatalog Foundation, Inc. list Mr. Holladay as its officer and/or director. *See* **Exhibits 2, and 3**.

69.     Given Mr. Holladay has also used his name publicly in connection with his opinion on www.ammoland.com, he also appears unafraid to share his views pertaining to firearms with the general public.

***Paragraph 13 is False Because Mr. Holladay has Conducted Business With Individuals In New York Through His Highly Interactive Websites CTRL+Pew and the Gatalog Website In Connection With the Infringing Products.***

70.     Mr. Holladay states in paragraph 13: "I do not conduct business and have never conducted business in or with anyone in the State of New York."

71.     Mr. Holladay's blanket statement is misleading and unlikely to be true given the highly interactive nature of the Gatalog Website and Mr. Holladay's other website CTRL+Pew.

72.     For example, Ctrl+Pew allows users to purchase almost 80 different products, including but not limited to products such as apparel related to "thegatalog", "deterrencedispensed", and "IvanTheTroll". The prices for the products listed are in U.S. dollars.

A true and correct copy of product offerings on Mr. Holladay's website Ctrl+Pew is attached as **Exhibit 15**.

73.     There are no state-related restrictions or specific qualifications needed to purchase products from Mr. Holladay's website CTRL+Pew.

74.     CTRL+Pew also has "referral" links and links to "affiliates" where CTRL+Pew provide discounts codes to consumers, including to New York consumers. A true and correct copy of referrals, affiliate and discount links on CTRL+Pew is attached as **Exhibit 16**. A screenshot of the "referral" and "affiliate" links on Mr. Holladay's website CTRL+Pew is also depicted below.



75.     Mr. Holladay's statement in paragraph 13 is also misleading given Mr. Holladay's website CTRL+Pew processes and facilitates bitcoin cryptocurrency "donations" provided to various groups and/or individuals involved with the 3-D printing of gun files.

76.     The donations accepted via Mr. Holladay's website do not appear to be restricted or prevent individuals residing in New York from donating. True and correct copies of CTRL+Pew facilitating bitcoin donations to Defendant Defcad User Freeman1337 in connection with his creation of the "Everytown mag' are attached within **Exhibit 17**. A screenshot from CTRL+Pew donation page to Defendant Defcad User Freeman1337 is also depicted below.



***Paragraph 18 Misleadingly Omits the Promotion and Marketing to NY Consumers***

77.     Mr. Holladay states in paragraph 18 that: "I have never sent any files as alleged in the Complaint or Amended Complaint to anyone in the State of New York" which conveniently omits that Mr. Holladay has marketed, promoted, and advertised the Infringing Products as described in Everytown's First Amended Complaint via his highly interactive website[s], which are accessible to, and were viewed by New York consumers. Screenshots of one of the Infringing Products being advertised on Mr. Holladay's website CTRL+Pew are attached as **Exhibit 14**.

78.     The screenshots demonstrate that Mr. Holladay's CTRL+Pew website represented that "The Gatalog" was involved with the presentation of the Infringing Product using the same "Gatalog" logo used and listed on the Gatalog Website connected with Defendant The Gatalog and Mr. Holladay.

79.     The screenshots also demonstrate CTRL+Pew linked to one of the Gatalog Odysee Accounts, Defendant Odysee User TheGatalog-PrintableMagazines affiliated with Defendant The Gatalog and Mr. Holladay, which offered and distributed the Infringing Products to New York consumers. *See* Declaration of Delia Green filed on October 22, 2021 [ECF 16] [hereinafter "Green Decl."], Ex. E, 16-5; Declaration of Delia Green filed on December 10, 2021 [ECF 65-1] [hereinafter "Green Reply Decl."], at ¶ 40.

## II.     <u>False and Misleading Statements Made by Defendant Defcad User Freeman1337</u>

80.     Defendant Defcad User Freeman1337 ("Freeman") has promoted and offered the Infringing Product "**Everytown 3D Printable AR15 22lr Magazine**" on Defcad.com and via an affiliated account "**Freeman1337 GunCAD Mirror**" on Odysee.com.

81.     Freeman has also promoted and advertised himself in connection with his Infringing "**Everytown Mag**" product on CTRL+Pew, which is owned by Mr. Holladay (*see supra* paragraphs 76-77, 80), in connection with bitcoin donations, and through Twitter.com in connection with his Twitter account "**Freeman13372**".

***Freeman Omits Any Specific Information Relevant to His Request to Remain Anonymous***

82.     Defendant Freeman states in paragraph 4 that: "I have chosen to be anonymous on the internet for my personal safety and that of my family."

83.     Freeman goes on to state in paragraph 5 that: "Prior to making my internet activities anonymous, I was direct messaged and threatened on Twitter and other platforms.

Threats ranged from communications of my personal views and beliefs to my employer in the hopes of getting me fired to threats to murder me and my family with our own firearms as "payment for lives lost at Sandy Hook."

84.     Freeman's statements in paragraphs 4 and 5 are misleading because the statements do not provide any specific time, place, or reason for the supposed threats, and do not provide any information as to whether the threats were related to Freeman's distribution of the Infringing Products in connection with his "Freeman" accounts or some other conduct entirely.

85.     Moreover, Freeman's account with Twitter.com, "**Freeman13372**" was created in July 2021, and it is therefore highly unlikely that the threats Freeman received were related to those account activities.

***Paragraph 6 is False Because the Platforms Where Freeman Promotes and Distributes the Infringing Products and Receives Donations Are Accessible to New York Consumers.***

86.     In paragraph 6 Freeman states: "I do not live or work and have never lived or worked in the State of New York. I do not conduct business and have never conducted busines in or with anyone in the State of New York. I do not own property in New York."

87.     That statement is misleading because Freeman is unable to verify his statement given that he receives donations in bitcoin cryptocurrency from various individuals online through Mr. Holladay's CTRL+Pew website and there is no way to verify where those donations are coming from.

88.     Freeman's donation page on CTRL+Pew advertises him as the creator of the "**Everytown mag**", one of the Infringing Products in this case. *See* **Exhibit 17**.

89.     When a user donates to Freeman on CTRL+Pew, a user donates by transferring Bitcoin cryptocurrecy via the application "BTCPAY".

90.     BTCPAY does not show Freeman where the donator is physically located. A true and correct copy of the BTCPAY screen in connection with donations to Freeman on CTRL+Pew is attached as **Exhibit 18**. A screenshot of the BTCPAY is further depicted below.



91.     Accordingly, Freeman's statement is misleading because he does not know if he has received donations from anyone in New York in connection with CTRL+Pew advertising him as the creator of the "Everytown Mag" which is one of the Infringing Products.

21

***Paragraph 7 is Misleading - Freeman's Area Code Is Associated With Idaho, Not Texas.***

92.     In paragraph 7 Freeman states: "I do live within the United States District Court for the Western District of Texas, and therefore I am amenable to personal jurisdiction and venue in that district."

93.      Freeman's statement may be false as the area code of a phone number (208 494 1786) obtained from Defendant Defcad, Inc. in connection with Freeman's Defcad.com account is associated with a geographic area in the state of Idaho. *See* DEFCAD000001.

***Paragraph 8 is Misleading Because Freeman Has Already Distributed One of the Infringing Products to New York Consumers through His Odysee.com Account.***

94.     In paragraph 8 Freeman states: "I have never sent any files as alleged in the Complaint to anyone in the State of New York."

95.     Freeman's statement is false, and does not address Everytown's allegations as to the First Amended Complaint, in which Everytown describes how Freeman owns/operates the Odysee.com account "Freeman1337 GunCAD Mirror" in addition to his account on Defcad.com. *See* FAC ¶¶ 191-98. A true and correct copy of the about page on Freeman's odysee.com account "Freeman1337 GunCad Mirror" is attached as **Exhibit 19**.

96.     Everytown knows that the Odysee.com account "Freeman1337 GunCAD Mirror" is owned by Defendant Freeman because the account references the email address 1337freeman1337@protonmail.com, the exact same email that was disclosed by Defcad, Inc. in expedited discovery as relating to the Defendant Freeman. *See* DEFCAD000001.

97.     Through Freeman's account on odysee.com he has distributed the same Infringing Product as he has distributed on his defcad.com account, namely, the "**Everytown cmmg 22lr Mag**".

22

98.     Freeman's files for the **Everytown cmmg 22lr Mag**" have been downloaded by New York consumers from his "Freeman1337 GunCAD Mirror" odysee.com account. *See* FAC ¶¶ 191-98 (depicting download window).

## III.     Misleading Statements Made by Phillip Royster (owner of the accounts Twitter User xYeezyszn, Odysee User xYeezyszn, and Defcad User xYeezyszn)

99.     Defendant Phillip Royster ("Royster") through his online accounts Defendants Defcad User xYeezySZN, Twitter User xYeezySZN, and Odysee User xYeezySZN has promoted and offered the Infringing Products "Moms Demand Action Firebolt 5.56 Bolt Catch Magwell" and "Everytown - Firebolt 5.56 Bolt Catch (R) Magwell Panel" on Defcad.com, and Odysee.com.

100.     Royster further advertised the Infringing Products using his Twitter account Twitter User xYeezySZN, and solicited donations from the public using his Twitter account.

***Paragraph 4 is Misleading Because Royster Can Receive Funds from Defcad in Connection With the Infringing Products; and Royster Has Received Compensation On Odysee.com From the Infringing Products.***

101.     In paragraph 4 Mr. Royster states: "Downloaders of my 3-D printable files do not and have not ever paid me for downloading my files, including what Delia Green refers to as 'tips'. I am aware that there are mechanisms by which a downloader could pay a creator for their files, but this has never happened with me. In fact, I dot no have a bank account connected to my Odysee account, which is what I would need to do if I ever received a tip and wanted to collect the money. I have also never received any money from Defcad."

102.     These statements are false and/or misleading in several respects.

103.     First, Royster's statement that he "never received any money from Defcad" is misleading as his Infringing Product on Defcad.com is being sold for a purchase price of $11.00 USD. Mr. Royster does not allege that he is unable to receive compensation in connection with

23

those Infringing Product listings. A screenshot of Mr. Royster's Infringing Product listing on

Defcad.com in connection with a price of $11.00 USD is below.



104.    A post on website www.reddit.com by Defcad employee Garret Walliman

confirms that Royster could receive funds from Defcad relating to the distribution of files, and

can receive monetary compensation for posts made on the website. A true and correct screenshot

of a post made by Mr. Walliman on reddit.com discussing funds received by creators is attached

as **Exhibit 20**.

105.    The reddit.com account "gw_Defcad" appears to be operated by Mr. Walliman as

the user account name contains "GW" and "Defcad", and in other posts the account describes

himself as a "defcad project lead" and directs users to email support@defcad.com with issues

they have on the website.

106.    In Mr. Walliman's declaration he also indicates that Defcad processes various

fees in Bitcoin, cryptocurrency. *See* Walliman Decl. ¶ 12.

107.     Accordingly, it is unclear if by "money" Royster is explicitly referring to USD, or all currency, including cryptocurrency, which is used by Defcad in various capacities.

108.     Second, Mr. Royster's statement that "Downloaders of my 3-D printable files do not and have not ever paid me for downloading my files, including what Delia Green refers to as 'tips'" is false and contradicted by Royster's Infringing Product listings.

109.     Royster's odysee.com account, Defendant Odysee User xYeezySZN, demonstrates that he received some monetary compensation in connection with the Infringing Products on odysee.com. As an example, Royster's Infringing Product listing for "Everytown Firebolt Magwell" shows that Royster received "11.7" LBRY credits as "Supports and Tips" in connection with the Infringing Product listing. A screenshot of Royster's Infringing Product listing depicting the 11.7 LBRY credits in supports and tips is depicted below.



110.    LBRY Credits, such as those received by Royster, can be redeemed for cash. A true and correct copy of Odysee.com's "Monetization of Content" page is attached within **Exhibit 21**.

111.    Royster's statement that he has not received monetary compensation in connection with the Infringing Products is false given he has received support and tips in connection with the Infringing Product listings. Whether Mr. Royster has chosen as of yet to "collect" those tips is of no consequence as the funds are available to him should he choose to retrieve them, much like funds available through a gift card.

***Paragraph 7 is False as Royster Solicited Funds Through His Twitter Account.***

112.    In paragraph 7 Mr. Royster states: "My purpose in all of this activity is entirely political. It is not financial."

113.    The statement is misleading as Royster linked his PayPal account to his Twitter account so that his followers could provide him with monetary funds. Screenshots of Royster's Twitter.com Linktree, and PayPal page in which he provides links to "support my projects" and "buy Yeezy a Coffee!" are attached within **Exhibit 22**.

***Paragraph 8 is Misleading Because Royster Was Not Anonymous on Twitter***

114.    In paragraph 8 Mr. Royster states: "I have chosen to be anonymous on the internet for my personal safety and that of my family."

115.    This is misleading as Royster provided the public with his name in connection with his Twitter and PayPal accounts, and was therefore not anonymous in connection with his online activities. *See* **Exhibit 22**.

***Paragraph 9 is False Since Royster Omits Prior Online Conduct Which is Likely Related to the Alleged "SWAT-ing" Incidents, and it is Not Related to 3-D Printing of Firearms or Distributing the Infringing Products.***

116.    In paragraph 9 Mr. Royster states:

"Prior to making my internet activities anonymous, my mother and I were "SWAT-ed" more than once. By "SWAT-ing" I am referring to the act of anonymously reporting to the police a false criminal emergency involving extreme danger to life and safety such that the police arrive at the scene at a heightened state of alert and heavily armed with the false expectation of a high probability of armed conflict with an alleged perpetrator at the scene. The result is a substantially increased probability of a person in the house being shot and killed by the police. This is a technique sometimes used to effectively commit murder against a disfavored person. My mother and I were SWAT-ed twice based on internet activity I engaged in prior to becoming anonymous. Fortunately, both times we were unharmed."

117.    That statement is misleading in several respects as Mr. Royster's internet activities were not anonymous. *See* **Exhibit 22**.

118.    Second, Royster's statements about the alleged "swatting" are misleading as the statements do not provide any specific time, place, or reason for said threats, and do not provide any information as to whether the threats were actually related to Mr. Royster's distribution of the Infringing Products.

119.    Given that Royster describes "SWAT-ing" as "the act of anonymously" making a report to police, Mr. Royster does not know who (if anyone) called police in the instances he describes.

120.    Third, Royster's statement that he and his mother "were SWAT-ed twice based on internet activity I engaged in prior to becoming anonymous" is misleading as he omits prior online conduct that he engaged in unrelated to the instant litigation or 3-D firearms which is likely related to the alleged "SWAT-ing" incidents.

121.    Prior to the instant action, Royster, and his mother, appeared to have been involved with a business managing social media accounts for incarcerated individuals. An article

in Business Insider about Royster, and his mother's business, stated "[Royster's] specialty is getting the prisoners on dating websites, helping them meet women, and then explaining to those women that their new acquaintance might not be able to grab that drink for a while." A true and correct copy of the Business Insider article is attached as **Exhibit 23**.

122.     Accordingly, there is reason to believe that any previous law enforcement inquiries into Royster, and/or his mom, may have been the result of online activities having nothing to do with the instant claims or lawsuit.

***Paragraph 11 is False Because Royster Explicitly Offered to Write an Affidavit Disclosing His Identity in the Instant Action.***

123.     In paragraph 11 Royster states: "I am aware that Everytown claims that I said in a chat that I'm 'just fine' with disclosing my identity. I am not. I was only 'just fine' revealing my identity to the person I was communicating with, knowing that that person would keep my identity confidential."

124.     Royster's statement is contradicted by the message chat produced by Defendant Defcad in this case.

125.     In response to a conversation with Defcad employee Garret Walliman in which Mr. Royster and Mr. Walliman were discussing Everytown's request to remove the Infringing Products from defcad.com, and Mr. Walliman stating that Defcad would "of course plan to fight" a legal battle with Everytown, Royster stated: "I am also fine with sharing my actual identity as well I do live in a free state so I'm not actually breaking any laws printing guns here. I don't really want to but if need be for legal procedures we can." DEFCAD000009.

126.     Mr. Royster then goes on to state: "I have a hard time thinking a judge would be willing to take this issue through to the end. I do understand that 100%. This is why I am willing

to offer whatever help, anything I can do . . . If you need an affidavit or anything that's fine too."
DEFCAD000009.

127.     Accordingly, Mr. Royster's statement is false as he offered to complete an
affidavit in connection with this matter which he understood would be disclosed to individuals
outside of Garret Walliman, with whom he was chatting.

**Paragraph 18 is False and/or Misleading as Royster's Infringing Products Have Been
Distributed to Consumers In New York.**

128.     In paragraph 18 Royster states: "I have never sent any files as alleged in the
Complaint or Amended Complaint to anyone in the State of New York."

129.     Royster's statement is false given that New York consumers have accessed and
downloaded his Infringing Product files on odysee.com. *See* Green Decl. ¶ 5, 8-14, Exs. A-B;
Green Reply Decl. ¶¶ 31-39, Ex. E

### IV.     False and Misleading Statements Made by Garret Walliman

130.     Declarant Garret Walliman ("Walliman") is a "Lead Software Developer" for
Defense Distributed, Inc., the parent company of Defendant Defcad, Inc. Declaration of Garret
Walliman ("Walliman Decl") ¶ 2, 3.

131.     Walliman communicated with Defendants Royster and Freeman on behalf of
Defendant Defcad, Inc. and solicited Mr. Royster to distribute his Infringing Products on
Defcad.com. *See* DEFCAD000002-DEFCAD000010.

**Paragraph 8 is False Since Defcad's IP Geolocation Services Do Not Accurately Determine
Where Users Are Located.**

132.     In paragraph 8 of Mr. Walliman's declaration he states: "Defcad's systems use a
method called "IP geolocation" to try to determine the state from which the user is accessing the
website. IP geolocation is a third-party service which correlates IP addresses with the last known

29

physical location of the device using this IP address. The IP geolocation service provides this information in a searchable, regularly updated database. An IP geolocation lookup is performed by looking up the IP address of the computer being used in a geolocation database and retrieving the physical location information corresponding to that IP address. A computer's IP address provides information allowing for the routing of data packets over the internet to that computer. A computer's IP address acts like the physical address that one writes on an envelope when sending a letter through the mail."

133.    Mr. Walliman's statement is misleading as it implies that Defcad's IP geolocation services accurately determines the geographic locations from which defcad.com users access the website.

134.    Defcad's use of IP geolocation is flawed because it recognized Ms. Green as residing in Maryland when she resides in NY and provided Defcad with a NY driver's license and credit card address. *See* Green Reply Decl. ¶¶ 15-23, Ex. B.

135.    Further, Mr. Walliman's statement that "The IP geolocation service provides this information in a searchable, regularly updated database" is also inconsistent with the information that Defcad represented was in its possession with regard to Defendant Freeman1337, a "Defcad Partner."

136.    "Defcad Partners" are individuals who have accounts with www.defcad.com that are able to submit files for distribution on Defcad's website. To become a "Defcad Partner", users like Defendant Freeman had to "apply for partnership" to Defcad by accessing www.defcad.com and filing out a form. A true and correct copy of screenshots on www.defcad.com describing "Defcad Partners" is attached as **Exhibit 24**.

137.    As Defendant Defcad Freeman submitted the Infringing Products for distribution on www.defcad.com as a Defcad Partner, Freeman had to access www.defcad.com, and fill out the form implicating the IP geolocation process that Mr. Walliman alleges occurs in paragraph 8.

138.    However, in expedited discovery produced by Defcad, Walliman told Freeman that Defcad had "virtually no info about [Freeman] whatsoever" when Walliman was asked what information/data Defcad possessed by Freeman. *See* DEFCAD000003.

139.    Further, expedited discovery received from Defcad demonstrates that even if Defcad did maintain IP geolocation services as Mr. Walliman describes, such IP geolocation services are likely to be ineffective at determining user locations given Freeman himself "used tor/VPN" when signing up for www.defcad.com. *See* DEFCAD000004.

140.    Freeman was so confident that the "tor/VPN" hid his/her actual geographic location that Freeman stated there were "no worries" in having to comply with a court order regarding the disclosure of Freeman's personal identifying information in Defcad's possession. *See* DEFCAD000004.

141.    Accordingly, Defcad's "IP geolocation service" described in paragraph 8 does not, and has not, identified the actual geographic location of Defcad's users.

***Paragraph 15 is Misleading as Defcad has Charged New York Consumers Subscription Fees to Access Defcad's Website, and Has Shipped A Flash Drive to New York***

142.    Walliman states in paragraph 15: "Even had [Ms. Green] completed all the steps necessary to complete the transaction, she would never have received any files. This is because Defcad does not ship files to any user known or believed to be in the state of New York. If Ms. Green had continued in her attempt to complete one of her transactions, which our system showed originated in Maryland, Defcad would still have refused the order once it became aware that Ms. Green was a resident of New York."

31

143.    Walliman's statement is false and/or misleading as Defcad has shipped files to New York. Walliman's own declaration states Defcad ship a flash drive to New York containing data files for a fee as recently as May 2021. *See* Walliman Decl. ¶ 17.

144.    This negates any statements made by Walliman that Defcad has never shipped flash drives to New York, or has done business with New York consumers, or that Defcad would have categorically refused to ship a flash drive to Ms. Green.

**Paragraph 16 is False Since Defcad Has Shipped A Flash Drive to New York; and Defcad Does not Put Customers on Notice That It Does Not Ship Files To New Jersey or New York.**

145.    Walliman states in paragraph 16: "Consistent with Defcad's blocking of downloads in New York, Defcad does not ship files to New York FFL holders, in accordance with a similar policy to refuse to ship files to New Jersey FFL holders. Defcad does this because New York and New Jersey have objected to Defcad providing files to people in those states."

146.    Walliman's statements are misleading because (1) Walliman stated that Defcad has shipped a flash drive to a New York consumer within 2021 (*see* Walliman Decl. ¶ 17) and (2) the publicly available information on Defcad's website does not state it will not ship files to New Jersey or New York.

147.    Defcad's website does not provide any information specific to New York visible to consumers regarding the shipment of files, and Defcad's website states the following with regard to New Jersey: "Defcad files and other hardware are not currently available to persons outside the United States and are not available to residents of and persons in the state of New Jersey who do not possess a federal firearms license." *See* Green Reply Decl. ¶¶ 7-14, Exs. A, D.

148.    Accordingly, Defcad does not have any policy on its website indicating that it has categorically refused to ship flash drives or files to New York or New Jersey.

32

## V.   False and Misleading Statements Made by Cody Wilson

149.   Declarant Cody Wilson ("Wilson") is the President of Defendant Defcad, Inc., the entity that has distributed the Infringing Products, and solicited the posting of Royster's Infringing Products on www.defcad.com.

***Paragraphs 2 and 3 are Misleading -- Defcad Cannot Be Incorporated In Two States.***

150.   Wilson states in paragraph 2: "I am the President of Defendant Defcad, Inc., a Delaware corporation ("Defcad")."

151.   Wilson further states in paragraph 3: "Defcad is a corporation organized under the laws of Arkansas with a principal place of business of 2320 Donley Dr., Suite C, Austin, Texas 78758-4514."

152.   Wilson's statements in paragraphs 2, and 3 pertaining to Defcad being a "Delaware corporation" and Defcad being a "corporation organized under the laws of Arkansas" are inconsistent and false as Defcad cannot be an entity with its place of incorporation in two different states.

***Paragraph 6 is False as Defcad Emails New York Consumers with Promotional Materials.***

153.   Wilson states in Paragraph 6: "Defcad does not engage in advertising targeted to New York."

154.   Wilson's statement is misleading since Defcad sends emails containing promotional materials to New York consumers. *See* Green Reply Decl. ¶¶ 26-30, Ex. D (detailing how Ms. Green received emails from Defcad containing promotional materials after having signed up for a www.defcad.com subscription with her New York credit card).

***Paragraph 7 is Misleading as Defcad Has Charged New York Consumers for Subscriptions to Its Website; and Has Shipped New York Consumers Flash Drives.***

155.     Wilson states in paragraph 7: "Defcad does not conduct business and has never conducted business in or with anyone in the State of New York."

156.     Wilson's statement is false as Defcad has charged and obtained subscription fees from New York consumers, and Defcad has sent files to New York consumers in exchange for a shipping fee.

157.     Ms. Green was charged $50.00 by Defcad in connection with a subscription fee to obtain a membership to www.defcad.com as previously detailed by Mr. Green. *See* Green Decl. ¶¶ 30-31; Green Reply Decl. ¶¶ 15-23, Ex. B.

158.     Walliman has also stated that Defcad sent a flash drive containing files to New York in 2021 in connection with a fee of $11.00. *See* Walliman Decl. ¶ 17.

159.     Accordingly, Wilson's statement that Defcad "has never conducted business in or with anyone in the State of New York" is false.

***Paragraph 18 is False as "Ghost Guns", "Assault Weapons" and "Large Capacity Magazines" are Common Terms Used by the Public, and are not Terms Invented by Everytown.***

160.     Wilson refers to "so-called 'ghost guns' . . . 'assault weapons', and so-called 'large capacity magazines" in paragraph 18.

161.     Wilson's statements are misleading to the extent that he attempts to insinuate that the terms "ghost guns", "assault weapons", and "large capacity magazines" were coined by Everytown, and are not common-place terms in the media, and in the firearms industry.

162.     The terms "ghost guns", "assault weapons", and "large capacity magazines" are terms used by news outlines across the country, and in legislation concerning various firearms

34

and accessories. An example of one such definition codified by the state of New York for a "ghost gun" is within **Exhibit 25** attached.

***Paragraph 24 is Misleading as Defcad Has Shipped A Flash Drive to New York; and Defcad Does not Put Customers on Notice That It Does Not Ship Files To New Jersey or New York.***

163.    Wilson states in paragraph 24: "Defcad has determined not to permit its files to be downloaded from persons located in certain geographic areas inside and outside of the United States. Once of those areas is the State of New York."

164.    Wilson's statement is misleading as (1) Walliman stated that Defcad has shipped a flash drive to a New York consumer within 2021 (*see* Walliman Decl. ¶ 17), and (2) the publicly available information on Defcad's website does not state it will not ship files to New York. *See* Green Reply Decl. ¶¶ 7-14, Exs. A, D.

***Paragraphs 25 and 26 are False as Defcad's IP Geolocation Services are Flawed.***

165.    Wilson states in paragraph 25: "When contacted by a user - - and only as a first step - - Defcad uses geolocation services to determine the location from which a computer user is accessing the Defcad website."

166.    Wilson states in paragraph 26: "Ms. Green asserts that this system is unreliable but this is only the first step and, if Defcad cannot, using those geolocation services, confirm with a high level of accuracy, that the user is located outside of the areas identified by Defcad as 'Restricted,' Defcad treats such users as being located in a 'Restricted Area' and being a 'Restricted User'.

167.    Wilson's statements in paragraphs 25 and 26 are misleading as Defcad's reliance on geolocation is flawed considering it recognized Ms. Green as residing in Maryland when she resides in New York, and provided Defcad with a New York driver's license and credit card information. *See* Green Reply Decl. ¶¶ 15-23, Ex. B.

168.    Wilson's statements are further misleading given that Defendant Freeman, a Defcad Partner, stated that he/she used "tor/VPN" services when signing up for defcad.com and accordingly, Defcad has "virtually no information about [Freeman] whatsoever." DEFCAD000003-DEFCAD000004.

169.    Accordingly, Wilson's statement is inaccurate/misleading because Defcad does not possess accurate geolocation information about its users.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 8 , 2022

ERIN GALLOWAY

36